James C. Feldman (AK Bar No. 1702003)
Jeffrey M. Feldman (AK Bar No. 7605029)
SUMMIT LAW GROUP PLLC
315 Fifth Avenue South, Suite 1000
Seattle, WA 98104
Phone: (206) 676-7000
jamesf@summitlaw.com
jefff@summitlaw.com

*Attorneys for Bristol Bay Economic Development Corporation*

*Counsel for additional Intervening Parties are
identified at the end of this pleading*

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN DYNASTY MINERALS LTD. and PEBBLE LIMITED PARTNERSHIP, | No. 3:24-cv-00059-SLG |
| Plaintiffs, | |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | |
| Defendant. | |

**MOTION TO INTERVENE BY UNITED TRIBES OF BRISTOL BAY, BRISTOL BAY NATIVE ASSOCIATION, BRISTOL BAY ECONOMIC DEVELOPMENT CORPORATION, BRISTOL BAY NATIVE CORPORATION, COMMERCIAL FISHERMEN FOR BRISTOL BAY, AND BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION**

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

1

# I.  INTRODUCTION

The proposed Pebble Mine poses a fundamental threat to the salmon, and therefore the people, of Bristol Bay. At the urging of Bristol Bay Tribes, community members, and economic leaders, the EPA addressed this threat, for which it is now being sued by the mining claimant. As Bristol Bay's leaders have done in prior litigation related to the proposed Pebble Mine, United Tribes of Bristol Bay ("UTBB"), Bristol Bay Native Association ("BBNA"), Bristol Bay Economic Development Corporation ("BBEDC"), Bristol Bay Native Corporation ("BBNC"), Commercial Fishermen for Bristol Bay ("CFBB"), and Bristol Bay Regional Seafood Development Association, Inc. ("BBRSDA") seek to intervene as Defendants in this litigation.[1]  As organizations representing the Tribes, communities, fishermen, commercial and economic interests, and Alaska Native people in the Bristol Bay region that would be directly impacted by the Pebble Mine, the proposed Intervenor-Defendants and their members have direct and significant interests in the litigation and meet all requirements to intervene both as of right under Federal Rule of Civil Procedure 24(a) and permissively under Rule 24(b).

---

[1]  The undersigned has inquired as to Plaintiffs' and Federal Defendants' respective positions on the motion to intervene.  Counsel for Plaintiffs advises that "Northern Dynasty would likely oppose an intervention" but reserves its position until it has had a chance to review the motion.  Counsel for the Federal Defendants indicates "[t]he United States opposes intervention of right under Fed. R. Civ. P. 24(a)(2). However, the United States does not oppose the movants' permissive intervention in this case."

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

2

## II.  BACKGROUND[2]

**A.    The Bristol Bay Watershed Supports Genetically Diverse Wild Pacific Salmon Populations that are the Foundation of Alaska Native Cultures and Fishing Communities in the Region.**

The pristine Bristol Bay watershed in southwestern Alaska "is an area of unparalleled ecological value."[3]  The watershed's streams, wetlands, lakes, and ponds provide habitat for the world's largest wild salmon runs, which average an astounding 43 million fish per year and in recent years have ranged as high as 79 million fish.[4]  Bristol Bay salmon are culturally, ecologically, and economically critical to Alaskan communities.  Bristol Bay salmon are the foundation of Alaska Native cultures in the region and continue to sustain some of the last intact wild salmon-based cultures in the world.[5]  Indeed, "[t]he importance of salmon as a subsistence food source is inseparable from it being the basis for Alaska Native cultures."[6]

The Alaska Native people of Bristol Bay come from three different cultural traditions—Yup'ik, Dena'ina, and Alutiiq.  They, along with their non-Native neighbors,

---

[2] The background and history of the Bristol Bay salmon fishery and the Pebble Mine are well known and have been discussed in extensive prior litigation.  *See e.g. Bristol Bay Econ. Dev. Corp. v. Pirzadeh*, Case No. 3:19-cv-00265-SLG (D. Alaska), ECF No. 1.  Accordingly, only a brief summary is offered here.

[3] Envtl. Prot. Agency, Executive Summary – Final Determination for Pebble Deposit Area ("EPA ES") at 1 (Jan. 2023), *available at* https://www.epa.gov/system/files/documents/2023-01/Pebble-Deposit-Area-404c-FD-Executive-Summary-Jan2023.pdf.

[4] EPA ES-1. The Alaska Department of Fish & Game reported a Bristol Bay salmon run of nearly 55 million fish in 2023. *See* Alaska Dep't of Fish & Game, 2023 Bristol Bay Salmon Season Summary (Sept. 22, 2023), *available at* https://www.adfg.alaska.gov/static/applications/dcfnewsrelease/1541607348.pdf.

