Paul A. Werner*
Steven P. Hollman*
Abraham J. Shanedling*
Hannah J. Wigger*
Christopher L. Bauer*
Alexandra Bustamante*
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, Suite 100
Washington, D.C. 20006-6801
Telephone: (202) 747-1900
pwerner@sheppardmullin.com
shollman@sheppardmullin.com
ashanedling@sheppardmullin.com
hwigger@sheppardmullin.com
cbauer@sheppardmullin.com
abustamante@sheppardmullin.com

Austin Williams (AK Bar No. 0911067)
TROUT UNLIMITED
600 Clipper Ship Court
Anchorage, AK 99515
Telephone: (907) 227-1590
Austin.Williams@tu.org

*Pro hac vice* application to be filed

*Attorneys for Proposed Intervenor-Defendant Trout Unlimited*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN DYNASTY MINERALS LTD. and PEBBLE LIMITED PARTNERSHIP,<br><br>    Plaintiffs,<br> v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY,<br><br>    Defendant. | Case No. 3:24-cv-00059-SLG |

**TROUT UNLIMITED'S MOTION TO
INTERVENE AND MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| BACKGROUND | | 2 |
| | A. Trout Unlimited & The Bristol Bay Watershed. | 2 |
| | B. Trout Unlimited's Decades-Long Fight To Prevent Commercial Mining In The Bristol Bay Watershed. | 5 |
| ARGUMENT | | 7 |
| I. | Trout Unlimited Is Entitled To Intervene As A Matter Of Right. | 7 |
| | A. Trout Unlimited Seeks To Intervene In A Timely Manner. | 8 |
| | B. Trout Unlimited Has A Legally Protectable Interest In This Action. | 8 |
| | C. Trout Unlimited's Interests Are Directly Threatened By This Lawsuit. | 10 |
| | D. Trout Unlimited's Unique Interests Are Not Adequately Represented By Another Party. | 11 |
| II. | Trout Unlimited Is Also Properly Entitled To Intervene By Permission. | 13 |
| CONCLUSION | | 14 |

-i-

*Northern Dynasty Minerals et al. v. EPA*, Case No. 3:24-cv-00059-SLG
Case 3:24-cv-00059-SLG   Document 23   Filed 05/17/24   Page 2 of 20

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Alaska v. United States*,
  No. 157, Original, 2023 WL 7996465 (Nov. 9, 2023) .................................................. 7

*Bristol Bay Econ. Dev. Corp. v. Pirzadeh*,
  No. 3:19-cv-00265-SLG (D. Alaska 2019) ............................................................ 6, 15

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011) ............................................. 7, 8, 10, 11, 12, 13

*Coal. of Ariz./N.M. Cntys. v. Dep't of Interior*,
  100 F.3d 837 (10th Cir. 1996) ........................................................................... 9, 11

*Forest Conservation Council v. U.S. Forest Serv.*,
  66 F.3d 1489 (9th Cir. 1995) ..................................................................................... 10

*Fresno Cnty. v. Andrus*,
  622 F.2d 436 (9th Cir. 1980) ....................................................................................... 9

*Idaho Farm Bureau Fed'n v. Babbitt*,
  58 F.3d 1392 (9th Cir. 1995) .................................................................................. 9, 12

*Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006) ..................................................................................... 10

*Michigan State AFL-CIO v. Miller*,
  103 F.3d 1240 (6th Cir. 1997) ..................................................................................... 9

*Pebble Ltd. P'ship v. EPA*,
  Case No. 3:14-cv-0097 (D. Alaska 2014) .......................................................... 6, 13, 14

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983) ............................................................................ 9, 10, 12

*Sierra Club v. EPA*,
  995 F.2d 1478 (9th Cir. 1993) ..................................................................................... 8

*Trbovich v. United Mine Workers*,
  404 U.S. 528 (1972) ................................................................................................... 13

*Trout Unlimited v. Pirzadeh*,
  1 F.4th 738 (9th Cir. 2021) ..................................................................................... 6, 12

