Siobhan McIntyre (AK Bar No. 1206050)
Teresa B. Clemmer (AK Bar No. 0111059)
Joanna Cahoon (AK Bar No. 1405034)
TRUSTEES FOR ALASKA
121 W. Fireweed Ln., Suite 105
Anchorage, AK 99503
Phone: (907) 276-4244
smcintyre@trustees.org
tclemmer@trustees.org
jcahoon@trustees.org

*Attorneys for Applicant Intervenor-
Defendants SalmonState, Alaska
Community Action on Toxics, Alaska
Wilderness League, Alaska Wildlife
Alliance, Cook Inletkeeper, Friends of
McNeil River, Kachemak Bay
Conservation Society, National Parks
Conservation Association, National
Wildlife Federation, Sierra Club, The
Alaska Center, and Wild Salmon Center*

Erin Colón (AK Bar No. 1508067)
Charisse Arce (AK Bar No. 2303017)
EARTHJUSTICE
441 West 5th Avenue, Suite 301
Anchorage, AK 99501
Phone: (907) 277-2500
ecolon@earthjustice.org
carce@earthjustice.org

*Attorneys for Applicant Intervenor-Defendants
Center for Biological Diversity, Earthworks,
and Friends of the Earth*

Jacqueline Iwata (*pro hac vice* pending)
Thomas Zimpleman (*pro hac vice* pending)
NATURAL RESOURCES DEFENSE
COUNCIL
1152 15th St. NW Suite 300
Washington, DC 20005
Phone: (202) 289-6868
jiwata@nrdc.org
tzimpleman@nrdc.org

Joel Reynolds (*pro hac vice* pending)
NATURAL RESOURCES DEFENSE
COUNCIL
1314 2nd St.
Santa Monica, CA 90401
Phone: (310) 434-2300
jreynolds@nrdc.org

*Attorneys for Applicant Intervenor-Defendant
Natural Resources Defense Council*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

NORTHERN DYNASTY
MINERALS LTD. and PEBBLE
LIMITED PARTNERSHIP,

Case No. 3:24-cv-00059-SLG

Plaintiffs,

v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY,

Defendant.

**JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-
DEFENDANTS SALMONSTATE, ALASKA COMMUNITY ACTION ON
TOXICS, ALASKA WILDERNESS LEAGUE, ALASKA WILDLIFE ALLIANCE,
COOK INLETKEEPER, FRIENDS OF MCNEIL RIVER, KACHEMAK BAY
CONSERVATION SOCIETY, NATIONAL PARKS CONSERVATION
ASSOCIATION, NATIONAL WILDLIFE FEDERATION, SIERRA CLUB, THE
ALASKA CENTER, WILD SALMON CENTER, CENTER FOR BIOLOGICAL
DIVERSITY, EARTHWORKS, FRIENDS OF THE EARTH, AND NATURAL
RESOURCES DEFENSE COUNCIL
(Fed. R. Civ. P. 24)**

Pursuant to Federal Rule of Civil Procedure 24(a) and (b), SalmonState, Alaska

Community Action on Toxics, Alaska Wilderness League, Alaska Wildlife Alliance,

Cook Inletkeeper, Friends of McNeil River, Kachemak Bay Conservation Society,

National Parks Conservation Association, National Wildlife Federation, Sierra Club, The

Alaska Center, Wild Salmon Center, Center for Biological Diversity, Earthworks, Friends

of the Earth, and Natural Resources Defense Council, (collectively "SalmonState") move

to intervene as defendants in this litigation challenging the U.S. Environmental Protection

Agency's (EPA) decision to issue a Final Determination under Section 404(c) of the

Clean Water Act (CWA) to prohibit and restrict certain discharges, including those

associated with large-scale mining of the Pebble deposit, to protect the Bristol Bay watershed from pollution.

EPA opposes intervention of right under Fed. R. Civ. P. 24(a)(2). However, EPA does not oppose SalmonState's permissive intervention in this case; Northern Dynasty Minerals Ltd. and Pebble Limited Partnership (collectively "PLP") did not respond to counsel for SalmonState's request for its position on this motion.

## INTRODUCTION

SalmonState seeks to intervene to protect the Bristol Bay headwaters from the devastating and unavoidable adverse impacts posed by the proposed Pebble Mine. The mine's proponent, PLP, challenges EPA's Final Determination under Section 404(c) of the CWA ("EPA's Final Determination"), which prohibits and restricts certain discharges from proposed mining operations at the Pebble deposit in southwestern Alaska. Compl. at 2, ECF No. 1. PLP alleges that EPA's Final Determination exceeds EPA's authority under the CWA and that it violates the Alaska Statehood Act, the Cook Inlet Land Exchange, and the Alaska National Interest Land Conservation Act and is arbitrary and capricious for several reasons. Compl. at 18–36, ECF No. 1. Plaintiffs seek to vacate EPA's Final Determination and request that the Court issue a declaratory judgment finding EPA's Final Determination is arbitrary and capricious, contrary to law, and issued in excess of EPA's authority. Compl. at 37, ECF No. 1. If successful, PLP's lawsuit

SalmonState, et al.'s Jt. Mot. to Intervene                    Page 3 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 3 of 30

would re-open the door to large-scale, industrial mining in one of the last intact pristine salmon ecosystems in the world.

This Court should grant SalmonState's motion to intervene as a matter of right pursuant to Federal Rule of Civil Procedure 24(a)(2) because SalmonState satisfies the four-factor test. First, the motion is timely, coming early in the litigation (before the Defendant has filed its answer) and will cause no prejudice to any party. Second, SalmonState has a long-standing interest in protecting the exceptional fisheries, ecosystems, wilderness, and wildlife of Bristol Bay for personal and commercial fishing, as well as subsistence and recreational use and enjoyment. Third, a decision in PLP's favor would impair SalmonState's interests because large-scale, industrial mining in the Bristol Bay headwaters would pollute the Bristol Bay watershed and would be incompatible with SalmonState's use of Bristol Bay's outstanding ecological, economic, and cultural resources. Fourth and finally, SalmonState's interests in protecting the livelihoods and personal use and enjoyment of the Bristol Bay watershed by its members are distinct from EPA's interests in administering the CWA and protecting the national interest in the waters of the United States. Indeed, this divergence of interests has led to an adversarial history between SalmonState and EPA—both in terms of ultimate objectives and overall sense of urgency for securing Section 404(c) protections for the Bristol Bay watershed. As a result, EPA does not adequately represent SalmonState's

SalmonState, et al.'s Jt. Mot. to Intervene                                   Page 4 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG     Document 32     Filed 05/17/24     Page 4 of 30

interests. For these same reasons, SalmonState also meets the test for permissive intervention under Rule 24(b).

