Keith Bradley, *pro hac vice*
ScheLeese Goudy, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
(303) 894-9239 (facsimile)
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

Jeffrey M. Walker, *pro hac vice*
Katherine E. Wenner, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
(614) 365-2700
(614) 365-2499 (facsimile)
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

Thomas P. Amodio
Kevin M. Boots
REEVES AMODIO, LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
tom@reevesamodio.com
kevin@reevesamodio.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| NORTHERN DYNASTY MINERALS LTD. and PEBBLE LIMITED PARTNERSHIP, | No. 3:24-cv-00059-SLG |
| Plaintiffs, | |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | |
| Defendant. | |

**RESPONSE TO TROUT UNLIMITED'S MOTION TO INTERVENE
AND MEMORANDUM OF LAW**

Northern Dynasty Minerals Ltd. ("Northern Dynasty") and Pebble Limited Partnership ("Pebble Partnership") (collectively "PLP") oppose the proposed intervention by Trout Unlimited—and, in separate filings, PLP also opposes the proposed intervention by the *22* other parties that want to jump in.[1] Intervention by such a sprawling collection of groups, simply to serve their desire to be seen taking action, will make this case unwieldy. This is, fundamentally, a dispute between PLP, which wants to build a mine, and the federal government, which wants to block the mine. The reasons stated by the Environmental Protection Agency ("EPA") for that policy were primarily about asserted risks to salmon fisheries, recreation, and native culture, exactly the issues that the applicants want to litigate. There is no reason to doubt that the government will defend those issues as vigorously as Trout Unlimited could want. Sometimes a meeting drags on even after everything has been said because not everybody has had a chance to say it. Litigation should not follow that model.

## BACKGROUND

This case will resolve three issues: whether EPA's unprecedented Final Determination to veto discharges and discharge permits, purportedly under section 404(c) of the Clean Water Act, 33 U.S.C. § 1344, thereby prohibiting mining activities across a remote area of nearly 200,000 acres in southwestern Alaska (the "Final Determination") was unlawful; whether it was arbitrary or capricious; and whether it violated procedural requirements. *See* 88 Fed. Reg.

---

[1] The three motions requesting intervention for all 23 parties largely contain substantively similar arguments. PLP is filing three separate responses in opposition to address individualized facts and arguments separately, however due to the duplicate arguments in the applicants' motions, PLP's briefs in opposition to these three motions are also similar.

7,441 (Feb. 3, 2023); Complaint, ECF No. 1, ¶ 9. The claims do not automatically entitle PLP to build or operate its proposed mine; if PLP prevails, it will not automatically receive authorization to conduct mining or other physical activity on site.[2] No coldwater fisheries or habitat will be harmed by the Court's decision either way. No subsistence, commercial, or recreational activities in Bristol Bay will be threatened by the Court's decision either way. A victory for PLP will simply cause EPA's Final Determination and the resulting permit denial to be vacated. Trout Unlimited will still be able to contest PLP's applications for regulatory permits; it would simply carry out those processes in normal order, without EPA's having ended all those processes by its peremptory veto.

Premised largely on misplaced concerns that a favorable decision for PLP would mark the completion of permitting matters, Trout Unlimited has filed motions to intervene both of right, and alternatively, permissively. In addition to Trout Unlimited, *22* more entities have filed motions to intervene, invoking similar arguments as Trout Unlimited here. ECF Nos. 21, 32. The Court should deny all these interventions. These entities could submit their views through appropriate *amicus* briefs at pertinent points in the litigation, but they should not be allowed to introduce massive additional complexity by turning a two-party dispute into a 25-party dispute.

---

[2] PLP is, unrelated to this brief, moving to add claims against the U.S. Army Corps of Engineers ("Army Corps") that its eventual denial of PLP's Clean Water Act permit application was arbitrary and capricious. For these claims too, if the Court allows the revised complaint, an eventual victory would not authorize PLP to commence construction or operation.

