Keith Bradley, *pro hac vice*
ScheLeese Goudy, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
(303) 894-9239 (facsimile)
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

Thomas P. Amodio
Kevin M. Boots
REEVES AMODIO, LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
tom@reevesamodio.com
kevin@reevesamodio.com

Jeffrey M. Walker, *pro hac vice*
Katherine E. Wenner, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
(614) 365-2700
(614) 365-2499 (facsimile)
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| NORTHERN DYNASTY MINERALS LTD. and PEBBLE LIMITED PARTNERSHIP, | No. 3:24-cv-00059-SLG |
| Plaintiffs, | |
| v. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | |
| Defendant. | |

## RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE, ALASKA COMMUNITY ACTION ON TOXICS, ALASKA WILDERNESS LEAGUE, ALASKA WILDLIFE ALLIANCE, COOK INLETKEEPER,

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 1 of 22

**FRIENDS OF MCNEIL RIVER, KACHEMAK BAY CONSERVATION SOCIETY, NATIONAL PARKS CONSERVATION ASSOCIATION, NATIONAL WILDLIFE FEDERATION, SIERRA CLUB, THE ALASKA CENTER, WILD SALMON CENTER, CENTER FOR BIOLOGICAL DIVERSITY, EARTHWORKS, FRIENDS OF THE EARTH, AND NATURAL RESOURCES DEFENSE COUNCIL (FED. R. CIV. P. 24)**

Northern Dynasty Minerals Ltd. ("Northern Dynasty") and Pebble Limited Partnership ("Pebble Partnership") (collectively "PLP") oppose the proposed intervention by the *16* proposed intervenors listed above (collectively "Applicants")—and, in separate filings, PLP also opposes the proposed intervention by the myriad other parties that want to jump in.[1] Intervention by such a sprawling collection of groups, simply to serve their desire to be seen taking action, will make this case unwieldy. This is, fundamentally, a dispute between PLP, which wants to build a mine, and the federal government, which wants to block the mine. The reasons stated by the Environmental Protection Agency ("EPA") for that policy were primarily about asserted risks to salmon fisheries, recreation, and native culture, exactly the issues that Applicants want to litigate. There is no reason to doubt the government will defend those issues as vigorously as Applicants could want. Sometimes a meeting drags on even after everything has been said because not everybody has yet had a chance to say it. Litigation should not follow that model.

---

[1] The three motions requesting intervention for all 23 parties largely contain substantively similar arguments. PLP is filing three separate responses in opposition to address individualized facts and arguments separately, however due to the duplicative arguments in the applicants' motions, PLP's briefs in opposition to these three motions are also similar.

# BACKGROUND

This case will resolve three issues: whether EPA's unprecedented Final Determination to veto discharges and discharge permits, purportedly under section 404(c) of the Clean Water Act, 33 U.S.C. § 1344, thereby prohibiting mining activities across a remote area of nearly 200,000 acres in southwestern Alaska (the "Final Determination") was unlawful; whether it was arbitrary or capricious; and whether it violated procedural requirements. *See* 88 Fed. Reg. 7,441 (Feb. 3, 2023); Complaint, ECF No. 1, ¶ 9. The claims do not automatically entitle PLP to build or operate its proposed mine; if PLP prevails, it will not automatically receive authorization to conduct mining or other physical activity on site.[2] No fish habitat will be impaired by the Court's decision either way. No subsistence or recreational activities in Bristol Bay will be threatened by the Court's decision either way. A victory for PLP will simply cause EPA's Final Determination and the resulting permit denial to be vacated. Applicants will still be able to contest PLP's applications for regulatory permits; they would simply carry out those processes in normal order, without EPA's having ended all those processes by its peremptory veto.

Premised largely on misplaced concerns that a favorable decision for PLP would mark the completion of permitting matters, these 16 Applicants have filed motions to intervene both of right, and alternatively, permissively. Applicants are:

---

[2] PLP is, unrelated to this brief, moving to add claims against the U.S. Army Corps of Engineers ("Army Corps") that its eventual denial of PLP's Clean Water Act permit application was arbitrary and capricious. For these claims too, if the Court allows the revised complaint, an eventual victory would not authorize PLP to commence construction or operation.

