TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

S. LANE TUCKER
United States Attorney
District of Alaska

MARK A. NITCZYNSKI
United States Department of Justice - ENRD
Environmental Defense Section
999 18th Street; South Terrace, Suite 370
Denver, CO 80202
Phone: (303) 844-1498
Email: mark.nitczynski@usdoj.gov

ELISABETH H. CARTER
United States Department of Justice - ENRD
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Phone: (202) 598-3141
Email: elisabeth.carter@usdoj.gov

*Attorneys for the United States*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

NORTHERN DYNASTY MINERALS LTD.
and PEBBLE LIMITED PARTNERSHIP,

        Plaintiffs,

        v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

        Defendant.

Case No. 3:24-cv-00059-SLG

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION
## FOR LEAVE TO AMEND AND SUPPLEMENT

This case involves Plaintiffs' challenge under the Administrative Procedure Act ("APA") to the January 2023 Final Determination of the U.S. Environmental Protection Agency Pursuant to Section 404(c) of the Clean Water Act [for the] Pebble Deposit Area, Southwest Alaska ("Final Determination"). Plaintiffs' 146-paragraph Complaint, ECF 1, asserts numerous challenges to the Final Determination, and the merits of the Final Determination—which this Court will review based on EPA's administrative record for that action—already are before this Court. In contrast, the fundamental relief that Plaintiffs seek in their Motion for Leave to Amend and Supplement ("Motion" or "Motion to Supplement"), ECF 55, is to add a new claim challenging the denial without prejudice of Pebble Limited Partnership's Clean Water Act ("CWA" or "Act") Section 404 permit application by a different agency, the United States Army Corps of Engineers ("Corps"), at a later time, in April 2024. This Court should deny the Motion for several reasons.

First, allowing Plaintiffs to add such a claim to this lawsuit would be futile. Assuming, *arguendo*, that the Corps' 2024 denial without prejudice is justiciable, a challenge to that decision would fail on the merits because the discharges proposed in PLP's Section 404 permit application are explicitly subject to the Final Determination. As a result, the Corps had no discretion under the CWA to specify the disposal sites required to issue the permit. Second, supplementing the Complaint would prejudice EPA and unnecessarily confuse these proceedings. For example, Plaintiffs seek to introduce documents that post-date the Final Determination and to add numerous allegations related to the Corps' earlier permitting process and the Corps' superseded November 2020 permit denial, which are not relevant to

this case or even to the new claim that Plaintiffs seek to add. Finally, the Motion should be denied because allowing the new claim related to the permit denial would introduce a new, distinct cause of action that is more appropriate for litigation in a separate lawsuit. In addition, denying supplementation would not prejudice Plaintiffs' ability to seek review of the Corps' 2024 permit denial.

## STATUTORY AND REGULATORY BACKGROUND

Congress passed the Clean Water Act in 1972 to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). The Act sets several goals, including attainment and preservation of "water quality which provides for the protection and propagation of fish, shellfish, and wildlife . . . ." *Id.* § 1251(a)(2).

To further its goals, the Act prohibits the "discharge of any pollutant" into navigable waters[1] except in accordance with, *inter alia*, a permit issued under Section 404 of the Act. 33 U.S.C. §§ 1311(a), 1344(a), (b). Section 404(a) authorizes the Corps to issue permits to discharge dredged or fill material[2] into navigable waters at specified disposal sites, and Section 404(b) requires the Corps to specify disposal sites for each permit issued under Section 404(a). 33 U.S.C. § 1344(a), (b). Although the Corps is charged with specifying disposal sites and issuing Section 404 permits, the CWA vests EPA with several authorities

---

[1] "Navigable waters" is defined in the Act to mean "the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

[2] Pollutants qualify as "fill material" when their discharge either replaces any portion of a water of the United States with dry land or changes the bottom elevation of any portion of such a water. *See* 33 C.F.R. § 323.2(e)(1); 40 C.F.R. § 232.2. The term "dredged material" means "material that is excavated or dredged from waters of the United States." 33 C.F.R. § 323.2(c); 40 C.F.R. § 232.2.

that are integral to implementation of the Section 404 program. *See*, *e.g.*, 33 U.S.C. §§ 1319(a)(3), 1344(b)(1), (h), (i), (j), (n), (q). Most relevant to this lawsuit, Section 404(c) authorizes EPA to prohibit the specification of, or deny or restrict the use of, any defined area as a disposal site for the discharge of dredged or fill material whenever EPA determines that the discharge of such materials will have an unacceptable adverse effect on specified resources. *Id.* § 1344(c).[3]

