James C. Feldman (AK Bar No. 1702003)
Jeffrey M. Feldman (AK Bar No. 7605029)
SUMMIT LAW GROUP PLLC
315 Fifth Avenue South, Suite 1000
Seattle, WA 98104
Phone: (206) 676-7000
jamesf@summitlaw.com
jefff@summitlaw.com

*Attorneys for Bristol Bay Economic Development Corporation*

*Counsel for additional Intervening Parties are identified at the end of this pleading*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| NORTHERN DYNASTY MINERALS LTD. and PEBBLE LIMITED PARTNERSHIP,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Defendant. | No. 3:24-cv-00059-SLG |

**REPLY IN SUPPORT OF MOTION TO INTERVENE BY UNITED TRIBES OF BRISTOL BAY, BRISTOL BAY NATIVE ASSOCIATION, BRISTOL BAY ECONOMIC DEVELOPMENT CORPORATION, BRISTOL BAY NATIVE CORPORATION, COMMERCIAL FISHERMEN FOR BRISTOL BAY, AND BRISTOL BAY REGIONAL SEAFOOD DEVELOPMENT ASSOCIATION**

Northern Dynasty Minerals Ltd. ("NDM"), a Canadian mining conglomerate, and Pebble Limited Partnership ("PLP") NDM (collectively "Plaintiffs"),[1] oppose the joint motion to intervene filed by six organizations[2] representing the Tribes, communities, fishermen, and Alaska Native people of Bristol Bay who stand to suffer most from Plaintiffs' efforts to develop the Pebble Mine (collectively, "Intervenors"). In attempting to silence the voices of Bristol Bay, Plaintiffs ignore the Ninth Circuit's "liberal policy in favor of intervention,"[3] trivialize Bristol Bay Intervenors' undeniable and significant interests in Bristol Bay's pristine watershed, and disregard Intervenors' participation in related prior litigation. Because they meet all requirements to intervene both as of right and permissively, Intervenors ask that the Court grant their motion to intervene.

## I. ARGUMENT ON REPLY

### A. Bristol Bay Intervenors Satisfy the Requirements for Intervention as of Right.

Plaintiffs concede that the motion to intervene is timely. In opposing the motion, Plaintiffs contend (1) Intervenors do not have significantly protectable interests in the litigation, (2) disposition in Plaintiffs' favor will not impair their cognizable interests, and (3) EPA adequately represents Intervenors' interests.[4] Plaintiffs are mistaken.

#### 1. Intervenors have significant protectable legal interests in this litigation.

Plaintiffs dismiss Intervenors' significant subsistence, cultural, economic, statutory, and procedural interests in this litigation as nothing more than "a general interest in Bristol Bay natural resources."[5] Underscoring Plaintiffs' fundamental failure to acknowledge

---

[1] Dkt. 3.

[2] The six organizations are United Tribes of Bristol Bay ("UTBB"), Bristol Bay Native Association ("BBNA"), Bristol Bay Economic Development Corporation ("BBEDC"), Bristol Bay Native Corporation ("BBNC"), Commercial Fishermen for Bristol Bay ("CFBB"), and Bristol Bay Regional Seafood Development Association, Inc. ("BBRSDA").

[3] *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2003) (citations omitted).

[4] Dkt. 56 at 5.

[5] *Id.* at 6.

Intervenors' deep connection to the region, Plaintiffs' compares them to consumers who have undifferentiated and generalized interests in paying lower electric rates.[6] The comparison is misplaced. Plaintiffs' proposed mine presents an existential threat to the people of Bristol Bay, a truth made clear in the Intervenors' motion to intervene and supporting declarations.[7]

Relatedly, Intervenors have substantial interests in defending their investment of time and resources in the lengthy administrative process that resulted in the Clean Water Act §404(c) protections for Bristol Bay,[8] providing extensive lay and expert witness testimony, written comments, and thousands of pages of detailed technical information during the EPA's administrative process.[9] Intervenors' interests are both specific and significant.

Cases relied on by Plaintiffs on what constitutes a "protectable interest" are distinguishable. In *Westlands Water District v. United States*, a local California agency sued the federal government, arguing a breach of contractual rights.[10] An environmental non-profit sought to intervene, arguing it had an interest in the extent of water exported pursuant to the contracts.[11] The court denied intervention as of right, finding the non-profit's interest was general and applicable to all, was based on public policy, and that the dispute was, fundamentally, a contract dispute.[12] Here, however, Intervenors' members are Tribal members, fishermen, and residents who have significant, cultural, and economic ties to

---

[6] *Id.* at 6–7.

