Paul A. Werner (admitted *pro hac vice*)
Steven P. Hollman (admitted *pro hac vice*)
Abraham J. Shanedling (admitted *pro hac vice*)
Hannah J. Wigger (admitted *pro hac vice*)
Christopher L. Bauer (admitted *pro hac vice*)
Alexandra Bustamante (admitted *pro hac vice*)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C. 20006-6801
Telephone: (202) 747-1900
pwerner@sheppardmullin.com
shollman@sheppardmullin.com
ashanedling@sheppardmullin.com
hwigger@sheppardmullin.com
cbauer@sheppardmullin.com
abustamante@sheppardmullin.com

Austin Williams
(AK Bar No. 0911067)
TROUT UNLIMITED
600 Clipper Ship Court
Anchorage, AK 99515
Telephone: (907) 227-1590
Austin.Williams@tu.org

*Attorneys for Proposed Intervenor-Defendant Trout Unlimited*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

NORTHERN DYNASTY MINERALS LTD. and PEBBLE LIMITED PARTNERSHIP,

Plaintiffs,

v.

ENVIRONMENTAL PROTECTION AGENCY,

Defendant.

Case No. 3:24-cv-00059-SLG

**REPLY BRIEF IN SUPPORT OF
TROUT UNLIMITED'S MOTION TO INTERVENE**

# TABLE OF CONTENTS

**Page**


Introduction ..................................................................................................... 1

Argument ......................................................................................................... 2

I. Trout Unlimited Has Met Its Burden To Intervene As Of Right. ........................... 2

A. Trout Unlimited Has A Significant Protectable Interest In Protecting Bristol Bay And Upholding The Final Determination. ................................ 2

B. A Ruling In PLP's Favor May Impair Trout Unlimited's Ability To Protect Its Significant Interests. .................................................................. 4

C. Trout Unlimited Has More Than Met Its "Minimal" Burden To Show That The Government May Not Adequately Protect Its Interests. ......................................................................................... 7

II. Trout Unlimited Is Also Entitled To Permissive Intervention In Any Event. ......... 8

III. The Court Should Not Unreasonably Condition Trout Unlimited's Participation As Intervenor. ........................................................................ 10

Conclusion ...................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases** **Page(s)**


*Alaska Indus. Dev. & Exp. Auth. v. Biden*,
No. 3:21-cv-00245, 2022 WL 1137312 (D. Alaska Apr. 18, 2022) (Gleason, J.) ........ 3, 6, 7, 9, 10

*Alaska v. Jewell*,
No. 3:14-cv-00048, 2014 WL 12521321 (D. Alaska June 10, 2014) (Gleason, J.) ........ 3, 5, 6, 7, 8, 9

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
647 F.3d 893 (9th Cir. 2011) ........ 3, 4, 5

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) ........ 4

*Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) ........ 4

*N. Alaska Env't. Ctr. v. De La Vega*,
No. 3:20-cv-00187, 2021 WL 1093614 (D. Alaska Mar. 22, 2021) (Gleason, J.) ........ 7

*Pebble Ltd. P'ship v. EPA*,
No. 3:14-CV-0097-HRH, 2014 WL 12528658 (D. Alaska Aug. 19, 2014) ........ 8, 11

*Sagebrush Rebellion, Inc. v. Watt*,
713 F.2d 525 (9th Cir. 1983) ........ 3, 4

*Trbovich v. United Mine Workers*,
404 U.S. 528 (1972) ........ 6

*Trout Unlimited v. Pirzadeh*,
1 F.4th 738 (9th Cir. 2021) ........ 9

*United States v. City of L.A.*,
288 F.3d 391 (9th Cir. 2002) ........ 9

*Utah Ass'n of Cntys. v. Clinton*,
255 F.3d 1246 (10th Cir. 2001) ........ 7, 8

*Venegas v. Skaggs*,
867 F.2d 527 (9th Cir. 1989) .......... 8

*Washington State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*,
684 F.2d 627 (9th Cir. 1982) .......... 4

**Other Authorities**

Fed. R. Civ. P. 24.......... 8

Proposed Intervenor-Defendant Trout Unlimited submits this reply brief in support of its Motion to Intervene ("Mot.") (ECF No. 23).

