Keith Bradley, *pro hac vice*
ScheLeese Goudy, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
(303) 894-9239 (facsimile)
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

Thomas P. Amodio
Kevin M. Boots
REEVES AMODIO, LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
tom@reevesamodio.com
kevin@reevesamodio.com

Jeffrey M. Walker, *pro hac vice*
Katherine E. Wenner, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
(614) 365-2700
(614) 365-2499 (facsimile)
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN DYNASTY MINERALS LTD., *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 3:24-cv-00059-SLG |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*, | CONSOLIDATED |
| Defendants, | LEAD CASE |
| and | |
| BRISTOL BAY NATIVE ASSOCIATE, INC., *et al.*, | |
| Intervenor-Defendants, | |

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG

STATE OF ALASKA,

        Plaintiff,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

        Defendant,

   and

TROUT UNLIMITED, *et al.*,

        Intervenor-Defendants,

Case No. 3:24-cv-00084-SLG

CONSOLIDATED

---

ILIAMNA NATIVES, LTD, *et al.*,

        Plaintiffs,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

        Defendants,

   and

BRISTOL BAY ECONOMIC
DEVELOPMENT CORPORATION, *et al.*,

        Intervenor-Defendants,

Case No. 3:24-cv-00132-SLG

CONSOLIDATED

---

## MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD

---

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE
RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG

Case 3:24-cv-00059-SLG   Document 127   Filed 12/13/24   Page 2 of 27

# TABLE OF CONTENTS

**Page**

I. BACKGROUND ........................................................................................................2

    A.    The record supported granting the Pebble permit throughout the comprehensive permitting process. .......................................................2

    B.    Without warning, the Corps changed its stance. ...................................4

    C.    External political input influenced the permit denial. .........................6

        1.    External Inputs............................................................................6

        2.    Corps Response ...........................................................................9

        3.    Post-Denial Corps Actions.........................................................10

II. LEGAL STANDARD ...........................................................................................11

III. ARGUMENT ........................................................................................................13

    A.    The Corps's Decision Conflicted with the FEIS. ...............................14

    B.    The Corps Deviated from Its Ordinary Processes. .............................16

    C.    The Secretary's Involvement was Irregular Behavior.........................18

    D.    Political Interference Caused These Irregularities. .............................19

IV. CONCLUSION.....................................................................................................21

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG

i

Case 3:24-cv-00059-SLG    Document 127    Filed 12/13/24    Page 3 of 27

The Army Corps of Engineers ("Corps") denied a permit application for the Pebble mine, in a decision that contradicted the findings of the Corps's own environmental analyses, ECF 91, ¶ 190 ("1AC"); the Environmental Protection Agency ("EPA") then relied on that denial as a significant basis for a veto of unprecedented scale, blocking essentially any issuance of permits for discharges at the Pebble deposit. The Corps then asserted EPA's veto left it no choice but to deny the permit on remand. Now, the Corps has submitted an incomplete record for review by this Court.

EPA and the Corps filed their administrative records on August 2 and October 18, 2024, respectively. The records as filed are clearly missing information directly or indirectly considered by the agencies in their decisions, contrary to the Administrative Procedure Act ("APA") that requires review on the "whole" record, 5 U.S.C. § 706. The Corps's record does not support its stated rationale for denying the Pebble permit application. Ample evidence indicates the Corps's November 2020 permitting decision, which became the basis for EPA's veto, responded to external political pressures with a pretextual rationale; yet those external communications are not included in the record submitted to the Court. Discovery is needed to reveal those inputs for inclusion in the record.

Plaintiffs respectfully move for leave to obtain limited discovery through depositions of two key former officials of the Corps: (1) Ryan Fisher, Principal Deputy Assistant Secretary of the Army at the time of the Corps's initial decision, overseeing the Civil Works program; and (2) David Hobbie, Chief of the Alaska Regulatory Division. They were central actors in the Corps's decisionmaking process, and information they possess is necessary to complete,

or in the alternative to supplement, the record. PLP conferred with the Corps and with the intervenor-defendants, and all disagree with this motion.

## I.     BACKGROUND

### A.     The record supported granting the Pebble permit throughout the comprehensive permitting process.

On December 22, 2017, PLP[1] applied for a Clean Water Act ("CWA") permit, for various discharges in building and operating the Pebble mine and to build port facilities to handle the output.[2] Hobbie, highly experienced in permitting processes, headed the Corps's review, and the Corps contracted an outside consultant, AECOM, to help process the application.[3] (Such assistance is common in preparing environmental impact statements ("EISs"). *See* 40 C.F.R. § 1506.5(c).) Given the extensive environmental assessments and studies from myriad independent scientists supporting PLP's application,[4] plus Hobbie's and AECOM's expertise, the permitting process should have run smoothly.

