# Exhibit 2

Pebble Limited Partnership
Request for Appeal of Permit Denial
United States Army Corps of Engineers Permit Application No. POA-2017-00271
January 19, 2021

Exhibit 1

# DECLARATION OF JAMES FUEG

I, James Fueg, Vice President - Permitting, Pebble Limited Partnership (PLP), do hereby state as follows:

1. I have been employed by PLP since November 1, 2017. My current title is Vice President – Permitting. In this position, I manage all permitting processes for PLP, including with the US Army Corps of Engineers (USACE), other federal agencies, and the State of Alaska. I have a Master of Science in Geophysics from the Colorado School of Mines and have lived and worked in Alaska since 1996. My career has focused on mineral exploration and mining project development and permitting. Prior to joining PLP, I spent 13 years working on the Donlin Gold Project, holding positions that included both Permitting Manager and Technical Services Manager. I am a Past President of the Alaska Miners Association.

2. Compensatory mitigation is challenging in Alaska, particularly in more remote areas like the Pebble deposit location. PLP therefore proactively sought guidance from the USACE Alaska District (District) on how compensatory mitigation might be addressed given the location of the proposed Pebble Project. The District provided very limited direction on compensatory mitigation throughout the permitting process, and much of it was verbal – in telephone conferences or in-person meetings. The lack of clear direction from the District ultimately led to the submission of multiple versions of the Compensatory Mitigation Plan

(CMP) over the permit review period, each of which required significant resources to develop. Throughout the permitting process, the District never suggested a functional assessment was necessary for compensatory mitigation, much less how it would be accomplished.

3. Using preservation for compensatory mitigation is complicated in the watersheds around the Pebble Project because most of the land is State-owned and due to the lack of existing disturbance. Therefore, for the bulk of the permitting process, PLP focused primarily on out-of-kind, non-preservation options, and the District raised no objections to that approach.

4. PLP had several communications with the District regarding how to approach compensatory mitigation for the Project prior to submitting the first CMP on November 21, 2018 (CMP 1). On August 15, 2018, PLP submitted questions to the District about the approach to be used for the CMP. On August 30, 2018, PLP and the District met to discuss the CMP for the Project.

5. The District provided limited written comments on CMP 1 on December 17, 2018. PLP submitted a revised CMP (CMP 2) on January 11, 2019 that addressed the District's limited comments.

6. PLP continued to refine the mitigation proposal in 2019, and submitted a third version of the CMP on July 25, 2019 (CMP 3). The District provided "high level" written comments on CMP 3 on September 3, 2019, noting that credits can only be given if the culvert upgrades are not a result of non-compliance of an authorization. Given the age of the culverts, it would be challenging to unravel their regulatory history and determine whether there is a "permittee" that could be deemed responsible for their maintenance.

7. Based on that input, PLP spent significant time and resources developing additional mitigation options. On January 7, 2020, PLP submitted draft plans for components of the CMP, including marine debris removal and culvert repairs.

8. Hearing no objection to those components, PLP sent a revised draft CMP (CMP 4) to the District for review on January 13, 2020 that included water treatment facility improvements in three communities close to the mine, marine debris removal, and culvert repairs. The draft CMP was subsequently expanded to include additional analysis and appendices, and was then submitted in response to an RFI on January 27, 2020 (CMP 5). The District had specifically pointed to water quality improvement projects as a potential CMP component.

9. In meetings on June 25 and 30, 2020, the District stated that the Pebble Project as proposed would lead to "significant degradation" of the Koktuli watershed based on direct and indirect impacts, which in turn required new compensatory mitigation requirements for the Project. The District explained that it had defined "significant" for purposes of its "significant degradation" determination as simply "more than trivial," and that its finding of significant degradation was based on a "preponderance" of significant impact findings for the (b)(1) factors. The District stated the Project would impact 29% of the hydrologic unit code (HUC), but also stated that percentages or quantitative thresholds were not determinative. The District recognized that its "significant degradation" determination was unprecedented and acknowledged that it was not aware of any other similar findings for large projects in Alaska. The District went on to state that they had identified the required mitigation needed to avoid significant degradation, and that preservation at a "large ratio" in the Koktuli drainage was the path forward. The District agreed with PLP that wetlands creation,

restoration, and enhancement were not practicable at the required scale within the Koktuli watershed. The District directed PLP to look at mitigation banks and in-lieu fee programs (ILFs) for transportation infrastructure and port impacts. In addition, the District stated that the CMP should include: some form of development restriction to protect the surface from industrial/commercial development, which could be conditioned around successful receipt of State permits; and equivalent data to support a finding that the preservation adequately compensates for the unavoidable project impacts to waters of the U.S.