[5] EPA ES-1.

[6] Envtl. Prot. Agency, Final Determination for Pebble Deposit Area ("EPA Final Determination") at 3-60, *available at* https://epa.gov/system/files/documents/2023-01/Pebble-Deposit-Area-404c-FD-Jan2023.pdf (Jan. 2023).

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

3

live in communities that are geographically isolated from the rest of the State and, in most cases, from one another. Most communities in the Bristol Bay region are self-reliant, operating without the benefit of interconnected road and utility systems. The vast majority of households in the region rely on subsistence fishing, hunting, and gathering for a large percentage of their food.[7] In fact, subsistence use of wild resources is the most consistent and reliable component of the local economy.[8] Alaska Native households in Bristol Bay are highly reliant on subsistence resources as sources of food.[9] Given the extremely high cost of groceries in rural Alaska, replacing the salmon harvest with store-bought meat would cost approximately $7,500 for the average Alaska Native family, representing nearly 20% of the average Alaska Native household income.[10]

Subsistence activities also serve as a core component of social, community, and family life. Subsistence resources and activities related to harvesting these resources play a major role in defining Alaska Native families and communities, including the passing on of knowledge and traditions from Elders and the reinforcement of traditional Native values, such as generosity, respect for Elders, self-esteem, and cultural respect.[11] Knowledge and skills essential to living in the region are preserved and communicated through the gathering

---

[7] Declaration of Andria Agli ("Agli Decl.") ¶¶ 7, 9; Declaration of Robert Heyano ("Heyano Decl.") ¶¶ 12-15; Declaration of Anthony Gregorio ("Gregorio Decl.") ¶¶ 6, 9. For instance, between 1975 and 2007, subsistence salmon harvests have averaged about 152,000 fish per year. *See* Fall, James A., et al., *An Overview of the Subsistence Fisheries of the Bristol Bay Management Area* ADF&G Special Public. No. BOF 2009-07 (Nov. 2009) ("Fall et al.") at 5, *available at* https://www.adfg.alaska.gov/specialpubs/SP2_SP2009-007.pdf.

[8] *See* Fall et al., at 2.

[9] Agli Decl. ¶ 9; Heyano Decl. ¶ 12; Gregorio Decl. ¶ 6.

[10] Agli Decl. ¶ 9.

[11] Agli Decl. ¶¶ 7, 9; Heyano Decl. ¶¶ 12-15; Gregorio Decl. ¶¶ 10-11.

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

4

and processing of wild resources.[12]  Simply stated, salmon are a revered renewable resource that have been harvested sustainably in the region for millennia, and salmon harvesting is central to the cultural traditions of the diverse Alaska Native peoples of Bristol Bay.  Any damage to subsistence resources in Bristol Bay would thus lead to poorer nutrition, as well as economic, social, and cultural disruption for Alaska Native people in the region.

The bounty of Bristol Bay is such that it also supports a vibrant commercial salmon fishery going back to the late 1800s, and a bucket-list sport fishing experience for anglers from all over the world.  Today, Bristol Bay's remarkable commercial fishing industry accounts for nearly half of the global harvest of sockeye salmon, producing more than $2 billion a year in value and supporting 15,000 jobs,[13] while sport fishing in Bristol Bay accounts for approximately $66 million in expenditures and directly employs over 800 full- and part-time workers.[14]  In the absence of adverse human impact, the fishery is completely self-sustaining in perpetuity and highly dependent upon the spawning grounds located in the pristine headwaters of Bristol Bay.

**B.    After More Than a Decade of Extensive Scientific Review, EPA Determined that the Proposed Pebble Mine Would Have Unacceptable Adverse Effects on the Bristol Bay Watershed.**

Plaintiffs propose to construct a massive open pit hard rock mine at the headwaters of the Bristol Bay watershed, targeting 1.3 billion tons of ore containing copper, gold, and molybdenum over 20 years, and more thereafter.[15]  The Pebble deposit underlies portions of rivers and creeks which drain to two of the largest rivers in the Bristol Bay watershed.[16]  It

---

[12] Agli Decl. ¶ 7; Heyano Decl. ¶ 14; Gregorio Decl. ¶ 11.  *See also*, Fall et al., at *2.*

[13] EPA ES-3; Declaration of Katherine Carscallen ("Carscallen Decl.") ¶ 7.

[14] EPA Final Determination, 3-61.

[15] EPA ES-3 – ES-5.

[16] EPA ES-3.