-ii-

Case 3:24-cv-00059-SLG  Document 23  Filed 05/17/24  Page 3 of 20
*Northern Dynasty Minerals et al. v. EPA*, Case No. 3:24-cv-00059-SLG

*Trout Unlimited v. Pirzadeh*,
    Case No. No. 3:19-cv-00268 (D. Alaska 2019) .............................................................. 6

*United States v. City of L.A.*,
    288 F.3d 391 (9th Cir. 2002) ................................................................................ 7, 8, 10

*United States v. Oregon*,
    745 F.2d 550 (9th Cir. 1984) ........................................................................................ 8

*Venegas v. Skaggs*,
    867 F.2d 527 (9th Cir. 1989) ...................................................................................... 13

*Vivid Entm't, LLC v. Fielding*,
    774 F. 3d 566 (9th Cir. 2014) ....................................................................................... 8

<u>Statutes</u>

28 U.S.C. § 1331 ................................................................................................................ 14

<u>Other Authorities</u>

Fed. R. Civ. P. 24 ........................................................................................................... 7, 13

**INTRODUCTION**

Trout Unlimited, the nation's largest nonprofit organization dedicated to coldwater conservation, seeks to intervene in this action in support of Defendant U.S. Environmental Protection Agency ("EPA"). Trout Unlimited has fought for decades to obtain the federal protections barring commercial mining in the pristine Bristol Bay watershed that are directly challenged in this lawsuit.

Trout Unlimited has actively and helpfully participated in administrative proceedings related to the environmental review of the proposed Pebble Mine for two decades, including submitting comments and testifying at administrative hearings related to the EPA's Clean Water Act ("CWA") Section 404(c) process. Trout Unlimited has been a party to multiple lawsuits, including through intervention, concerning the protection of Bristol Bay through the Section 404(c) process. And it has expended significant time, energy, and resources educating the public and government actors regarding the dire and irreversible harms that commercial mining would inflict on the delicate Bristol Bay ecosystem and all those whose livelihoods and enjoyment depend on it.

Given its longstanding and abiding interests in the subject of this litigation, Trout Unlimited is therefore entitled to intervene as a matter of right to protect its unique interests and participate in the outcome of an administrative process in which it has played a key role for decades. Its motion, which comes at the beginning of this litigation, is timely. Trout Unlimited has a protectable interest in the conservation of the Bristol Bay watershed, the application of the CWA, and the outcome of the administrative process in which it has thoroughly participated. An adverse decision here threatens to impair the recreational and

commercial use of Bristol Bay by Trout Unlimited's members, and undermine the spirit and purpose of the CWA. Nor are Trout Unlimited's interests adequately represented by the EPA or any other intervening party, which do not share Trout Unlimited's members' unique commercial and recreational interests in the area where they live and work.

Alternatively, the Court should allow Trout Unlimited to intervene permissively. This Court has jurisdiction over Trout Unlimited's anticipated defenses, which involve questions of law and fact common to the main action challenging the EPA's Final Determination.

The Court should grant Trout Unlimited's Motion.

## BACKGROUND

### A. Trout Unlimited & The Bristol Bay Watershed.

Trout Unlimited is a national nonprofit organization founded over 50 years ago that is dedicated to conserving North America's coldwater fisheries and their watersheds. Ex. A (Declaration ("Decl.") of Nelli Williams) ("Williams Decl.") ¶ 2. As part of that core mission, Trout Unlimited works to protect some of the most pristine and prized rivers in North America, engages in critical watershed restoration activities, and is educating the next generation of coldwater stewards to protect Alaska's natural heritage. Williams Decl. ¶¶ 1–4; Ex. B (Decl. of Brian Kaft) ("Kraft Decl.") ¶ 1; Ex. C (Decl. of Nanci Morris Lyon) ("Lyon Decl.") ¶ 1. Trout Unlimited also works to preserve, protect, and restore wild salmon and trout populations throughout Alaska. *Id.* Trout Unlimited has over 300,000 members worldwide. Williams Decl. ¶ 2. And it has four chapters in Alaska, with over 20,000 active members. *Id.*