Plaintiffs did not respond to counsel for SalmonState's request for its position on this motion; EPA opposes intervention of right under Fed. R. Civ. P. 24(a)(2). However, EPA does not oppose SalmonState's permissive intervention in this case.

<u>BACKGROUND</u>

## I.   THE BRISTOL BAY WATERSHED

The Bristol Bay watershed "is an area of unparalleled ecological value, boasting salmon diversity and productivity unrivaled anywhere in North America." Ex. 1 at 9. The Bristol Bay region "supports the world's largest runs of Sockeye Salmon, producing approximately half of the world's Sockeye Salmon." Ex. 1 at 9. To this end, Bristol Bay's unparalleled aquatic habitat is a "globally significant ecological and cultural resource," which sustains significant subsistence, commercial, and recreational fisheries. Ex. 1 at 9, 11. The Bristol Bay watershed has "supported Alaska Native cultures for thousands of years and continue[s] to support one of the last intact salmon-based cultures in the world." Ex. 1 at 9. Bristol Bay's salmon resources are valued at more than $2.2 billion— supporting a $2.0 billion commercial fishery in 2019, $990 million of which was earned in Alaska—and 15,000 jobs. Ex. 1 at 11.

The Bristol Bay region's abundant, world class sport-fishing, wildlife viewing, and outdoor recreation are also "directly or indirectly dependent on the intact, salmon-

SalmonState, et al.'s Jt. Mot. to Intervene                                Page 5 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 5 of 30

based ecosystems of the region." Ex. 1 at 36. Approximately 40,000 to 50,000 people visit the Bristol Bay region each year for recreational angling, bear viewing, hiking, biking, backpacking, and other wilderness activities—generating $155 million in total economic output in 2019 and 2,300 jobs. Ex. 1 at 36–37. Indeed, two national park units—Lake Clark National Park and Preserve and Katmai National Park and Preserve—fall within the Bristol Bay region. Ex. 1 at 37. Thus, the Bristol Bay watershed and its salmon fisheries "have significant nutritional, cultural, economic, and recreational value within and beyond the Bristol Bay region." Ex. 1 at 11. One of the main success factors for the Bristol Bay fisheries is the fact that its aquatic resources "are largely untouched and pristine, unlike the waters that support many other salmon fisheries worldwide." Ex. 1 at 9.

PLP has long sought to exploit the Pebble deposit—a porphyry copper-gold-molybdenum deposit located in the Bristol Bay watershed. Ex. 1 at 23. Through drilling, blasting, trucking, and shoveling, PLP's proposed Pebble Mine would displace "approximately [1.3 billion] tons of mineralized rock and 150 million tons of waste rock and overburden" over the course of its twenty-year lifetime. Ex. 1 at 23. The impacts from this magnitude of construction and proposed mining—and the attendant discharge of dredged or fill material for these activities—would result in staggering losses to the Bristol Bay watershed, including the loss of approximately 99.7 miles of stream habitat, 2,108 acres of wetlands, and monthly streamflow changes of over twenty percent that

SalmonState, et al.'s Jt. Mot. to Intervene                                    Page 6 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 6 of 30

would adversely affect an additional twenty-nine miles of anadromous fish streams. Ex. 1 at 15, 20. PLP's plans have faced widespread and overwhelming opposition, in Alaska and beyond, because of the irreversible damage mining would cause to the region's unparalleled ecological value, pristine natural resources, and irreplaceable subsistence ways of life.

## II. EPA INITIALLY PROPOSED PROTECTIONS FOR BRISTOL BAY IN RESPONSE TO ADVOCACY EFFORTS, INCLUDING BY SALMONSTATE.

Congress enacted the CWA in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Congress's aim was in part to attain "water quality which provides for the protection and propagation of fish, shellfish, and wildlife." *Id.* § 1251(a)(2). To meet this goal, the statute prohibits "the discharge of any pollutant" into waters of the United States without a permit. *See id.* § 1311(a). Congress divided regulatory responsibility between EPA and the U.S. Army Corps of Engineers ("Army Corps"). *See id.* §§ 1344(a)–(c); 33 C.F.R. § 323.2(c), (e). This system reflects Congress's judgment that the "administrative expertise" of the Army Corps is valuable when it comes to assessing projects, but that EPA must be "the 'environmental conscience' of the Clean Water Act." 44 Fed. Reg. 58,076, 58,081 (Oct. 9, 1979). Through Section 404(c) of the CWA, Congress entrusted EPA with the power to protect ecologically sensitive and valuable areas from future projects and to override Army Corps permitting decisions for such projects when EPA

determines a proposed project would "have an unacceptable adverse effect" on fisheries, wildlife, or recreational areas. 33 U.S.C. § 1344(c) [hereinafter Section 404(c)].

In May 2010, EPA received requests from six federally recognized Tribes in the Bristol Bay region, the commercial fishing industry, and environmental groups—among others, representing a broad and diverse range of interests—to use its authority under Section 404(c) to protect the Bristol Bay watershed from large-scale mining at the Pebble deposit. Ex. 1 at 25–26. SalmonState—and other applicants—have been involved in efforts to protect the Bristol Bay watershed from large-scale industrial mining at the Pebble deposit for many years. Indeed, most have engaged in advocacy work in opposition to PLP's development efforts in Bristol Bay for at least a decade, and some for even two decades or more. Alcuaz Decl. ¶ 10; Anderson Decl. ¶ 5; Barrett Decl. ¶ 8 Bristol Decl. ¶ 4; Cummings Decl. ¶ 12–13; Gestring Decl. ¶ 4; Haas Decl. ¶ 6; Hill Decl. ¶ 4; Kiekow Heimer Decl. ¶¶ 8–17; K. Miller Decl. ¶ 10; P. Miller Decl. ¶ 8; Ritter Decl. ¶ 8; Templeton Decl. ¶ 5.