## ARGUMENT

This court, in prior Pebble litigation, has consistently rejected claims that similarly situated proposed intervenors were entitled to intervention as a matter of right. The applicants assert that the court allowed their intervention before, but they omit the fact that the court found they did not have a *right* to intervene. Those interventions were permissive, under very different circumstances. *See Pebble Ltd. P'ship v. EPA*, No. 3:14-CV-0097-HRH, ECF No. 148 at 4 (D. Alaska July 29, 2014); *id.*, ECF No. 167 at 4; *id.*, ECF No. 182 at 2; *id.*, ECF No. 218 at 3. Both actual parties agree that Trout Unlimited is not entitled to intervention as a matter of right. Trout Unlimited has not established that it has a significantly protectable interest because its articulated interests—mainly preserving the natural resources of Bristol Bay and its involvement in prior litigation related to this matter—are not implicated in this litigation. This suit addresses whether EPA's Final Determination is unlawful or otherwise violated the standards of the Administrative Procedure Act ("APA") (and will, if the Court accepts the revised complaint, address whether the Army Corps's eventual permit denial, failed APA standards). Even if Trout Unlimited did have an interest, the disposition of this action will not impede or impair its ability to protect that interest, and it is adequately represented by the government in this matter. Trout Unlimited shares the same ultimate objective as the government to uphold the Final Determination, and EPA has to this point been vigorous in defending the same policies that Trout Unlimited wants to defend.

The Court should also not permit Trout Unlimited to intervene permissively because accepting intervention from it and 22 applicants more would significantly delay an already

extremely prolonged process. The participation of an additional 23 parties would waste the resources of the Court and of the parties. The Court would have to manage 23 additional parties. Negotiations over scheduling and procedural matters would involve not just PLP and the government, but these 23 additional parties. PLP would have to respond to briefing and motions from 23 additional parties. Yet Trout Unlimited and the other applicants have offered nothing but conclusory assertions of having differing interests or arguments from EPA. Permissive intervention would dramatically increase litigation costs for PLP, the government, and the Court, and neither Trout Unlimited nor the other applicants have identified any benefit from the resulting undue burden and prejudice. Even if the Court were inclined to grant permissive intervention, it is vital that the Court impose limitations on Trout Unlimited to decrease the aforementioned negative consequences that would result from permissive intervention.

## I. TROUT UNLIMITED IS NOT ENTITLED TO INTERVENTION AS A MATTER OF RIGHT.

Trout Unlimited is not entitled to intervention as a matter of right because it fails to satisfy three of the four elements required under Rule 24(a). Intervention as a matter of right requires applicants to prove that all four Rule 24(a) criteria have been met: (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties. Fed. R. Civ. P. 24(a); *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

"Failure to satisfy any one of the requirements is fatal to the application," and courts "need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

In prior Pebble litigation, this court concluded that similarly situated proposed intervenors, including Trout Unlimited, were not entitled to intervene of right. *Pebble Ltd. P'ship v. EPA*, No. 3:14-CV-0097-HRH, ECF No. 218 at 3 (D. Alaska Aug. 19, 2014); *id.*, ECF No. 148 at 4; *id.* ECF No. 167 at 4; *id.*, ECF No. 182 at 2. The parties here are aligned that Trout Unlimited is not entitled to intervention of right in this matter either. *See* Motion at 14-15 n.9 (stating "EPA disputes Trout Unlimited's ability to intervene as a matter of right"). Trout Unlimited fails to meet the second, third, and fourth elements of the test. First, there is no relationship between any significantly protectable interest that Trout Unlimited might have and the claims at issue in this litigation. Second, no conceivable outcome will impair Trout Unlimited's ability to protect its identified interests. Third, the government will undoubtedly protect any alleged interest, even if one were found, because Trout Unlimited's asserted interest is the same ultimate objective to defend EPA's Final Determination, which states it was motivated by the same kinds of policy concerns that Trout Unlimited invokes.

## A. Trout Unlimited Failed to Establish a Significantly Protectable Legal Interest Because its Identified Interests Are Only General and Are Not Related to the Outcome of this Case.

Trout Unlimited fails to show more than a general interest in Bristol Bay natural resources, which has an insufficient relationship to the outcome of this case.

[A]t an irreducible minimum Rule 24(a)(2) requires that the asserted interest be protectable under some law and that there exist a relationship between the

legally protected interest and the claims at issue. If these two core elements are not satisfied, a putative intervenor lacks any 'interest' under Rule 24(a)(2), full stop.