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                    2

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 3 of 22

- SalmonState;

- Alaska Community Action on Toxics;

- Alaska Wilderness League;

- Alaska Wildlife Alliance;

- Cook Inletkeeper;

- Friends of McNeil River;

- Kachemak Bay Conservation Society;

- National Parks Conservation Association;

- National Wildlife Federation;

- Sierra Club;

- The Alaska Center;

- Wild Salmon Center;

- Center for Biological Diversity;

- Earthworks;

- Friends of the Earth; and

- Natural Resources Defense Council.

In addition to these 16 Applicants, 7 more entities have filed motions to intervene, invoking similar arguments as Applicants here. ECF Nos. 21, 23. The Court should deny all these interventions. These entities could submit their views through appropriate *amicus* briefs at pertinent points in the litigation, but they should not be allowed to introduce massive additional complexity by turning a two-party dispute into a 25-party dispute.

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                    3

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 4 of 22

# ARGUMENT

This court, in prior Pebble litigation, has consistently rejected claims that similarly situated proposed intervenors were entitled to intervention as a matter of right. Applicants assert that the court allowed their intervention before, but they omit the fact that the court found they did not have a *right* to intervene. Those interventions were permissive, under very different circumstances. *See Pebble Ltd. P'ship v. EPA*, No. 3:14-CV-0097-HRH, ECF No. 148 at 4 (D. Alaska July 29, 2014); *id.*, ECF No. 167 at 4; *id.*, ECF No. 182 at 2; *id.*, ECF No. 218 at 3. Both actual parties agree that Applicants are not entitled to intervention as a matter of right. Applicants have not established that they have a significantly protectable interest because their articulated interests—mainly related to preserving and enjoying Bristol Bay's natural resources, including for subsistence, commercial, and recreational uses—are not implicated in this litigation. This suit addresses whether EPA's Final Determination is unlawful or otherwise violated the standards of the Administrative Procedure Act ("APA") (and will, if the Court accepts the revised complaint, address whether the Army Corps's eventual permit denial failed APA standards). Even if Applicants did have an interest, the disposition of this action will not impede or impair their ability to protect that interest, and they are adequately represented by the government in this matter. Applicants share the same ultimate objective as the government to uphold the Final Determination, and EPA has to this point been vigorous in defending the same policies that Applicants want to defend.

The Court should also not permit the Applicants to intervene permissively because accepting intervention from these 16 Applicants and an additional 7 applicants would significantly delay an already extremely prolonged process. The participation of an additional

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                    4

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 5 of 22

23 parties would waste the resources of the Court and of the parties. The Court would have to manage 23 additional parties. Negotiations over scheduling and procedural matters would involve not just PLP and the government, but these 23 additional parties. PLP would have to respond to briefing and motions from 23 additional parties. Yet Applicants have offered nothing but conclusory assertions of having differing interests or arguments from EPA. Permissive intervention would dramatically increase litigation costs for PLP, the government, and the Court, and Applicants have identified no benefit from the resulting undue burden and prejudice. Even if the Court were inclined to grant permissive intervention, it is vital that the Court impose limitations on Applicants to decrease the aforementioned negative consequences that would result from permissive intervention.

## I. APPLICANTS ARE NOT ENTITLED TO INTERVENTION AS A MATTER OF RIGHT.

Applicants are not entitled to intervention as a matter of right because they fail to satisfy three of the four elements required under Rule 24(a). Intervention as a matter of right requires Applicants to prove that all four Rule 24(a) criteria have been met: (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties. Fed. R. Civ. P. 24(a); *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003). "Failure to satisfy any one of the requirements is fatal to the application," and courts "need not reach the remaining elements if one of the elements is not satisfied." *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 950 (9th Cir. 2009).