The CWA makes express that the Corps' authority to specify disposal sites under Section 404(b) is subject to EPA's authority under Section 404(c). 33 U.S.C. § 1344(b) ("*Subject to subsection (c)* . . . , each such disposal site shall be specified for each such permit by the Secretary. . . .") (emphasis added). Section 404(c), in turn, gives EPA authority to:

> [P]rohibit the specification (including the withdrawal of specification) of any defined area as a disposal site, and . . . to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever [EPA] determines, after notice and opportunity for public hearings, that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas (including spawning and breeding areas), wildlife, or recreational areas. . . .

33 U.S.C. § 1344(c); *see also* 40 C.F.R. § 231.1(a). In short, the Corps' authority to specify a disposal site for a permit is expressly limited by EPA's authority to prohibit, deny, or restrict such specification.[4]

---

[3]  As used in this brief, the term "discharge" means discharges of dredged or fill material because those are the discharges at issue in Section 404 and in this case.

[4]  Section 404's division of authority is the result of a compromise between the House and Senate versions of the Clean Water Act. In light of the Corps' then-existing authority to issue permits for discharges of fill material, *see* 33 U.S.C. § 403, the House would have allowed the Corps to continue issuing fill permits without formal EPA involvement. H.R. 11896, 92d Cong., § 2 (Mar. 11, 1972), *reprinted in* 1 A LEGISLATIVE HISTORY OF THE WATER

EPA's regulations establish a multi-step process that the Agency must complete before it may issue a Section 404(c) final determination to prohibit, deny, or restrict the use of any defined area for specification as a disposal site. *See* 40 C.F.R. pt. 231. That process includes notification to the Corps and affected parties, the opportunity for the Corps and affected parties to consult with EPA, and public notice and the opportunity for public comment. *Id.*[5]

FACTUAL BACKGROUND

**I.    The Bristol Bay Watershed and the Pebble Deposit**

"The Bristol Bay watershed represents a largely pristine, intact ecosystem with outstanding ecological resources." Final Determination at 3-1.[6] Its streams,

---

POLLUTION CONTROL ACT AMENDMENTS OF 1972, at 1063-64 (1973) ("LEGIS. HIST.") (proposed § 404). But the Senate would have given EPA sole authority to issue fill permits. S. 2770, 92d Cong., § 2 (Nov. 2, 1971), 2 LEGIS. HIST. at 1392 (proposed § 402(m)). The Act reconciled the views of the two chambers. Congress allowed the Corps to specify fill disposal sites and issue permits, but it authorized EPA to prohibit, withdraw, deny or restrict use of any defined area for disposal of dredged or fill material whenever EPA determines that the discharge of those materials will have certain unacceptable adverse effects. *See generally Mingo Logan Coal Co. v. EPA*, 714 F.3d 608, 609-10, 612-14 (D.C. Cir. 2013).

[5]  In addition, both EPA's and the Corps' regulations confine the Corps' authority to act on a Section 404 permit application during EPA's Section 404(c) process. EPA's regulations state that, after EPA notifies the Corps that it is considering exercising Section 404(c) authority with respect to a particular disposal site for which a permit application is pending but for which no permit has been issued, the Corps' District Engineer "shall not issue the permit until final action is taken under [40 C.F.R. pt. 231]." 40 C.F.R. § 231.3(a)(2). Similarly, the Corps' regulations provide that, even though the Corps will *process* a permit application during EPA's Section 404(c) process, the Corps will not *issue* a permit after EPA has provided notification that EPA intends to issue notice of a proposed determination in accordance with Section 404(c). 33 C.F.R. § 323.6(b).

[6]  The Final Determination is available at https://www.epa.gov/system/files/documents/2023-01/Pebble-Deposit-Area-404c-FD-Jan2023.pdf (last visited June 21, 2024).

---

*N. Dynasty Minerals Ltd. v. EPA*, No. 3:24-cv-00059-SLG                    4

wetlands, and other aquatic resources support "world-class, economically important, commercial and sport fisheries for salmon and other fishes." *Id.* at ES-1. The success of those fisheries depends substantially on the fact that the Bristol Bay watershed's diverse aquatic habitats are largely untouched and pristine. *Id.*

The Pebble deposit is a large, low-grade copper, gold, and molybdenum-bearing ore body located at the headwaters of the Bristol Bay watershed, about 200 miles southwest of Anchorage. *See id.* at ES-1, ES-3. In 2001, Northern Dynasty Minerals Ltd. ("Northern Dynasty") acquired mining claims related to the Pebble deposit. Pebble Limited Partnership ("PLP"), wholly owned by Northern Dynasty, currently holds mining claims related to the deposit. *Id.* at 2-8. Alaska owns the land where the Pebble deposit is located, as well as the mineral rights in the land.