[7] Dkt. 21 at 9–13; Dkt. 21-1 (UTBB declaration); Dkt. 21-2 (BBNA declaration); Dkt. 21-3 (BBEDC declaration); Dkts. 21-4 and 21-5 (BBNC declarations); Dkt. 21-6 (CFBB declaration); Dkt. 21-7 (BBRSDA declaration).

[8] *See*, *e.g.*, Dkt. 21-1 ¶ 9 (detailing UTBB's participation); Dkt. 21-2 ¶ 8 (detailing BBNA's engagement) Dkt. 21-3 ¶ 16 (detailing BBEDC's participation); Dkt. 21-5 ¶¶ 8–13 (detailing BBNC's participation).

[9] *Id.*

[10] *Westlands Water District v. United States*, 700 F.2d 561, 562 (9th Cir. 1983).

[11] *Id.*

[12] *Id*. at 563.

Bristol Bay. The contract dispute in *Westlands* is not at all comparable. Nor is *Southern California Edison Co*.,[13] where the Ninth Circuit affirmed denial of intervention based on the intervenor's rights in a contingent, unsecured claim against a third-party debtor.[14]

Plaintiffs' contention that Intervenors' interests are not related to the outcome of this case are similarly unavailing.[15] Relying on *Mishewal Wappo Tribe of Alexander Valley v. Salazar*,[16] Plaintiffs disingenuously suggest that their success in this lawsuit does not necessarily mean that they will *actually* build the mine. In *Mishewal*, plaintiffs sought to secure tribal recognition and for the Department of the Interior ("DOI") to take certain historical Tribal lands into trust.[17] The district court noted the proposed intervenors' concern that future trust lands might someday be used to build a casino was speculative, remote, and subject to a separate permitting regime.[18] In contrast, there is nothing speculative about Plaintiffs' efforts to develop the Pebble Mine. Developing Pebble Mine *is* the goal and reason for this litigation; Plaintiffs indisputably challenge the very regulatory and permitting processes that prevent them from developing their mine.

The more applicable case is *Alaska v. National Marine Fisheries Service*.[19] There, the plaintiff's suit sought to delist the ringed seal under the Endangered Species Act.[20] The Center for Biological Diversity sought to intervene based on its longstanding interest in conservation of the ringed seal, its involvement in the process that led to the listing, and its

---

[13] *Southern California Edison Co. v. Lynch*, 307 F. 3d 794 (9th Cir. 2002).
[14] *Id.* at 803.
[15] Dkt. 56 at 8.
[16] No. 5:09-cv-02502-EJD, 2012 WL 4717814 (N.D. Cal. Sept. 28, 2012).
[17] *Id.* at *1.
[18] *Id.* at *6.
[19] No. 3:22-cv-00249-JMK, 2023 U.S. Dist. LEXIS 60255, at *1 (D. Alaska Apr. 5, 2023).
[20] *Id.*

previous status as intervenor in litigation related to the listing.[21] In opposing intervention, plaintiff argued that the Center had no protectible interest because the suit, on its own, could not result in delisting.[22] The court rejected that argument, holding the Center had established a significant protectable interest.[23] Just as the Center had an interest based on its prior involvement in the process and previous status as intervenor in litigation related to the same issue, so too do Intervenors have an interest based on their significant cultural and economic ties, involvement in the process that led to the EPA's decision, and previous status as intervenors in litigation regarding the Pebble Mine.[24]

**2. Intervenors' protectable interests in the litigation will be impaired or impeded if intervention is denied.**

Plaintiffs contend Intervenors' interests will not be impaired or impeded if the case is decided in Plaintiffs' favor because their requested relief—vacatur of the EPA's Final Determination—will not preclude future participation in permitting processes.[25] Neither the caselaw cited by Plaintiffs nor the Court's resolution of motions to intervene in prior Pebble litigation support Plaintiffs' claim. Applying *National Marine Fisheries Service*, Intervenors clearly have interests that will be impaired or impeded if intervention is denied.