## INTRODUCTION

In opposition to Trout Unlimited's motion to intervene, Plaintiffs Northern Dynasty Minerals Ltd. and Pebble Limited Partnership (collectively, "PLP") do not dispute that Trout Unlimited's motion is timely; that Trout Unlimited's members have important interests in protecting the Bristol Bay watershed and upholding the Environmental Protection Agency's ("EPA's") Final Determination; or that Trout Unlimited has participated in every litigation and administrative proceeding of the proposed Pebble Mine for the last decade. Instead, PLP argues Trout Unlimited has no real interest in this litigation that would be impacted by its outcome, that the Government adequately protects Trout Unlimited's interests, and that intervention may be inconvenient.

PLP is mistaken on all accounts. As the Ninth Circuit and this Court have repeatedly recognized, Trout Unlimited's interests in the Bristol Bay watershed – and the Final Determination removing it from commercial mining development – are significant protectable interests that support intervention. The outcome of this case may impair those interests by undoing the lawful, science-based protections for Bristol Bay for which Trout Unlimited has long advocated, endangering the watershed and the livelihoods of Trout Unlimited's members. That result would harm Trout Unlimited regardless of any

subsequent administrative or permitting process. The EPA has broader interests than Trout Unlimited and cannot reasonably be expected to make the same arguments as Trout Unlimited. Nor is perceived inconvenience even a recognized basis for denying intervention.

Trout Unlimited is entitled to intervene as a matter of right or – at the very least – permissively. And the Court should permit Trout Unlimited to do so free of PLP's proposed restrictions that are intended to and would undermine its ability to protect its interests here. Instead, the Court should just require the parties to coordinate to avoid needless duplication and abide by the existing scheduling order – as this Court has done in similar earlier litigation.

## ARGUMENT

### I. Trout Unlimited Has Met Its Burden To Intervene As Of Right.

#### A. Trout Unlimited Has A Significant Protectable Interest In Protecting Bristol Bay And Upholding The Final Determination.

Trout Unlimited has significant, protectable legal interests, which support its intervention as of right here. Mot. at 8–10. To avoid that conclusion, PLP argues that Trout Unlimited has only a "general interest" in Bristol Bay. Response to Trout Unlimited's Motion to Intervene (ECF No. 57) ("Response") at 5–7. That is wrong. Trout Unlimited has legally-recognized protectable interests in preserving the Bristol Bay watershed and in upholding the Final Determination that does just that. Response at 5–7.

PLP does not seriously contest Trout Unlimited's protectable interest in the unique wildlife, pristine water, and coldwater fisheries of the Bristol Bay watershed. Response at 8; Mot. at Ex. A ("Williams Decl.") ¶¶ 2–3; Ex. B ("Kraft Decl.") ¶¶ 5–9; Ex. C ("Lyon Decl.") ¶¶ 8–13. Nor could it. The Ninth Circuit and this Court have consistently held that an interest in conserving the "wildlife and wilderness character" of land "for subsistence and recreational purposes" is a significant protectable interest. *Alaska v. Jewell*, No. 3:14-cv-00048, 2014 WL 12521321, at *2 (D. Alaska June 10, 2014) (Gleason, J.); *see also Alaska Indus. Dev. & Exp. Auth. v. Biden*, No. 3:21-cv-00245, 2022 WL 1137312, at *2 (D. Alaska Apr. 18, 2022) (Gleason, J.) (finding "legally protected" interests in land for "subsistence, recreation, and wilderness preservation"); *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897–98 (9th Cir. 2011) (recognizing interest in preserving the wilderness of a federally-protected area was a significant protectable interest); *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527–28 (9th Cir. 1983) (finding protectable interest when an adverse decision would impact an interest in the preservation of the environment). Trout Unlimited's members do not have merely some "general" interest in this litigation – its outcome will directly impact their lives and livelihoods. Williams Decl. ¶¶ 2–3; Kraft Decl. ¶¶ 5–9; Lyon Decl. ¶¶ 8–13.