Besides obtaining information from PLP,[5] the Corps conducted extensive public outreach in preparing the Draft EIS ("DEIS"). A DEIS is the Corps's first public evaluation of environmental consequences from a proposed discharge activity, and this one assessed minimal or limited impacts from the proposal.[6] EPA, as a cooperating agency, participated in

---

[1] "PLP" refers to Pebble Limited Partnership and collectively to the plaintiffs, the Partnership plus its parent company Northern Dynasty Ltd.
[2] EPA_AR_0084333-0085266.
[3] EPA_AR_0096407-0096410.
[4] *See* ECF 112-1 (indexing PLP's Permit Application and supporting attachments).
[5] *See* Dec. Fueg Declaration, ¶3; ECF 112-1 (including many of the Requests for Information and PLP's responses).
[6] *See generally* Section 3.0, *Environmental Analysis*, EPA_AR_0088091-EOA_AR_0088140.

DEIS preparation, including commenting on preliminary drafts and participating in discussions.[7]

The Corps then held dozens of meetings with Alaska Native Groups and received tens of thousands of public comments,[8] while also gathering additional information through Requests for Information ("RFIs").[9]

EPA issued a memorandum stating the "minimization and compensation measures currently proposed" in the DEIS "would likely reduce" impacts identified in EPA's evaluations and comments "to a level that *would not cause or contribute to significant degradation*."[10] This articulated EPA's decision not to issue a "3(b)" letter, the notice required under EPA's agreement with the Corps, had EPA contemplated a 404(c) veto.[11] *See* MEMORANDUM OF AGREEMENT BETWEEN THE ENV'T PROT. AGENCY AND THE DEP'T OF THE ARMY Part IV 3(b) (Aug. 11, 1992) ("MOA").

In July 2020, the final EIS ("FEIS")[12] said changes to the proposal had "further reduced project impacts."[13] The FEIS also noted the Corps would evaluate PLP's proposed compensatory mitigation plan ("CMP") for addressing any remaining impacts in its eventual decision.[14] Since "compensatory mitigation would only be provided for a permittable project,"[15] the Corps's CMP coordination with PLP suggested the project was and is

---

[7] EPA_AR_0088067; *see also* Ex. 31, ED_002890_0017794.
[8] *See, e.g.* EPA_AR_0025433-0028251; EPA_AR_0025839-0026136; EPA_AR_0466308-0466427; EPA-AR_0096397-0096403 (FEIS summarizing tribal consultation).
[9] *E.g.*, EPA_AR_0129456-0129793.
[10] Ex. 20 at 4, ED_005447B_00003507 (emphasis added).
[11] *Id.*
[12] EPA_AR_0091272-0096546.
[13] Section 4.0, *Impact Avoidance, Minimization, and Mitigation*, EPA_AR_0091389.
[14] *See e.g.*, *id.*, EPA_AR_0091389-0091390.
[15] Ex. 21, PBL_ID00009116.

permittable. Further, the Corps's permit decision "rel[ies] on EIS analyses and evaluation of alternatives";[16] a permit decision depending on the FEIS should not contradict the FEIS. Denying a permit following a FEIS that identified only limited or minor impacts would surprise any applicant, especially here, where in each stage of the nearly three-year permitting process, *all* indications and public records suggested the permit would be granted.

## B.    Without warning, the Corps changed its stance.

On August 24, 2020—a month after publishing a positive assessment in the FEIS— the Corps wrote to PLP "identifying [the Corps's] preliminary finding of significant degradation in the Koktuli River watershed," demanding a revised CMP, and saying the Corps would "review the [CMP] upon submittal to determine if the amount and type of compensatory mitigation offered is sufficient."[17]

The same day, the Office of the Secretary of the Army ("Secretary") issued a press release stating "the project, as currently proposed, cannot be permitted."[18] Alaska's U.S. Senators simultaneously issued similar press releases: Senator Murkowski "agree[d] that a permit should not be issued," and Senator Sullivan "support[ed] this conclusion … that a federal permit cannot be issued."[19] The Senators evidently understood the Secretary's press release to be denying the permit, though the Corps had established a deadline 90 days later for revised CMP submissions.

---

[16] *Id.*

[17] Ex. 1, USACE Email to James Fueg with Notification Letter (Aug. 24, 2020).

[18] Ex. 10, *Army Finds Pebble Mine Project Cannot be Permitted as Proposed*, U.S. ARMY PUBLIC AFFAIRS (Aug. 24, 2020), https://www.army.mil/article/238426/army_finds_pebble_mine_project_cannot_be_permitted_as_proposed ("Army Press Release").

[19] Ex. 5, *Senators Murkowski and Sullivan Comment on Army Corps Decision on Pebble Mine*, U.S. SENATOR FOR ALASKA LISA MURKOWSKI (Aug. 24, 2020), https://www.murkowski.senate.gov/press/release/senators-murkowski-and-sullivan-comment-on-army-corps-decision-on-pebble-mine.