10. PLP poured considerable resources into meeting the District's new in-kind, in-watershed mitigation requirement. PLP worked with HDR Alaska – the leading aquatic resources consulting firm in Alaska – whose experience spans the preparation of dozens of Clean Water Act-compliant compensatory mitigation plans for oil and gas, mining and other resource and infrastructure development projects in the state. More than 20 wetland professionals and support staff were mobilized into a fly-in field camp in the Koktuli watershed to map wetlands and waterbodies throughout the 112,445-acre Koktuli watershed conservation area to generate the technical data required to submit a CMP that met the District's new demands. More than 1,000 person-days of field work were spent gathering baseline data and other technical information regarding the area to be preserved.

11. PLP also engaged in discussions with the State of Alaska regarding the proposed preservation plan, including mechanisms for imposing the restrictions contained in the CMP to achieve site protection for at least 99 years.

12. PLP continued to confer with the District to confirm that the proposed mitigation area would meet the District's new requirements for in-watershed and in-kind mitigation.

The District was therefore aware of the significant efforts and expenditures being made to advance the Koktuli Conservation Area plan and raised no concerns with the approach.

13. In a September 8, 2020 meeting, the District told PLP that the mitigation for the port and transportation route could be rolled into the Koktuli Conservation Area plan. Thus, while the CMP had originally included port-specific mitigation in the form of credits, PLP dropped that component based on District guidance. PLP asked the District for a specific mitigation ratio requirement so that PLP could ensure the adequacy of the preservation proposed, and the District indicated that at least a 6.5:1 ratio would be required. No explanation for that mitigation ratio was provided.

14. Per the District's direction, PLP submitted two hardcopies of a Preliminary Draft Compensatory Mitigation Plan (Preliminary CMP 6) to the District via courier on September 29, 2020 for what the District described as a "fatal flaw" review. The District did not provide written comments on Preliminary CMP 6, but provided verbal comments in a telephone call on October 13, 2020. In that telephone call, the District did not raise concerns about the sufficiency of the mitigation plan, including for impacts at the port site, in its verbal comments on that document. The only "fatal flaw" the District identified with the Preliminary CMP 6 was that the proposed use of a lease with the State of Alaska was not sufficient for site protection. The District also commented that additional detail should be included on monitoring, maintenance, and costs/financial assurance. The District did not raise any concerns about mitigation for port site impacts during that review.

15. PLP's November 2020 CMP (CMP 6) was compiled based on the input from the District, including implementation of site protection through a deed restriction, rather than a lease, and additional detail on monitoring, long-term management, and costs/financial

- 5 -

Case 3:24-cv-00059-SLG	Document 127-5	Filed 12/13/24	Page 6 of 7

assurance. The CMP applied an overall mitigation ratio of about 8:1 for all impacts, including indirect impacts. This ratio is based on dividing the sum of all wetlands and other waters acreage in the proposed preservation area by the sum of all acreage of directly and indirectly impacted wetlands and other waters for the Project.

16. CMP 6 was submitted to the District on November 4, 2020. Although the District memorandum documenting its review of the CMP was dated November 9, 2020, PLP was not informed of the rejection of the CMP until it received the permit denial decision on November 25, 2020. PLP was never given an opportunity to address any of the alleged CMP deficiencies listed by the District.

17. The District provided two sample CMPs during the permitting process, the Donlin Gold CMP by email on September 10, 2018, and a link to a 2017 CMP for a Florida phosphate fertilizer mine by email on April 15, 2020 (http://cdm16021.contentdm.oclc.org/utils/getfile/collection/p16021coll7/id/6190). The District also provided PLP a copy of the 2018 Alaska Mitigation Thought Process document.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 19, 2021.

By: _____
James Fueg
Vice President – Permitting
Pebble Limited Partnership