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

is not possible to develop the Pebble Mine without discharging dredged or fill materials into waters of the United States within the Bristol Bay watershed.[17]

Recognizing the risks posed to Bristol Bay by development of the Pebble Mine, many of the proposed Intervenor-Defendants petitioned the EPA to use its authority under the Clean Water Act ("CWA") to protect the region's fishery areas by restricting the watershed's use as a disposal site for mining the Pebble deposit.[18] In 2011, the EPA launched an ecological risk assessment regarding mining impacts on the Bristol Bay ecosystem.[19] In 2014, after three years of careful study, public testimony and consultations with the people of Bristol Bay, peer review, and two comment periods resulting in more than 1.1 million comments,[20] the EPA issued a proposed determination under Section 404(c) of the CWA to restrict the disposal of dredged or fill material in the Bristol Bay watershed.[21] Plaintiffs

---

[17] EPA ES-5. Because of the need to discharge dredged or fill materials into waters of the United States, Plaintiffs applied for a CWA Section 404 permit from the Army Corps of Engineers. After several years of environmental review, the Army Corps of Engineers denied Plaintiffs' 404 permit application, determining that the proposed mine would not comply with the CWA because it would "cause unavoidable adverse impacts to aquatic resources which would result in Significant Degradation to aquatic resources" and was contrary to the public interest. The Army Corps of Engineers recently denied Plaintiffs' appeal of the denial of Plaintiffs' 404 permit application. *Id.*; U.S. Army Corps of Eng'rs, *available                                                                                      at* https://www.poa.usace.army.mil/Portals/34/docs/regulatory/specialpns/2024/PLP_SPN_AppealDecisionReview_POA201700271_2024-4-15.pdf?ver=wlth3Hbnf5hhBFkbxgt9PA%3d%3d (Apr. 15, 2024).

[18] EPA ES-10; Heyano Decl. ¶ 7; Gregorio Decl. ¶ 7.

[19] EPA ES-10.

[20] EPA Final Determination, 2-12; Declaration of Daniel L. Cheyette ("Cheyette Decl.") ¶ 12.

[21] EPA ES-10; 79 Fed. Reg. 42,314 (July 21, 2014). During the 2014 proposed determination comment period, EPA received more than 670,000 written public comments, more than 99 percent of which supported EPA action to protect Bristol Bay. *See* EPA Final Determination, 2-13.

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

challenged the EPA's proposed determination decision, and several of the proposed Intervenor-Defendants successfully intervened in that litigation.[22] Related prior litigation resulted in a 2017 settlement agreement by which the EPA agreed to begin a process to reconsider the 2014 proposed determination.[23] From July to October 2017, EPA received more than one million public comments supporting the 2014 proposed determination, including an overwhelming majority of Bristol Bay residents who testified at EPA hearings in support of keeping the 2014 proposed determination in place.[24] In early 2018, EPA announced it was suspending its process to withdraw the 2014 proposed determination,[25] noting that "any mining projects in the region likely pose a risk to the abundant natural resources that exist there."[26] Roughly one year later the agency reversed course and abruptly withdrew the 2014 proposed determination without any public process or explanation for its reversal in position.[27] Proposed Intervenor-Defendants and several other groups thereafter

---

[22] *See Pebble Ltd. P'ship v. EPA*, 3:14-cv-00097-HRH (D. Alaska July 29, 2014), ECF No. 148 (granting UTBB's motion to intervene); *id.*, (D. Alaska August 18, 2014), ECF No. 182 (granting BBNC's motion to intervene).

[23] *Pebble Ltd. P'ship v. EPA*, 3:14-cv-000171-HRH (D. Alaska May 12, 2017). ECF No. 299.

[24] 83 Fed. Reg. 8,668 (Feb. 28, 2018). *See also*, EPA Final Determination, 2-14; Cheyette Decl. ¶ 12 (noting that 99.9 percent of the more than one million public comments were in support of EPA action to protect Bristol Bay).

[25] 83 Fed. Reg. 8,668 (Feb. 28, 2018).

[26] EPA, News Release, EPA Administrator Scott Pruitt Suspends Withdrawal of Proposed Determination in Bristol Bay Watershed, Will Solicit Additional Comments, Jan. 26, 2018, *available at* https://www.epa.gov/archive/epa/newsreleases/epa-administrator-scott-pruitt-suspends-withdrawal-proposed-determination-bristol-bay.html.

[27] *See* EPA, News Release, EPA Withdraws Outdated, Preemptive Proposed Determination to Restrict Use of the Pebble Deposit Area as a Disposal Site, July 30, 2019, *available at* https://www.epa.gov/newsreleases/epa-withdrawsoutdated-preemptive-proposed-determination-restrict-use-pebble-deposit.