*Northern Dynasty Minerals et al. v. EPA, Case No. 3:24-cv-00059-SLG*

The Bristol Bay watershed in Southwest Alaska is a truly unique and exceedingly productive natural wonder. It is the world's largest commercial sockeye salmon fishery, producing nearly half of the world's wild sockeye salmon. *See* Final Determination[1] at ES-1; *see also* Lyon Decl. ¶ 4; Kraft Decl. ¶ 3. It also has internationally renowned rainbow trout populations that attract anglers from around the world and ranks consistently among the top three producers in king salmon. Final Determination at 3–6. The waters in this region have long been a critically important part of the Alaska's economy and have provided sustainable jobs, subsistence uses, and other benefits to Alaskans for generations. *Id.* at ES-3.

Trout Unlimited is deeply invested in protecting the Bristol Bay watershed because it supports one of the most prized and productive coldwater fisheries in the world. Williams Decl. ¶ 3, Kraft Decl. ¶¶ 3–4; Lyon Decl. ¶¶ 4–5. Many Trout Unlimited members have used these waters for recreation and sport fishing, and intend to continue to do so. Williams Decl. ¶ 7; Lyon Decl. ¶¶ 2–7; Kraft Decl. ¶¶ 2–4. Several Alaskan Trout Unlimited members also live and work in the area, including in the area's fisheries. *Id.*

For example, Trout Unlimited member, Brian Kraft, is the part owner of two sport fishing lodges in the Bristol Bay watershed. Kraft Decl. ¶ 2. His business depends both on the quantity and variety of fish that spawn and inhabit the area, and on the quality of the experience provided to visitors by the unique, wild character of fishing in remote areas of

---

[1] EPA, *Final Determination of the U.S. Environmental Protection Agency Pursuant to Section 404(C) of the Clean Water Act: Pebble Deposit Area, Southwest Alaska* (Jan. 2023), *available at* https://www.epa.gov/bristolbay/final-determination-pebble-deposit-area (hereinafter "Final Determination").

-3-

Case 3:24-cv-00059-SLG  *Northern Dynasty Minerals et al. v. EPA et al.*, Case No. 3:24-cv-00059-SLG  Document 23  Filed 05/17/24  Page 7 of 20

the Bristol Bay watershed. *Id.* ¶¶ 2–4. The same is true of longtime Trout Unlimited member and local lodge owner, Nanci Morris Lyon, who owns a lodge in the Bristol Bay watershed. Lyon Dec. ¶¶ 4–5.

The Bristol Bay watershed happens to sit atop a large copper, gold, and molybdenum deposit known as the Pebble deposit, which, over the years, various mining interests have considered commercially exploiting. All but one to consider it have abandoned the notion as foolishly impractical and uneconomical.[2] That is because the prime deposits for mining are so low-grade – that is, they contain relatively small amounts of metals compared to the amount of ore – that mining would be economical only if conducted over large areas that "will necessarily produce large amounts of waste material." EPA, *Resp. to Comments on Final Determination* 34 (Jan. 2023).[3] In 2011, Pebble Limited Partnership ("PLP"), which is owned by the Canadian company Northern Dynasty Materials, Ltd., submitted plans to the U.S. Securities and Exchange Commission for mining that very site. Final Determination §§ 2.2.1 at 2–10. PLP proposed a vast mine

---

[2] *See* SEC, Northern Dynasty Minerals Ltd. Schedule 13G (Feb. 25, 2011); Suzanne, *Anglo American pulls out of Alaska mines project*, The Guardian (Sept. 16, 2013), https://www.theguardian.com/environment/2013/sep/16/anglo-american-alaska-gold-mines; Suzanna Caldwell & Alex DeMarban, *Rio Tinto pulls out of Pebble Partnership, gifting its stake to Alaska organizations*, Anchorage Daily News (July 7, 2016), https://www.adn.com/economy/article/rio-tinto-pulls-out-pebble-partnership-gifting-its-ownership-alaska-organizations/2014/04/08; Avery Lill, *Pebble Mine loses funding from First Quantum Minerals*, Alaska Pub. Media (May 25, 2018), https://www.alaskapublic.org/2018/05/25/pebble-mine-loses-funding-from-first-quantum-minerals/.