Because of the importance of this watershed, EPA began an extensive, robust—and prolonged—process to assess the Bristol Bay watershed for possible Section 404(c) protections. In August 2010, EPA met with Tribal governments and stakeholders, including PLP, in Alaska. Ex. 1 at 26. In February 2011, EPA announced that, before proceeding with the 404(c) process, it intended to conduct an ecological risk assessment of the Bristol Bay watershed. Ex. 1 at 26. EPA then invited all thirty-one federally

SalmonState, et al.'s Jt. Mot. to Intervene                                    Page 8 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 8 of 30

recognized Tribal governments of the Bristol Bay region to participate in consultation and coordination on this assessment. Ex 1. at 28. In May 2012, EPA released a Draft Assessment of Potential Mining Impacts on Salmon Ecosystems of Bristol Bay, Alaska ("Draft Assessment") and, subsequently, held eight noticed public hearings and a public comment period, resulting in approximately 233,000 public comments submitted to EPA. Ex. 1 at 27–28. EPA submitted the Draft Assessment to peer review by twelve independent scientific experts, including specialists in the fields of mine engineering, salmon fisheries biology, aquatic ecology, aquatic toxicology, hydrology, wildlife ecology, and Alaska Native cultures. EPA incorporated the public and peer review input into a revised Draft Assessment, which it released in April 2013. Ex. 1 at 28. This revised Draft Assessment was also subject to peer review and public comment, resulting in approximately 890,000 public comments submitted to EPA. Ex. 1 at 28.

Thus, after three years of Tribal and stakeholder consultation, scientific study, two rounds of public comment, and multiple rounds of independent external peer review, EPA issued its Final Assessment of Potential Mining Impacts on Salmon Ecosystems of Bristol Bay, Alaska—commonly referred to as the Bristol Bay Watershed Assessment ("Watershed Assessment"). Ex. 1 at 26–28. In the Watershed Assessment, EPA concluded "porphyry copper mining of the scale contemplated at the Pebble deposit could result in unacceptable adverse effects on fishery areas." Ex. 1 at 28. Accordingly, in July 2014, EPA published a Proposed Determination to withdraw portions of the Bristol Bay

SalmonState, et al.'s Jt. Mot. to Intervene                    Page 9 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 9 of 30

region as disposal sites for mining waste, using its authority under Section 404(c) to protect the Bristol Bay watershed. Ex. 1 at 29.

### III. EPA SUBSEQUENTLY REVERSED ITS POSITION ON PROTECTING BRISTOL BAY.

PLP challenged EPA's 2014 Proposed Determination in a series of lawsuits, which brought EPA's Section 404(c) review process to a halt. *See* Order on Prelim. Inj., *PLP v. EPA*, No. 3:14-cv-0171-HRH (D. Alaska Nov. 25, 2014), ECF No. 90. In 2017, PLP and EPA entered a settlement agreement to resolve these cases, under which EPA agreed to initiate a process to withdraw its 2014 Proposed Determination and to withhold issuing any recommended determination until the earlier of May 11, 2021 or issuance of notice by the Army Corps of its Final Environmental Impact Statement on PLP's permit application. In return, PLP agreed to submit its permit application to the Army Corps within 30 months of execution of the settlement agreement. Ex. 1 at 30.

In July 2017, EPA published notice of its process to withdraw the 2014 Proposed Determination, including public comment opportunities. Ex. 1 at 30. EPA received more than one million public comments on its proposal to withdraw its 2014 Proposed Determination, of which "[a]pproximately 99 percent of commenters expressed opposition to the withdrawal of the 2014 Proposed Determination." Ex. 1 at 30. In December 2017, PLP submitted a permit application to the Army Corps with its plans to develop a mine at the Pebble deposit. Ex. 1 at 30. In 2018, EPA revisited its proposal to withdraw its 2014 Proposed Determination, opting to leave the 2014 Proposed

SalmonState, et al.'s Jt. Mot. to Intervene                                    Page 10 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 10 of 30

Determination in place during the pendency of the Army Corps' review of PLP's permit application under Section 404(b) of the CWA. Ex. 1 at 31.

In August 2019, however, EPA abruptly reversed course and unlawfully withdrew its 2014 Proposed Determination ("Withdrawal Decision") to protect the Bristol Bay watershed. Ex. 1 at 32. SalmonState, and nearly all of the present applicants, in conjunction with a broader coalition of Tribal entities and commercial fishing and sport-fishing interests, filed lawsuits challenging EPA's Withdrawal Decision, alleging EPA's Withdrawal Decision ignored its earlier scientific assessment that mining operations at the Pebble deposit would have unacceptable adverse effects. *See* Compl., *SalmonState, et al. v. EPA*, Case No. 3:19-cv-00267-SLG (D. Alaska Oct. 9, 2019), ECF No. 1; Compl., *Bristol Bay Economic Develop. Corp., et al. v. EPA*, Case No. 3:19-cv-00265-TMB (D. Alaska Oct. 8, 2019), ECF No. 1; Compl., *Trout Unlimited v. EPA*, Case No. 3:19-cv-00268-TMB (D. Alaska Oct. 9, 2019), ECF No. 1.

Meanwhile, the Army Corps issued a record of decision denying PLP's permit application under Section 404(b) of the CWA in November 2020. Ex. 1 at 33. The Army Corps found "the proposed project would cause unavoidable adverse impacts to aquatic resources which would result in Significant Degradation to aquatic resources." Ex. 1 at 33. (quoting Letter from David S. Hobbie, Chief, Regional Regulatory Division, U.S. Army Corps of Engineers, to James Fueg, Pebble Limited Partnership (Nov. 25, 2020)).