*California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022) (internal quotations and citations omitted). The Rule 24(a) requirement of an "interest relating to the property or transaction which is the subject of the action" means a "significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). "[A]n undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *S. California Edison v. Lynch,* 307 F.3d 794, 803 (9th Cir. 2002) (quoting *Pub. Serv. Co. of N.H. v. Patch,* 136 F.3d 197, 205 (1st Cir. 1998)) (determining an association with interests in the economy had only a generalized interest); *see also Pub. Serv. Co. of N.H.*, 136 F.3d at 205 (1st Cir. 1998) (concluding an interest in lowering electric rates was "too high a level of generality" since every consumer and business in the state could have the same interest); *ManaSota-88, Inc. v. Tidwell,* 896 F.2d 1318, 1322 (11th Cir. 1990) (finding that a "generalized grievance" of industry members facing potential permit modifications did not constitute a significantly protectable interest in a suit to force EPA to list impaired waters where they could not yet identify the extent of impact).

For example, in *Westlands Water District v. United States*, the Ninth Circuit held that the Environmental Defense Fund ("EDF") had no Rule 24(a) right to intervene in a lawsuit demanding the release of additional water from government-controlled dams. 700 F.2d 561 (9th Cir. 1983). The court observed that while "EDF and its members do indeed have an interest" in the case, given their interest in conservation and quality of water in the region,

"[t]he same can be said of a substantial portion of the population of northern California." *Id.* at 563. That generalized interest "is not a legally protectible interest" sufficient for a right to intervene. *Id.* In *Southern California Edison*, an association of companies that purchase significant amounts of electricity could not intervene by right in a regulatory challenge demanding approval of the utility's rate increase. 307 F.3d at 801-02. As purchasers from the utility, they had only "an undifferentiated, generalized interest," which is "too porous a foundation on which to premise intervention as of right." *Id.* at 803. Trout Unlimited here has no more particular interest. It claims an interest based on members that fish in Bristol Bay or recreate in the area. As in *Westlands Water* and *Southern California Edison*, myriad individuals and entities in Southern Alaska have similar general interests, and that generalized interest cannot entitle Trout Unlimited to intervene.

Even if an applicant's interest is protectable, the applicant must also show a sufficient relationship between the interest and a plaintiff's claims, a relationship that Trout Unlimited clearly lacks. The relief sought by plaintiffs must have "*direct, immediate, and harmful effect[s]*" upon "the third party's legally protectable interests." *See Donnelly v. Glickman*, 159 F.3d 405, 411 (9th Cir. 1998) (quoting *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1494 (9th Cir. 1995), *abrogated on other grounds* by *Wilderness Soc.*, 630 F.3d 1173) (emphasis added). The relationship requirement is satisfied "only if the resolution of the plaintiff's claims **actually will affect** the applicant." *Id.* at 410 (emphasis added); *Ctr. for Biological Diversity v. EPA*, No. C-11-06059 YGR, 2012 WL 909831, at *3 (N.D. Cal. March 16, 2012) (finding no relationship where either possible outcome in an administrative proceeding would

preserve the interests at stake); *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, No. 12-17360, 2012 WL 4717814, at *4 (N.D. Cal. Sept. 28, 2012) ("The harm articulated by the Counties could only result if a casino was actually developed, an issue which is not encompassed by this case. Therefore, any environmental concerns from casino development are too remote to meet the 'relationship test.'").

Here, any interests Trout Unlimited identifies, mainly in preserving the natural resources of Bristol Bay, including for recreation, subsistence, and commercial uses and because of its prior involvement in litigation relating to this matter, Motion at 9–10, are only indirectly related to PLP's claims, which pertain to the unlawful and arbitrary and capricious Final Determination and the resulting permit denial. That Trout Unlimited has previously advocated for the Final Determination does not establish the requisite relationship between its alleged interest and the outcome of this case. Trout Unlimited's assertions regarding interest fail to explain how resolution of PLP's claims actually will affect it. Indeed, it will not. If PLP prevails, it does not automatically become entitled to commence construction of the mine or begin mining, and Trout Unlimited will have ample opportunity to participate in future regulatory proceedings.