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                          5

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 6 of 22

In prior Pebble litigation, this court concluded that similarly situated proposed intervenors were not entitled to intervene of right. *Pebble Ltd. P'ship v. EPA*, No. 3:14-CV-0097-HRH, ECF No. 148 at 4 (D. Alaska July 29, 2014); *id.*, ECF No. 167 at 4; *id.*, ECF No. 182 at 2; *id.*, ECF No. 218 at 3. The parties here are aligned that Applicants are not entitled to intervention of right in this matter either. *See* Motion at 3 (stating that "EPA opposes intervention of right"). Applicants fail to meet the second, third, and fourth elements of the test. First, there is no relationship between any significantly protectable interest that Applicants might have and the claims at issue in this litigation. Second, no conceivable outcome will impair their ability to protect their identified interests in protecting the fisheries, ecosystems, wilderness, and wildlife of Bristol Bay. Third, the government will undoubtedly protect any alleged interest, even if one were found, because Applicants' asserted interest is the same ultimate objective to defend EPA's Final Determination, which states it was motivated by the same kinds of policy concerns that Applicants invoke.

## A. Applicants Failed to Establish a Significantly Protectable Legal Interest Because their Identified Interests Are Only General and Are Not Related to the Outcome of this Case.

Applicants fail to show more than a general interest in Bristol Bay natural resources, which has an insufficient relationship to the outcome of this case.

> [A]t an irreducible minimum Rule 24(a)(2) requires that the asserted interest be protectable under some law and that there exist a relationship between the legally protected interest and the claims at issue. If these two core elements are not satisfied, a putative intervenor lacks any 'interest' under Rule 24(a)(2), full stop.

*California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022) (internal quotations and citations omitted). The Rule 24(a) requirement of an "interest relating

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                    6

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 7 of 22

to the property or transaction which is the subject of the action" means a "significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). "[A]n undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *S. California Edison v. Lynch,* 307 F.3d 794, 803 (9th Cir. 2002) (quoting *Pub. Serv. Co. of N.H. v. Patch,* 136 F.3d 197, 205 (1st Cir. 1998)) (determining an association with interests in the economy had only a generalized interest); *see also Pub. Serv. Co. of N.H.*, 136 F.3d at 205 (1st Cir. 1998) (concluding an interest in lowering electric rates was "too high a level of generality" since every consumer and business in the state could have the same interest); *ManaSota-88, Inc. v. Tidwell,* 896 F.2d 1318, 1322 (11th Cir. 1990) (finding that a "generalized grievance" of industry members facing potential permit modifications did not constitute a significantly protectable interest in a suit to force EPA to list impaired waters where they could not yet identify the extent of impact).

For example, in *Westlands Water District v. United States*, the Ninth Circuit held that the Environmental Defense Fund ("EDF") had no Rule 24(a) right to intervene in a lawsuit demanding the release of additional water from government-controlled dams. 700 F.2d 561 (9th Cir. 1983). The court observed that while "EDF and its members do indeed have an interest" in the case, given their interest in conservation and quality of water in the region, "[t]he same can be said of a substantial portion of the population of northern California." *Id.* at 563. That generalized interest "is not a legally protectible interest" sufficient for a right to intervene. *Id.* In *Southern California Edison*, an association of companies that purchase significant amounts of electricity could not intervene by right in a regulatory challenge demanding approval of the utility's rate increase. 307 F.3d at 801-02. As purchasers from the

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                          7

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 8 of 22

utility, they had only "an undifferentiated, generalized interest," which is "too porous a foundation on which to premise intervention as of right." *Id.* at 803. Applicants here have no more particular interest. Each of them claims an interest based on members that fish in Bristol Bay or recreate in the area. As in *Westlands Water* and *Southern California Edison*, myriad individuals and entities in Southern Alaska have similar general interests, and that generalized interest cannot entitle Applicants to intervene.

Even if an applicant's interest is protectable, the applicant must also show a sufficient relationship between that interest and a plaintiff's claims, a relationship that Applicants clearly lack. The relief sought by plaintiffs must have "*direct, immediate, and harmful effect[s]*" upon "the third party's legally protectable interest." *See Donnelly v. Glickman*, 159 F.3d 405, 411 (9th Cir. 1998) (quoting *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1494 (9th Cir. 1995), *abrogated on other grounds* by *Wilderness Soc.*, 630 F.3d 1173) (emphasis added). The relationship requirement is satisfied "only if the resolution of the plaintiff's claims ***actually will affect*** the applicant." *Id.* at 410 (emphasis added); *Ctr. for Biological Diversity v. EPA*, No. C-11-06059 YGR, 2012 WL 909831, at *3 (N.D. Cal. March 16, 2012) (finding no relationship where either possible outcome in an administrative proceeding would preserve the interests at stake); *Mishewal Wappo Tribe of Alexander Valley v. Salazar*, No. 12-17360, 2012 WL 4717814, at *4 (N.D. Cal. Sept. 28, 2012) ("The harm articulated by the Counties could only result if a casino was actually developed, an issue which is not encompassed by this case. Therefore, any environmental concerns from casino development are too remote to meet the 'relationship test.'").