In 2020, during a Section 404 permit review process with the Corps, PLP proposed a Mine Plan that included an open-pit mine at the Pebble deposit, as well as construction of a processing plant, tailings storage facilities, water management ponds, a water treatment plant, and a 270-megawatt power plant. Final Determination at 2-2 to 2-4. The 2020 Mine Plan also called for the construction of a port over fifty miles to the east, on Cook Inlet, as well as a transportation corridor between the mine and the port. *Id.* at 2-3, Fig.2-1.

## II.   EPA's 2014 Section 404(c) Proceedings

Following an ecological risk assessment that EPA completed in January 2014, and after consideration of the scientific and technical information available at the time, the Agency initiated a process under its Section 404(c) regulations regarding discharges

associated with mining the Pebble deposit. Final Determination at 2-12. In July 2014, EPA issued a proposed determination (the "2014 Proposed Determination"). *Id.* at 2-13. While that Section 404(c) process was ongoing, PLP challenged it in this Court, with Alaska participating as an intervenor. *See Pebble Ltd. P'ship* v. *EPA*, No. 3:14-cv-00097-HRH (D. Alaska). This Court dismissed that suit for lack of any final agency action, *Pebble Ltd. P'ship v. EPA*, 155 F.Supp.3d 1000 (D. Alaska 2014), and the Ninth Circuit affirmed the dismissal, *Pebble Ltd. P'ship v. EPA*, 604 Fed. Appx. 623 (9th Cir. 2015).

PLP brought a second challenge under the Federal Advisory Committee Act and, in that case, this Court preliminarily enjoined EPA from further action related to its Section 404(c) process. *See* Order Granting Preliminary Injunction, *Pebble Ltd. P'ship* v. *EPA*, No. 3:14-cv-00171-HRH (D. Alaska Nov. 25, 2014), ECF 90. In 2017, EPA and PLP settled that case (and a FOIA matter), and EPA published a proposal to withdraw the 2014 Proposed Determination. 82 Fed. Reg. 33123 (July 19, 2017). EPA withdrew the 2014 Proposed Determination in August 2019. 84 Fed. Reg. 45749, 45750 (Aug. 30, 2019). Several tribal, fishing, and environmental groups challenged the withdrawal, but this Court dismissed the suit, holding that the withdrawal was committed to agency discretion by law and therefore not subject to judicial review. *Bristol Bay Econ. Dev. Corp.* v. *Hladick*, 454 F. Supp. 3d 892, 909 (D. Alaska 2020). The Ninth Circuit reversed in part and remanded; it held that, under EPA's regulations, EPA may withdraw a proposed determination "*only* if the discharge of materials [at issue] would be unlikely to have an unacceptable adverse effect." *Trout Unlimited* v. *Pirzadeh*, 1 F.4th 738, 757 (2021) (emphasis in original). On remand, this Court vacated the withdrawal of the 2014

Proposed Determination at EPA's request and remanded the matter to the Agency. Order Granting Remand, *Bristol Bay Econ. Dev. Corp.* v. *Pirzadeh*, No. 3:19-cv-00265-SLG (D. Alaska Oct. 29, 2021), ECF 109.

## III. <u>EPA's 2022-2023 Section 404(c) Proceedings</u>

In January 2022, consistent with EPA's section 404(c) regulations, the Agency notified PLP, the State of Alaska, the Corps, and other stakeholders that, based on its evaluation to date of the available information, EPA continued to believe that the discharges associated with mining the Pebble deposit could result in unacceptable adverse effects on important fishery areas. Final Determination at ES-10. In May 2022, EPA issued a new proposed determination. 87 Fed. Reg. 32021 (May 26, 2022). The following January, EPA signed the Final Determination, 88 Fed. Reg. 7441 (Feb. 3, 2023), which Plaintiffs challenge here.