Plaintiffs cite *Greene v. United States*[26] to support their argument. *Greene* involved the Tulalip Tribe's efforts to intervene in another tribe's lawsuit seeking federal recognition. The court denied the motion, finding the lawsuit did not implicate the Tulalip Tribe's treaty

---

[21] *Id.* at *2-3.
[22] *Id.* at *5.
[23] *Id.* at *7, 26.
[24] *See*, *Pebble Limited Partnership v. EPA*, 3:14-cv-00097-HRH (D. Alaska July 29, 2014), ECF No. 148 (granting UTBB's motion to intervene) and *Pebble Limited Partnership v. EPA*, 3:14-cv-00097-HRH (D. Alaska August 18, 2014), ECF No. 182 (granting BBNC's motion to intervene).
[25] Dkt. 56 at 9–11.
[26] 996 F.2d 973 (9th Cir. 1993).

rights.[27] The Ninth Circuit affirmed, concluding the Tulalip Tribe's interest in protecting its treaty rights had no bearing on a different tribe's suit for federal recognition and holding the Tulalip Tribe's treaty rights would not be practically impaired because there was separate ongoing litigation directly addressing that issue in which the Tulalip Tribe was already a party—a proceeding with independent legal effect.[28]

Here, Intervenors seek to intervene to preserve the Final Determination's protections for Bristol Bay, protections that are directly challenged by Plaintiffs in this suit. Intervenors expended substantial effort and resources to secure such protections in defense of their cultures and livelihoods.[29] Unlike *Greene*, the current lawsuit directly addresses Plaintiffs' efforts to permit and construct the Pebble Mine, and there is no other parallel legal proceeding with independent legal effect in which Intervenors can protect their interests.

Plaintiffs' reliance on an unpublished decision in *Center for Biological Diversity v. EPA*[30] is similarly misplaced.[31] There, a trade association sought to intervene in a citizen suit against the EPA under the Clean Air Act.[32] The court held that even if the trade association had a significantly protectable interest in having sufficient time to participate in the rulemaking process, the trade association failed to demonstrate that disposition of the case would impair that interest.[33] Here, Intervenors' specific and significant subsistence, cultural, economic, statutory, and procedural interests would be deeply impaired by an unfavorable

---

[27] *Id.* at 975.
[28] *Id.* at 976–77.
[29] *See* n. 8 *supra*; n. 38 *infra*.
[30] 2012 WL 909831 (N.D. Cal. Mar. 16, 2012).
[31] Dkt. 56 at 10. Plaintiffs also cite to *Mishewal Wappo Tribe*, distinguished in Part I.A.1 *supra*.
[32] 2012 WL 909831 at *1.
[33] *Id.* at *5.

ruling in this case.[34] Removing EPA's §404(c) protections would harm Intervenors' interests.[35]

Plaintiffs contend the Court's prior decision to grant UTBB and BBNC permissive intervention in prior Pebble litigation compels denial of intervention of right in this case.[36] But the procedural posture and context supporting that decision a decade ago is materially different than in the present litigation. Unlike in 2014, Plaintiffs applied for a Clean Water Act permit, the Army Corps denied it, and EPA issued its Final Determination.[37] Plaintiffs' requested relief would negate more than a decade of work by Intervenors, impeding their interests in maintaining Bristol Bay's traditional ways of life, its vibrant and healthy ecosystem, and the livelihoods that depend on Bristol Bay's natural abundance. As such, Intervenors satisfy the third factor for intervention as of right.

**3. Intervenors' interests are not adequately represented by another party.**

Finally, Plaintiffs assert that the motion should be denied because the EPA adequately represents Intervenors' interests in this litigation.[38] The burden of demonstrating inadequate representation is "minimal."[39] One need only show their interests may be different from the

[34] Dkt. 21 at 9–13; Part I.A.1 *supra*.

[35] *See, e.g.*, Dkt. 21-1 ¶ 16 (UTBB declarant explaining that Pebble mine "represents an existential threat to our traditional ways of life," and that the EPA process has "consumed much of our time and resources that could have contributed to our communities in other ways."); Dkt. 21-5 ¶ 15 (BBNC declarant explaining that if EPA's 404(c) protections are removed, "the uncertainty and cultural, social, and economic stress that uncertainty engenders will continue to impact BBNC and its shareholders.").

[36] Dkt. 56 at 10–11; *Pebble Ltd. P'ship v. EPA*, 3:14-cv-00097-HRH (D. Alaska July 29, 2014), ECF No. 148 at *3; *id.* (D. Alaska Aug. 18, 2014) ECF No. 182.

[37] Dkt. 55; Dkt. 55-2 at 50.

[38] Dkt. 56 at 11–14.

[39] *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011).

existing parties' interests such that their representation "may be" inadequate.[40] Intervenors easily surpass this low threshold in two ways.