But even if Trout Unlimited's interests were "general" ones – they are not – PLP ignores Trout Unlimited's separate protectable interest in upholding the Final Determination. Response at 5–8. Trout Unlimited has fought for over two decades to

secure the Final Determination. ECF No. 23, Ex. A ¶¶ 4–5. The Ninth Circuit has recognized an interest and a right to intervene in an action to uphold the legality of a specific measure in which an interest group has been significantly involved. *See Washington State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982) (finding public interest group that sponsored a statute as initiative measure was entitled to intervene as of right in action challenging statute's constitutionality); *see also Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397–98 (9th Cir. 1995); *Sagebrush*, 713 F.2d at 526; *Citizens for Balanced Use*, 647 F.3d at 897–98. The same goes here.

### B. A Ruling In PLP's Favor May Impair Trout Unlimited's Ability To Protect Its Significant Interests.

PLP is incorrect that resolution of this case will not impair Trout Unlimited's interests. As an initial matter, the question is not whether the case *will impair* Trout Unlimited's interests—it is whether it *may impair* those interests. *Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006). That is why courts in this Circuit have "little difficulty" finding the disposition of a case "may, as a practical matter, affect" an identified interest. *Id.* Here, this case may impair Trout Unlimited's interests because it would undo the EPA's protection for the Bristol Bay watershed that it has fought hard to secure, endanger its members' livelihoods, and undermine Trout Unlimited's efforts to "conserv[e] and enjoy[ ]" Bristol Bay's unspoiled coldwater fisheries. *See Citizens for*

*Balanced Use*, 647 F.3d at 898; Williams Decl. ¶¶ 2–3; Kraft Decl. ¶¶ 5–9; Lyon Decl. ¶¶ 8–13.

PLP's assertions that the outcome of this case will have no impact on Trout Unlimited's interests because the case will not automatically grant PLP a permit are mistaken. Response at 8–10. PLP has filed this suit to further its effort to build a mine – destroying the entire watershed in the process – that it does not yet even know will be profitable or even economically viable.[1] To do so, PLP must first challenge the Final Determination, which precludes any further permitting and therefore the mine's development. If that protection falls, Trout Unlimited will have lost the core regulatory protection it fought for decades to obtain, and Trout Unlimited's members' businesses will be negatively impacted by the resulting uncertainty and risk of mine development and concomitant environmental ruin. Williams Decl. ¶ 7; Kraft Decl. ¶¶ 5–6; Lyon Decl. ¶¶ 8–13. Trout Unlimited's interest in upholding the Final Determination is not lessened simply because there may be other procedural hurdles if PLP succeeds in having it vacated.

[1] *See* NDM, *Condensed Consolidated Interim Financial Statements For the Three Months Ended March 31, 2024 and 2023*, at 7, available at https://northerndynastyminerals.com/site/assets/files/5198/first_quarter_financial_report_for_the_period_ending_march_31-_2024.pdf (representing in sworn statement to the SEC that NDM "has not yet determined whether the Pebble Project contains mineral reserves that are economically recoverable").

This case is analogous to *Alaska v. Jewell*, in which Alaska challenged the rejection of a plan to conduct oil and gas exploratory activities. *Jewell*, 2014 WL 12521321, at *1. In opposing motions to intervene, Alaska argued the litigation would not "directly determine whether exploration occurs" and therefore would not impair the intervenor's interests. *Id.* at *3. Rejecting that argument, however, this Court explained that disposition of the action may impair intervenors' interests because it would decide "the fundamental question of *whether* exploration . . . is legally allowed," thereby prejudicing further challenges to the implementation of specific plans. *Id.* As a result, intervenors' interests would be "affect[ed]." *Id.*; *see also Alaska Indus. Dev.*, 2022 WL 1137312, at *2 (holding ruling in favor of Alaska challenging Federal defendants' moratorium on oil and gas leases on the Coastal Plain "might impair both Movants' significant protectable interests").

The same would occur here, too. If the Court ruled in Alaska's favor, it would reopen the door for a permitting process that may harm Trout Unlimited's members. As a result, Trout Unlimited has a right to intervene regardless of whether it could participate in subsequent processes too. *Jewell*, 2014 WL 12521321, at *3; *Alaska Indus. Dev.*, 2022 WL 1137312, at *2 (finding movant's interests may be impaired where, in ruling, "the Court might decide threshold questions . . . in a way that precludes determinations in subsequent litigation").