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG

4

Case 3:24-cv-00059-SLG    Document 127    Filed 12/13/24    Page 7 of 27

Internal Army and Corps emails confirm the Secretary sent the press release to the Alaskan congressional delegation *before* it was released publicly.[20]

While Fisher had been involved in preparing the press release,[21] he appeared to find the Secretary's public statement unusual.[22] Speaking two days later at a meeting of conservative political organizations, Fisher said the company should remain focused on revising the CMP.[23]

PLP continuously conferred with the Corps to confirm the proposed mitigation would meet its requirements, and PLP revised CMP drafts based on Corps guidance.[24] In a September 8, 2020, meeting discussing PLP's proposed mitigation plan, the Corps never suggested PLP's proposal failed to fulfill its mitigation demands or that the permit would be denied.[25] PLP filed the revised CMP on November 16, 2020.[26] But just four days later, despite no prior Corps or EPA suggestion that the permit would be denied, the Corps denied the permit.[27] This timing was uncanny; and the decision, lacking any adequate, legitimate explanation, was incongruent with the public record. On administrative appeal, the hearing officer refused to uphold the permit denial, identifying multiple serious flaws.[28]

---

[20] After finalizing the Army's August 24 statement, but before releasing it publicly, the Office of the Assistant Secretary of the Army approved "disseminating it through your channels to the Alaska delegation ahead of time." Ex. 22 at 18 (Aug. 24, 2020, 10:00 AM); *see also id.* at 11 (Aug 24, 2020, 7:41 AM) ("Mr. McPherson would like the Alaska congressional delegation to get the statement in advance of the public release and we have prepped our Leg. Affairs officer to be prepared to support.").

[21] Ex. 22 at 15-16 (Aug. 21, 2020,1:55 PM).

[22] Ex. 6, Abby Smith, *Controversial Alaska Gold Mine Opposed by Trump Jr. Isn't Dead, Administration Privately Tells Conservatives* (Aug. 28, 2020), https://www.washingtonexaminer.com/news/844366/controversial-alaska-gold-mine-opposed-by-trump-jr-isnt-dead-administration-privately-tells-conservatives/ ("ATR Article").

[23] *Id.*

[24] Ex. 2, Fueg Declaration, ¶¶12-13.

[25] Dec. Fueg Declaration, ¶5.

[26] EPA_AR_0130904-0131004.

[27] EPA_AR_0129269-0129297.

[28] Ex. 18, PLP, No. POA-2017-00271 (Apr. 24, 2023) ("Administrative Appeal Decision").

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG

5

Case 3:24-cv-00059-SLG    Document 127    Filed 12/13/24    Page 8 of 27

## C. External political input influenced the permit denial.

The record includes no documents justifying the about-face in the initial decision. (The arbitrary and capricious nature of the decisionmaking will itself be a significant issue in this case.) Internal emails (received through Freedom of Information Act requests), contemporaneous press stories, and subsequent Corps actions indicate the denial was likely due to political interference by President Trump's son, Donald Trump Jr. ("Don Jr."), his friends, and substantial political contributors to President Trump's reelection.

### 1. External Inputs

In July 2020, administration officials "said they were on the verge of approving the project," because it is "vital for the nation's production of copper."[29]

But on August 4, 2020, Don Jr. retweeted[30] a tweet from Nick Ayers, a political consultant and former Chief of Staff to then-Vice President Pence, urging President Trump to "direct [the] []EPA to block the Pebble mine."[31]

At a press conference on August 5, 2020, President Trump indicated he would "take a look" at the decision but that he would "listen to both sides."[32] That same day, a Corps official emailed David Hibner, Commander of the Alaska District, a summary of those comments.[33] Hibner emailed Kirk Gibbs, Commander of the Pacific Ocean Division, to say Hobbie "received a message that indicated we may begin seeing the administration's involvement."[34]

---

[29] Ex. 4, ERNEST SCHEYDER, THE WAR BELOW 167 (2024) ("SCHEYDER")
[30] "Retweet" means "to repost (something, such as a message) to the X [] online message service. *Retweet*, MERRIAM-WEBSTER DICTIONARY (11th ed.)
[31] Ex. 12, @DonaldJTrumpJr, TWITTER (Aug. 4, 2020) (quoting @nick_ayers, TWITTER (Aug. 4, 2020)) ("Don Jr. Tweet").
[32] *President Trump News Conference*, U.S. DEP'T OF STATE (Aug. 5, 2020), https://www.youtube.com/live/IGnp-JOsvvw?si=aWYSZTkNfaytfpjH.
[33] Ex. 22 at 2-5 (Aug. 5, 2020, 2:37 PM).
[34] *Id.* at 1 (Aug. 5, 2020, 2:06 PM).

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG

6

Case 3:24-cv-00059-SLG    Document 127    Filed 12/13/24    Page 9 of 27

A few days later, an influential campaign donor, Andrew Sabin, spoke to President Trump at a fundraiser.[35] Sabin is Chairman of the Board and former President of Sabin Metal Corporation,[36] which extracts valuable metals from industrial byproducts and waste[37] and is a major recoverer of precious metals such as gold and silver.[38] The Pebble deposit represents nearly 3% of known world unexploited gold reserves, quantities that Pebble mine would have released as fresh resources onto the market—and 1.3% of world silver reserves.[39] Sabin, "who had grown enormously wealthy" from his metals refining business,[40] accompanied by Don Jr., urged President Trump "that the mine project should be stopped dead in its tracks."[41]

On August 19, the Corps received inquiries from *The Washington Post* about the White House "looking into delaying" the Corps's permit decision, following efforts by "several influential Republicans" to convince the administration to deny the permit.[42] On August 21, the *Post* summarized actions taken by several such "Influential Republicans"—Don Jr., Ayers, Sabin, and multiple other individuals.[43] Don Jr. reportedly "made an impassioned case against