---

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

7

challenged the EPA's withdrawal of the 2014 proposed determination, and the Ninth Circuit ultimately concluded that the EPA had improperly withdrawn the proposed determination.[28] This Court then vacated the EPA's withdrawal of the 2014 proposed determination and remanded the action to the EPA for further consideration.[29]

Following remand, the EPA reinitiated the Section 404(c) process. As part of this process the EPA issued a revised proposed determination, which was followed by several public hearings and an extended comment period,[30] with the agency receiving more than 500,000 comments, approximately 99 percent of which expressed support for the proposed determination.[31] In January 2023, after extensive review of scientific and technical research spanning two decades, and robust stakeholder and public engagement, the EPA issued a Final Determination under its CWA Section 404(c) authority to help protect the most productive wild salmon ecosystem in the world.[32] The EPA determined that discharges associated with developing the Pebble deposit would have unacceptable adverse effects on the salmon fishery areas in the Bristol Bay watershed.[33] Accordingly, the EPA used its authority under the CWA to prohibit the disposal of discharged or dredged fill material for construction of the Pebble Mine in the Bristol Bay watershed. In an area of the Bristol Bay watershed adjacent to the Pebble deposit, EPA also restricted disposal of discharged or

---

[28] *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 757 (9th Cir. 2021).

[29] *Bristol Bay Econ. Dev. Corp. v. Pirzadeh*, No. 3:19-cv-00265-SLG (D. Alaska Oct. 29, 2021), ECF No. 109.

[30] 87 Fed. Reg. 32,021 (May 26, 2022); 87 Fed. Reg. 39,091 (June 30, 2022).

[31] EPA Final Determination, 2-21; Cheyette Decl. ¶ 12.

[32] Envtl. Prot. Agency, Final Determination for Pebble Deposit Area, *available at* https://www.epa.gov/bristolbay/final-determination-pebble-deposit-area; *see also* 88 Fed. Reg. 7,441 (Feb. 3, 2023).

[33] *Id.*

dredged fill material associated with future proposals to construct and operate a mine targeting the Pebble deposit.[34]

## C. Proposed Intervenor-Defendants' Interests in the Litigation.

United Tribes of Bristol Bay. UTBB is a consortium of 15 federally recognized Tribes working to protect the traditional Yup'ik, Dena'ina, and Alutiiq ways of life in Southwest Alaska that depend on the pristine Bristol Bay watershed and all it sustains.[35] UTBB's member Tribes have resided in the Bristol Bay region since time immemorial. UTBB's mission is to advocate for sustainable communities through development consistent with traditional values.[36] Because their livelihood, subsistence, traditions, and culture depend on an ecologically healthy Bristol Bay, UTBB has been leading the work to safeguard land and waters in the region for decades and has actively participated in the administrative process in opposition to the Pebble Mine.[37]

Bristol Bay Native Association. BBNA is a regional non-profit organization formed in 1973.[38] The mission of BBNA is to maintain and promote a strong regional organization supported by the Tribes of Bristol Bay to serve as a unified voice to provide social, economic, cultural, educational opportunities and initiatives to benefit the Tribes and the Native people of Bristol Bay.[39] BBNA provides educational, social, and economic services to 31 Tribes in the Bristol Bay Region.[40] Most BBNA members are either subsistence or

---

[34] EPA ES-16.

[35] Heyano Decl. ¶¶ 3-4.

[36] *Id.* ¶ 4.

[37] *Id.* ¶¶ 6-16.

[38] Gregorio Decl. ¶ 4.

[39] *Id.* ¶ 5.

[40] *Id.* ¶¶ 4-5.

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

9

commercial fishermen, or both.[41]  Every family's livelihood depends, directly or indirectly, on the health of the fisheries.[42]

      <u>Bristol Bay Economic Development Corporation</u>.  BBEDC is a non-profit corporation whose mission is to promote the economic growth and opportunities for residents of its 17 Bristol Bay member communities through the sustainable use of the Bering Sea resources.[43]  Each of BBEDC's member communities directly participates in, or otherwise benefits from, the Bristol Bay salmon fishery for food, economic security, and cultural harmony.[44]  The Bristol Bay salmon fishery also plays an important cultural and spiritual role for citizens who reside in BBEDC's member communities.[45]  As a result, maintaining and enhancing the fishery, as well as encouraging participation in the fishery, are BBEDC's primary focuses in achieving its mission.[46]  Since 2006, BBEDC has invested significant time and resources to oppose development of the Pebble Mine, including actively participating throughout EPA's Section 404(c) process.[47]

      <u>Bristol Bay Native Corporation</u>.  BBNC is an Alaska Native Regional Corporation created by Congress to advance the financial, cultural, and subsistence interests of its approximately 12,000 shareholders.[48]  BBNC's businesses in commercial seafood,

---

[41] *Id.* ¶ 6.