[3] EPA, *Resp. to Comments on Final Determination* 34 (Jan. 2023), https://www.epa.gov/system/files/documents/2023-01/Pebble-Deposit-Area-404c-RTC-Jan2023.pdf.

-4-

with a mind-boggling footprint: it would carve out a pit at the headwaters of Bristol Bay nearly as deep as the Grand Canyon with infrastructure spanning an area as large as Manhattan. *See id.* at ES-3 to ES-8. The mine would, in short, cover an epic expanse, and its operation would cause profound environmental devastation.

**B.     Trout Unlimited's Decades-Long Fight To Prevent Commercial Mining In The Bristol Bay Watershed.**

Because of the obvious and enormous threat that large-scale mining poses to the unspoiled Bristol Bay watershed, Trout Unlimited and its membership have been deeply concerned about the project since it first came to the public's attention. Williams Decl. ¶ 4. To address those concerns, Trout Unlimited has over the years submitted extensive comments in all relevant administrative proceedings before the EPA, the Army Corps of Engineers, and other federal and state agencies advocating for the protection of the Bristol Bay region, testified in hearings, and submitted technical comments. *Id.* On September 4, 2022, for example, Trout Unlimited filed comments before the EPA on the agency's then Revised Proposed Determination pursuant to Section 404(c) of the CWA. *Id.*[4]

Trout Unlimited also has litigated issues related to the proposed Pebble mine. Trout Unlimited was an intervenor-defendant in the 2014 litigation brought by PLP and the State of Alaska against the EPA concerning initiation of the Section 404(c) review process. *Id.* ¶ 5. In granting Trout Unlimited's motion to intervene in that case, the Court highlighted Trout Unlimited's involvement in the proceedings before the EPA. Order

---

[4]   Trout Unlimited, *Comments on the Revised 404(c) Proposed Determination for the Protections of the Bristol Bay Watershed* (Docket ID No. EPA-R10-OW-2022-0418), EPA-R10-OW-2022-0418-1026_attachment_2 (1).pdf.

-5-

Case 3:24-cv-00059-SLG   Document 23   Filed 05/17/24   Page 9 of 20
*Northern Dynasty Minerals et al. v. EPA et al.*, Case No. 3:24-cv-00059-SLG

Granting Trout Unlimited's Motion to Intervene at 4, *Pebble Ltd. P'ship v. EPA*, No. 3:14-cv-00097-HRH (Aug. 19, 2014), ECF No. 218 (finding it "clear from the record developed thus far that Trout Unlimited was involved in proceedings before the EPA").

In 2019, Trout Unlimited sued the EPA in this Court, challenging the agency's withdrawal of its 2014 Proposed Determination under Section 404(c) of the CWA.[5] After the Court granted the EPA's motion to dismiss on the theory the agency's action was not subject to any judicial review, Trout Unlimited alone successfully appealed that ruling to the U.S. Court of Appeals for the Ninth Circuit, which reversed and remanded the case to this Court. *See generally Trout Unlimited v. Pirzadeh*, 1 F.4th 738 (9th Cir. 2021). Trout Unlimited then participated in the remanded action, which resulted in the Court's vacatur of the EPA's 2019 decision to withdraw the 2014 Proposed Determination and the re-initiation of that environmental review process. That agency process culminated in EPA's issuance of its Final Determination under Section 404(c) of the CWA protecting Bristol Bay from commercial mining, which is under direct assault in this litigation. Williams Decl. ¶ 5.[6]

Most recently, Trout Unlimited submitted an *amicus curiae* brief at the Supreme Court in support of the United States' opposition to the State of Alaska's motion for leave

---

[5] *See* Complaint, *Trout Unlimited v. Pirzadeh*, No. 3:19-cv-00268-SLG (D. Alaska Oct. 9, 2019), ECF No. 1; Order Consolidating Cases, *Bristol Bay Econ. Dev. Corp. v. Pirzadeh*, No. 3:19-cv-00265-SLG (D. Alaska Oct. 23, 2019), ECF No. 16.