SalmonState, et al.'s Jt. Mot. to Intervene                                    Page 11 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 11 of 30

## IV. EPA RESUMED ITS 404(C) PROCESS AND ISSUED ITS FINAL DETERMINATION TO PROTECT BRISTOL BAY.

In June 2021, the Ninth Circuit resolved the outstanding legal challenge to EPA's Withdrawal Decision, finding that EPA could not withdraw its 2014 Proposed Determination unless it could demonstrate that "the discharge of materials would be unlikely to have an unacceptable adverse effect." *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 757 (9th Cir. 2021). EPA then filed a motion to vacate its withdrawal decision with this Court, which the Court granted, remanding the matter to EPA for further consideration. Order Granting Mot. to Remand, *Bristol Bay Econ. Dev. Corp. et al. v. Pirzadeh, et al.*, Case No. 3:19-cv-00265-SLG (D. Alaska Oct. 29, 2021), ECF No. 109. In May 2022, EPA published a revised proposed determination ("2022 Proposed Determination"). After receiving 582,000 written comments, "approximately 99 percent of which expressed support for the proposed determination," EPA issued a Final Determination to withdraw portions of the Bristol Bay region as disposal sites for mining waste. Ex. 1 at 14-15. The Final Determination protects the Bristol Bay watershed from the unacceptable adverse effects of the proposed Pebble Mine and other large-scale mining at the Pebble deposit with "discharges of dredged or fill material … that would result in the same or greater levels of loss or streamflow changes" as the proposed Pebble Mine. Ex. 1 at 18. The Final Determination was issued on January 30, 2023, nearly thirteen years after the initial requests to EPA. EPA, *Final Determination for Pebble*

SalmonState, et al.'s Jt. Mot. to Intervene                                    Page 12 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 12 of 30

*Deposit Area*, January 31, 2023, https://www.epa.gov/bristolbay/final-determination-pebble-deposit-area.  PLP's present lawsuit challenges EPA's Final Determination.

## **ARGUMENT**

**I.      SALMONSTATE MEETS THE TEST TO INTERVENE AS A MATTER OF RIGHT.**

This Court applies a four-part test to determine whether intervention of right is warranted under Rule 24(a)(2), which considers: (1) the timeliness of the motion, (2) whether "the applicant has a significant protectable interest relating to the property or transaction" at issue, (3) whether "the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest," and (4) whether "existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *see also W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). Courts' intervention inquiries are "guided primarily by practical and equitable considerations." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004). As the Ninth Circuit explained, "[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (en banc) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397–98 (9th Cir. 2002)) (internal quotation marks omitted). Intervention should be granted to "as many apparently concerned persons as is compatible with efficiency and due process." *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989),

SalmonState, et al.'s Jt. Mot. to Intervene                          Page 13 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG     Document 32     Filed 05/17/24     Page 13 of 30

*overruled in part by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1180 (9th Cir. 2011). SalmonState satisfies all four factors to intervene as a matter of right.

### A.    SALMONSTATE'S MOTION IS TIMELY.

The timeliness of a motion to intervene is measured by considering "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Alisal Water Corp.*, 370 F.3d at 921 (quoting *Cal. Dep't of Toxic Substances Control v. Com. Realty Projects, Inc.*, 309 F.3d 1113, 1119 (9th Cir. 2002)) (internal quotation marks omitted). A motion to intervene is timely when made at the early stages of the proceedings. *Citizens for Balanced Use*, 647 F.3d at 897.

This motion is timely because it is made at the early stage of proceedings, prior to EPA filing its answer. The administrative record has yet to be filed, no proceedings have been scheduled, and no substantive motions have been decided. Accordingly, no parties will be prejudiced by SalmonState's intervention. *See Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (noting no prejudice to the parties because motion to intervene came before any substantive rulings); *Cook Inletkeeper v. U.S. Dep't of the Interior*, No. 3:22-cv-00279-SLG, 2023 U.S. Dist. LEXIS 99634, at *5 (D. Alaska June 8, 2023) (intervention timely where "no dispositive motions had been filed"). The first intervention factor is therefore satisfied.

**B.     SALMONSTATE HAS SIGNIFICANT, LEGALLY PROTECTABLE INTERESTS IN THE BRISTOL BAY WATERSHED AND EPA'S FINAL DETERMINATION.**

An applicant shows a protectable interest in a case when "(1) [the applicant] asserts an interest that is protected under some law, and (2) there is a 'relationship' between [the applicant's] legally protected interest and the plaintiff's claims." *United States v. Sprint Commc'ns, Inc.*, 855 F.3d 985, 991 (9th Cir. 2017) (alteration in original) (citation omitted). An applicant generally demonstrates a protectable interest if "it will suffer a practical impairment of its interests as a result of the pending litigation." *Cal. ex. rel. Lockyer v. United States* (*Lockyer*), 450 F.3d 436, 441 (9th Cir. 2006); *see also Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998) (explaining an interest is related to the action when "resolution of the plaintiff's claims actually will affect the applicant").

SalmonState satisfies this requirement because it and its members have well-established and long-standing interests in preserving and enjoying the fisheries, wilderness, wildlife, subsistence and recreational resources, and aesthetic characteristics of the Bristol Bay watershed, which are threatened by large-scale mining operations at the Pebble deposit and would be impaired if PLP succeeds in its challenge to EPA's Final Determination.

Many of SalmonState's members rely on Bristol Bay's fisheries for food and income, as well as maintaining their culture and community ties.[1]  Their health, financial

---

[1] SalmonState's members' subsistence and commercial fishing interests span the Bristol Bay watershed from Nushagak Bay (Liedberg Decl. ¶ 6) to Egegik, Naknek/Kvichak,

cont…

SalmonState, et al.'s Jt. Mot. to Intervene                                    Page 15 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