*Mishewal Wappo Tribe*, cited above, is illustrative. The Tribe sued to compel the Interior Department to transfer certain federal land to the Tribe, a step that would unquestionably facilitate the development of a casino on that land, which development was indeed the purpose of the request. 2012 WL 4717814, at *4. But the Tribe's requested relief "is insufficient for that type of development"—the casino—"to occur." *Id.* The harms articulated by the

intervenors "could only result if a casino was actually developed, an issue which is not encompassed by this case." *Id.* The same is true here. That Trout Unlimited wants to block the Pebble mine does not entitle it to intervene to defend every regulatory decision that might conveniently achieve its goal. Lifting EPA's veto, or vacating the Army Corps's resulting permit denial, will not inevitably result in the construction of the mine; the relief achievable in this lawsuit is "insufficient for that . . . to occur," *cf.* 2012 WL 4717814, at *4.

### B. Trout Unlimited's Interests Are Not Impaired or Impeded Because Disposition of This Case Will Not Result in Issuance of a Permit.

For the same reasons, even if Trout Unlimited had significantly protectable interests related to this case, disposition of this case would not impair its ability to protect those alleged interests. Trout Unlimited cannot intervene of right because the resolution of this case would have no bearing or impact on any legal interest it identified. *See Greene v. United States*, 996 F.2d 973, 978 (9th Cir. 1993); *Ctr. for Biological Diversity*, No. C-11-06059 YGR, 2012 WL 909831, at *3. In *Greene*, applicants sought to intervene claiming they had an interest in preserving prior precedential decisions. *Greene*, 996 F.2d at 977. But, while the two matters were similar, each action had an independent legal effect, so the applicant's interests were not practically impaired. *Id.* at 978. In *Center for Biological Diversity*, either outcome of the case where applicants sought to intervene would have resulted in an opportunity for the applicants to protect their interests, either in notice and comment or by filing suit, so the interest identified was not impaired. *Id.* at *5. So too here; as noted above, vacating the veto or resulting permit decision would not prevent Trout Unlimited from participating in the further administrative processes that will still be necessary. Similarly, in *Mishewal Wappo Tribe*

*of Alexander Valley*, the court held that a prospective intervenor's interest in a proposed project was not impaired precisely because there existed other means to protect it: namely, other federal statutes and regulations, as well as state statutes and regulations, governing the proposed activity. No. 12-17360, 2012 WL 4717814, at *5.

Here, Trout Unlimited conflates the outcome of this case with the completion of permitting matters for PLP. A favorable decision for PLP in this matter would not automatically grant PLP a permit. In truth, even if the Court agrees with PLP that EPA's decision was improper, Trout Unlimited will remain fully able to argue in further administrative processes against permitting under the Clean Water Act, using whatever legitimate arguments it can muster. "An intervenor's interest is not impaired if there exist other means to protect it." *Id.* (citing *United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004)).

Just as in Trout Unlimited's motion to intervene in the prior Pebble litigation regarding EPA's section 404(c) proceedings, the Court must conclude the motion to intervene of right fails because Trout Unlimited's ability to participate in the proceedings is not impaired or impeded by this case. *See Pebble Ltd. P'ship*, No. 3:14-CV-0097-HRH, ECF No. 218 at 3 ("Trout Unlimited argues that its ability to participate in CWA proceedings will be impaired if § 404(c) proceedings prior to any permit application were precluded. The court does not see it that way."); *see also id.*, ECF No. 148 at 4 (denying intervention of right because even if the proceeding under 404(c) ceased, PLP had no permit to undertake mining); *id.*, ECF No. 167

at 4 (same); *id.*, ECF No. 182 at 2 (same).[3]  As previously noted, "Trout Unlimited has no right in the underlying proceeding which will be impaired or impeded by these proceedings."  *Id.*, ECF No. 218 at 3 (denying Trout Unlimited's motion to intervene of right).  And there is no interest established by any concerns regarding possible precedential consequences for other 404(c) protections affecting natural resources.  Such an alleged interest is "several degrees removed" from resolving whether EPA's Final Determination is unlawful and arbitrary and capricious.  *See Alaska R.R. Corp. v. Flying Crown Subdivision Addition No. 1 and Addition No. 2 Prop. Owners Ass'n*, No. 3:20-CV-00232-JMK, 2021 WL 4860757, at *2 (D. Alaska June 9, 2021); *see also Greene*, 996 F.2d at 977 (denying that there was an interest based on precedential concerns because the impact must still be clear and "affect directly" the claimed interest).