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                8

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 9 of 22

Here, any interests Applicants identify, mainly preserving and enjoying Bristol Bay's natural resources, including for subsistence, commercial, and recreational uses, are only indirectly related to PLP's claims, which pertain to the unlawful and arbitrary and capricious Final Determination and the resulting permit denial. That Applicants have previously advocated for the Final Determination does not establish the requisite relationship between their alleged interest and the outcome of this case, rather it highlights the well-established avenues outside this litigation to protect their purported interests. Applicants' assertions regarding interest fail to explain how resolution of PLP's claims actually will affect Applicants. Indeed, it will not. If PLP prevails, it does not automatically become entitled to commence construction of the mine, or begin mining, and Applicants will have ample opportunity to participate in future regulatory proceedings.

*Mishewal Wappo Tribe*, cited above, is illustrative. The Tribe sued to compel the Interior Department to transfer certain federal land to the Tribe, a step that would unquestionably facilitate the development of a casino on that land, which development was indeed the purpose of the request. 2012 WL 4717814, at *4. But the Tribe's requested relief "is insufficient for that type of development"—the casino—"to occur." *Id.* The harms articulated by the intervenors "could only result if a casino was actually developed, an issue which is not encompassed by this case." *Id.* The same is true here. That Applicants want to block the Pebble mine does not entitle them to intervene to defend every regulatory decision that might conveniently achieve their goal. Lifting EPA's veto, or vacating the Army Corps's resulting permit denial, will not inevitably result in the construction of the mine; the relief achievable in this lawsuit is "insufficient for that . . . to occur," *cf.* 2012 WL 4717814, at *4.

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                    9

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 10 of 22

**B. Applicants' Interests Are Not Impaired or Impeded Because Disposition of This Case Will Not Result in Issuance of a Permit.**

For the same reasons, even if Applicants had significantly protectable interests related to this case, disposition of this case would not impair their ability to protect those alleged interests. Applicants cannot intervene of right because the resolution of this case would have no bearing or impact on any legal interest they identified. *See Greene v. United States*, 996 F.2d 973, 978 (9th Cir. 1993); *Ctr. for Biological Diversity*, No. C-11-06059 YGR, 2012 WL 909831, at *3. In *Greene*, applicants sought to intervene claiming they had an interest in preserving prior precedential decisions. *Greene*, 996 F.2d at 977. But, while the two matters were similar, each action had an independent legal effect, so the applicant's interests were not practically impaired. *Id.* at 978. In *Center for Biological Diversity*, either outcome of the case where applicants sought to intervene would have resulted in an opportunity for the applicants to protect their interests, either in notice and comment or by filing suit, so the interest identified was not impaired. *Id.* at *5. So too here; as noted above, vacating the veto or resulting permit decision would not prevent Applicants from participating in the further administrative processes that will still be necessary. Similarly, in *Mishewal Wappo Tribe of Alexander Valley*, the court held that a prospective intervenor's interest in a proposed project was not impaired precisely because there existed other means to protect it: namely, other federal statutes and regulations, as well as state statutes and regulations, governing the proposed activity. No. 12-17360, 2012 WL 4717814, at *5.

Here, Applicants conflate the outcome of this case with the completion of permitting matters for PLP. In truth, even if the Court agrees with PLP that EPA's decision was

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                    10

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 11 of 22

improper, Applicants will remain fully able to argue in further administrative processes against permitting even under the Clean Water Act, using whatever legitimate arguments they can muster. "An intervenor's interest is not impaired if there exists other means to protect it." *Id.* (citing *United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004)).