In the Final Determination, EPA explained that discharges into waters of the United States for the construction and operation of the mine proposed in PLP's 2020 Mine Plan would result in significant aquatic resource losses and streamflow changes. *See* Final Determination at ES-15, 5-1 to 5-2.[7] EPA determined that those losses and streamflow changes would have "unacceptable adverse effects" on anadromous fishery areas (including spawning and breeding areas) in the South Fork Koktuli River and North

[7] Those losses and streamflow changes include: (1) permanent loss of approximately 8.5 miles of anadromous fish streams and 91 miles of additional streams that support anadromous fish streams; (2) permanent loss of approximately 2,108 acres of wetlands and other waters that support anadromous fish streams; and (3) streamflow alterations that would adversely affect approximately 29 miles of anadromous fish streams downstream of the mine site due to greater than 20 percent changes in average monthly streamflow. Final Determination at ES-15.

Fork Koktuli River watersheds, which drain to one of the largest rivers in the Bristol Bay watershed—the Nushagak. Final Determination at ES-1, ES-3, ES-15, 5-1 to 5-2. To prevent those unacceptable adverse effects, EPA prohibited "the specification of waters of the United States . . . as disposal sites" for "the construction and routine operation of the 2020 Mine Plan," which includes future proposals to construct and operate a mine to develop the Pebble deposit that would result in the same or greater levels of loss or streamflow changes. *Id.* at ES-15 to ES-16; *see id.* at 5-1 to 5-2. The prohibition applies within a defined area (the "Defined Area for Prohibition") surrounding the portions of the mine footprint proposed in PLP's 2020 Mine Plan that are within the South Fork and North Fork Koktuli River watersheds. *Id.* at ES-15, 5-2 to 5-3.

To account for other potential mine site configurations—because relocation of mine site components to other areas could result in discharges to waters beyond the mine site area delineated in the 2020 Mine Plan—EPA also evaluated the effect of discharges associated with development of the Pebble deposit on anadromous fishery areas elsewhere in the South Fork Koktuli River, North Fork Koktuli River, and Upper Talarik Creek watersheds, all of which share similar characteristics and aquatic habitats. EPA determined that discharges into those three watersheds would likewise "have unacceptable adverse effects on anadromous fishery areas (including spawning and breeding areas) anywhere in [those watersheds] if the adverse effects of such discharges are similar or greater in nature and magnitude" to those of the 2020 Mine Plan. *Id.* at ES-16. To preclude those adverse effects, EPA restricted "the use of waters of the United States . . . for specification of as disposal sites . . . associated with future proposals to

construct and operate a mine to develop the Pebble deposit" that would result in losses or streamflow changes similar to or greater than those that would result from the 2020 Mine Plan. *Id.* at ES-16. The restriction applies to a defined area (the "Defined Area for Restriction") within those three watersheds. *Id.* at ES-16.[8]

## IV.   The Corps' Section 404 Permitting Proceedings

In 2017, while EPA's 2014 Section 404(c) proceedings were ongoing, PLP sought a Section 404 permit from the Corps. Final Determination at ES-5. PLP submitted a revised application (based on the 2020 Mine Plan) in June 2020, after EPA had withdrawn its 2014 Proposed Determination. *Id.; see* 84 Fed. Reg. at 45750. In November 2020 (before this Court vacated the withdrawal of the 2014 Proposed Determination), the Corps' Alaska District denied the permit. *Id.* The District concluded, *inter alia*, that discharges associated with the proposed mine would result in significant degradation of the aquatic ecosystem and that the project was contrary to the public interest. Final Determination at ES-5. PLP filed an administrative appeal. In April 2023, the Corps' Pacific Ocean Division remanded the matter back to the Alaska District. U.S. ARMY

---

[8]  The Final Determination does not limit discharges from any other activity in the Bristol Bay region, including mining of deposits other than the Pebble deposit. Final Determination at ES-15 to 16. It prohibits and restricts discharges associated with developing the Pebble deposit specifically, and only those discharges that result in the same or greater level of aquatic resource loss or streamflow change that EPA found unacceptable. *Id.*

CORPS OF ENG'RS, ADMINISTRATIVE APPEAL DECISION, POA-2017-00271 (Apr. 24, 2023).[9]

The Alaska District denied PLP's permit application without prejudice on April 15, 2024, after EPA had issued its Final Determination in January 2023.[10] As required under Section 404—which expressly makes the Corps' authority to specify a disposal site in a permit subject to EPA's authority under Section 404(c)—the Corps based its denial without prejudice on the Final Determination. The Alaska District described the subject of its decision document as "Review of the application by Pebble Limited Partnership . . . *in light of the prohibitions and restrictions imposed by the Final Determination of the U.S. Environmental Protection Agency Pursuant to Section 404(c) of the Clean Water Act* – Pebble Deposit Area, Southwest Alaska (January 2023)." Denial Decision at 1-7 (emphasis added). Accordingly, "in full consideration of the EPA's 404(c) determination," the Alaska District concluded that the Final Determination was a "controlling factor" that