***First***, contrary to Plaintiffs' suggestion, Intervenors offer more to this litigation than just a "unique perspective."[41] They represent sovereign Tribes and the cultural, subsistence, and economic interests that define Bristol Bay.[42] No one is more familiar with Bristol Bay than Alaska Native interests represented by Intervenors. This point is also underscored by the federal government's formal consultation with Tribes and meetings with other Bristol Bay stakeholders.[43] Notably, Plaintiffs ignore this key history, including the government-to-government relationship between the United States and the Tribes.[44]

***Second,*** prior Pebble Mine litigation demonstrates how different EPA's interests, as a federal regulatory agency, are from Intervenors' interests. Although EPA is presently defending its decision to exercise its §404(c) authority, the agency's positions have shifted over the years. Indeed, EPA previously withdrew a proposed §404(c) determination for Bristol Bay.[45] EPA's capitulation was so completely at odds with Intervenors' position and interests that four of the six Intervenors successfully sued EPA based on the withdrawal.[46] That such action was required demonstrates that EPA's representation of Intervenors'

---

[40] *Id.*; *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823.

[41] Dkt. 56 at 12.

[42] Dkt. 21 at 9; Dkt. 21-1 ¶ 3; Dkt. 21-2 ¶ 4.

[43] Dkt. 21-1 ¶¶ 8–9; Dkt. 32-32 at 28.

[44] Dkt. 21 at 18–19; Dkt. 21-1 ¶ 9; Dkt. 21-2 ¶ 12; *see also* Dkt. 56 at 11–14.

[45] *Pebble Ltd. P'ship v. EPA*, 3:14-cv-000171-HRH (D. Alaska May 12, 2017), ECF No. 299.

[46] *Bristol Bay Econ. Dev. Corp. v. Pirzadeh*, Case No. 3:19-cv-00265-SLG (D. Alaska Oct. 8, 2019), ECF No. 1; *see also Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 757 (9th Cir. 2021).

interests "may be" inadequate.[47] This Court has held that this type of prior dispute establishes an intervenor's interests are not adequately represented, particularly as to a right of future appeal.[48]

In sum, Intervenors' distinct interests and perspectives as non-federal entities with sovereign, subsistence, cultural, and economic stakes in the controversy are more than sufficient to satisfy the "minimal" inadequacy of representation factor for intervention as of right under Rule 24(a).[49]

**B. Intervenors Also Satisfy the Requirements for Permissive Intervention.**

Courts have broad discretion in permitting parties to intervene under Rule 24(b).[50] If this Court is not inclined to grant intervention as of right, Intervenors request that the Court grant permissive intervention pursuant to Rule 24(b), as Judge Holland did for UTBB and BBNC in prior Pebble-related litigation. Plaintiffs' primary objection to Intervenors' permissive intervention is that it might result in delay or duplicative briefing.[51] Plaintiffs'

---

[47] *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001); *see also Fresno Cnty. v. Andrus*, 622 F.2d 436, 438–39 (9th Cir. 1980) (holding government did not adequately represent intervenor's interests where intervenor previously filed suit against government forcing agency to engage in rulemaking that was the subject of the lawsuit in which intervention was sought).

[48] *See, e.g.*, *United States v. Alaska*, No. 1:22-cv-00054-SLG, 2023 U.S. Dist. LEXIS 183970, at *9 (D. Ala. Oct. 12, 2023).

[49] *See Sw. Ctr. For Biological Diversity*, 268 F.3d at 823–24 (granting intervention where "Applicants would likely offer important elements to the proceedings that the existing parties would likely neglect."); *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (holding government's representation of intervenor's interests inadequate where "the government must represent the broad public interest, not just the economic concerns of the [intervenor]."); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (holding EPA may not adequately represent intervenor's interests where there may be honest disagreements on legal and factual matters and interests may not coincide).

[50] *City of L.A.*, 288 F.3d at 397–98; *Pebble Ltd. P'ship*, 3:14-cv-00097-HRH (D. AK.) ECF Nos. 148 and 182.

[51] Dkt. 56 at 15–20.

concerns are misplaced and have not been borne out in prior Pebble litigation. Indeed, Intervenors want the case resolved expeditiously; the specter of the proposed Pebble Mine has long haunted the region for too long.[52]

To ensure efficient participation, the Bristol Bay Intervenors will continue to file joint pleadings.[53] This Court routinely adjudicates cases involving multiple intervenors without undue delay, burden, or prejudice to the parties and Plaintiffs offer no compelling reason to think this case will be any different. Intervenors respectfully submit that they meet all criteria for permissive intervention under Rule 24(b).