### C. Trout Unlimited Has More Than Met Its "Minimal" Burden To Show That The Government May Not Adequately Protect Its Interests.

Trout Unlimited's burden to show the Government may not adequately protect its interests is "minimal." *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972); *see* Response at 11–12. As both this Court and the Ninth Circuit have repeatedly explained, "[t]he burden of showing inadequacy of representation is minimal and [is] satisfied if the applicant can demonstrate that representation of its interests *may* be inadequate." *Alaska Indus. Dev.*, 2022 WL 1137312, at *2 (emphasis added) (quoting *W. Watersheds Project v. Haaland*, 22 F.4th 828, 840 (9th Cir. 2022)). Thus, where agencies or States have dual or broader purposes than applicant-intervenors, intervention is appropriate because a "dual-mission agency" is "unlikely" to make "all of the arguments the Applicant Intervenors would make." *Jewell*, 2014 WL 12521321, at *4; *see Alaska Indus. Dev.*, 2022 WL 1137312, at *2 (allowing intervenors who "represent specialized interests that seek only the preservation of the subsistence, cultural, and wilderness aspects of the lands at issue"); *N. Alaska Env't. Ctr. v. De La Vega*, No. 3:20-cv-00187, 2021 WL 1093614, at *1–2 (D. Alaska Mar. 22, 2021) (Gleason, J.) (granting intervention where applicants may provide "perspective and information" the parties would not). And "it is not realistic to assume that the agency's programs will remain static or unaffected by unanticipated policy shifts." *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1256 (10th Cir. 2001).

That is the case here. While the EPA "represent[s] the at-large interests of the general public," *see Alaska Indus. Dev.*, 2022 WL 1137312, at *2, Trout Unlimited's members, unlike the general public, have specific commercial and recreational interests in the Bristol Bay watershed because they live in, work in, and enjoy the area. Williams Decl. ¶¶ 2–3. Trout Unlimited's members thus have keen interests in preserving the environmental health, natural productivity, and remote and unspoiled nature of the area. *Id.* That is why Trout Unlimited has spent the last two decades advocating and litigating to protect the watershed from the Pebble Mine – including against the Government when it arbitrarily withdrew protections for the watershed so PLP could pursue the mine permitting process. *Id.* ¶¶ 4–5. While the Government does not oppose Trout Unlimited's permissive intervention, its "silence on any intent to defend the [intervenors'] special interests is deafening." *Utah Ass'n of Cntys.*, 255 F.3d at 1256. Because the Government will not "undoubtedly make" all the arguments Trout Unlimited would, the Court should allow Trout Unlimited to advocate for itself. *Jewell*, 2014 WL 12521321, at *4.

## II. Trout Unlimited Is Also Entitled To Permissive Intervention In Any Event.

PLP does not contest that Trout Unlimited's claims or defenses share a common question of law with its own, that the Court has jurisdiction over Trout Unlimited, or that Trout Unlimited's motion is timely. Response at 15–16; *Venegas v. Skaggs*, 867 F.2d 527, 529–31 (9th Cir. 1989); Fed. R. Civ. P. 24(b)(1)(B) & (b)(3). As such, Trout

Unlimited meets the requirements to intervene permissively here – as this Court previously held in granting Trout Unlimited permissive intervention in the earlier, related litigation. *See Pebble Ltd. P'ship v. EPA*, No. 3:14-CV-0097-HRH, 2014 WL 12528658, at *1–2 (D. Alaska Aug. 19, 2014).

Indeed, since that earlier litigation, Trout Unlimited's interest in and value to this matter has only increased. Trout Unlimited sued the EPA in 2019 challenging the agency's withdrawal of its 2014 Proposed Determination under Section 404(c) of the Clean Water Act, and successfully appealed that case to the Ninth Circuit. *See Trout Unlimited v. Pirzadeh*, 1 F.4th 738 (9th Cir. 2021). Trout Unlimited has been participating in the remanded action since. There is no real dispute that Trout Unlimited has "claims or defenses share a common question of law with" PLP's, or that Trout Unlimited will be a tremendously valuable resource to the Court in this litigation. *See Jewell*, 2014 WL 12521321, at *5 (stating permissive intervention appropriate where applicants "met each of the threshold requirements for permissive intervention"); *Alaska Indus. Dev.*, 2022 WL 1137312, at *3 (same).