[35] Ex. 4, SCHEYDER at 167.
[36] Ex. 16, *Leadership*, SABIN METAL CORP. (last visited Dec. 6, 2024), https://www.sabinmetal.com/company/leadership.
[37] Ex. 17, *About Sabin Metal*, SABIN METAL CORP. (last visited Dec. 6, 2024), https://www.sabinmetal.com/company/about.
[38] Ex. 15, *Precious Metal Refining*, SABIN METAL CORP. (last visited Dec. 6, 2024), https://www.sabinmetal.com/services/precious-metal-refining. Metal "recovery" is "[t]he percentage of valuable metal in the ore that is recovered by metallurgical treatment." *Recovery*, GLOSSARY OF MINING TERMS, https://www.sec.gov/Archives/edgar/data/1165780/000116578003000001/glossary.htm#R.
[39] *See* Ex. 13, *Reserves & Resources*, PEBBLE PROJECT (last visited Dec. 6, 2024), https://northerndynastyminerals.com/pebble-project/reserves-resources-1/ ("Reserves & Resources"); Ex. 14, U.S. GEOLOGICAL SURV., MINERAL COMMODITY SUMMARIES 83, 163 (2024), https://pubs.usgs.gov/periodicals/mcs2024/mcs2024.pdf. The figures stated above represent a portion of the total Pebble resources. Reserves have not been estimated for the Pebble project.
[40] Ex. 4, SCHEYDER at 167.
[41] *Id.*
[42] Ex. 23 at 3 (Aug. 19, 2020, 3:15 PM), PBL_ID00078831. The Corps's response reiterated its formal review process but did not directly comment on the inquiry. *Id.* at 2.
[43] Ex. 7, Juliet Eilperin et al., *Republican Push to Block Controversial Alaska Gold Mine Gains the White House's Attention*, WASH. POST (Aug. 20, 2020), https://www.washingtonpost.com/climate-environment/2020/08/20/republican-push-block-controversial-alaskan-gold-mine-gains-white-houses-attention/ ("Wash. Post Article").

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG
7

Case 3:24-cv-00059-SLG     Document 127     Filed 12/13/24     Page 10 of 27

the mine" to President Trump at a fundraiser, and Sabin told Trump "the mine was a bad idea."[44]  Two sources described "internal [White House] deliberations" that were "weighing whether to delay granting" the permit.[45]  A separate article emphasized external involvement in "lobbying senior administration officials to reject the proposal."[46]

The next day is when Hobbie wrote demanding a revised CMP with additional in-kind compensatory mitigation within 90 days.[47]

On August 22, *Politico* reported the Trump administration's "about-face" was the result of political pressure from "GOP mega-donor Andy Sabin, Bass Pro Shops CEO Johnny Morris and ... [Don Jr.]."[48]  The article reported "[t]here are people [opposed to the mine] that have been told there will be a [Corps] press event and that it will be positive."[49]  Three sources "anticipate[d] [that] Trump will then follow with a public statement opposing the" permit.[50] Internal Corps emails show Gibbs discussed the *Politico* article with Colonel Damon Delarosa, Commander and District Engineer of the Alaska District.[51]

On August 24, 2020, the Secretary and Alaska's Senators issued their coordinated press releases stating the permit cannot be granted.

---

[44] *Id.*

[45] *Id.*

[46] Ex. 8, Juliet Eilperin & Ashley Parker, *Trump Administration to Pause Permit for Alaska's Pebble Mine on Monday*, WASH. POST (Aug. 22, 2020), https://www.washingtonpost.com/climate-environment/2020/08/22/trump-administration-pause-permit-alaskas-pebble-mine-monday/.

[47] *Supra* p.4; *see also* Ex. 1 at 2.

[48] Ex. 9, Zack Colman & Alex Guillén, *Trump Set to Block Controversial Alaska Gold Mine*, POLITICO (Aug. 22, 2020), https://www.politico.com/news/2020/08/22/trump-set-to-block-alaska-pebble-mine-400206 ("Politico Article").

[49] *Id.*

[50] *Id.*

[51] Ex. 22 at 27 (Aug. 24, 2020, 9:22 AM).

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG

On August 25, 2020, a Senior Policy Advisor with the White House Office of Public Liaison ("Liaison") asked Fisher to present on the Pebble mine at an Americans for Tax Reform ("ATR") meeting.[52] ATR had noted in its request for a presentation that Pebble Mine was "a longstanding priority for conservative groups," and it was seeking clarification "about where things stand after [the] Politico story."[53]

On August 27, 2020, an undisclosed member of the Executive Office of the President forwarded a *Forbes* article to Fisher,[54] indicating the White House was monitoring the Corps's decision.

### 2.     Corps Response

The Secretary held a series of virtual meetings about Pebble on September 28, September 30, and October 1, 2020.[55] The Secretary's continued involvement in the permitting decision was again highly unusual, 33 C.F.R. § 323.6. Fisher and other high-ranking personnel were invited.