[42] *Id.*

[43] Declaration of Michael Link ("Link Decl.") ¶ 9.

[44] *Id.*  BBEDC's member communities include Aleknagik, Clarks Point, Dillingham, Egegik, Ekuk, Ekwok, King Salmon/Savonoski, Levelock, Manokotak, Naknek, Pilot Point, Port Heiden, Portage Creek, South Naknek, Togiak, Twin Hills, and Ugashik.  *Id.* ¶ 11.

[45] *Id.* ¶ 14.

[46] *Id.*

[47] *Id.* ¶ 16.

[48] *See* Alaska Native Claims Settlement Act, 43 U.S.C. § 1606.

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

10

construction, sport fishing and tourism, government services, and other industries generate more than $2 billion in revenue annually.[49]  BBNC owns three million acres of subsurface land in Bristol Bay and more than 115,000 acres of surface lands, which it manages pursuant to land and resource policies that recognize the value of the region's fisheries and subsistence, reflecting the importance of Bristol Bay's lands to the health of the salmon and people of Bristol Bay.[50]  BBNC's mission is "Enriching our Native way of life."[51]  BBNC's vision is "To responsibly steward the land and waters in the Bristol Bay region, celebrate the legacy of its people, and enhance the lives of BBNC shareholders."[52]  BBNC's values include "respect[ing] the people, land, and natural resources that are the basis for our culture and way of life" and "responsibly manag[ing] natural resources, prioritizing the cultural and economic value of the Bristol Bay fishery."[53]  BBNC's Board of Directors has approved multiple resolutions that evidence the corporation's land management philosophy.[54]  Specifically, BBNC is guided by a Resource Protection Policy, Responsible Resource Development Policy, and Fish First Priority.[55]  Through these policies, BBNC has spent the last 15 years working towards long-term protections of the region's salmon fishery from the threat posed by a proposed hard-rock mine at the Pebble deposit.[56]

---

[49] Agli Decl. ¶ 2.

[50] Cheyette Decl. ¶ 3.

[51] *Id.* ¶ 7.

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.* ¶ 8.

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

Bristol Bay Regional Seafood Development Association.  BBRSDA is a 501(c)(6) non-profit corporation, established in 2005 to implement the provisions of AS 44.33.065.[57] BBRSDA's mission is to maximize the value of the Bristol Bay sockeye salmon fishery for the benefit of its members, and it works to achieve this mission through marketing strategies focused on quality and sustainability.[58]  BBRSDA represents more than 8,000 commercial fishermen whose livelihoods depend on Bristol Bay's self-sustaining salmon fishery, and its membership consists of residents of 49 U.S. states and includes the over 1,800 Bristol Bay salmon driftnet (S03T) permit holders.[59]  For the last 20 years, BBRSDA has invested heavily in the development of the Bristol Bay Sockeye Salmon brand, which relies heavily on the fishery's reputation as a sustainable resource from a pristine environment.[60]

Commercial Fishermen for Bristol Bay.  CFBB is a national advocacy network of over 100 businesses and commercial fishing organizations based in Dillingham.[61]  Founded in 2011, CFBB works to achieve the long-term sustainability of Bristol Bay wild sockeye salmon through habitat protection, education, and advocacy.[62]  CFBB participated extensively in the EPA section 404(c) and U.S. Army Corps of Engineers environmental impact statement processes surrounding the Pebble Mine, including authoring written comments to the agencies and testifying at public hearings.[63]

---

[57] Declaration of Lilani Dunn ("Dunn Decl.") ¶ 7.

[58] *Id.*

[59] *Id.* ¶ 8.

[60] *Id.* ¶ 9.

[61] Carscallen Decl. ¶ 3.