[6] *See also* Response in Support of Motion to Remand, *Bristol Bay Econ. Dev. Corp. v. Pirzadeh*, No. 3:19-cv-00265-SLG (D. Alaska Oct. 12, 2021), ECF No. 105.

-6-

Case 3:24-cv-00059-SLG   Document 23   Filed 05/13/24   Page 10 of 20
*Northern Dynasty Minerals et al. v. EPA, Case No. 3:24-cv-00059-SLG*

to file a bill of complaint challenging the EPA's Final Determination. *Id.*[7] This suit followed the Supreme Court's refusal to entertain Alaska's original action.

In sum, Trout Unlimited has been involved in every aspect of the Pebble Mine proposal and litigation for more than two decades, including going alone on the appeal that led to the Final Determination. It is therefore keenly interested in and properly entitled to intervene in this litigation involving the Final Determination too. *Id.* ¶ 4.

## ARGUMENT

Trout Unlimited is entitled to intervene here as of right and by permission.

### I. Trout Unlimited Is Entitled To Intervene As A Matter Of Right.

Trout Unlimited is properly entitled to intervene as of right here. To do so, it need only show it made a timely application to defend a "significant protectable interest" in an action that "may, as a practical matter, impair or impede the applicant's ability to protect its interest," and where the existing parties "may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (citation omitted); Fed. R. Civ. P. 24(a)(2). To ensure the "efficient resolution of issues and broadened access to the courts," the Ninth Circuit employs a "liberal policy in favor of intervention" and interprets Federal Rule of Civil Procedure 24 "broadly in favor of proposed intervenors." *United States v. City of L.A.*, 288 F.3d 391, 397–98 (9th

---

[7] *See also* Brief for Amicus Curiae Trout Unlimited, *Alaska v. United States*, No. 22O157, 2023 WL 7996465 (Nov. 9, 2023). The Supreme Court declined Alaska's invitation to gin up an original action seeking to convert basic APA claims into a purported constitutional challenge.
-7-

Case 3:24-cv-00059-SLG   Northern Dynasty Minerals et al v. EPA, Case No. 3:24-cv-00059-SLG   Document 23   Filed 05/15/24   Page 11 of 20

Cir. 2002). Trout Unlimited easily clears that modest threshold.[8]

### A. Trout Unlimited Seeks To Intervene In A Timely Manner.

Trout Unlimited's motion is timely. This litigation has just begun, with this motion coming within a few weeks of when the matter was filed, and before any party has even answered. *See Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (holding motion to intervene was timely because it was filed before defendant answered). The Court has not set any case management schedule, the time for joining parties has not run, and no discovery has been taken. As such, Trout Unlimited's intervention at this early stage will not prejudice any existing party. *See United States v. Oregon*, 745 F.2d 550, 552–53 (9th Cir. 1984). Accordingly, because Trout Unlimited's intervention comes at the start of this litigation and will thus not "disrupt[ ] or delay" the proceedings, it has satisfied the "traditional features of a timely motion." *Citizens for Balanced Use*, 647 F.3d at 897.

### B. Trout Unlimited Has A Legally Protectable Interest In This Action.

Trout Unlimited also has a protectable interest "relating to the property or transaction that is subject of the action." *See id*. A "protectable interest" is an interest "protected under some law" that has some "relationship" with the plaintiff's claims – that is, "the resolution of the plaintiff's claims actually will affect the applicant." *City of L.A.*, 288 F.3d at 398. The Ninth Circuit interprets "protectable interest" broadly, "involving as

---

[8] Trout Unlimited is not required to satisfy the requirements for Article III standing to intervene on behalf of the Defendant. *See Vivid Entm't, LLC v. Fielding*, 774 F. 3d 566, 573 (9th Cir. 2014) (stating intervenor that is not initiating action "need not meet Article III standing requirements"). But it has Article III standing in this case because it is directly impacted by the challenged EPA action at issue and its interests are threatened by Plaintiffs' requested relief as well.