well-being, and way of life would be harmed if salmon runs were to be contaminated or diminished by pollution from large-scale mining. Flora Decl. ¶ 5; Knutsen Decl. ¶¶ 12–13; Lee Decl. ¶ 8; Liedberg Decl. ¶ 8; Nudlash Decl. ¶ 7; Schaad Decl. ¶¶ 7–9; Shavelson Decl. ¶ 5; Vantrease Decl. ¶ 7. Many of SalmonState's members partake in subsistence and personal-use fishing practices on the extensive, ecologically rich streams and bays of the Bristol Bay watershed. Knutsen Decl. ¶ 6; Liedberg Decl. ¶ 6; Nudlash Decl. ¶¶ 7–9; Silber Decl. ¶ 6; Shavelson Decl. ¶ 5; Thompson Decl. ¶ 5. Many of SalmonState's members also earn their financial livelihoods in the commercial fishing industry, providing sought-after wild salmon to market from the pristine, untouched waters of Bristol Bay. Brown Decl. ¶¶ 4–9; Cummings Decl. ¶ 4; Flora Decl. ¶ 4; Gestring Decl. ¶ 5; Lee Decl. ¶¶ 5–10; Schaad Decl. ¶ 2; Shavelson Decl. ¶ 5; Thompson Decl. ¶¶ 3–4; Vantrease Decl. ¶¶ 3, 6. Commercial fishing in the Bristol Bay watershed is a way of life for many families across Alaska, and SalmonState's members partake in commercial fishing enterprises that have been passed down from generation to generation. Brown Decl. ¶ 8; Knutsen Decl. ¶¶ 5–7; Thompson Decl. ¶ 3; Vantrease Decl. ¶¶ 3, 6. Indeed, commercial fishing is often a family endeavor, as members crew boats alongside their children—some as young as ten years old and some who have grown and now carry on the family business and way of life. Brown Decl. ¶ 9; Schaad Decl. ¶ 2; Flora Decl. ¶ 4.

---

Ugashik Districts (Flora Decl. ¶ 4), Nushagak, Kvichak, Ugashik, Igushik, Naknek, and Egegik rivers (Vantrease Decl. ¶ 3), Naknek River and Kvichak Bay (Brown Decl. ¶ 4); Lake Iliamna (Nudlash Decl. ¶ 9).

Furthermore, these commercial fishing revenues—taxes on fish and vessels—also support community services in the Bristol Bay region. Knutsen Decl. ¶ 8; Lee Decl. ¶ 14; Silber Decl. ¶ 6. If PLP succeeds in vacating EPA's Final Determination and eliminating its important protections for the Bristol Bay watershed, SalmonState's members—as well as their families and communities—will face an existential threat to their cultural and financial interests in Bristol Bay's unmatched fisheries.

Interests in preserving an area's wilderness values, wildlife, and habitat are also legally protectable interests for purposes of intervention. *See United States v. Carpenter*, 526 F.3d 1237, 1240 (9th Cir. 2008); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562–63 (1992); *see, e.g.*, *Citizens for Balanced Use*, 647 F.3d at 898 (determining intervenor-applicants had a protectable interest in the action "given their interest in preserving wilderness character" in the lands at issue); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) (holding group's interest in the preservation of birds and bird habitats satisfies the "protectable interest" factor). The sprawling infrastructure and watershed pollution from large-scale mining would harm SalmonState's members who sport-fish, hike, boat, study and view wildlife, and run tourism businesses—such as lodges, bear viewing trips, and fishing expeditions—in the Bristol Bay, Lake Clark, and Cook Inlet regions. Adams Decl. ¶ 5; Anderson Decl. ¶ 12; Flora Decl. ¶ 4; Gustafson Decl. ¶ 8; Hamilton Decl. ¶¶ 9, 13–18; Hill Decl. ¶ 7; Lee Decl. ¶¶ 7–9; Liedberg Decl. ¶ 8; Nudlash Decl. ¶¶ 7–12; Olson Decl. ¶¶ 5, 8, 10; Richardson Decl. ¶¶ 5–6; Silber Decl.

¶¶ 4, 8. SalmonState's members own diverse, broad-ranging businesses supported by the world-renowned recreational opportunities of the Bristol Bay region, including sport-fishing guide services, wildlife photography ventures, filmmaking contracts, and a remote wilderness lodge. Gustafson Decl. ¶ 6; Hamilton Decl. ¶¶ 8, 11; Olson Decl. ¶¶ 5, 8; Silber Decl. ¶¶ 4–5. SalmonState's sport-fishing enthusiasts describe the recreational fishing opportunities in the Bristol Bay watershed as extraordinary and one-of-a-kind. Anderson Decl. ¶ 10; Gustafson Decl. ¶ 6; Richardson Decl. ¶¶ 5–6. SalmonState's members and their clients visit the untouched wilderness of the Bristol Bay region for its unique and renowned solace and beauty and creative and artistic inspiration—all threatened by PLP's challenge to EPA's Final Determination and its protections. Anderson Decl. ¶ 9; Gustafson Decl. ¶ 6; Hill Decl. ¶¶ 7–8; Hamilton Decl. ¶¶ 9, 11, 18; Lee Decl. ¶¶ 11–12; Nudlash Decl. ¶¶ 10–12; Olson Decl. ¶¶ 5, 8; Richardson Decl. ¶¶ 5–6; Thompson Decl. ¶¶ 6–7.

Moreover, SalmonState and its members have a protectable interest in defending EPA's Final Determination because they helped advocate for it. Adams Decl. ¶¶ 3–4; Alcuaz Decl. ¶¶ 8–9; Anderson Decl. ¶¶ 5–6; Barrett Decl. ¶¶ 7–10; Bristol Decl. ¶¶ 4–5; Cummings Decl. ¶¶ 12–13; Gestring Decl. ¶ 4; Haas Decl. ¶ 6; Hill Decl. ¶ 4–6; Hamilton Decl. ¶ 19; Kiekow Heimer Decl. ¶¶ 8–17; Lee Decl. ¶ 13; K. Miller Decl. ¶¶ 10–13; P. Miller Decl. ¶ 8; Ritter Decl. ¶¶ 7–8, 10; Schmitt Decl. ¶¶ 10–12; Templeton Decl. ¶ 5. "A public interest group is entitled as a matter of right to intervene in an action