## C. The Government Will Adequately Represent Trout Unlimited's Interests.

Trout Unlimited has not made the requisite showing that the government will not adequately represent its interests in this litigation, particularly given it has made no showing of how it would litigate this case any differently than the government.  *See Arakaki*, 324 F.3d at 1086.  In assessing the adequacy of representation, the Ninth Circuit looks at three factors: (1)

---

[3] Trout Unlimited's supporting declarations also place emphasis on uncertainties for its members associated with the possibility of the Final Determination being vacated and remanded.  *See* Ex. A, ECF No. 23-1, ¶ 7 (William Decl.); Ex. B, ECF No. 23-2, ¶ 8 (Kraft Decl.); Ex. C, ECF No. 23-3, ¶¶ 8–10 (Lyon Decl.).  In a 2014 order on a motion to intervene, the court noted it "understands that the uncertainties of this situation are a worry to proposed defendant-intervenors' members. . . . However, these worries and risks do not in any fashion impair or impede the proposed defendant-intervenors' ability to participate in whatever proceedings, now or later, may be undertaken by the defendants with respect to mining in the Bristol Bay area."  *Pebble Ltd. P'ship*, No. 3:14-CV-0097-HRH, ECF No. 148 at 3.

whether the existing parties will undoubtedly make all the applicant's arguments; (2) whether the existing parties are capable of and willing to make the applicant's arguments; and (3) whether the applicant offers a necessary element to the proceedings that otherwise would be neglected. *Id.* When a party and the proposed intervenor share the same "ultimate objective, a presumption of adequacy of representation applies." *Freedom From Religion Found., Inc. v. Geithner,* 644 F.3d 836, 841 (9th Cir. 2011) (citation omitted). Here, Trout Unlimited seeks the same litigation outcome as the government—both desire that the Final Determination be upheld. Because the ultimate objective is the same, the presumption applies.

Such presumption can be rebutted only by "a compelling showing to the contrary." *Id.* Trout Unlimited's conclusory claims of varying interests or arguments from EPA, Motion at 11-13, are not a compelling showing of inadequate representation. First, a unique perspective is not sufficient to justify intervention. *Perry*, 587 F.3d at 954 (mere differences in litigation strategy or tactics are not enough to justify intervention); *Levin Richmond Terminal Corp. v. Richmond*, 482 F. Supp. 3d 944, 969 (N.D. Cal. 2020) (concluding the presumption of adequate representation was not overcome even where applicants claimed more "narrow, personal, and mission-driven" interests); *see also N. Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 922 (8th Cir. 2015) (concluding the presumption of adequate representation applied even for narrower interests where applicants sought to advance environmental and aesthetic interests). Trout Unlimited claims that EPA's broader interests "may not entirely align with Trout Unlimited's" but provides nothing more than generic support for this claim. *See* Motion at 12. Such a claim requires a conclusion that broader interests, *per se*, cannot include Trout

Unlimited's interests as they relate to the ultimate objective. Trout Unlimited relies on this conclusion to satisfy a showing of inadequate representation. This comparison between broad and narrow interests does not actually show that the government will not make all of Trout Unlimited's arguments; that the government is incapable of or unwilling to make Trout Unlimited's arguments; or that, without Trout Unlimited's intervention, the government would neglect Trout Unlimited's interests.[4] Indeed, Trout Unlimited has not identified any argument or defense that it wishes to present but thinks the government will not. [5]

Second, Trout Unlimited has not overcome the presumption regarding adequacy of representation in its claims regarding EPA's prior stances on the 404(c) proceedings. The Ninth Circuit has explicitly stated that "the mere change from one presidential administration to another, a recurrent event in our system of government, should not give rise to intervention as of right in ongoing lawsuits." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983). Additionally, PLP engaged in a prior litigation against EPA, challenging EPA's formation of an unlawful advisory committee with some of the same groups that are trying to intervene here. *Pebble Ltd. P'ship v. EPA*, No. 3:14-CV-00097, ECF No. 1 (D. Alaska May 21, 2014). EPA settled that case to avoid protracted litigation. *Id.*, ECF No. 299. EPA then withdrew its proposed veto, a straightforward response to the litigation. 84 Fed. Reg. 45,749,

---

[4] Similarly, the fact that EPA rightly disagrees with Trout Unlimited regarding its entitlement to intervene as of right, *see* Motion at 15 n.9, does not indicate that EPA would neglect Trout Unlimited's interests or arguments.