Just as in motions to intervene in prior litigation regarding EPA's section 404(c) proceedings, the Court must conclude the motion to intervene of right fails because Applicants' ability to participate in the proceedings is not impaired or impeded by this case. *See Pebble Ltd. P'ship*, No. 3:14-CV-0097-HRH, ECF No. 148 at 4 (denying intervention of right because even if the proceeding under 404(c) ceased, PLP had no permit to undertake mining); *see also id.*, ECF No. 167 at 4; *id.*, ECF No. 182 at 2; *id.*, ECF No. 218 at 3. As previously noted, "[a]n adverse ruling with respect to the defendants' and proposed defendant-intervenors' position in this case will not impair or impede the rights which are of concern to the proposed defendant-intervenors' members." *Id.*, ECF No. 148 at 4. While the "uncertainties of this situation" may be a "worry to proposed defendant-intervenors' members," they "do not in any fashion impair or impede the proposed defendant-intervenors' ability to participate in whatever proceedings, now or later, may be undertaken by the defendants with respect to mining in the Bristol Bay area." *Id.*; *see also id.*, ECF No. 167 at 3 ("[T]he outcome of the presently pending or any other EPA proceedings will neither impair nor impede NRDC from advocating its point of view to the EPA.").

### C. The Government Will Adequately Represent Applicants' Interests.

Applicants have not made the requisite showing that the government will not adequately represent their interests in this litigation, particularly given they have made no

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                                    11

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 12 of 22

showing of how they would litigate this case any differently than the government. *See Arakaki,* 324 F.3d at 1086. In assessing the adequacy of representation, the Ninth Circuit looks at three factors: (1) whether the existing parties will undoubtedly make all the applicant's arguments; (2) whether the existing parties are capable of and willing to make the applicant's arguments; and (3) whether the applicant offers a necessary element to the proceedings that otherwise would be neglected. *Id.* When a party and the proposed intervenor share the same "ultimate objective, a presumption of adequacy of representation applies." *Freedom From Religion Found., Inc. v. Geithner,* 644 F.3d 836, 841 (9th Cir. 2011) (citation omitted) (emphasis added). Here, Applicants seek the same litigation outcome as the government—both desire that the Final Determination be upheld. Because the ultimate objective is the same, the presumption applies.

Such presumption can be rebutted only by "a compelling showing to the contrary." *Id.* Applicants' conclusory claims of varying interests or arguments from the government, Motion at 24-25, are not a compelling showing of inadequate representation. First, a unique perspective is not sufficient to justify intervention. *Perry,* 587 F.3d at 954 (mere differences in litigation strategy or tactics are not enough to justify intervention); *Levin Richmond Terminal Corp. v. Richmond,* 482 F. Supp. 3d 944, 969 (N.D. Cal. 2020) (concluding the presumption of adequate representation was not overcome even where applicants claimed more "narrow, personal, and mission-driven" interests); *see also N. Dakota ex rel. Stenehjem v. United States,* 787 F.3d 918, 922 (8th Cir. 2015) (concluding the presumption of adequate representation applied even for narrower interests where applicants sought to advance environmental and aesthetic interests). To think the government would not adequately represent Applicants' more narrow interests simply because the government has "broader and more generalized" interests,

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                          12

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 13 of 22

Motion at 23–24, would require an assumption that broader interests, *per se*, cannot include Applicants' narrow interests as they relate to the ultimate objective. Yet this comparison between broad and narrow interests does not actually show that the government will not make all Applicants' arguments; that the government is incapable of or unwilling to make Applicants' arguments; or that, without Applicants' intervention, the government would neglect Applicants' narrow interests. Indeed, Applicants have not identified any argument or defense that they wish to present but they think the government will not.

Second, Applicants' claim that they diverged from EPA "as to the urgency of the need for a Final Determination," Motion at 25, is not the kind of "adversarial history" that demonstrates a divergence of interests. In *Alaska v. Nat'l Marine Fisheries Serv.*, the case on which they rely, the applicant-intervenors had been engaged in 15 years of adversarial litigation against the agency, and it appeared that without their pressure the agency "in all likelihood would not have listed the species and designated critical habitat when it did." No. 3:22-CV-00249-JMK, 2023 WL 2789352, at *9 (D. Alaska Apr. 5, 2023). The situation here is miles apart from that. PLP engaged in a prior litigation against EPA, challenging EPA's formation of an unlawful advisory committee with some of the same groups that are trying to intervene here. *Pebble Ltd. P'ship v. EPA*, No. 3:14-CV-00097, ECF No. 1 (D. Alaska May 21, 2014). Their close relationship with EPA from a decade ago is the opposite of an "adversarial history." EPA settled that case to avoid protracted litigation. *Id.*, ECF No. 299. EPA then withdrew its proposed veto, a straightforward response to the litigation. 84 Fed. Reg. 45,749, 45,750, 45,752–753 (Aug. 30, 2019). To be sure, some of the current Applicants sued to force EPA to reinstate the proposal. Given the context and history, that effort does not really