---

[9]  The Administrative Appeal Decision is available at https://www.pod.usace.army.mil/Portals/6/docs/regulatory/appeals/00%20-%20Administrative%20Appeal%20Decision_Pebble%20Limited%20Partnership_POA%202017-00271_24APR2023%20signed.pdf?ver=AeBaqnWLBfmyKCl5QX7Y7A%3d%3d (last visited June 21, 2024). This and other information that post-dates the Final Determination is provided only for the purposes of this Opposition. Post-decisional materials are not to be considered in the Court's evaluation of the merits of the Final Determination.

[10]  The Corps' 2024 Denial Decision is available at https://www.poa.usace.army.mil/Portals/34/docs/regulatory/specialpns/2024/POA-2017-00271.20240415.RecordofDecision.pdf?ver=QRA0ZnafUF28lJwzGqhnqA%3d%3d (last visited June 21, 2024).

the Corps could not change, and denied PLP's application without prejudice on that basis. *Id.* at 7.[11]

## V.    Litigation Challenging the Final Determination

In July 2023, Alaska filed a motion in the Supreme Court for leave to file a bill of complaint challenging the Final Determination. *See* First Amended and Supplemented Complaint for Declaratory and Injunctive Relief ("Proposed Supplemented Complaint"), ECF 55-3, ¶ 188. In December 2023, the Supreme Court denied Alaska's motion. *See id.* On March 14, 2024, Plaintiffs and two corporations allegedly owned by PLP filed a complaint in the Court of Federal Claims, asserting takings claims based on the Final Determination and seeking monetary relief. Complaint, *N. Dynasty Minerals, Ltd. v. United States*, No. 1:24-cv-000397-EGB (Fed. Cl.), ECF 1. On the same date, the State of Alaska filed a complaint in the same court asserting takings and other claims and seeking monetary relief. Complaint, *Alaska v. United States,* No. 1:24-cv-000396-RAH (Fed. Cl.), ECF 1.

Plaintiffs filed this case on March 15, 2024. ECF 1. The 146-paragraph Complaint alleges several claims challenging the Final Determination. *Id.* EPA filed its Answer to the Complaint on May 20. ECF 43. EPA has not yet filed its administrative record, but expects that the record will include approximately 40,000 documents. Alaska filed its own complaint on April 11, also challenging the Final Determination. Complaint, *Alaska v.*

---

[11] The Denial Decision also was consistent with the memorandum transmitting the Administrative Appeal Decision, which stated that EPA's Final Determination "must be evaluated to determine its effect on how [the Alaska District] proceeds in this matter." Denial Decision at 2.

*EPA*, No. 3:24-cv-00084-SLG (D. Alaska), ECF 1. EPA's answer in that case is due June 24, 2024.[12]

On June 7, 2024, Plaintiffs filed the Motion, in which Plaintiffs seek to supplement their Complaint with a new claim challenging the Corps' denial of PLP's permit application without prejudice. ECF 55. Plaintiffs also seek to add 46 new paragraphs and numerous additional allegations to their Complaint. *See* ECF 55, 55-3.

STANDARDS FOR SUPPLEMENTING AND AMENDING PLEADINGS

Plaintiffs seek leave to amend under Federal Rule of Civil Procedure 15(a)(2) and leave to supplement under Federal Rule of Civil Procedure 15(d). Motion at 6-7. In considering whether to grant leave to amend a complaint under Rule 15(a)(2), courts ascertain the presence of any of several factors, including futility of the amendment and prejudice to the opposing party. *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010); *see Foman v. Davis*, 371 U.S. 178 (1962). Courts "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

Under Rule 15(d), the court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). In deciding motions to supplement under Rule 15(d), courts consider both futility and prejudice to the opposing party. *See, e.g.*, *Cooks v. Cal. Dep't of Corr. and Rehab.*, No. 2:20-cv-1780 DAD KJN P, 2024 WL 170511, at *4 (E.D. Cal. Jan. 16, 2024); *Torres v. Ryan*, No. CV 12-0006-PHX-JAT, 2013 WL

---

[12] EPA anticipates that one or more parties will move to consolidate this case and the Alaska action.