### C. Intervenors Will Abide by Any Briefing and Case Management Schedules Established by the Court.

Plaintiffs suggest that Intervenors participation be limited to something less than full party status.[54] This Court has previously declined invitations to preemptively hamstring an intervenors' participation in litigation and should do so again here.[55] "Indeed, intervening

---

[52] *See*, *e.g.*, Dkt. 21-2 ¶ 6 ("For decades the proposed Pebble mine has deeply troubled our member Tribes."); Dkt. 21-4 ¶ 13 ("The uncertainty associated with the proposed Pebble Mine has gone on for decades.").

[53] Plaintiffs contend that their difficulty securing a last-minute extension of time to file their opposition brief is illustrative of what lies ahead if the Court grants the motion to intervene. Dkt. 56 at 17. Not so. Plaintiffs waited until the day before their response was due to request Intervenors' position on an extension. They now bemoan the fact that they did not hear back from each party before filing their motion for extension six hours later—an avoidable fire drill of Plaintiffs' own making. Counsel for Bristol Bay Economic Development Corporation will serve as the primary point of contact for Plaintiffs' counsel for Intervenors, and if they afford reasonable notice, Plaintiffs' concerns are a non-issue.

[54] Dkt. 56 at 18–20. It is unclear why Plaintiffs anticipate discovery or depositions in a case that will be decided on the administrative record. *See Nw. Coal. for Alternatives to Pesticides v. U.S. E.P.A.*, 920 F. Supp. 2d 1168, 1172 (W.D. Wash. 2013) ("In a record review case under the [Administrative Procedure Act], the scope of judicial review is limited to the administrative record.") (citing 5 U.S.C. § 706).

[55] *See*, *e.g.*, *Cook Inletkeeper v. Raimondo*, No. 3:19-cv-00238-SLG, (D. Alaska Oct. 10, 2019), ECF No. 23 (granting motion to intervene and declining to adopt plaintiffs' suggested briefing and page limitations); *Alaska Wildlife Alliance v. U.S. Fish & Wildlife*

parties have full party status in the litigation commencing with the granting of the motion to intervene."[56] The conditions proposed by Plaintiffs are excessive, unnecessary, and would unjustifiably restrict Intervenors' ability to protect their interests in this litigation. If granted intervention, Intervenors will participate in discussions regarding the case schedule in good faith and will abide by any case management orders the same as the other parties. Additionally, Intervenors will endeavor to coordinate their briefing with other parties wherever possible.

## II. CONCLUSION

For the reasons set out in the motion to intervene and in this reply, the Bristol Bay Intervenors respectfully request that the Court grant the motion to intervene as of right under Rule 24(a), or alternatively grant permissive intervention under Rule 24(b) with full rights of participation.

DATED this 28th day of June 2024.

SUMMIT LAW GROUP PLLC
*Attorneys for Bristol Bay Economic Development Corporation*

By: *s/ James C. Feldman*
James C. Feldman (AK Bar No. 1702003)
Jeffrey M. Feldman (AK Bar No. 7605029)

---

*Serv.*, No. 3:21-cv-00209-SLG, (D. Alaska Nov. 2, 2021), ECF No. 15 (granting intervenor-defendant's motion to intervene with "full rights of participation"); *N. Alaska Env't Ctr. v. U.S. Dep't of the Interior*, No. 3:18-cv-00030-SLG (D. Alaska Apr. 16, 2018), ECF No. 22 (same).

[56] *United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1378 (9th Cir. 1997).

BESSENYEY & VAN TUYN, L.L.C.
*Attorneys for Bristol Bay Native Corporation*

By: *s/ Peter Van Tuyn*
Peter Van Tuyn (AK Bar No. 8911086)
Karen Schmidt (AK Bar No. 1211113)

NATIVE AMERICAN RIGHTS FUND
*Attorneys for United Tribes of Bristol Bay and Commercial Fishermen for Bristol Bay*

By: *s/ Matthew N. Newman*
Megan R. Condon (AK Bar No. 1810096)
Matthew N. Newman (AK Bar No. 1305023)

BRISTOL BAY NATIVE ASSOCIATION
*Attorney for Bristol Bay Native Association*

By: *s/ Felipe Farley*
Felipe Farley (AK Bar. No. 1904029)
*Application for admission to D. Alaska pending*

CASHION GILMORE & LINDEMUTH
*Attorney for Bristol Bay Regional Seafood Development Association, Inc.*

By: *s/ Scott Kendall*
Scott Kendall (AK Bar. No. 0405019)

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2024, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court of Alaska by using the CM/ECF system. Participants in this Case No. 3:24-cv-00059-SLG who are registered CM/ECF users will be served by the CM/ECF system.

SUMMIT LAW GROUP, PLLC

*Denise Brandenstein*
**Denise Brandenstein,** Legal Assistant
***deniseb@summitlaw.com***