PLP nevertheless argues Trout Unlimited's intervention would be inconvenient because it would have to contend with more than one additional party. Response at 15–17.[2] PLP is mistaken. The Ninth Circuit has repeatedly held, "[a] liberal policy in favor

[2] While PLP implies this case may have 22 separate intervenors, Response at 22, that is not the case. The parties have already consolidated where appropriate, and only *three*

of intervention serves both efficient resolution of issues and broadened access to the courts." *United States v. City of L.A.*, 288 F.3d 391, 397–98 (9th Cir. 2002). As such, the "mere addition of parties does not constitute sufficient prejudice to deny intervention." *Chandler*, 2023 WL 5353212, at *3 (citing *Kalbers v. United States Dep't of Justice*, 22 F.4th 816, 825 (9th Cir. 2021)).

## III. The Court Should Not Unreasonably Condition Trout Unlimited's Participation As Intervenor.

The Court should reject PLP's proposed intervention "conditions." Response at 20. Trout Unlimited has unique positions and interests that differ from the existing parties and other proposed intervenors, and is therefore entitled to intervene individually. *Supra* at 2–4; ECF No. 24, Trout Unlimited's Proposed Answer (raising unique defenses). Restrictions prohibiting Trout Unlimited from filing briefs, barring it from discovery, and requiring it to file a consolidated brief with other intervenors will – as PLP intends – undermine the Intervenors' ability to protect their unique interests and meaningfully participate in this litigation. *See* Response at 20.

No such restrictions are necessary or appropriate. As this Court has previously held, it is sufficient for intervening defendants to agree to "abide by the terms of the

---

motions to intervene were filed by the three separate groups of intervenors. *See* ECF. No. 21, ECF. No. 23 & ECF No. 32. PLP's objection is particularly disingenuous where it is itself seeking to bring additional parties into this lawsuit, vastly expanding the scope of this litigation. ECF No. 55, Motion to Amend and Supplement Complaint (adding the Army Corps of Engineers as a defendant).

existing Scheduling Order" and "use their best efforts to effectively coordinate with counsel for the Federal Defendants to avoid unnecessary duplicative briefing of matters covered in merits briefs." *Alaska Indus. Dev.*, 2022 WL 1137312, at *3. In fact, when Trout Unlimited intervened in the earlier litigation, this Court only required it to adhere to the schedule, coordinate briefs with other intervenors to "avoid duplication," and limit the number of pages in its briefs. *See Pebble Ltd. P'ship*, 2014 WL 12528658, at *2. Trout Unlimited would be happy to follow those same reasonable limitations again.

**CONCLUSION**

The Court should grant Trout Unlimited's motion.

**WORD COUNT CERTIFICATION**

I, Austin Williams, certify that this document complies with the word count requirements under Rule 7.4(a)(2) of the United States District Court for the District of Alaska. This memorandum of law contains 2,550 words excluding the case caption, table of contents, table of authorities, and signature block.

Dated: June 28, 2024

Respectfully submitted,

By: *s/ Austin Williams*

Austin Williams (AK Bar No. 0911067)
TROUT UNLIMITED
600 Clipper Ship Court
Anchorage, AK 99515
Telephone: (907) 227-1590
Austin.Williams@tu.org

Paul A. Werner (admitted *pro hac vice*)
Steven P. Hollman (admitted *pro hac vice*)
Abraham J. Shanedling (admitted *pro hac vice*)
Hannah J. Wigger (admitted *pro hac vice*)
Christopher L. Bauer (admitted *pro hac vice*)
Alexandra Bustamante (admitted *pro hac vice*)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, D.C. 20006-6801
Telephone: (202) 747-1900
pwerner@sheppardmullin.com
shollman@sheppardmullin.com
ashanedling@sheppardmullin.com
hwigger@sheppardmullin.com
cbauer@sheppardmullin.com
abustamante@sheppardmullin.com

*Attorneys for Proposed Intervenor-Defendant Trout Unlimited*