On October 13, PLP received verbal feedback in a Corps staff final proposal review.[56] The conference "did not raise concerns about the sufficiency of the [CMP], including for impacts at the port site."[57] The only flaw needing correction was related to the proposed use of a lease with the State of Alaska.[58] "The [Alaska] District also commented that additional

---

[52] Ex. 24, PBL_INT0041295; *see also* Ex. 25, PBL_INT0041297. The Corps redacted the identity of the White House liaison contacting Fisher in its FOIA response.
[53] Ex. 24, PBL_INT0041295.
[54] Ex. 27, PBL_INT0041270.
[55] Ex. 28, PBL_INT0041258; Ex. 29, PBL_INT0041283; Ex. 30, PBL_INT0041270.
[56] Ex. 2, Fueg Declaration, ¶14.
[57] *Id.*
[58] *Id.*

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG
9

Case 3:24-cv-00059-SLG     Document 127     Filed 12/13/24     Page 12 of 27

detail should be included on monitoring, maintenance, and costs/financial assurance."[59] PLP's November 20 submission addressed both concerns. "The [Alaska] District did not raise any concerns about mitigation for port site impacts during that review."[60]

PLP submitted a revised CMP on November 16, 2020, after months of coordination with the Corps.[61] The Corps informed the media that "[n]o decision on the application has been made, yet."[62] But internally the Corps had already prepared the ROD denying the permit and issued it just four days later.[63]

### 3. Post-Denial Corps Actions

In 2021, PLP administratively appealed the permit denial.[64] Hobbie testified at a live hearing, where he was asked to explain the decision. Hobbie repeatedly referred to the denial decision document ("ROD") and refused to say more.

The Hearing Officer reversed the denial decision, remanding it for the District to correct multiple serious errors,[65] including among other findings, that rejecting the Corps's CMP was contrary to Corps regulations and guidance given the District did not "provide complete and detailed comments" or allow PLP "sufficient time to address those comments prior to finalizing a revised mitigation plan review";[66] the alleged CMP deficiencies were not

---

[59] Id.
[60] Id.
[61] EPA_AR_0129269.
[62] Ex. 22 at 52 (Nov. 17, 2020, 8:53 AM).
[63] EPA_AR_0129269-0129297.
[64] EPA_AR_0129359.
[65] Ex. 18, Administrative Appeal Decision.
[66] Id. at 27.

supported by the record;[67] and some asserted mitigation requirements were contrary to Corps rules.[68]

The Corps ultimately refused to address those findings, instead insisting on remand that EPA's Final Determination vetoing discharges near the Pebble deposit mandated denial.[69] But EPA's veto could not have been supported without the underlying Army Corps record for its November 2020 decision, a matter raised in Plaintiffs' concurrently filed Motion to Complete or Supplement the United States Army Corps of Engineers' Administrative Record. Further, the Corps's later reliance on EPA's veto does not explain the Corps's decisions during Summer 2020, when EPA had decided not to issue a "3(b)" comment letter, signaling by all accounts that EPA did not intend to veto the Project. Nor does the veto explain the Corps's denial of a permit to build port facilities, which the EPA veto does not restrict.

## II. LEGAL STANDARD

While judicial review of agency action is limited to review of the "record" before the agency, *Alaska v. U.S. Dep't of the Interior*, No. 3:22-CV-00078-SLG, 2023 WL 2424270, at *3 (D. Alaska Mar. 9, 2023), that review must include the "whole" record, *Thompson v. U.S. Dep't of Lab.*, 885 F.2d 551, 555 (9th Cir. 1989); *see also* 5 U.S.C. § 706. That "whole" record is not necessarily solely those documents that the agency has compiled and submitted as 'the' administrative record." *Thompson*, 885 F.2d at 555. The full record "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes

---

[67] *Id.* at 31-32.
[68] *See id.* at 39.
[69] Final Determination of the EPA Pursuant to § 404(c) of the CWA: Pebble Deposit Area, Southwest Alaska, 88 Fed. Reg. 7441 (Feb. 3, 2023).

evidence contrary to the agency's position." *Id.* The agency's designation of the record receives a "presumption of regularity," but completeness of the record "may be rebutted by clear evidence to the contrary." *In re United States*, 875 F.3d 1200, 1206 (9th Cir.) ("*DACA*"), *judgment vacated on other grounds*, 583 U.S. 29 (2017). "An agency may not unilaterally determine what constitutes the Administrative Record." *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 739 (10th Cir. 1993).

The Ninth Circuit has explained the distinction between two categories of contention regarding materials not included in the agency's designated record. First, "[w]hen it appears the agency has relied on documents or materials not included in the record," or the record "is not complete," "supplementation is appropriate." *Portland Audubon Society v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (citation omitted). The second category concerns "information on the merits that was never presented to the agency." *Id.* (emphasis omitted).

For completing the true record (the first category) "[w]hen a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question." *Bar MK*, 994 F.2d at 739. "[C]ourts have thus permitted discovery when those challenging agency action have contended the record was incomplete, in order to provide a record of all documents and materials directly or indirectly considered by the agency decisionmakers." *Pub. Power Council v. Johnson*, 674 F.2d 791, 793-95 (9th Cir. 1982); *see also Dopico v. Goldschmidt*, 687 F.2d 644, 654 (2d Cir. 1982) (finding discovery appropriate "to explore whether some portions of the full record were not supplied to the Court"). The Supreme Court endorsed such discovery upon a "strong showing of bad faith or improper behavior" at the agency, *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019) ("*Census*"), and the Ninth Circuit has held discovery

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG
12

Case 3:24-cv-00059-SLG    Document 127    Filed 12/13/24    Page 15 of 27

beyond the certified record may be appropriate in particular circumstances even without that preliminary showing, *Pub. Power Council*, 674 F.2d at 795.