[62] *Id.* ¶ 9

[63] *Id.*

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

Proposed Intervenor-Defendants have direct and significant protectable interests in this litigation. Plaintiffs have requested vacatur of the EPA's Final Determination protecting Bristol Bay from the catastrophic impacts of developing the Pebble Mine.[64] If Plaintiffs were to succeed in efforts to invalidate the EPA's Final Determination, it would have a substantial negative impact on proposed Intervenor-Defendants' interests by directly interfering with both the cultural and economic future of the Bristol Bay region and its salmon fishery, thereby causing significant harm to proposed Intervenor-Defendants and their respective members, communities, and shareholders.[65]

## III.  ARGUMENT

### A.  Proposed Intervenor-Defendants Are Entitled to Intervene as of Right.

Pursuant to Federal Rule of Civil Procedure 24(a), proposed Intervenor-Defendants are entitled to intervene as of right in this case to defend their significantly protectable interests in the EPA's 2023 Final Determination. The Ninth Circuit has adopted a four-part test to determine whether a party should be permitted to intervene as of right: (1) the motion must be timely; (2) the movant must claim a "significantly protectable" interest related to the property or transaction that is the subject of the action; (3) the movant must be so situated that the disposition of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) the movant's interest must not be adequately represented by the existing parties to the action.[66] The Ninth Circuit applies this test broadly in favor of intervention.[67] As the Court noted, "[b]y allowing parties with a *practical* interest

---

[64] Complaint ¶ 9, Prayer for Relief.

[65] Link Decl. ¶¶ 17-18; Agli Decl. ¶¶ 10, 14; Cheyette Decl. ¶¶ 9, 15; Heyano Decl. ¶¶ 12, 16; Dunn Decl. ¶¶ 14-15.; Gregorio Decl. ¶ 13; Carscallen Decl. ¶¶ 7-8.

[66] *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011).

[67] *Id.* at 1179.

in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues."[68] Thus, courts assess a motion to intervene "primarily by practical considerations, not technical distinctions."[69] Proposed Intervenor-Defendants, as representatives of the Bristol Bay communities, Tribes, and Alaska Native people dependent on a healthy and vibrant salmon fishery, meet each of the requirements for intervention as of right.

### 1. The motion to intervene is timely.

When evaluating timeliness, courts in the Ninth Circuit consider (1) the stage of the proceedings, (2) any prejudice to the existing parties, and (3) the reasons for and length of any delay.[70] The Complaint was filed on March 15, 2024, and the litigation is in its preliminary stages. The Federal Defendants have not filed an Answer and the administrative record has not yet been lodged.[71] Proposed Intervenor-Defendants have acted swiftly and without delay to seek intervention, and no party will be prejudiced by their intervention at this early stage of the lawsuit. Proposed Intervenor-Defendants have submitted a proposed Answer to the Complaint along with this motion, which further helps avoid delay. Intervention is routinely considered timely at this litigation stage, and no prejudice, delay, or inefficiency will result from Proposed Intervenor-Defendants' intervention.[72]

---

[68] *United States v. City of L.A.*, 288 F.3d 391, 397–98 (9th Cir. 2002) (citation omitted; emphasis in original).

[69] *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (internal quotations and citation omitted).

[70] *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997).

[71] *See* ECF Nos. 1–20.

[72] *See e.g., Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (motion deemed timely when filed less than three months after complaint was filed and less than two weeks after Forest Service's answer).

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

## 2. Proposed Intervenor-Defendants have significantly protectable interests in the resolution of this action.

A significantly protectable interest exists when a movant establishes that (1) "the interest is protectable under some law" and (2) "there is a relationship between the legally protected interest and the claims at issue" in the case.[73] The interest requirement of Rule 24(a) is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."[74] Accordingly, a significantly protectable interest need not be "a specific legal or equitable interest" to satisfy the Rule 24(a) test.[75] To satisfy the "relationship" requirement, an applicant must show that resolution of the plaintiff's claims will affect the applicant.[76]

Proposed Intervenor-Defendants have significant and well-demonstrated regulatory, cultural, and economic interests that are directly at stake in the present litigation. In addition to the considerable subsistence, cultural, economic, and employment implications of this litigation on the Tribes, communities, and fishermen represented by proposed Intervenor-Defendants, proposed Intervenors have also expended considerable resources to engage in the CWA Section 404(c) regulatory process by commenting on the EPA's 2022 proposed determination, participating in government-to-government consultation with the EPA

---

[73] *Mont. Wilderness Ass'n*, 647 F.3d at 897; *see City of L.A.*, 288 F.3d at 398 ("The relationship requirement is met if resolution of the plaintiff's claims actually will affect the applicant." (internal quotation marks and citation omitted)).

[74] *Wilderness Soc'y*, 630 F.3d at 1179 (citation omitted).

[75] *Id.*; *see also Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993), *overruled in part on other grounds by Wilderness Soc'y*, 630 F.3d at 1173 (9th Cir. 2011) (intervenor's interest need not be protected by statute put at issue by complaint so long as it is protected by law and relates to the claim).

[76] *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998); *see also Wilderness Soc'y*, 630 F.3d at 1179 (holding that there is "a sufficient interest for intervention purposes if [a prospective intervenor] will suffer a practical impairment of its interests as a result of the pending litigation") (citation omitted).