-8-

Case 3:24-cv-00059-SLG Document 23 Filed 05/15/24 Page 12 of 20

many apparently concerned persons as is compatible with efficiency and due process." *Id.*; *see also Fresno Cnty. v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (same).

Trout Unlimited has fought for more than two decades to secure the Final Determination protecting the Bristol Bay watershed, the legality of which is directly challenged in this litigation. Williams Decl. ¶ 5. It submitted comments during the administrative process related to Pebble Mine, encouraged the EPA's use of the Section 404(c) process regarding the proposed mine, and intervened in subsequent litigation involving EPA's exercise of its Section 404(c) authority. *Id.* ¶ 4. And Trout Unlimited alone ultimately appealed the agency's withdrawal of its 2014 Proposed Determination under Section 404(c) of the CWA, which resulted in a remand to this Court and in turn the Final Determination. *Id.* ¶ 5. Thus, Trout Unlimited is entitled to intervene here as a matter of right "in an action challenging the legality of a measure it has supported," *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995), in a case in which it "participated actively in the administrative process," *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 526 (9th Cir. 1983); *see also Coal. of Ariz./N.M. Cntys. for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d 837, 842 (10th Cir. 1996); *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1246 (6th Cir. 1997) (holding when an entity seeking intervention has participated "in the administrative process leading to the governmental action," the entity has demonstrated a direct and substantial interest in the litigation). To be sure, this action directly targets the Final Determination that Trout Unlimited's successful appeal made possible and protects the Bristol Bay watershed from ruinous commercial mining operations.
-9-

Case 3:24-cv-00059-SLG   Document 23   Filed 05/17/24   Page 13 of 20
*Northern Dynasty Minerals et al. v. EPA*, Case No. 3:24-cv-00059-SLG

Trout Unlimited also has a legally protectable interest in preserving the wild and unspoiled characteristics, including the pristine water and productive fisheries, of Bristol Bay. *See, e.g.*, *Sagebrush*, 713 F.2d at 527–28 (holding there is "no serious dispute" regarding "the existence of a protectable interest" where "an adverse decision . . . would impair the [applicant]'s interest in the preservation of birds and their habitats"). Trout Unlimited has over 20,000 active members and supporters in Alaska, many of whom fish in Bristol Bay recreationally and for subsistence purposes and have commercial interests that are directly dependent on Bristol Bay watershed. Williams Decl. ¶¶ 2–3; Lyon Decl. ¶¶ 8–13; Kraft Decl. ¶¶ 5–9. The resolution of the claims in this case will certainly "affect" Trout Unlimited's members. *City of L.A.*, 288 F.3d at 398. Plaintiff's lawsuit poses a direct assault on the use and enjoyment of Bristol Bay watershed by Trout Unlimited's members.

### C. Trout Unlimited's Interests Are Directly Threatened By This Lawsuit.

Trout Unlimited's interests are threatened by this action and may be impaired absent intervention. An applicant's interests are impaired where they would be "substantially affected in a practical sense by the determination made in an action." *Citizens for Balanced Use*, 647 F.3d at 898; *see also Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1497–98 (9th Cir. 1995). As such, after determining the applicant has a protectable interest, courts have "little difficulty concluding that the disposition of [the] case may, as a practical matter, affect" such interest. *Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006).

Here, the disposition of this action clearly "may impair" Trout Unlimited and its members' interests. *See Citizens for Balanced Use*, 647 F.3d at 901. A ruling in favor of Plaintiffs would undo the science-based protections for the Bristol Bay watershed that Trout Unlimited has fought to secure for over two decades to ensure that this natural wonder is not ruined by commercial mining. Trout Unlimited's longstanding efforts to "conserv[e] and enjoy[ ]" Bristol Bay's unspoiled coldwater fisheries would thus be significantly harmed by such a reversal. *See id.* at 898. Additionally, a decision in Plaintiffs' favor vacating the Final Determination, could, as a practical matter, create unfavorable precedent and impede Trout Unlimited's efforts to secure CWA protections for other natural resources. *Coal. of Ariz./N.M. Cntys.*, 100 F.3d at 844 (noting applicant would "as a practical matter, be impaired by the *stare decisis* effect of the district court's decision" (cleaned up)).