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 18 of 30

challenging the legality of a measure it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995); *see also Nw. Forest Res. Council*, 82 F.3d at 837 (stating public interest groups may intervene when groups "were directly involved in the enactment of the law or in the administrative proceedings out of which the litigation arose"). SalmonState and its members' missions are focused on protecting waters, lands, wilderness, and wildlife—and many applicants have initiative that specifically focus on protecting Bristol Bay from large-scale mining. Adams Decl. ¶¶ 3–4; Alcuaz Decl. ¶¶ 3, 5; Anderson Decl. ¶ 4; Barrett Decl. ¶¶ 4, 6–7; Bristol Decl. ¶¶ 4–5; Cummings Decl. ¶¶ 4–6; Gestring Decl. ¶ 3; Hamilton Decl. ¶¶ 3, 6–7; Haas Decl. ¶ 4; Hill Decl. ¶¶ 3–4; Kiekow Heimer Decl. ¶¶ 3, 8; K. Miller Decl. ¶¶ 4, 8; P. Miller Decl. ¶¶ 3, 5; Ritter Decl. ¶ 5; Schmitt Decl. ¶¶ 3–4, 6, 8; Templeton Decl. ¶ 4. In furtherance of its organizational objectives, SalmonState—and other applicant groups—have worked for years, and some for decades, to protect the headwaters of Bristol Bay. *See* Adams Decl. ¶¶ 3–4; Alcuaz Decl. ¶¶ 8–9; Anderson Decl. ¶¶ 5–6; Barrett Decl. ¶¶ 7–10; Bristol Decl. ¶¶ 4-5; Gestring Decl. ¶ 8; Haas Decl. ¶ 6; Hill Decl. ¶¶ 4–6; Hamilton Decl. ¶ 19; Kiekow Heimer Decl. ¶¶ 8–17; K. Miller Decl. ¶¶ 10–13; P. Miller Decl. ¶ 8; Ritter Decl. ¶¶ 7–8, 10; Schmitt Decl. ¶¶ 10–12; Templeton Decl. ¶¶ 5–8. SalmonState—and nearly all of the present applicants—challenged in court EPA's earlier decision to withdraw its Proposed Determination protecting Bristol Bay, and, both publicly and through participation in formal administrative agency and judicial proceedings, they consistently encouraged EPA

SalmonState, et al.'s Jt. Mot. to Intervene                                    Page 19 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 19 of 30

to adopt the Final Determination challenged in this case. *See* Compl., *SalmonState, et al. v. EPA*, Case No. 3:19-cv-00267-SLG (D. Alaska Oct. 9, 2019). Their formal administrative participation included submission of hundreds of thousands of written comments and repeated delivery of oral testimony in countless agency hearings over many years, engagement of legal and scientific experts to address complex issues of fact and law related to the project and the relief requested, and relentless advocacy with EPA for issuance of a Final Determination. *See* Adams Decl. ¶ 4; Alcuaz Decl. ¶¶ 8–9; Anderson Decl. ¶¶ 4–5, 7; Barrett Decl. ¶¶ 7–10; Bristol Decl. ¶¶ 4-5; Gestring Decl. ¶¶ 3–4; Haas Decl. ¶ 6; Hill Decl. ¶ 6; Kiekow Heimer ¶¶ 8–17; K. Miller Decl. ¶¶ 10–13; P. Miller Decl. ¶ 8; Ritter Decl. ¶ 8; Schmitt Decl. ¶¶ 11–12; Templeton Decl. ¶¶ 6–8. Thus, SalmonState has a long and demonstrated history of protectable interests in obtaining and preserving EPA's Final Determination. The second intervention factor is therefore satisfied.

### C. A RULING IN PLP'S FAVOR WOULD IMPAIR OR IMPEDE SALMONSTATE'S ABILITY TO PROTECT ITS INTERESTS.

The third intervention factor is met if, as a practical matter, the action may impair or impede the applicant's ability to protect its interests. FED. R. CIV. P. 24(a)(2); FED. R. CIV. P. 24 advisory comm. notes. The second and third factors are closely related. If the second factor is met—that the applicant has a protectable interest—courts often find that the third factor is also satisfied. *Lockyer*, 450 F.3d at 442. The bar is not high, asking only if "the action 'may' impair rights . . . rather than whether the [disposition] will

SalmonState, et al.'s Jt. Mot. to Intervene                                    Page 20 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

'necessarily' impair them." *City of Los Angeles*, 288 F.3d at 401. In determining whether the action may impair an applicant's interests, courts look to the relief requested. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

The interest impairment factor is satisfied here because PLP asks the Court to vacate EPA's Final Determination protecting the Bristol Bay watershed from large-scale mining at the Pebble deposit. Compl. at 37, ECF No. 1. If the Court were to grant this requested relief, SalmonState's protectable interests in the health and sustainability of Bristol Bay waters, and their ability to protect those interests, would again be threatened by the unacceptable adverse effects of mining at the Pebble deposit, including staggering losses to the Bristol Bay watershed of approximately 99.7 miles of stream habitat, 2,108 acres of wetlands, and monthly streamflow changes of over twenty percent. Ex. 1 at 15, 20. Further, SalmonState's members' subsistence and commercial fishing interests in the Bristol Bay watershed, and their ability to protect those interests, would be harmed by a reversal of EPA's Final Determination. Flora Decl. ¶ 5; Knutsen Decl. ¶¶ 12–13; Liedberg Decl. ¶ 8; Schaad Decl. ¶¶ 7–9; Shavelson Decl. ¶ 5; Thompson Decl. ¶¶ 3–5; Vantrease Decl. ¶ 7. The interests of SalmonState's members who visit, recreate, and view wildlife on the waters and lands of the Bristol Bay region would also be harmed, along with their ability to protect those interests. Adams Decl. ¶ 5; Anderson Decl. ¶ 12; Flora Decl. ¶ 4; Gustafson Decl. ¶ 8; Hamilton Decl. ¶¶ 9, 13–18; Hill Decl. ¶ 7; Liedberg Decl. ¶ 5; Olson Decl. ¶¶ 5, 8, 10; Richardson Decl. ¶¶ 5–6; Silber Decl. ¶ 11;

Thompson Decl. ¶ 6. SalmonState's other members' uses of the Bristol Bay region, and their ability to protect such uses, would also be impacted.

Moreover, PLP's challenge to EPA's Final Determination threatens SalmonState's longstanding interests in maintaining the protections for the Bristol Bay watershed that they have worked for decades to achieve. If the Court ordered EPA to reconsider the Final Determination, SalmonState and its members would have to expend significant time and energy—on top of the resources it has spent in the past decade—to advocate for measures to protect the Bristol Bay watershed from large-scale mining at the Pebble deposit. *See Alaska v. Nat'l Marine Fisheries Serv.*, No. 3:22-CV-00249-JMK, 2023 U.S. Dist. LEXIS 60255, at *20 (D. Alaska Apr. 5, 2023) (finding remedy that plaintiff sought—an order that an agency reconsider its decision—would require intervening environmental group to "expend resources, time, and energy to defend the outcome for which it has long advocated" and therefore impede the group's interests); *see also* Adams Decl. ¶¶ 3–4; Alcuaz Decl. ¶¶ 8–10; Anderson Decl. ¶¶ 5–6; Barrett Decl. ¶¶ 7–10; Bristol Decl. ¶¶ 4–5; Haas Decl. ¶ 6; Hill Decl. ¶¶ 4–6; Hamilton Decl. ¶ 19; Kiekow Heimer ¶¶ 8–17; K. Miller Decl. ¶¶ 10–13; P. Miller Decl. ¶ 8; Ritter Decl. ¶¶ 7–8; Schmitt Decl. ¶¶ 10–12.