[5] Trout Unlimited's expressed unique interests in contrast to other applicants offer little more than a unique perspective, which does not overcome the presumption that EPA can adequately protect its interests.

45,750, 45,752–753 (Aug. 30, 2019).   To be sure, Trout Unlimited sued to force EPA to reinstate the proposal.  Given the context and history, that effort does not really suggest EPA opposed Trout Unlimited's policy preferences.  EPA has never given any indication that it opposed Trout Unlimited's policy interests.

An assumption of adequacy also arises when the government is acting on behalf of a constituency that it represents.  *Arakaki*, 324 F.3d at 1086.  Absent a "'very compelling showing to the contrary,' it will be presumed that [the government] adequately represents its citizens when the applicant shares the same interest."  *Id.*  Here, the relevant interest is defending the Section 404(c) decision, which Trout Unlimited shares with the government.  EPA has historically relied on input from entities such as Trout Unlimited during Section 404(c) proceedings.  *See Pebble Ltd. P'ship*, No. 3:14-CV-0097-HRH, ECF No. 218 at 4 ("Trout Unlimited was involved in proceedings before EPA which led to the decision to institute § 404(c) proceedings.").  Trout Unlimited also acknowledges that it has had ample opportunity to advocate its stance on the issues before EPA.  *See* Motion at 5.  This history confirms the presumption of adequate representation and shows it is particularly warranted here.

"[V]ague speculation" of the possible inadequacy of representation "falls far short of a 'very compelling showing.'"  *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 740–41 (9th Cir. 2011) (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 443–44 (9th Cir. 2006)) (denying intervention of right where applicant failed to overcome the presumption that the government adequately represented his interests).  Trout Unlimited's Motion does not preview any new arguments in addition to EPA's arguments.  *See* Motion at 11 (stating only

that "EPA may fail to 'make all of [Trout Unlimited]'s arguments" without further support).

Nor does Trout Unlimited's proposed answer preview additional arguments beyond EPA's.

*Compare* Applicants' Proposed Answer, ECF No. 24 at 23-24 (adding only generic affirmative defenses) *with* EPA's Answer, ECF No. 34 at 60 (reserving the right to raise all affirmative defenses). Offering "generic defenses in [a] proposed answer" does not suffice. *Ctr. for Biological Diversity*, No. C-11-06059 YGR, 2012 WL 909831, at *6. EPA's answer and denial of all contested facts therein, along with its reservation of right to raise all applicable affirmative defenses, gives every indication that the government will defend this case and Trout Unlimited's interests vigorously. *See generally* EPA's Answer, ECF No. 34.

## II. TROUT UNLIMITED SHOULD NOT BE ALLOWED PERMISSIVE INTERVENTION.

Further, Trout Unlimited should not be permitted to intervene under Rule 24(b).

Three factors are considered in determining whether to allow permissive intervention pursuant to Rule 24(b): (1) the applicant's claim or defense must share a common question of law or fact with the main action; (2) there must be independent grounds for jurisdiction over the claim or defense; and (3) timeliness. *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir.1997). Even if these three prerequisites are met, a district court has considerable discretion in ruling on the motion for permissive intervention. *In re Benny*, 791 F.2d 712, 721–22 (9th Cir.1986). In exercising its discretion, courts shall consider whether intervention will "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *Perry*, 587 F.3d at 955 ("It was well within the district court's discretion

to find that the delay occasioned by intervention outweighed the value added by the Campaign's participation in the suit.").