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                13

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 14 of 22

suggest EPA opposed those Applicants' policy preferences. EPA has never given an indication that it opposed Applicants' policy interests.

Further, an assumption of adequacy also arises when the government is acting on behalf of a constituency that it represents. *Arakaki*, 324 F.3d at 1086. Absent a "'very compelling showing to the contrary,' it will be presumed that [the government] adequately represents its citizens when the applicant shares the same interest." *Id.* Here, the relevant interest is defending the Section 404(c) decision, which Applicants share with the government. EPA has historically relied on input from Applicants and similarly situated entities when issuing the Bristol Bay Watershed Assessment, the Proposed Determination and the Final Determination. *See* Motion at 7–9, 12–13. By Applicants' own acknowledgement, EPA initiated Section 404(c) proceedings at the request of federally recognized Tribes in the Bristol Bay region, the commercial fishing industry, and environmental groups. *Id.* at 8. Applicants acknowledge that EPA has engaged with them since 2010. *Id.* at 8–9. This history confirms the presumption of adequate representation and shows it is particularly warranted here.

"[V]ague speculation" of the possible inadequacy of representation "falls far short of a 'very compelling showing.'" *Dep't of Fair Emp. & Hous. V. Lucent Techs., Inc.*, 642 F.3d 728, 740–41 (9th Cir. 2011) (quoting *California ex rel. Lockyer v. United States,* 450 F.3d 436, 443–44 (9th Cir. 2006)) (denying intervention of right where applicant failed to overcome the presumption that the government adequately represented his interests). Applicants' Motion does not preview that it will raise any arguments in addition to EPA's arguments. *See* Motion at 26 (stating only that Applicants "will also likely offer different arguments" while providing no support for the statement). Nor does Applicants' proposed answer preview additional

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                              14

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 15 of 22

arguments beyond EPA's. *Compare* Applicants' Proposed Answer, ECF No. 32-33 at 34-35 (adding only generic affirmative defenses) *with* EPA's Answer, ECF No. 34 at 60 (reserving the right to raise all affirmative defenses). Offering "generic defenses in [a] proposed answer" does not suffice. *Ctr. for Biological Diversity*, No. C-11-06059 YGR, 2012 WL 909831, at *6. EPA's answer and denial of all contested facts therein, along with its reservation of right to raise all applicable affirmative defenses, gives every indication that the government will defend this case and Applicants' interests vigorously. *See generally* EPA's Answer, ECF No. 34.

## II. APPLICANTS SHOULD NOT BE ALLOWED PERMISSIVE INTERVENTION.

Further, applicants should not be permitted to intervene under Rule 24(b). Three factors are considered in determining whether to allow permissive intervention pursuant to Rule 24(b): (1) the applicant's claim or defense must share a common question of law or fact with the main action; (2) there must be independent grounds for jurisdiction over the claim or defense; and (3) timeliness. *League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1308 (9th Cir. 1997). Even if these three prerequisites are met, a district court has considerable discretion in ruling on the motion for permissive intervention. *In re Benny*, 791 F.2d 712, 721–22 (9th Cir. 1986). In exercising its discretion, courts shall consider whether intervention will "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *Perry*, 587 F.3d at 955 ("It was well within the district court's discretion to find that the delay occasioned by intervention outweighed the value added by the Campaign's participation in the suit.").