4026870, at *5-*8 (D. Ariz. Aug. 7, 2013). "Rule 15(d) is intended to give district courts broad discretion in allowing supplemental pleadings." *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988). "While Rule 15(a) explicitly requires that leave to amend be freely granted, no comparable admonition applies to motions to supplement under Rule 15(d). Rather, the Court has broad discretion when deciding whether or not to allow a party to supplement his complaint." *Bradberry v. Schriro*, No. 05-1336-PHX-JAT, 2009 WL 971298, at *3 (D. Ariz. Apr. 8, 2009) (citing *U.S. for the Use of Atkins v. Reiten*, 313 F.2d 673, 675 (9th Cir. 1963)). Because the goal of Rule 15(d) is to promote judicial efficiency, a motion to supplement may be denied if granting the motion would, in effect, result in two separate actions within the same case. *Planned Parenthood of So. Arizona v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (per curiam). The court may deny a motion to supplement when the supplemental pleading could be the subject of its own action, and the court also may consider whether permitting the pleading will promote judicial efficiency. *See id.*

<div align="center">ARGUMENT</div>

## I. Adding the Claim Against the Corps Would be Futile.

This Court should deny the Motion because supplementing the Complaint with the claim that Plaintiffs seek to add against the Corps would be futile. *See, e.g., Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765-67 (9th Cir. 1986). Even assuming—without conceding—that the Corps' 2024 permit denial decision is justiciable, the challenge to that decision would fail on the merits. As Plaintiffs essentially concede in their Motion, the Corps had no discretion under the CWA to issue the permit. On that basis, the Court would readily uphold the Corps' denial without prejudice, thus rendering supplementation futile.

The Corps' authority under Section 404 is expressly subject to EPA's authority under Section 404(c). 33 U.S.C. § 1344(b) ("*Subject to subsection (c)* . . . , each such disposal site shall be specified for each such permit by the Secretary. . . .") (emphasis added). Thus, where EPA has exercised its discretion under Section 404(c) to prohibit or restrict the use of any defined area for specification as a disposal site because it has determined that the discharges into such area will have an unacceptable adverse effect, the Corps may not issue a Section 404 permit for the discharges in contravention of EPA's determination. *Id.* § 1344(b), (c); *see generally Mingo Logan Coal Co.*, 714 F.3d at 609-10, 612-14.

That, of course, is what occurred here. Based on unacceptable adverse effects to anadromous fishery areas, EPA issued the Final Determination. Final Determination at ES-1. The discharges proposed in PLP's Section 404 permit application—its 2020 Mine Plan—are explicitly subject to the prohibition in the Final Determination. Final Determination at 5-2 (prohibiting "the specification of waters of the United States within the Defined Area for Prohibition . . . as disposal sites for the discharge of dredged or fill material for the construction and routine operation of the 2020 Mine Plan."). While some of the infrastructure associated with the 2020 Mine Plan fell outside of the defined areas in the Final Determination, those portions of the infrastructure would not have separate utility and would not separately meet the purpose and need of the project. *Id.* at 6-7; *see id.* at 2. Accordingly, the Corps concluded that the Final Determination was a "controlling factor" that the Corps could not change, and denied PLP's application without prejudice on that basis. Denial Decision at 7.

Plaintiffs concede that the Corps premised its denial without prejudice on EPA's Final Determination. *See* Motion at 5, 9-10; Proposed Supplemented Compl., ¶¶ 7, 83-84. Plaintiffs do not allege, nor is there any basis for them to have done so, that the Corps could have issued the permit after EPA issued the Final Determination. Indeed, the Corps could not have granted the permit without violating the CWA.

Accordingly, based on the CWA, the Final Determination, and the Corps' Denial Decision, and consistent with Plaintiffs' concessions, supplementing the Complaint to add a challenge to the Corps' permit denial would be futile. The challenge would fail because the Act precluded the Corps from issuing the permit.[13] The Motion should be denied on that basis. *See Ecological Rts. Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (affirming dismissal of complaint without leave to amend based on futility even though there was no bad faith or risk of prejudice); *Gabrielson*, 785 F.2d at 765-67 (affirming denial of motion to add a new cause of action as futile because the new cause of action could be disposed of by summary judgment).[14]

---

[13]  Indeed, the merits of the Corps' Denial Decision would not survive a motion for failure to state a claim upon which relief can be granted or a motion for judgment on the pleadings. *See* Fed. R. Civ. P. 12(b)(6), 12(c).