Extra-record materials (the second category) can be added: (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith." *Alaska*, 2023 WL 2424270, at *3 (quoting *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)).

## III. ARGUMENT

Limited discovery is necessary to complete the administrative record, given that evidence indicates additional materials were directly or indirectly considered, where the Corps's decision was contrary to the record and conflicted with the FEIS; the CMP process deviated from the Corps's usual processes; the Secretary's press release and involvement were highly irregular; and the evidence indicates these irregularities were driven by political interference. Alternatively, discovery is needed and warranted to provide context to understand the agency's reasoning, to determine what documents may be missing from the record submitted, and because the evidence shows improper behavior and bad faith by the agency. The outcome was arbitrary and capricious even on the submitted record. But the circumstances show the Corps considered additional inputs not disclosed or included in the record presented to the Court.

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. v. EPA
CASE NO. 3:24-CV-00059-SLG
13

Case 3:24-cv-00059-SLG   Document 127   Filed 12/13/24   Page 16 of 27

## A. The Corps's Decision Conflicted with the FEIS.

The Corps's decision was an unexplained about-face from its conclusion in the FEIS that impacts were minimal or limited. An agency's record is incomplete when it does not include all materials directly and indirectly considered, and a record inconsistent with the decision's rationale can rebut the presumption of regularity. *DACA*, 875 F.3d at 1206-07. In *DACA*, the Ninth Circuit approved an order for the government to complete the record regarding revocation of the Deferred Action for Childhood Arrivals policy where the record contained no materials addressing a complete reversal in position on ending the policy, which happened over just seven months. *Id.*

Here a complete reversal from the agency's formal findings with no explanation or support in the record also rebuts the presumption of regularity. The three-year comprehensive permitting process included a DEIS assessing all aspects of potential environmental impacts, *see* 40 C.F.R. § 1502.1, and indicating no environmental concerns had merit sufficient to deny the permit,[70] and an EPA memorandum concluding PLP's proposed compensation measures would reduce the potential impacts "to a level that *would not cause or contribute to significant degradation.*"[71] The FEIS published just months before the Corps's decision also gave no hint of concerns warranting denial.

Rather, the evidence shows external inputs, not materials in the record submitted (nor in the docket visible to PLP at the time), influenced the Corps's ultimate opposite decision. For example:

---

[70] EPA_AR_0088061-0091271.

[71] Ex. 20 at 4, ED_005447B_00003507 (emphasis added).

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG

14

Case 3:24-cv-00059-SLG    Document 127    Filed 12/13/24    Page 17 of 27

- Hobbie "received a message that [the Corps] may begin seeing the administration's involvement,"[72] sent the day after Don Jr.'s tweets urging President Trump to block the Pebble mine and just a few days before Don Jr. presented Sabin to President Trump to advocate for denying the permit.

- Numerous requests for statements and press articles show, among other things, that: the White House was "looking into delaying" the Corps's permit decision, following efforts by "several influential Republicans";[73] the "about-face" was the result of political pressure to block the permit;[74] and there was an "outside lobbying attempt by Ayers."[75]

- Internal emails show that the Corps knew about and discussed such press articles.[76]

This evidence reveals "an explanation for agency action"—the content of the Corps's initial decision—that is "incongruent with what the [actual] record reveals about the agency's priorities and decisionmaking process," thus showing the proffered record is incomplete. *Census*, 588 U.S. at 785 (concluding completing the record and discovery were justified where evidence conflicted with the rationale given for a decision). While the evidence presented supports that the record is incomplete, discovery through the Hobbie and Fisher depositions is necessary to gain a full understanding of what materials and information were actually considered by the Corps.

---

[72] Ex. 22 at 1 (Aug. 5, 2020, 2:06 PM).
[73] Ex. 23, PBL_ID00078831.
[74] Ex. 9, Politico Article.
[75] Ex. 11, Patrick Gleason, *Former Trump Advisor Urges the President to Kill Thousands of Jobs*, FORBES (Aug. 26, 2020), https://www.forbes.com/sites/patrickgleason/2020/08/26/former-trump-advisor-urges-the-president-to-kill-thousands-of-jobs/?sh=6492609a5679 ("Forbes Article").
[76] Ex. 22 at 27 (Aug. 24, 2020, 9:22 AM).

Additionally, to "explain agency action ... the courts admit certain testimony in the judicial proceeding or provide limited discovery," including if "serious gaps would frustrate challenges to the agency's action." *Pub. Power Council*, 674 F.2d at 793-94. "When there is 'such a failure to explain administrative action as to frustrate effective judicial review, the court may obtain from the agency, either through affidavits or testimony, such additional explanations of the reasons for the agency decision as may prove necessary.'" *Id.* (quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (per curiam)). The DEIS contained preliminary findings of minimal or limited impacts, and the FEIS, after an extensive open comment process—and with the EPA as a cooperating agency—reiterated similar conclusions and unequivocally supported granting the Pebble permit. The permit decision contradicted these conclusions, but the proffered record does not explain why.