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

15

concerning the 2022 proposed determination, bringing litigation challenging prior EPA actions related to development of the Pebble Mine,[77] and intervening to defend the EPA's CWA 404(c) authority in previous litigation brought by Plaintiffs.[78]  Further, proposed Intervenor-Defendants have significantly protectable interests in the Bristol Bay watershed's pristine aquatic habitats and self-sustaining salmon populations that make up this globally significant ecological and cultural resource.[79]  Accordingly, Proposed Intervenor-Defendants have significantly protectable interests in this litigation and satisfy the second prong of the intervention test.

### 3. Disposition in favor of Plaintiffs will impair the proposed Intervenor-Defendants' ability to protect their interests.

The test for impairment under Rule 24(a) focuses on practical effects: "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ."[80]  The effect of Plaintiffs' claims in this litigation would be to invalidate the EPA's Final Determination protecting Bristol Bay from the harmful and unavoidable impacts of developing the Pebble Mine.[81]

---

[77] Link Decl. ¶ 16; Cheyette Decl. ¶¶ 8, 11, 12; Heyano Decl. ¶¶ 8-9; Dunn Decl. ¶ 13; Carscallen Decl. ¶ 9; *see e.g.*, *Bristol Bay Econ. Dev. Corp. v. Hladick*, 3:19-cv-00265-SLG (D. Alaska 2019).

[78] Cheyette Decl. ¶ 14; *see*, *Pebble Limited Partnership v. EPA*, 3:14-cv-00097-HRH (D. Alaska July 29, 2014), ECF No. 148 (granting UTBB's motion to intervene) *and Pebble Limited Partnership v. EPA*, 3:14-cv-00097-HRH (D. Alaska August 18, 2014), ECF No. 182 (granting BBNC's motion to intervene).

[79] Link Decl. ¶ 14; Cheyette Decl. ¶ 8; Agli Decl. ¶ 11; Heyano Decl. ¶¶ 11-16; Dunn Decl. ¶ 15; Gregorio Decl. ¶¶ 9-11; Carscallen Decl. ¶ 7.

[80] *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24 advisory committee's note); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818.

[81] *See* Complaint ¶ 9 (seeking vacatur of EPA's Final Determination).

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

The relief requested in this lawsuit directly threatens proposed Intervenor-Defendants' interests in a vibrant and healthy Bristol Bay ecosystem.[82] If Plaintiffs succeed in their claims, proposed Intervenor-Defendants would lose the critical benefits of the protections afforded to the Bristol Bay watershed by the EPA's 404(c) Final Determination.[83] Because disposition of this case in favor of Plaintiffs would impair proposed Intervenor-Defendants' ability to protect their significant interests in the Bristol Bay watershed, proposed Intervenors satisfy the third prong of the intervention test.

### 4. Federal Defendants do not adequately represent Proposed Intervenor-Defendants' interests.

Proposed Intervenor-Defendants' interests in this litigation are sufficiently different from those of the Federal Defendants to warrant intervention. Although there is a presumption of adequacy where an applicant for intervention and an existing party have the same ultimate objective, the burden of demonstrating inadequate representation is "minimal."[84] Proposed Intervenor-Defendants need only show that their interests are different from the existing parties' interests such that their representation "may be" inadequate.[85] Courts consider:

> (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any

---

[82] Link Decl. ¶ 18.

[83] Link Decl. ¶ 14; Agli Decl. ¶ 14; Cheyette Decl. ¶ 15 Heyano Decl. ¶ 10; Dunn Decl. ¶ 15; Gregorio Decl. ¶ 13.

[84] *Citizens for Balanced Use*, 647 F.3d at 898.

[85] *Id.*; *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823.

> necessary elements to the proceedings that other parties would neglect.[86]

Here, the interests and perspectives of proposed Intervenor-Defendants as non-federal entities with direct cultural and economic stakes in this controversy are very different from the interests of the EPA as a federal regulatory agency.[87] When parties, such as proposed Intervenor-Defendants, have private interests as opposed to the government's "public" interests, this difference is sufficient to justify intervention.[88] Proposed Intervenor-Defendants bring a unique perspective as the only parties representing the Tribes, communities, commercial and sport fishermen, and Alaska Native people of the Bristol Bay region, and this perspective would aid the Court in better understanding the case.[89] Specifically, proposed Intervenor UTBB represents 15 sovereign Tribal governments.[90] As such, UTBB seeks to intervene in this matter to defend the legality of another government's decision that impacts its member Tribes' subsistence ways of life and the health and well-being of their Tribal citizens. UTBB's interests are unique to the Tribes and are not fully shared by Federal Defendants.[91] Because their interests are not adequately represented by

---

[86] *City of L.A.*, 288 F.3d at 398 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)).