### D. Trout Unlimited's Unique Interests Are Not Adequately Represented By Another Party.

Trout Unlimited's interests are not adequately protected by the existing parties in this action because the EPA may fail to "make all of [Trout Unlimited]'s arguments," and Trout Unlimited, through its years of advocacy related to the proposed Pebble Mine, will certainly "offer . . . necessary elements to the proceeding that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898.

Trout Unlimited's members have unique commercial and recreational interests in the Bristol Bay watershed because they live in, work in, and enjoy the area. Williams Decl. ¶¶ 2–4. Its members thus have keen interests in preserving the environmental health,

-11-

Case 3:24-cv-00059-SLG   Document 23   Filed 05/17/24   Page 15 of 20
*Northern Dynasty Minerals et al. v. EPA*, Case No. 3:24-cv-00059-SLG

natural productivity, and remote and unspoiled nature of the Bristol Bay watershed. *Id*. As a result, Trout Unlimited has spent the last two decades engaged in advocacy and litigation to protect this watershed from a destructive Pebble Mine. *Id.* ¶¶ 5–6.

Those interests uniquely belong to Trout Unlimited, and are not (and cannot be) adequately represented by the EPA or another party. The EPA of course has broader, governmental and institutional interests that may not entirely align with Trout Unlimited's interests. The agency must take into account its political and resource constraints and must represent what it perceives to be the interests of the United States in this and future cases. It therefore cannot be expected fully to represent the interests of Trout Unlimited and its members or to "make all of" Trout Unlimited's arguments. *Citizens for Balanced Use*, 647 F.3d at 898. In fact, in the last decade, for example, the EPA has changed Administrators several times, and has not always taken positions or presented views that align with Trout Unlimited's position. *See, e.g.*, *Sagebrush*, 713 F.2d at 528; *Idaho Farm Bureau*, 58 F.3d at 1398. Indeed, Trout Unlimited had to sue the EPA in 2019 to challenge its withdrawal of protections for Bristol Bay. Williams Decl. ¶ 5. And it was Trout Unlimited's successful appeal of the EPA's position that its withdrawal was not subject to any judicial review that ultimately led to the Final Determination challenged here. *Pirzadeh*, 1 F.4th at 738. With respect, Trout Unlimited cannot, and should not have to, simply trust the government to represent its interests – especially where, in the recent past, it has taken positions directly contrary to Trout Unlimited's interests on the very subject of this lawsuit.

Nor could any other intervenor defendants – such as those that focus on preserving the subsistence-based culture and economy of Bristol Bay – be counted on to adequately

represent Trout Unlimited's interests. Trout Unlimited is unique in its focus on conserving coldwater fisheries, in its membership and interests in Bristol Bay, in its interest in the region's recreational fisheries, and its particular concern with how the application and enforcement of the CWA impacts Trout Unlimited's unique mission in Alaska and elsewhere. Trout Unlimited also offers a distinct perspective on this litigation, given the years it has spent engaged in advocacy and litigation over the proposed Pebble Mine, including its solitary and successful appeal of the EPA's prior withdrawal decision, which the agency asserted was wholly insulated from any judicial review. *See Citizens for Balanced Use*, 647 F.3d at 898.

Trout Unlimited has more than met its "minimal" burden to show representations of its interests "may be inadequate." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (cleaned up) (citation omitted); *Citizens for Balanced Use*, 647 F.3d at 898.

## II. Trout Unlimited Is Also Properly Entitled To Intervene By Permission.

While Trout Unlimited properly may intervene as of right, it also is properly entitled to intervene on a permissive basis too. Fed. R. Civ. P. 24(b)(1)(B) & (b)(3); *see also Venegas v. Skaggs*, 867 F.2d 527, 529–31 (9th Cir. 1989). Courts freely grant permissive intervention where an application is "timely," the movant shows an independent ground for jurisdiction, and an applicant's claim or defense possesses a "question of law or fact in common" with the existing action. *Id.* at 529.