It is important for SalmonState to participate in this lawsuit to ensure that it can continue to protect its interests. The third intervention factor is therefore satisfied.

SalmonState, et al.'s Jt. Mot. to Intervene                                    Page 22 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG     Document 32     Filed 05/17/24     Page 22 of 30

### D. EPA WOULD NOT ADEQUATELY REPRESENT SALMONSTATE'S INTERESTS.

To satisfy the fourth factor, an applicant need only show that "representation of its interests by existing parties 'may be' inadequate;" indeed, "the burden of showing inadequacy is 'minimal.'" *Sw. Ctr. for Biological Diversity*, 268 F.3d at 822 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)); *see also W. Watersheds Project*, 22 F.4th at 840. In considering adequacy of representation, courts consider whether an existing party "will undoubtedly make all of the intervenor's arguments," whether the party "is capable of and willing to make such arguments," and "whether the intervenor offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion*, 713 F.2d at 528. "The 'most important factor' in assessing the adequacy of representation is 'how the [applicant's] interest compares with the interests of existing parties.'" *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086(9th Cir. 2003)) (explaining the government's general representation of the public interest does not necessarily represent a particular group's interests). Questions about the adequacy of representation should be resolved "in favor of intervention." *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 307 (E.D. Cal. 2011).

SalmonState meets the minimal burden of showing the inadequacy of representation because their interests are not identical to EPA's interests. *See Citizens for Balanced Use*, 647 F.3d at 899. EPA has broader and more generalized interests in

footer below

SalmonState, et al.'s Jt. Mot. to Intervene
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG
Page 23 of 30

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 23 of 30

administering the CWA, protecting the national interest in waters of the United States, and defending its own decision-making process and final decision. By contrast, SalmonState has the same types of "more narrow, parochial" conservation interests that courts have found the government cannot adequately protect when a case challenges an entire regulatory scheme. *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *overruled in part by Wilderness Soc'y*, 630 F.3d at 1180; *see* Adams Decl. ¶ 5; Anderson Decl. ¶ 12; Cummings Decl. ¶ 13; Flora Decl. ¶ 4; Gustafson Decl. ¶ 8; Hamilton Decl. ¶¶ 9, 13–18; Hill Decl. ¶ 7; Liedberg Decl. ¶ 8; Olson Decl. ¶¶ 5, 8, 10; Richardson Decl. ¶¶ 5–6; Silber Decl. ¶ 4–6; Thompson Decl. ¶¶ 3–6. Indeed, SalmonState and its members have fundamental localized interests in preserving the integrity of the Bristol Bay watershed, including economic interests in maintaining their commercial fishing, tourism, and guiding businesses, their personal and cultural traditions in subsistence, wilderness recreation, and wildlife viewing, and their community-based interests in local tax revenues. Adams Decl. ¶ 5; Alcuaz Decl. ¶¶ 7, 13; Anderson Decl. ¶ 12; Barrett Decl. ¶¶ 11–12; 14–15; Bristol Decl. ¶¶ 6–7; Brown Decl. ¶¶ 21–22; Flora Decl. ¶ 5; Gestring Decl. ¶ 8; Gustafson Decl. ¶ 8; Haas Decl. ¶¶ 7–8; Hamilton Decl. ¶¶ 9, 13–18; Hill Decl. ¶ 7; Lee Decl. ¶¶ 7–9, 14–17; Liedberg Decl. ¶ 8; Nudlash Decl. ¶¶ 7–12; Olson Decl. ¶¶ 5, 8, 10; Knutsen Decl. ¶¶ 12–13; Liedberg Decl. ¶ 8; K. Miller Decl. ¶¶ 8–9, 15; P. Miller Decl. ¶¶ 10–11; Richardson Decl. ¶¶ 5–6; Ritter Decl. ¶ 7; Schaad Decl. ¶¶ 4–9; Schmitt Decl. ¶¶ 6, 9, 15; Shavelson Decl. ¶ 5; Silber

SalmonState, et al.'s Jt. Mot. to Intervene                                    Page 24 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG     Document 32     Filed 05/17/24     Page 24 of 30

Decl. ¶¶ 4–8, 11; Templeton Decl. ¶ 10; Thompson Decl. ¶¶ 3–6; Vantrease Decl. ¶ 7. SalmonState's interests also encompass a broader geographic focus than EPA's interests, including concerns related to mining infrastructure and increased population that would undoubtedly surface in Cook Inlet and on the Kenai Peninsula. Barrett Decl. ¶ 11–12, 15; Brown Decl. ¶ 18; Flora Decl. ¶ 6; Haas Decl. ¶ 7, 11; Hamilton Decl. ¶¶ 12–16; Lee Decl. ¶¶ 15; Nudlash Decl. ¶¶ 13–14; Olson Decl. ¶ 10; Schaad Decl. ¶¶ 6, 8; Schmitt Decl. ¶ 9; Shavelson Decl. ¶¶ 6–9; Silber Decl. ¶ 8. SalmonState, therefore, has profoundly different and divergent interests from EPA and is not adequately represented by the government in this case.