The parties would be prejudiced by unnecessary delay and duplication in briefing if the Court permits intervention of all applicants. Courts maintain discretion to deny a motion for permissive intervention where the numerous additional intervenors would unduly delay the case. In *Montgomery v. Rumsfeld*, the Ninth Circuit noted it was "well within" a court's discretion to conclude that "13 additional plaintiffs would unnecessarily delay and complicate the case." 572 F.2d 250, 255 (9th Cir. 1978); *see also Trump v. Bullock*, No. CV-20-66-H-DLC, 2020 WL 5517169, at *2 (D. Montana September 14, 2020) (denying permissive intervention where "the Court should avoid 'piling on' litigants without cause" (quoting *United States v. Howell*, No. 3:16-cv-00164-BLW (D. Idaho. Sept. 19, 2018)); *Shoshone-Bannock Tribes of Fort Hall Resrv. v. U.S. Dep't of Interior*, No. CV 10-04-E-BLW, 2010 WL 3173108, at *1 (D. Idaho Aug. 10, 2010) (denying intervention where it "may lead to redundant arguments and a 'piling on' effect," while the filing of amicus briefs—limited in size and scope—will ensure that the interests of the [proposed intervenors] are heard without causing unfair prejudice to the [plaintiff]"). Further, in *Cooper v. Newsom*, the Ninth Circuit affirmed a denial to permissively intervene for three California District Attorneys in part because intervention "would delay the already long-drawn-out litigation, particularly in light of the prospect that some or all of the fifty-five other District Attorneys in California might seek to intervene if intervention were granted." 13 F.4th 857, 865 (9th Cir. 2021).

Here, Trout Unlimited's reasoning could open the door to possibly hundreds of other applicants claiming an interest in the Bristol Bay region.[6]  In addition to Trout Unlimited, 22 other applicants seek intervention.  There have been *class actions* with fewer parties.  *Ark. Ed. Ass'n v. Bd. of Ed.*, 446 F.2d 763, 765 (8th Cir. 1971) (approving a 17-member class); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (approving an 18-member class); *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (unpublished) (holding a 20-member proposed class was sufficiently numerous).  The addition of 23 (or more) parties to this matter would severely complicate the litigation while resulting in duplicative briefings and delay.  The duplicative motions to intervene are just the first taste of the extensive additional work that these interventions will impose on the Court and the parties.

The unnecessary waste of judicial resources, undue delay and increased complexity caused by the proposed interventions has already materialized.  On May 30, 2024, prior to the filing of its motion for extension of time, PLP's counsel conferred with counsel for all applicants on a proposed one-week extension of the deadline for responding to the motions to intervene.  *See* ECF No. 50, ¶ 4.  Such a simple matter required PLP's counsel to communicate with 23 separate attorneys from various firms and legal nonprofit organizations.  Of the 23 proposed intervenors, 18 indicated that they did not oppose the requested extension, one responded that they could not consent to nor deny consent for the requested extension, and the remaining four proposed intervenors did not respond.

---

[6] *See, e.g.,* U.S. EPA, *Response to Comments on EPA Clean Water Act Section 404(c) Determination for the Pebble Deposit Area, Southwest Alaska* 3, Table 3 (Jan. 2023) (listing the number of comments on the Final Determination by commenter category).

As further example, during PLP's correspondence with counsel for Trout Unlimited, the proposed intervenor that declined to consent to a short extension, Trout Unlimited inquired as to the basis for PLP's opposition. Trout Unlimited insisted that unless it understood why PLP would put Trout Unlimited through the time and expense of filing a reply brief on its motion to intervene, it was unable to take a position on a one-week extension. This sort of exchange will be multiplied endlessly if this case balloons to include 25 parties.

Moreover, Trout Unlimited has not provided any concrete support to indicate that its intervention would facilitate resolution of the merits. Though Trout Unlimited vaguely maintains it has unique perspectives and interests to contribute, *see* Motion at 14, it gives the Court no reason to think it will offer anything other than duplicative briefing to the case.[7] This matter has already been ongoing for years and such duplicative briefings would needlessly prolong a matter that, regardless of its outcome, will still require additional administrative proceedings before reaching an ultimate conclusion. PLP should not have to undergo the further delay that would result from permissive intervention here.