The parties would be prejudiced by unnecessary delay and duplication in briefing if the Court permits intervention of Applicants. Courts maintain discretion to deny a motion for

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                    15

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 16 of 22

permissive intervention where the numerous additional intervenors would unduly delay the case. In *Montgomery v. Rumsfield*, the Ninth Circuit noted it was "well within" a court's discretion to conclude that "13 additional plaintiffs would unnecessarily delay and complicate the case." 572 F.2d 250, 255 (9th Cir. 1978); *see also Trump v. Bullock*, No. CV-20-66-H-DLC, 2020 WL 5517169, at *2 (D. Montana September 14, 2020) (denying permissive intervention where "the Court should avoid 'piling on' litigants without cause" (quoting *United States v. Howell*, No. 3:16-cv-00164-BLW (D. Idaho. Sept. 19, 2018)); *Shoshone-Bannock Tribes of Fort Hall Resrv. v. U.S. Dep't of Interior*, No. CV 10-04-E-BLW, 2010 WL 3173108, at *1 (D. Idaho Aug. 10, 2010) (denying intervention where it "may lead to redundant arguments and a 'piling on' effect," while the filing of amicus briefs—limited in size and scope—will ensure that the interests of the [proposed intervenors] are heard without causing unfair prejudice to the [plaintiff]"). Further, in *Cooper v. Newsom*, the Ninth Circuit affirmed a denial to permissively intervene for three California District Attorneys in part because intervention "would delay the already long-drawn-out litigation, particularly in light of the prospect that some or all of the fifty-five other District Attorneys in California might seek to intervene if intervention were granted." 13 F.4th 857, 865 (9th Cir. 2021).

Here, Applicants' reasoning could open the door to possibly hundreds of other applicants claiming an interest in the Bristol Bay region.[3] This Motion alone seeks intervention for 16 Applicants, and there are 23 proposed intervenors overall. There have been *class actions*

---

[3] *See, e.g.*, U.S. EPA, *Response to Comments on EPA Clean Water Act Section 404(c) Determination for the Pebble Deposit Area, Southwest Alaska* 3, Table 3 (Jan. 2023) (listing the number of comments on the Final Determination by commenter category).

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                      16

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 17 of 22

with fewer parties. *Ark. Ed. Ass'n v. Bd. of Ed.*, 446 F.2d 763, 765 (8th Cir. 1971) (approving a 17-member class); *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (approving an 18-member class); *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (unpublished) (holding a 20-member proposed class was sufficiently numerous). The addition of 23 (or more) parties to this matter would severely complicate the litigation while resulting in duplicative briefings and delay. The duplicative motions to intervene are just the first taste of the extensive additional work that these interventions will impose on the Court and on the parties.

The unnecessary waste of judicial resources, undue delay and increased complexity caused by the proposed interventions has already materialized. On May 30, 2024, prior to the filing of its motion for extension of time, PLP's counsel conferred with counsel for Applicants on a proposed one-week extension of the deadline for responding to the motions to intervene. *See* ECF No. 50, ¶ 4. Such a simple matter required PLP's counsel to communicate with 23 separate attorneys from various firms and legal nonprofit organizations. Of the 23 proposed intervenors, 18 indicated that they did not oppose the requested extension, one responded that they could not consent to nor deny consent for the requested extension, and the remaining four proposed intervenors did not respond.

As further example, during PLP's correspondence with counsel for Trout Unlimited, the proposed intervenor that declined to consent to a short extension, Trout Unlimited inquired as to the basis for PLP's opposition. Trout Unlimited insisted that unless it understood why PLP would put Trout Unlimited to the time and expense of filing a reply brief

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                          17

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 18 of 22

on its motion to intervene, it was unable to take a position on a one-week extension. This sort of exchange will be multiplied endlessly if this case balloons to include 25 parties.

Moreover, Applicants have not provided any concrete support to indicate that their intervention would facilitate resolution of the merits. Applicants vaguely maintain they have a unique perspective and arguments to contribute, but they give the Court no reason to think they will offer anything other than duplicative briefing. This matter has already been ongoing for years and such duplicative briefings would needlessly prolong a matter that, regardless of its outcome, will still require additional administrative proceedings before reaching an ultimate conclusion. PLP should not have to undergo the further delay that would result from permissive intervention here.