[14]  In addition, the Corps' Denial Decision may not survive a motion to dismiss under Rule 12(b)(1), and EPA expressly reserves its rights to bring such a motion. For example, the Corps' Denial Decision may not be a "final agency action" subject to review under the APA. Even assuming, *arguendo*, that the Corps' denial without prejudice meets the first condition for finality, i.e., it marks the "consummation of the agency's decisionmaking process," it is not at all clear that it satisfies the second condition—i.e., that the agency action is one by which "rights or obligations have been determined," or from which "legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). The Corps' Denial Decision merely conformed to EPA's Final Determination, which is the final agency action that establishes the relevant limitations on specification of disposal sites for discharges associated with developing the Pebble deposit. Because the discharges proposed in PLP's

## II.    Supplementing the Complaint Would Prejudice EPA and Unnecessarily Confuse These Proceedings.

Allowing Plaintiffs to supplement their Complaint with a challenge to the Corps' Denial Decision would prejudice EPA and inject unwarranted confusion into this case. *See Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003); *Richson-Bey v. Watrous*, No. 1:21-cv-01482-AWI-GSA-PC, 2022 WL 14746909, at *7-*10 (E.D. Cal. Oct. 25, 2022).

As a threshold matter, allowing Plaintiffs to supplement the Complaint would be prejudicial because doing so would require the United States to litigate a challenge to a decision that may not be justiciable and, in any event, would be readily upheld on the merits. *See Or. Nat. Desert Ass'n*, 282 F.R.D. at 538 (allowing the supplemental pleading would prejudice the agency defendant by requiring it to litigate a meritless challenge).

In addition, allowing Plaintiffs to supplement the Complaint would prejudice EPA and inject unnecessary confusion by introducing documents and issues that are outside the scope of judicial review of EPA's Final Determination. The Complaint challenges the Final Determination, and judicial review of the Final Determination is limited to EPA's administrative record for that action. *See, e.g., Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-744 (1985). Information generated after EPA issued the Final Determination is not a

---

Section 404 permit application are explicitly subject to the Final Determination, the Corps' Denial Decision has no effect on whether Plaintiffs may make such discharges, and no new legal consequences flow from the Denial Decision. *See Or. Nat. Desert Ass'n v. McDaniel*, 282 F.R.D. 533, 537-38, 540 (D. Or. 2012) (denying motion to supplement on futility grounds, based on lack of final agency action, where plaintiff sought to add a claim challenging a new decision that did not newly authorize activities that were already authorized in the agency action being challenged in the underlying case). In addition, the Corps' Denial Decision is without prejudice, which further underscores that it does not have legal consequences. No judicial remedy is needed for PLP to resume pursuit of its permit in the event that the Final Determination ceases to apply. *See* 33 C.F.R. § 320.4(j)(1).

part of the record because that information was not considered by EPA at the time of the challenged decision. *See, e.g., Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971).

Plaintiffs' challenge to the Corps' subsequent Denial Decision, however, would introduce into this case post-decisional materials that are not part of EPA's record. The Corps' Denial Decision obviously would need to be part of the Corps' record in a case challenging that decision. In addition, Plaintiffs' Proposed Supplemented Complaint seeks to focus even more heavily on another post-decisional document, the Pacific Ocean Division's decision remanding the Corps' initial permit denial in 2020. *See, e.g.*, Proposed Supplemented Compl. ¶¶ 81-84, 135, 157, 174, 187. Allowing Plaintiffs to introduce their challenges to the Corps' 2024 permit denial would allow Plaintiffs to blur the distinctions between the two agency records and further muddy the issues before this Court, which would prejudice EPA and cause unnecessary confusion in addressing the merits of EPA's Final Determination.

Relatedly, the Motion seeks to add numerous new allegations (including 46 new paragraphs) to the Complaint. *See, e.g.*, Proposed Supplemented Compl. at pp. 14-18, 20-23, 44-49. But none of those allegations is necessary to challenge the Final Determination, which the Complaint already has put at issue. In addition, the vast majority of the new allegations are not relevant to the Corps' 2024 Denial Decision that Plaintiffs now seek to challenge. Indeed, the new allegations barely even address that decision. Instead, those allegations focus almost exclusively on the Corps' 2020 Record of Decision, which has been superseded and is not the subject of the challenge that Plaintiffs seek to add to this case. *See, e.g.*, Proposed Supplemented Compl. ¶¶ 170-192. Of the 23 paragraphs in the new claims seeking to

challenge the 2024 Corps' Denial Decision, at least 18 address the Corps' 2020 Record of Decision and not the 2024 Denial Decision. *Id.*