## B.    The Corps Deviated from Its Ordinary Processes.

Any presumption of regularity in the proffered record is also refuted by the Corps's striking deviation from its ordinary processes. Demanding "in-kind" compensatory mitigation in August 2020 departed from the Corps's 2018 MOA with EPA allowing "out-of-kind" compensatory mitigation for projects in Alaska.[77] And the final review providing only minimal verbal feedback to Pebble yet supposedly forming the basis for permit denial also deviated from the Corps's standard processes. The Corps's appeal decision sharply criticized these

---

[77] Ex. 3, MOA between the DOA and the EPA concerning Mitigation Sequence for Wetlands in Alaska Under CWA § 404 (June 15, 2018).

departures.[78]  It is highly unusual and improper for the Corps to deny a permit on grounds that it has not allowed the applicant to dispute or contest.[79]

Such unusual processes make discovery appropriate to complete the record, particularly where the process indicates the reasoning for a decision was pretextual.  In the *Census* case, the district court granted discovery based on a conviction that the reason given was incongruent with the decision to reinstate a citizenship question in the 2020 census questionnaire.  588 U.S. at 783.  As the Supreme Court noted, "[a]ltogether, the evidence [told] a story that [did] not match the explanation the Secretary gave for his decision," and the only stated reason "seem[ed] to have been contrived."  *Id.* at 784.

Similarly, with the host of evidence indicating PLP's permit would be granted, the Corps's belated and unusual compensatory mitigation requirement leads to a conviction that it was pretext setting up the Corps's about-face in the permitting decision.  Certainly, the permitting process to date did not support the Corps's new requirement, nor did the Corps's own policies—as the Corps itself subsequently acknowledged.[80]  Just as the Supreme Court concluded discovery was justified in the *Census* case where the decision was incongruent with its rationale, *id.*, discovery is appropriate given the Corps's departure from its usual compensatory mitigation processes and contradiction with the record.

It is even more important to evaluate the record's completeness and the existence of pretext where the decision is of such national significance.  In *DACA*, the Ninth Circuit

---

[78] *See* Ex. 18, Administrative Appeal Decision at 27-41 (concluding repeatedly that the Corps's lack of written evidence on its CMP process was insufficient to determine the sufficiency of the Corps's analysis or the opportunity given to PLP to correct deficiencies).
[79] *See id.*
[80] Ex. 18, Administrative Appeal Decision at 27, 31-32, 39.

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG

17

affirmed it was "not credible" that a decision terminating protections for roughly 800,000 people could be made on the scant record before the court. *DACA*, 875 F.3d at 1207. The significance here is also extreme: "The amount of copper required between 2022 and 2050 is more than all the copper consumed . . . between 1900 and 2021,"[81] and the Pebble mine's nearly 53 billion pounds of recoverable copper is vital to meeting that demand.[82]

## C.     The Secretary's Involvement was Irregular Behavior.

The Secretary's involvement in the process highlights the irregularity of the Corps's decisionmaking. The Chief of Engineers is delegated authority for 404 permits, 33 C.F.R. § 323.6(a), and district engineers handle the process, *id.* It was unprecedented, so far as PLP can find, for the Secretary to engage in a permitting process. The *DACA* decision found the presumption of regularity overcome in part because the record contained no materials from the Department of Justice or White House, "despite evidence that both bodies were involved in the decision." *DACA*, 875 F.3d at 1206. Similarly, here there is clear evidence that the Secretary was involved in the permitting decision in an irregular manner (in addition to evidence discussed below of ex parte influences). The Secretary issued a press release stating "the project, as currently proposed, cannot be permitted."[83] The Secretary's Office held meetings on the application three times in short succession in the critical period, and numerous calendar invitations show the series of virtual meetings included Fisher and other senior Corps

---

[81] Ex. 19, IHS MARKIT, THE FUTURE OF COPPER: WILL THE LOOMING SUPPLY GAP SHORT-CIRCUIT THE ENERGY TRANSITION? 46 (July 2022), https://cdn.ihsmarkit.com/www/pdf/1022/The-Future-of-Copper-Full-Report_SPGlobal.pdf.
[82] Ex. 13, Reserves & Resources.
[83] Ex. 10, Army Press Release.

officials.[84] None of this evidence was provided in the submitted record, even though these inputs were manifestly considered by the Corps. Such missing documents support that the record is incomplete, or alternatively, that it must be supplemented, *Pub. Power Council*, 674 F.2d at 794.

## D. Political Interference Caused These Irregularities.

Evidence that *ex parte* contacts affected the Corps's decision also shows additional materials were directly or indirectly considered and are required to complete the record, even where the materials were considered by subordinates and even if the materials were not ultimately relied upon. *See DACA*, 875 F.3d at 1206-07. The Corps certainly considered multiple *ex parte* contacts (both documentary and oral) leading up to permit denial, including:

- The August 4, 2020, tweet from Ayers shared by Don Jr., urging President Trump to "direct [the] []EPA to block the Pebble mine"[85] followed by correspondence within the Corps the day after confirming Hobbie "received a message that [the Corps] may begin seeing the administration's involvement"[86];

- At least three August 2020 news articles summarizing actions taken by influential political actors to stop the Pebble mine.[87]

Those inputs are not included in the Corps's submitted record and constitute important materials in the record that appear to have affected the entirety of the process.