[87] *See e.g.,* Link Decl. ¶ 19; Agli Decl. ¶ 15; Dunn Decl. ¶ 16; Gregorio Decl. ¶ 12.

[88] *See id.*; *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823–24; *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); *Fresno Cnty. v. Andrus*, 622 F.2d 436, 438–39 (9th Cir. 1980); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977).

[89] Link Decl. ¶ 20; Agli Decl. ¶ 15; Dunn Decl. ¶ 17; Gregorio Decl. ¶ 14.

[90] Heyano Decl. ¶ 3.

[91] *See Alaska Indus. Dev. & Exp. Auth. v. Biden*, No. 3:21-cv-00245-SLG, 2022 WL 1137312, at *2 (D. Alaska April 18, 2022) (granting Tribal motion to intervene and concluding that the "Federal Defendants represent the at-large interests of the general public," whereas the Tribes "represent specialized interests" that seek protection of the subsistence and cultural "aspects of the lands at issue").

*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

the Federal Defendants, proposed Intervenor-Defendants meet the fourth prong of the intervention test.

## B. Alternatively, Proposed Intervenor-Defendants Are Entitled to Permissive Intervention.

As with intervention as of right, permissive intervention is construed liberally in favor of the moving party.[92]  Permissive intervention is allowed under Federal Rule of Civil Procedure 24(b) as long as the applicant for intervention establishes that "(1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims."[93]  However, "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims."[94]  Under this standard, neither the inadequacy of representation nor a direct interest in the subject matter of the action need be shown.[95]

As addressed above, proposed Intervenor-Defendants' interests are placed directly at stake by the Plaintiffs' claims.  As the representatives of communities, Tribes, fishermen, and Alaska Native people who will be most directly and adversely affected by the relief sought by Plaintiffs—indeed, as the target of this lawsuit in all practical terms—proposed Intervenor-Defendants' interests present issues of law and fact common to the main action.  In addition, the proposed Intervenor-Defendants' motion to intervene is timely and will not prejudice the existing parties.  Accordingly, if this Court were to deny the motion to

---

[92] *City of L.A.*, 288 F.3d at 397–98.

[93] *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

[94] *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011).

[95] *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), *overruled in part on other grounds by Wilderness Soc'y*, 630 F.3d at 1178.

intervene as of right, proposed Intervenor-Defendants respectfully request that the Court grant it permissive intervention.

## IV. CONCLUSION

For the foregoing reasons, UTBB, BBNA, BBEDC, BBNC, CFBB, and BBRSDA respectfully request that the Court grant its motion for leave to intervene as of right under Rule 24(a). In the alternative, proposed Intervenor-Defendants respectfully request that the Court grant it permissive intervention under Rule 24(b).


DATED this 17th day of May, 2024.

SUMMIT LAW GROUP PLLC
*Attorneys for Bristol Bay Economic*
*Development Corporation*

By: s/ James C. Feldman
James C. Feldman (AK Bar No. 1702003)
Jeffrey M. Feldman (AK Bar No. 7605029)


BESSENYEY & VAN TUYN, L.L.C.
*Attorneys for Bristol Bay Native Corporation*

By: s/ Peter Van Tuyn
Peter Van Tuyn (AK Bar No. 8911086)
Karen Schmidt (AK Bar No. 1211113)


NATIVE AMERICAN RIGHTS FUND
*Attorneys for United Tribes of Bristol Bay and*
*Commercial Fishermen for Bristol Bay*

By: s/ Matthew N. Newman
Megan R. Condon (AK Bar No. 1810096)
Matthew N. Newman (AK Bar No. 1305023)


*Northern Dynasty Minerals, Ltd. v. EPA*
Case No. 3:24-cv-00059-SLG

20

BRISTOL BAY NATIVE ASSOCIATION
*Attorney for Bristol Bay Native Association*

By: _s/ Felipe Farley_____
Felipe Farley (AK Bar. No. 1904029)


CASHION GILMORE & LINDEMUTH
*Attorney for Bristol Bay Regional*
*Seafood Development Association, Inc.*

By: _s/ Scott Kendall_____
Scott Kendall (AK Bar. No. 0405019)

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2024, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court of Alaska by using the CM/ECF system. Participants in this Case No. 3:24-cv-00059-SLG who are registered CM/ECF users will be served by the CM/ECF system.

SUMMIT LAW GROUP, PLLC

_s/ Denise Brandenstein_
**Denise Brandenstein,** Legal Assistant
**_deniseb@summitlaw.com_**