Here, Trout Unlimited is entitled to intervene permissively, for many of the same reasons this Court granted Trout Unlimited's motion to intervene in earlier litigation concerning the Pebble Mine. *See generally* Order Granting Motion to Intervene, *Pebble*

-13-

*Ltd. P'ship v. EPA*, No. 3:14-cv-00097-HRH (D. Alaska Aug. 19, 2014), ECF No. 218. Trout Unlimited's motion is timely. This Court has federal question jurisdiction over Trout Unlimited's defenses against the federal law claims alleged in Plaintiffs' Complaint. 28 U.S.C. § 1331; *see generally* Trout Unlimited's Proposed Answer. And Trout Unlimited's defenses involve common questions of law and fact with the main action because Trout Unlimited seeks to defend the EPA's Final Determination pursuant to Section 404(c) that is challenged in this case. *See generally* Trout Unlimited Proposed Answer; Williams Decl. Considering Trout Unlimited's motion to intervene in earlier litigation concerning the EPA's CWA authority in the Bristol Bay watershed, the Court indeed held the parties raised common questions of law and fact because "it is clear from the record . . . that Trout Unlimited was involved in proceedings before the EPA which led to the decision" challenged in the case. Order Granting Motion to Intervene at 4, *Pebble Ltd. P'ship*, No. 3:14-cv-00097-HRH, ECF No. 218. The same properly goes here.

Nor will Trout Unlimited unduly delay the case by expanding the scope of litigation or cause any undue prejudice to any other party. To the contrary, Trout Unlimited's unique perspectives and interests will contribute to the efficient and just resolution of this case – as this Court has previously held. *See id.*

## CONCLUSION

The Court should grant Trout Unlimited's Motion. Counsel for Trout Unlimited has conferred with counsel for the EPA, and the EPA opposes intervention of right under

Rule 24(a)(2).[9] However, the EPA does not oppose Trout Unlimited's permissive intervention in this case.

---

[9] Although the EPA disputes Trout Unlimited's ability to intervene as a matter of right, the EPA's opposition is at odds with it having taken no position on motions by PLP and the State of Alaska to intervene as a matter of right in earlier litigation concerning the EPA's Section 404(c) process. *See* Defendants' Response to Motion to Intervene, *Bristol Bay Econ. Dev. Corp. v. Pirzadeh*, No. 3:19-cv-00265-SLG (D. Alaska Sept. 9, 2021), ECF No. 98; *id*. at ECF No. 55 (D. Alaska Feb. 21, 2020). And this Court granted those motions to intervene. *See* Order Granting Motion to Intervene, *Bristol Bay Econ. Dev. Corp. v. Pirzadeh*, No. 3:19-cv-00265-SLG (D. Alaska Sept. 21, 2021), ECF No. 99 (Gleason, J.); *id*. at ECF No. 56 (D. Alaska Feb. 21, 2020) (Gleason, J.). This change of position by the agency further signals the government does not and cannot adequately represent Trout Unlimited's interests in this litigation.

Dated: May 17, 2024                Respectfully submitted,

By: *s/ Austin Williams*
Austin Williams (AK Bar No. 0911067)
TROUT UNLIMITED
600 Clipper Ship Court
Anchorage, AK 99515
Telephone: (907) 227-1590
Austin.Williams@tu.org

Paul A. Werner*
Steven P. Hollman*
Abraham J. Shanedling*
Hannah J. Wigger*
Christopher L. Bauer*
Alexandra Bustamante*
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, Suite 100
Washington, D.C. 20006-6801
Telephone: (202) 747-1900
pwerner@sheppardmullin.com
shollman@sheppardmullin.com
ashanedling@sheppardmullin.com
hwigger@sheppardmullin.com
cbauer@sheppardmullin.com
abustamante@sheppardmullin.com

**Pro hac vice* application to be filed

*Attorneys for Proposed Intervenor-Defendant Trout Unlimited*

-16-

Case 3:24-cv-00059-SLG   Northern Dynasty Minerals et al. v. EPA, Case No. 3:24-cv-00059-SLG
Case 3:24-cv-00059-SLG   Document 23   Filed 05/17/24   Page 20 of 20