Moreover, SalmonState and EPA's thirteen-year history of divergence as to the urgency of the need for a Final Determination under Section 404(c) further underscores how their interests—and their ultimate objectives—have differed. It took EPA four years to even issue a Proposed Determination after several groups first requested that EPA exercise its Section 404(c) authority in 2010. *See supra* pp. 8–9. EPA then withdrew the Proposed Determination in 2019—despite the formal opposition of, and eventually the lawsuits filed by, parties including SalmonState—and reinstated it only after the Ninth Circuit found the withdrawal illegal. *See supra* pp. 10–12. This previous "adversarial history is an important consideration" and demonstrates a divergence of interests between SalmonState and EPA. *Alaska*, 2023 U.S. Dist. LEXIS 60255, at *23. Thus, given EPA's protracted, shifting, and, at times, contradictory position in issuing Section 404(c)

protections for the Bristol Bay watershed, any presumption of adequate representation by the government does not apply to SalmonState's interests and ultimate objectives. *See Citizens for Balanced Use*, 647 F.3d at 898. Unlike EPA, SalmonState has remained—and will remain—unwavering in its objective to secure Section 404(c) protections and to preserve the unparalleled natural resources of the Bristol Bay region. Moreover, even if the presumption applies (it does not), the difference in nature and scope of SalmonState's interests, the adversarial history between SalmonState and EPA, and the potential change in administration during the pendency of this litigation, all serve to rebut any such presumption. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823 (determining presumption of adequate representation was rebutted because the government's and applicants' interests are not "sufficiently congruent").

Given SalmonState's distinct and longstanding goals of protecting the headwaters of Bristol Bay, they will also likely offer different arguments than EPA and contribute unique perspectives to the arguments and proceedings in this case. *Id.* at 823–24; *see also Cook Inletkeeper v. U.S. Dep't of the Interior*, No. 3:22-CV-00279-SLG, 2023 U.S. Dist. LEXIS 99634, at *6 (D. Alaska June 8, 2023) (history of litigation between defendant and intervenor showed that defendant would not "undoubtedly" make same arguments as applicant). In sum, EPA would not adequately represent SalmonState's interests, and the fourth intervention factor is therefore satisfied.

SalmonState, et al.'s Jt. Mot. to Intervene                                      Page 26 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG     Document 32     Filed 05/17/24     Page 26 of 30

## II. SALMONSTATE SHOULD BE GRANTED PERMISSIVE INTERVENTION.

If this Court determines that SalmonState—or one or more of the applicants—do not satisfy the test for intervention as of right, this Court should grant them permissive intervention. Civil Rule 24(b) permits intervention when an applicant's claim or defense poses questions of law or fact in common with the existing action and when the application is timely and will not delay the proceeding or prejudice the parties. FED. R. CIV. P. 24(b)(1)(B), (3). The test for permissive intervention imposes an even lower burden on applicants than the test for intervention as of right because it eliminates the requirements relating to interests and adequacy of representation. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108–09 (9th Cir. 2002), *overruled in part by Wilderness Soc'y*, 630 F.3d at 1180. A court has broad discretion in granting permissive intervention, and, like intervention of right, permissive intervention should be liberally granted. *Id.*

SalmonState—and other applicants—readily meet this standard. First, SalmonState's arguments will all involve issues of federal law, which this Court has subject matter jurisdiction to decide. 28 U.S.C. § 1331; *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011). Additionally, as discussed above, this motion is timely, and intervention will not prejudice any parties or cause a delay in the proceedings. *See supra* Argument Part I.A. Finally, SalmonState intends to oppose Plaintiffs' challenges to the lawfulness of EPA's decision-making process and final

SalmonState, et al.'s Jt. Mot. to Intervene                                    Page 27 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 27 of 30

decision based on the same federal statutes and administrative record that are already at issue in this matter—*i.e.*, they intend to assert common defenses of law and fact with the existing action. Accordingly, if the Court finds that SalmonState—or any of the applicants—do not satisfy the test for intervention of right, permissive intervention is warranted.

## CONCLUSION

For the foregoing reasons, SalmonState respectfully requests that the Court grant its Motion to Intervene as of right or, in the alternative, permissive intervention.

Respectfully submitted this 17th day of May, 2024,

 s/ Siobhan McIntyre
Siobhan McIntyre (AK Bar No. 1206050)
Teresa B. Clemmer (AK Bar No. 0111059)
Joanna Cahoon (AK Bar No. 1405034)
TRUSTEES FOR ALASKA
*Attorneys for Applicant Intervenor-Defendants SalmonState, Alaska Community Action on Toxics, Alaska Wilderness League, Alaska Wildlife Alliance, Cook Inletkeeper, Friends of McNeil River, Kachemak Bay Conservation Society, National Parks Conservation Association, National Wildlife Federation, Sierra Club, The Alaska Center, and Wild Salmon Center*

 s/ Erin Colón
Erin Colón (AK Bar No. 1508067)
Charisse Arce (AK Bar No. 2303017)
EARTHJUSTICE
*Attorneys for Applicant Intervenor-Defendants Center for Biological Diversity, Earthworks, and Friends of the Earth*

SalmonState, et al.'s Jt. Mot. to Intervene                    Page 28 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG     Document 32     Filed 05/17/24     Page 28 of 30

s/Jacqueline Iwata
_____

Jacqueline Iwata (*pro hac vice* pending)
Thomas Zimpleman (*pro hac vice* pending)
Joel Reynolds (*pro hac vice* pending)
NATURAL RESOURCES DEFENSE COUNCIL
*Attorneys for Applicant Intervenor-Defendant Natural Resources Defense Council*

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 29 of 30

## Certificate of Compliance

Pursuant to Local Civil Rule 7.4(a)(3), I certify that this motion complies with the type-volume limitation of Local Civil Rule 7.4(a)(1) because it contains 6,680 words, excluding the parts of the motion exempted by Local Civil Rule 7.4(a)(4).

*s/ Siobhan McIntyre*
Siobhan McIntyre

## Certificate of Service

I certify that on May 17, 2024, I caused a copy of the MOTION TO INTERVENE, LIST OF DOCUMENTS FILED IN SUPPORT, DECLARATIONS, EXHIBIT, [PROPOSED] ANSWER, and [PROPOSED] ORDER to be electronically filed with the Clerk of the Court for the U.S. District Court of Alaska using the CM/ECF system, which will send electronic notification of such filings to the attorneys of record in this case.

*s/ Siobhan McIntyre*
Siobhan McIntyre

SalmonState, et al.'s Jt. Mot. to Intervene                              Page 30 of 30
*Northern Dynasty Minerals Ltd. v. EPA*, Case No. 3:24-cv-00059-SLG

Case 3:24-cv-00059-SLG    Document 32    Filed 05/17/24    Page 30 of 30