In the alternative, if the Court takes the extreme step to allow intervention from 23 new parties in this matter, it should only do so with conditions. The intervention of so many parties will inevitably create significant delay, undue burden, expense, judicial inefficiency and prejudice, but the Court could decrease these harms and aid in keeping the issues focused on PLP's complaint by only allowing permitting intervention subject to conditions, as done in

---

[7] Trout Unlimited also argues that its unique perspectives and interests "will contribute to the efficient and just resolution of this case," Motion at 14, but it cannot reasonably maintain that multiple duplicative briefings will aid the Court's efficiency in deciding the matters before it.

prior matters. *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 183 (9th Cir. 1974) (concluding the district court's discretion regarding ability to intervene includes orders restricting intervention); *Dep't of Fair Employment & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (affirming district court's limitation on the arguments intervenor could make when granted permissive intervention). Courts routinely recognize that it is proper to impose a variety of conditions on intervening parties, such as by requiring parties to adhere to briefing schedules, denying discovery, and requiring consolidated briefs. *See, e.g.*, *ConocoPhillips Alaska, Inc. v. Nat'l Marine Fisheries*, No. 3:06-CV-0198-RRB, 2006 WL 8438533, at *2 (D. Alaska Oct. 23, 2006) (imposing conditions on intervenors of right, including that the parties "shall abide" by any briefing schedules or other schedules established by the court); *Levin Richmond Terminal Corp.*, 482 F. Supp. 3d at 969 (noting "[i]ntervenors' status shall not increase the scope of discovery" and requiring intervenors to coordinate and make discovery in conjunction with defendants); *Hunter v. U.S. Dep't of Educ.*, No. 6:21-cv-00474-AA, 2021 WL 4721062, at *5 (concluding "conditions are warranted," including consolidated briefing "[b]ecause intervention creates a risk of significantly increasing the amount of documents that both the parties and the Court must review").

Indeed, in the previous case where Trout Unlimited intervened against PLP, the court allowed only permissive intervention and only upon certain specified conditions. *E.g. Pebble Ltd. P'ship v. EPA*, No. 3:14-CV-0097-HRH, ECF No. 218 at 5-6 (D. Alaska Aug. 19, 2014); *see also id.*, ECF No. 148 at 5-6; *id.* ECF No. 167 at 5-6; *id.* ECF No. 182 at 2-3. Conditions were imposed for all intervenors, including: (1) requiring that intervenors adhere to the

established motion practice schedule; (2) limiting subjects of briefing and ordering all defendants to avoid duplication by coordinating briefing; and (3) limiting the number and pages of briefs that could be filed. *See id.*, ECF No. 148 at 5-6; *id.* ECF No. 167 at 5-6; *id.* ECF No. 182 at 2-3; *id.* ECF No. 218 at 5-6.

Any intervention that the Court permits should be subject to the following conditions:

(1)     Trout Unlimited, and all similarly situated defendant-intervenors, shall coordinate their briefing amongst themselves. Defendant-intervenors may only file briefs with the Court on dispositive motions in the case, and they may only file one consolidated brief for any such dispositive motions;

(2)     Trout Unlimited, and all similarly situated defendant-intervenors, may not propound discovery or otherwise participate in discovery in the case, except they may observe depositions, should they occur, in accordance with the terms of the protective order to be entered in the case;

(3)     Trout Unlimited, and all similarly situated defendant-intervenors, may not participate in disputes regarding discovery, the contents and supplementation of the administrative record, or case scheduling matters.

## <u>CONCLUSION</u>

For the reasons stated herein, PLP respectfully requests the Court deny Trout Unlimited's Motion to Intervene, or, at a minimum, impose necessary conditions upon any intervention that it allows.

Dated June 7, 2024

/s/ *Keith Bradley*

Keith Bradley, *pro hac vice*
ScheLeese Goudy, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
(303) 894-9239 (facsimile)
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

Jeffrey M. Walker, *pro hac vice*
Katherine E. Wenner, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
(614) 365-2700
(614) 365-2499 (facsimile)
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

Thomas P. Amodio
Kevin M. Boots
REEVES AMODIO, LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
tom@reevesamodio.com
kevin@reevesamodio.com

*Attorneys for Plaintiffs Northern Dynasty Minerals Ltd*
*and Pebble Limited Partnership*