In the alternative, if the Court takes the extreme step to allow intervention from 23 new parties in this matter, it should only do so with conditions. The intervention of so many parties will inevitably create significant delay, undue burden, expense, judicial inefficiency and prejudice, but the Court could decrease these harms and aid in keeping the issues focused on PLP's complaint by only permitting intervention subject to conditions, as done in prior matters. *See Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 183 (9th Cir. 1974) (concluding the district court's discretion regarding ability to intervene includes orders restricting intervention); *Dep't of Fair Employment & Housing v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (affirming district court's limitation on the arguments intervenor could make when granted permissive intervention). Courts routinely recognize that it is proper to impose a variety of conditions on intervening parties, such as by requiring parties to adhere to briefing schedules, denying discovery, and requiring consolidated briefs. *See, e.g., ConocoPhillips Alaska, Inc. v. Nat'l*

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                         18

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 19 of 22

*Marine Fisheries*, No. 3:06-CV-0198-RRB, 2006 WL 8438533, at *2 (D. Alaska Oct. 23, 2006) (imposing conditions on intervenors of right, including that the parties "shall abide" by any briefing schedules or other schedules established by the court); *Levin Richmond Terminal Corp.*, 482 F. Supp. 3d at 969 (noting "[i]ntervenors' status shall not increase the scope of discovery" and requiring intervenors to coordinate and make discovery in conjunction with defendants); *Hunter v. U.S. Dep't of Educ.*, No. 6:21-cv-00474-AA, 2021 WL 4721062, at *5 (concluding "conditions are warranted," including consolidated briefing "[b]ecause intervention creates a risk of significantly increasing the amount of documents that both the parties and the Court must review").

Indeed, in the previous case where some of Applicants intervened against PLP, the court allowed only permissive intervention and only upon certain specified conditions. *E.g. Pebble Ltd. P'ship v. EPA*, No. 3:14-CV-0097-HRH, ECF No. 148 at 5 (D. Alaska July 29, 2014); *see also id.*, ECF No. 167 at 5-6; *id.* ECF No. 182 at 2-3; *id.* ECF No. 218 at 5-6. Conditions were imposed for all intervenors, including: (1) requiring that intervenors adhere to the established motion practice schedule; (2) limiting subjects of briefing and ordering all defendants to avoid duplication by coordinating briefing; and (3) limiting the number and pages of briefs that could be filed. *See id.*, ECF No. 148 at 5-6; *id.* ECF No. 167 at 5-6; *id.* ECF No. 182 at 2-3; *id.* ECF No. 218 at 5-6.

Here, any intervention that the Court permits should be subject to the following conditions:

> (1)    Applicants, and all similarly situated defendant-intervenors, shall coordinate their briefing amongst themselves. Defendant-intervenors may only file briefs

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                          19

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 20 of 22

with the Court on dispositive motions in the case, and they may only file one consolidated brief for any such dispositive motions;

(2)     Applicants, and all similarly situated defendant-intervenors, may not propound discovery or otherwise participate in discovery in the case, except they may observe depositions, should they occur, in accordance with the terms of the protective order to be entered in the case;

(3)     Applicants, and all similarly situated defendant-intervenors, may not participate in disputes regarding discovery, the contents and supplementation of the administrative record, or case scheduling matters.

## <u>CONCLUSION</u>

For the reasons stated herein, PLP respectfully requests the Court deny Applicants' Motion to Intervene, or, at a minimum, impose necessary conditions upon any intervention that it allows.

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                            20

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 21 of 22

Dated June 7, 2024

*/s/ Keith Bradley*

Keith Bradley, *pro hac vice*
ScheLeese Goudy, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
(303) 894-9239 (facsimile)
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

Jeffrey M. Walker, *pro hac vice*
Katherine E. Wenner, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
(614) 365-2700
(614) 365-2499 (facsimile)
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

Thomas P. Amodio
Kevin M. Boots
REEVES AMODIO, LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
tom@reevesamodio.com
kevin@reevesamodio.com

*Attorneys for Plaintiffs Northern Dynasty Minerals Ltd
and Pebble Limited Partnership*

RESPONSE TO JOINT MOTION TO INTERVENE BY APPLICANT INTERVENOR-DEFENDANTS SALMONSTATE ET. AL
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG                                                                                    21

Case 3:24-cv-00059-SLG   Document 58   Filed 06/07/24   Page 22 of 22