Furthermore, Plaintiffs' new allegations addressing the 2020 Record of Decision—in the context of challenging the 2024 Denial Decision—seem crafted to sow confusion. In those allegations, Plaintiffs improperly contend that the Corps "allowed political interference to inform" its 2020 permit denial. Proposed Supplemented Compl. ¶¶ 170-187. As a preliminary matter, those allegations ignore the rule that courts are not to "reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons." *Dep't of Comm. v. New York*, 588 U.S. 752, 781 (2019). Indeed, agency "decisions are routinely informed by unstated considerations of politics, the legislative process, public relations, interest group relations, foreign relations, and national security concerns (among others)," and so courts "may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an Administration's priorities." *Id.* Even setting that consideration aside, Plaintiffs' attempt to focus on alleged "political interference" with a superseded decision by the Corps only highlights that allowing supplementation would prejudice EPA and unnecessarily confuse these proceedings. This matter should focus on the merits of EPA's Final Determination, based appropriately on the Final Determination and the thousands of other documents, including many not considered by the Corps, in EPA's administrative record.

## III. The Court Should Deny Supplementation Because the Claims Against the Corps Would Introduce a Separate and New Cause of Action.

Plaintiffs' Motion also should be denied because the potential new claims would introduce a new cause of action that would more appropriately be challenged in a separate

lawsuit. In addition, denying the Motion would not prejudice Plaintiffs because they could seek to pursue their new claim—if they truly believe a challenge to the Corps' permit denial without prejudice is worth pursuing—in another proceeding.

Courts in the Ninth Circuit, including this Court, have held that leave to file a supplemental complaint under Rule 15(d) is improper if it introduces a "separate, distinct and new cause of action" that more appropriately should be the subject of a separate action. *See*, *e.g.*, *Planned Parenthood*, 130 F.3d at 402-03 (holding that "it was an abuse of discretion to allow plaintiffs to supplement the complaint . . . instead of requiring them to initiate a new suit") (citations omitted); *United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Servs.*, No 3:13-cv-00104-TMB, 2021 WL 5410890, at *3, *5 (D. Alaska Nov. 18, 2021) (denying motion to supplement with claims that should have been brought in a separate action); *Bradberry*, 2009 WL 971298, at *3 (denying motion to file supplemental claims because the new "claims could constitute the basis for a separate cause of action"); *Mullen v. Surtshin*, 590 F. Supp.2d 1233, 1238, 1243 (N.D. Cal. 2008) (denying motion to supplement stating that, "[s]hould plaintiff wish to pursue this separate cause of action, he may file a separate suit"); *Flores v. Metro Valley Painting Corp.*, No. CV-06-2675-PHX-PGR, 2008 WL 4541414, at *2 (D. Ariz. Oct. 8, 2008) (denying motion to file supplemental complaint even though the proposed new claim was somewhat related to the original claims).

Allowing Plaintiffs to supplement here would introduce a new challenge to a separate agency decision, taken by a separate agency, with its own administrative record. While the challenges are related, they are distinct. And as discussed above, allowing supplementation would prejudice EPA and insert unnecessary confusion into this case. Accordingly, this

Court should follow the other courts that have denied motions to supplement because the new challenges would introduce a "separate, distinct and new cause of action" that more appropriately should be the subject of a separate action.

Furthermore, denying supplementation would not prejudice Plaintiffs' ability to raise their challenge. If Plaintiffs wish to contend, despite justiciability issues and contrary to the clear mandates of the CWA, that the Corps' denial of the permit without prejudice was unlawful, then Plaintiffs may assert that challenge in a separate lawsuit. That case would then focus on reviewability, the Corps' administrative record for its Denial Decision, and allegations relevant to challenging that decision. In addition, requiring Plaintiffs to pursue that approach would have the significant benefit of not prejudicing EPA or confusing the proceedings in this case.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Supplement.

Respectfully submitted on June 21, 2024,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division

S. LANE TUCKER
United States Attorney
District of Alaska

/s/ Mark A. Nitczynski
MARK A. NITCZYNSKI
United States Department of Justice - ENRD
Environmental Defense Section
999 18th Street; South Terrace, Suite 370
Denver, CO 80202
Phone: (303) 844-1498

Email: mark.nitczynski@usdoj.gov

ELISABETH H. CARTER
United States Department of Justice - ENRD
Environmental Defense Section
P.O. Box 7611
Washington, D.C. 20044
Phone: (202) 598-3141
Email: elisabeth.carter@usdoj.gov

*Attorneys for the United States*