---

[84] Ex. 28, PBL_INT0041258; Ex. 29, PBL_INT0041283; Ex. 30, PBL_INT0041270.
[85] Ex. 12, Don Jr. Tweet.
[86] Ex. 22 at 1 (Aug. 5, 2020, 2:06 PM).
[87] Ex. 7, Wash. Post Article; Ex. 9, Politico Article; Ex. 11, Forbes Article.

"[T]here is a further exception to the general rule that agency actions are to be judged on the agency record alone, without discovery[,] ... when it appears the agency has relied on documents or materials not included in the record." *Pub. Power Council*, 674 F.2d at 794. While "ex parte contacts do not per se vitiate agency [] action," they matter "if it appears from the administrative record under review that they may have materially influenced the action ultimately taken." *Action For Children's Television v. F.C.C.*, 564 F.2d 458, 476 (D.C. Cir. 1977); *see also Brennan v. Dickson*, 45 F.4th 48, 66 (D.C. Cir. 2022) (reiterating that undisclosed e*x parte* communications can violate the APA when they materially influence the action taken).

These communications and the other evidence discussed herein also demonstrate the agency's improper behavior and bad faith that resulted in an arbitrary and capricious permitting decision. While improper behavior or bad faith are not necessary to obtain discovery, *Pub. Power Council*, 674 F.2d at 795, each can further justify such discovery, *Census*, 588 U.S. at 781. Discovery was justified based on bad faith or improper behavior in the *Census* case where the usual processes for decision-making were altered and the existing evidence supported a prima facie showing that the rationale given for the decision was pretextual. *See id.* at 782. Similar facts are present here. The Corps's usual CMP process was altered for no disclosed reason; the Secretary involved himself in the decision contrary to the usual processes; the Secretary released a press statement contradicting the District office's CMP Letter and communicated with Alaska's Senators about the statement prior to releasing the statement; and the evidence strongly indicates the Corps's stated reasons for its initial decision were pretextual.

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG
20

Case 3:24-cv-00059-SLG     Document 127     Filed 12/13/24     Page 23 of 27

The Fisher and Hobbie depositions are appropriate because the evidence shows the Corps relied on further materials not included in the record, and these individuals are key to identifying the evidence needed to complete the record. Fisher was the Pebble spokesperson for HQ regarding the Corps's intentions and developments for the permitting process and a liaison to the public and the Executive Branch.[88] Fisher received at least direct contacts from the Executive Office of the President during the decision-making process,[89] and at least initially Fisher participated in developing the Secretary's controversial press release that was circulated to the Alaska Congressional delegation.[90] Fisher's deposition would clarify the reasons for the Corps's about-face in permitting, the involvement of external factors such as the White House, and the existence of additional record materials omitted from the record as submitted. Hobbie was the District's manager for the process and central to the permit application evaluation and decision; was present in calls during the irregular CMP process; and can describe communications between the District and HQ.[91] Hobbie's deposition would provide information about the external influences and how they affected preparation of the initial decision.

## IV. CONCLUSION

For the reasons indicated herein, PLP respectfully requests that the Court grant its motion for discovery and allow PLP to depose Ryan Fisher and David Hobbie.

---

[88] Ex. 24, PBL_INT0041295.
[89] Ex. 27, PBL_INT0041270.
[90] Ex. 26, PBL_ID00079966.
[91] *Supra*, Section I.

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG

Dated: December 13, 2024

/s/ *Keith Bradley*

Keith Bradley, *pro hac vice*
ScheLeese Goudy, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
(303) 894-9239 (facsimile)
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

Jeffrey M. Walker, *pro hac vice*
Katherine E. Wenner, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
(614) 365-2700
(614) 365-2499 (facsimile)
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

Thomas P. Amodio
Kevin M. Boots
REEVES AMODIO, LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
tom@reevesamodio.com
kevin@reevesamodio.com

*Counsel for Plaintiffs Northern Dynasty Minerals Ltd
and Pebble Limited Partnership*

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE
RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG
22

Case 3:24-cv-00059-SLG     Document 127     Filed 12/13/24     Page 25 of 27

## CERTIFICATE OF WORD COUNT

This document follows the type-volume limit of Local Civil Rule 7.4 and contains 5,632 words, as found by the word-count function of Microsoft 365.

/s/ *Keith Bradley*
Keith Bradley

MOTION FOR LEAVE TO OBTAIN LIMITED DISCOVERY TO COMPLETE, OR IN THE ALTERNATIVE SUPPLEMENT, THE RECORD
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG
23

Case 3:24-cv-00059-SLG     Document 127     Filed 12/13/24     Page 26 of 27

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2024, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court of Alaska by using the CM/ECF system. Participants in this Case No. 3:24-cv-00059-SLG who are registered CM/ECF users will be served by the CM/ECF system.


/s/ *Keith Bradley*
Keith Bradley