Keith Bradley, *pro hac vice*
ScheLeese Goudy, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
717 17th Street, Suite 1825
Denver, Colorado 80202
(303) 830-1776
(303) 894-9239 (facsimile)
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

Jeffrey M. Walker, *pro hac vice*
Katherine E. Wenner, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-2700
(614) 365-2499 (facsimile)
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

Thomas P. Amodio
Kevin M. Boots
REEVES AMODIO, LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
tom@reevesamodio.com
kevin@reevesamodio.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| NORTHERN DYNASTY MINERALS LTD., *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 3:24-cv-00059-SLG |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*, | CONSOLIDATED |
| Defendants, | LEAD CASE |
| and | |
| BRISTOL BAY NATIVE ASSOCIATE, INC., *et al.*, | |
| Intervenor-Defendants, | |

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-CV-00059-SLG (Lead Case) (Consolidated)

Case 3:24-cv-00059-SLG    Document 128    Filed 12/13/24    Page 1 of 27

STATE OF ALASKA,

        Plaintiff,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

        Defendant,

   and

TROUT UNLIMITED, *et al.*,

        Intervenor-Defendants,

Case No. 3:24-cv-00084-SLG

CONSOLIDATED

---

ILIAMNA NATIVES, LTD, *et al.*,

        Plaintiffs,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

        Defendants,

   and

BRISTOL BAY ECONOMIC
DEVELOPMENT CORPORATION, *et al.*,

        Intervenor-Defendants,

Case No. 3:24-cv-00132-SLG

CONSOLIDATED

---

**PLP'S MOTION TO COMPLETE OR SUPPLEMENT THE UNITED
STATES ARMY CORPS OF ENGINEERS'
ADMINISTRATIVE RECORD**

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-cv-00059-SLG (LEAD CASE) (CONSOLIDATED)

Case 3:24-cv-00059-SLG    Document 128    Filed 12/13/24    Page 2 of 27

# TABLE OF CONTENTS

**Page**

I. BACKGROUND ........................................................................................................ 2

II. LEGAL STANDARD ............................................................................................. 4

III. ARGUMENT ........................................................................................................ 6

    A. The Corps record should be completed with the Corps Decisional
    Documents ......................................................................................................... 6

        1. The Corps Decisional Documents Were Before the Agency and
        Pertained to the Merits ......................................................................... 6

        2. The Corps Considered the Corps Decisional Documents ....................... 7

        3. The Court needs the Corps Decisional Documents to substantially
        and meaningfully review the 2024 Denial ............................................. 13

    B. Alternatively, the Corps record should be supplemented with the Corps
    Decisional Documents ..................................................................................... 15

        1. Supplementing the Record is Necessary to Determine Whether the
        Corps Considered all Relevant Factors and Explained the 2024
        Denial .................................................................................................... 15

        2. The Record should be Supplemented because the Corps Acted in
        Bad Faith ............................................................................................... 17

IV. CONCLUSION ................................................................................................... 21

Unlike some agencies, the U.S. Army Corps of Engineers ("Corps") does not maintain a public docket, cataloging documents, comments, submissions, decisions, and other materials related to a Clean Water Act ("CWA") permit application, such as PLP's ("Permit Application" or "Application") at issue in this case. Were there a docket, it would include thousands of documents. The Corps's administrative record must include, at a minimum, a majority of the 40,062 documents in the U.S. Environmental Protection Agency's ("EPA") administrative record submitted to the Court; many of the additional materials that are the subject of the parties' current meet-and-confer process regarding the EPA record; and the documents from PLP's administrative appeal from the Corps's 2020 denial of the Permit Application. It certainly includes more than the handful of documents the Corps submitted to the Court on October 18, 2024.[1]

The Corps undeniably considered more than those few documents when it denied the Application in 2020, and then inevitably considered those documents again (directly or indirectly) when it denied the Application afresh in 2024. But it omitted these documents from the submitted administrative record. To rectify this patent deficiency, PLP respectfully moves for an order directing the Corps to properly complete the record, or, in the alternative, an order supplementing the record.

PLP has conferred with the Corps and with the intervenor-defendants, all of which disagree with this motion.

---

[1] ECF Nos. 112-114.

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

1

# I.    BACKGROUND

PLP has spent over 20 years and over $1 billion to develop the Pebble Deposit, the largest known undeveloped copper resource in the world.[2]  In 2017, PLP submitted its Permit Application to build and operate a mine at the Pebble Deposit ("Pebble Mine").[3]  Extensive data, engineering, environmental assessments, and studies, conducted by dozens of independent scientists, supported the Application.[4]  At each step of the permitting process, all indications were that the permit would be granted, and all public records indicated any environmental impacts could be offset by mitigation.[5]

In August 2020, the Corps told PLP it must revise the Compensatory Mitigation Plan ("CMP").[6]  This revision request did not suggest the Corps had taken a negative view of PLP's Application as a whole.[7]  PLP filed the revised CMP on November 16, 2020.[8]  Four days later, despite years of positive input from both the Corps and EPA that never indicated the permit would be denied, the Alaska District Engineer for Corps (the "District") issued a Record of Determination denying the Permit Application ("2020 Denial").[9]

PLP administratively appealed.[10]  On appeal, the hearing officer refused to uphold the 2020 Denial and identified serious flaws in it.[11]  The hearing officer remanded the matter to

---

[2] ECF No. 91, ¶¶ 5-7 ("1AC").
[3] USACE0000001-0000079, ECF No. 113-1.
[4] *See, e.g.*, EPA_AR_0088061-0096546; EPA_AR_0129454-0129995.
[5] *See* PLP's Motion for Leave to Obtain Extra-Record Discovery to Complete the Record ("Discovery Motion") at 3-5, ECF No. 127.
[6] Ex. 1 at ECF No. 127-3.
[7] Ex. 21 at ECF No. 127-25 (noting "compensatory mitigation would only be provided for a permittable project").
[8] EPA_AR_0130904-0131004.
[9] EPA_AR_0129269-0129297.
[10] EPA_AR_129359–0129450.
[11] Ex 18 at ECF No. 127-21.

MOTION TO COMPLETE THE CORPS'S RECORD
*Northern Dynasty Minerals Ltd v. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

the District for reconsideration.[12]  However, upon remand the District did not address any of these flaws.[13]  Instead, it denied the application ("2024 Denial") because of the EPA's intervening 404(c) veto of the permit—a veto based on the same 2020 Denial with which the Corps's appellate hearing officer found serious flaws.[14]

The Corps submitted its purported administrative record in this case.[15]  The record is sparse, including only: the Permit Application with supporting materials, the EPA veto, the 2024 Denial, and the brief Record of Decision of the 2024 Denial.[16]  The record does not contain core documents from the Corps's process.  The missing documents fall into two broad categories: (1) documents related to PLP's Application and the 2020 Denial and (2) the record from the administrative appeal (collectively, "Corps Decisional Documents").  Specifically, the first category of the Corps Decisional Documents includes the studies PLP, and the Corps gathered in support of the Application[17]; public comments[18]; Requests for Information and responses[19]; correspondence about the Application and 2020 Denial[20]; the draft and final CMPs[21]; economic analyses[22]; and the draft and final Environmental Impact Statements[23].

---

[12] *Id.*
[13] USACE0000781-0000796, ECF Nos. 114-19, 114-20.
[14] *Id.*; *see also* EPA final Determination, USACE0000389 (noting the Corps had found "significant degradation"); USACE0000490 (describing the Corps's conclusions about harm to streams); USACE0000517 (noting that the Corps concluded that the Pebble Project would cause "permanent loss" of wetlands).
[15] ECF Nos. 112-114.
[16] *Id.*
[17] *E.g.*, EPA_AR_0491580-0491615.
[18] *E.g.*, EPA_AR_0000054-0000056; EPA_AR_0144052-0144058.
[19] *E.g.*, EPA_AR_0129456-0129720; EPA_AR_145890-0124895.
[20] *E.g.*, EPA_AR_0000001-0000002; EPA_AR_0466652; Ex. 22 at ECF No. 127-26.
[21] EPA_AR_0130904-0131004; EPA_AR_0133690-0133947.
[22] EPA_AR_0484510-0484718; EPA_AR_0487866-EPA_AR_0488240.
[23] EPA_AR_0088061-0096546.

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

3

Case 3:24-cv-00059-SLG   Document 128   Filed 12/13/24   Page 6 of 27

The second category includes the briefing for the administrative appeal and appellate decision reversing the 2020 Denial.[24]

This list of documents is not exhaustive; it provides only some examples of the types of documents absent from the record. PLP asks the Court to order that the record must include the Corps Decisional Documents. Upon that ruling, the Corps can then provide the missing documents, and PLP could confer with the Corps to work through any areas of uncertainty.

## II.    LEGAL STANDARD

Though judicial review of agency action is limited to review of the "record" before the agency, *Alaska v. U.S. Dep't of the Interior*, No. 3:22-CV-00078-SLG, 2023 WL 2424270, at *3 (D. Alaska Mar. 9, 2023), that review must still include the "whole" record, *Thompson v. U.S. Dep't of Lab.,* 885 F.2d 551, 555 (9th Cir. 1989). The "whole record" must include "all documents and materials directly or *indirectly* considered by agency decision-makers and includes evidence contrary to the agency's position." *Id.*

The "whole" record "is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record." *Id.* (citation omitted). And anything less than the whole record presents a "fictional account of the actual decisionmaking process." *Portland Audubon Soc'y v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (quotation omitted). Directing the agency to complete its record does not result in the presentation of

[24] *See* EPA _AR_0129359-0129450; Ex. 18 at ECF No. 127-21.

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

evidence that was never presented to the agency, *id.*, but instead ensures that judicial review considers the full administrative record.

Although the agency's designation of the record receives a "presumption of regularity," *Blue Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 445 (9th Cir. 2024) (citation omitted), the plaintiff rebuts that presumption by "identif[ying] reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency and not included in the record," *Golden State Salmon Ass'n v. Ross*, No. 17-1172, 2018 WL 3129849, *4 (E.D. Cal. June 22, 2018) (quoting *Pac. Shores Subdiv., Calif. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006)). The plaintiff must "put forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers." *Bazzi v. Gacki*, No. 19-484, 2020 WL 5653599, *3 (D.D.C. Sept. 23, 2020) (citation omitted). Overcoming the presumption requires "clear evidence." *Goffney v. Becerra*, 995 F.3d 737, 748 (9th Cir. 2021).

The foregoing standards relate to completing the record, *i.e.*, ensuring that the Court has before it all the materials that "actually were before the agency at the time of its decision." *Bazzi*, 2020 WL 5653599, at *3. In addition, a court may consider evidence supplementing, rather than completing, the record if (1) admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) "the agency has relied on documents not in the record," (3) "supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "plaintiffs make a showing of agency bad faith." *Alaska*, 2023 WL 2424270, at *3 (quoting *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005)). Among these, a particularly important reason for supplementation arises

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

5

Case 3:24-cv-00059-SLG   Document 128   Filed 12/13/24   Page 8 of 27

when the agency "deliberately or negligently excluded documents that may have been adverse to its decision"; those excluded documents are properly considered in judicial review. *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (citation omitted).

## III.    ARGUMENT

The Corps submitted an incomplete record because it omitted the Corps Decisional Documents. Since this Court must review the "whole record," the record must be completed with these missing materials. Accordingly, the Court should order the Corps to include the Corps Decisional Documents. Alternatively, if the Court concludes that the Corps Decisional Documents are not necessary to complete the record, the Court should supplement the record with those documents.

### A.    The Corps record should be completed with the Corps Decisional Documents.

The Court should direct the Corps to complete the record because (1) the Corps Decisional Documents were unquestionably before the agency and pertained to the merits (2) the Corps at least indirectly considered the Corps Decisional Documents, even in the 2024 Denial; and (3) the Court cannot conduct a substantial and meaningful judicial review of the 2024 Denial without these documents.

#### 1.    The Corps Decisional Documents Were Before the Agency and Pertained to the Merits.

The record "includes everything that was before the agency pertaining to the merits of its decision." *Goffney*, 995 F.3d at 747 (citation omitted). The Corps Decisional Documents easily qualify. They were "before" the Corps; these were materials that were provided to the District, often upon its request, or developed by the District; or were communications within

MOTION TO COMPLETE THE CORPS'S RECORD
*Northern Dynasty Minerals Ltd v. EPA*
CASE NO.: 3:24-00059-SLG (Lead Case) (Consolidated)

6

Case 3:24-cv-00059-SLG    Document 128    Filed 12/13/24    Page 9 of 27

the Corps, either at the District or superior decisionmaking bodies, directly about the Pebble application. These are materials that, *see infra*, would be included as a matter of course in the record for judicial review of any other permit denial.

They also "pertained" to the merits. If there were no other reason these materials must be in the record—there are, as discussed below—it is enough to know that the Corps denied PLP's application to build a port. The port is outside the geographic scope of EPA's final determination, and outside the substantive scope because the port did not involve discharges of waste material but was a different category of water impact (namely, man-made structures in navigable water).[25] So the denial was not mandated by EPA veto. Rather, the Corps determined that the port would not have any economic utility.[26] That conclusion necessarily represents a conclusion not just that the Pebble Mine as proposed in 2020 would be barred by the veto, but that no modification would be possible in light of EPA's final determination. The full record of information developed in the Corps's analysis of mining at Pebble is pertinent to that determination.

### 2. The Corps Considered the Corps Decisional Documents.

The record for judicial review includes "all documents and materials directly or *indirectly* considered by [the] agency." *Thompson*, 885 F.2d at 555 (citation omitted). An agency "indirectly consider[s]" a document under a variety of circumstances, including if the agency participates in the preparation process of that document, *Se. Alaska Conservation Council v. Fed.*

---

[25] USACE0000264, ECF No. 114-12; USACE0000586, ECF No. 114-17; USACE 0000788; USACE0000791, ECF No. 114-20.
[26] USACE0000781-0000782, ECF No. 114-19; USACE0000788-0000789, ECF No. 114-20.

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

*Highway Admin.*, No. 1:06-cv-00009-JWS, 2007 WL 2988013, at *3 (D. Alaska Oct. 10, 2007); or if the document is expressly referenced in the final agency action, *Stand Up for California! v. U.S. Dep't of the Interior*, 552 F. Supp. 3d 962, 986, n.17 (E.D. Cal. Aug. 5, 2021). The ultimate decisionmaker need not have personally reviewed or written the documents for the documents to have been "indirectly considered" in the decisionmaking process. *See, e.g., Se. Alaska Conservation Council,* 2007 WL 2988013, at *3 (noting agency "staff" did not prepare the documents and "staff" reviewed and commented on the documents).[27]

The Corps routinely acknowledges that it considers, in a final decision, documents like the Corps Decisional Documents. In nearly every other permit denial dispute, the Corps includes similar documents in its administrative record. Take *Kunaknana v. U.S. Army Corps of Engineers*, 23 F. Supp. 3d 1063 (D. Alaska 2014)—another case addressing a Corps permitting decision that involved an administrative appeal and remand. There, the Corps included documents related to the administrative appeal, and other materials that predated the administrative appeal, such as comments and reports. *Id.* at 1075-1076, nn.77, 81; *see also* A.R. Index, ECF No. 74-3, District of Alaska, Case No. No. 3:13-cv-00044. Similarly, in a case challenging one of the Corps's jurisdictional determinations after an administrative appeal and remand, the record contained administrative appeal documents. *Hawkes Co. v. U.S. Army Corps of Eng'rs*, No. 0:13-cv-00107-ADM-TNL, 2017 WL 359170 (D. Minn. Jan. 24, 2017) (referencing such documents). In yet another case, which challenged one of the Corps's

---

[27] *Cf. Morgan v. United States*, 298 U.S. 468, 478-479 (1936) (the fact the ultimate decisionmaker did not attend hearings or personally review evidence did not invalidate the hearing under the statute); *Megill v. Bd. of Regents of State of Fla.*, 541 F.2d 1073, 1080 (5th Cir. 1976) (due process does not require "that each Board member individually inspect every line of the record as compiled by the Board and the hearing examiner").

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

8

Case 3:24-cv-00059-SLG    Document 128    Filed 12/13/24    Page 11 of 27

projects, the administrative record included reports and analyses spanning three decades and correspondence. *New Jersey v. U.S. Army Corps of Eng'rs*, No. 3:09-cv-05591-JAP, 2010 WL 2771771 (D.N.J. July 13, 2010); *see also* A. R. Index, ECF No. 42-1, District of Minnesota, Case No. 3:09-cv-05591. In these cases, many of the documents included in the administrative record were not strictly "necessary" to the final agency action or directly considered by the ultimate decisionmaker, yet those documents were included in the records for review.

The Administrative Conference of the United States ("ACUS"), a body including experts from across the U.S. government,[28] says a document is "considered," for these purposes, if "an individual with substantive responsibilities"—not necessarily the ultimate decisionmaker but somebody more than, say, a file clerk—"reviewed" the document "in order to evaluate its possible significance."[29] "A document should not be excluded ... because the agency did not or will not rely on it." *Id.*

Compared to the volume of material that surely was considered at least indirectly, the Corps's record submitted to the Court is skeletal. PLP applied for a permit; the Corps initially denied the application (the 2020 Denial); PLP administratively appealed; the Corps hearing officer partially vacated the denial and remanded the matter back to District; and then the District denied the application again in 2024 (the 2024 Denial). Yet the Corps Decisional Documents are not in the record supplied by the Corps, even though such documents were inevitably considered, at least indirectly.

---

[28] *See* https://www.acus.gov/about-acus (last visited Dec. 13, 2024).
[29] ACUS, ADMINISTRATIVE CONFERENCE RECOMMENDATION 2013-4: ADMINISTRATIVE RECORD IN INFORMAL RULEMAKING 4 (June 14, 2013), https://www.acus.gov/sites/default/files/documents/Administrative%20Record%20_%20Final%20Recommendation%20_%20Approved_0.pdf .

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

9

An agency decision-maker "indirectly consider[s]" a document if, among other things, the deciding agency helped prepare a document, such as by reviewing or commenting on it. *Se. Alaska Conservation* Council, 2007 WL 2988013, at *3. In *Southeast Alaska Conservation Council*, the Court considered whether the Federal Highway Administration's record needed to be completed with documents state agencies used to create draft and final environmental impact statements. *Id.* Because Administration staff "participated extensively in reviewing and commenting on the documents during the preparation process" of those documents, the Administration "at least indirectly considered" the documents. *Id.* (quotation omitted).

Applying *Southeast Alaska Conservation Council* here, the Corps indirectly considered the Corps Decisional Documents. Indeed, some of the Corps Decisional Documents would not exist unless the Corps had specifically asked for them (*e.g.*, the updated CMP, economic analyses, and responses to the Corp's Requests for Information), or because unless the Corps invited their submission (*e.g.*, public comments). Other documents among the Corps Decisional Documents (*e.g.*, correspondence) were created by the Corps (*e.g.*, Environmental Impact Statement and drafts, and the Corps's correspondence).

It is implausible that nobody with any substantive responsibilities regarding the Application so much as *looked* at these documents during the process. Had PLP not appealed, the extant decision from the Corps would have been the 2020 Denial, which would then have been received by this Court. Instead, the Court is reviewing the 2024 Denial that states the Corps denied the permit without further analysis of the mining discharges because of the EPA veto and denied the permit for the port because it would have no further economic utility.

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

10

Case 3:24-cv-00059-SLG    Document 128    Filed 12/13/24    Page 13 of 27

What causes the Court to be reviewing that content rather than solely the 2020 Denial is that PLP *did* appeal administratively, *and* prevailed, leading to the remand that became the 2024 Denial. The appeal itself undeniably shaped the outcome that the Court is reviewing. The appellate decisionmaker certainly considered the appeal brief that PLP submitted, and the host of other materials in the record up to that point.

Those materials do not disappear from the record just because the last decision in the process did not directly rely on them. When a district court receives a mandate from the court of appeals and reviews the case on remand, the prior record or case file does not vanish. The district court on remand may not need to cite to or rely directly on earlier filings (*e.g.*, summary judgment briefing or discovery motions) to resolve the issues before it. However, district courts also do not consider a remand in a vacuum. The procedural history of the case, including both the earlier trial and appellate history, inform the district court's determinations on remand. Similarly, the full file at the Corps informed the ultimate decision on the Application. The Corps, by submitting an administrative record without the Corps Decisional Documents, is suggesting that the 2024 Denial occurred in isolation, with the decisionmakers *and all other personnel* never having received or considered all the earlier submissions, communications, and other context of the case.

Furthermore, the Corps's decision about the port also demonstrates that the relevant personnel must have considered those materials. As explained above, the EPA veto had no bearing on the port, yet the Corps denied that part of the application, reasoning that PLP would have no use for the port in light of the veto of discharges at the proposed mine site.

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

11

Case 3:24-cv-00059-SLG    Document 128    Filed 12/13/24    Page 14 of 27

That decision represented the Corps's application of judgment (though defective) to the record. The materials considered, directly or indirectly, must have included the full set of information pertinent to assessing the potential future utility and environmental consequences of the proposed port facilities.

The Corps Decisional Documents are known to exist. Many of them are part of the EPA record submitted to the Court. PLP knows many exist because it provided them to the Corps in response to the Corps's requests. An accompanying declaration describes such interactions.[30] Other documents are known to exist because the Corps provided them in response to FOIA requests some of which PLP is submitting as examples.[31]

At bottom, "the Court need not wrestle with the metaphysical question of what it means to 'consider' a document 'indirectly' because it is well settled that an agency 'may not skew the record in its favor by excluding pertinent but unfavorable information' and may not 'exclude information on the grounds that it did not 'rely' on the excluded information in its final decision." *Bazzi*, 2020 WL 5653599, at *4 (quotation omitted); *see also Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005). In *National Association of Chain Drug Stores v. U.S. Department of Health & Human Services*, the agency "invited the public to submit comments" and then excluded them from the record. 631 F. Supp. 2d 23, 27 (D.D.C. 2009). But "the fact that defendants ignored the comments does not mean that the comments should be excluded from the record." *Id.* So too here. Materials that were provided in response to

---

[30] Dec. Fueg Declaration ¶ 3.
[31] Exs. 23-31.

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

the Corps's requests or generated by the Corps itself in the process leading up to the 2024 Denial, are part of the record.

In all, there is "reasonable, non-speculative grounds" to believe that the Corps at least indirectly considered the Corps Decisional Documents and, therefore, improperly excluded these documents from the administrative record. *Ctr. For Biological Diversity v. Zinke*, No. 3:18-cv-00064-SLG, 2018 WL 8805325, at *2 (D. Alaska Nov. 16, 2018) (quoting *Pac. Shores*, 448 F. Supp. 2d at 6).

### 3. The Court needs the Corps Decisional Documents to substantially and meaningfully review the 2024 Denial.

The Corps's initial, 2020 Denial of PLP's Permit Application is at the heart of this litigation. The 2020 Denial served as the basis of the EPA veto, and that veto served as the basis for the Corps's 2024 Denial of the Application. In order to substantially and meaningfully review the Corps's action, the Court must consider the 2020 Denial, meaning the Court must be able to look at everything the Corps considered when it made that decision, *i.e.*, the Corps Decisional Documents absent from the current administrative record.

The Court cannot meaningfully review the 2024 Denial unless it can consider the full administrative record leading to that determination, including all application materials and the administrative appellate record relating to 2020 Denial. One of PLP's arguments is that the EPA veto and the 2024 Denial should be vacated because both are based on the 2020 Denial, which was, as the administrative appellate decision explained, meaningfully flawed. The Corps issued the 2020 Denial and EPA relied on that denial to justify its veto, meanwhile the Corps

MOTION TO COMPLETE THE CORPS'S RECORD
*Northern Dynasty Minerals Ltd v. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

13

repudiated much of its own reasoning from the 2020 Denial on appeal.[32]  But then, the Corps relied on the veto when it issued the 2024 Denial, effectively returning to its faulty 2020 reasoning.  The Court can fully address this argument only if it considers the Corps Decisional Documents.  If the Court attempted to review the 2024 Denial without considering the 2020 Denial and the Corps Decisional Documents, it would review a contrived version of events.  "An incomplete record must be viewed as a 'fictional account of the actual decision-making process.'"  *Zinke*, 2018 WL 8805325, at *1 (quotation omitted).  At bottom, the Court cannot substantially and meaningfully review the Corps's 2024 Denial of PLP's permit application without considering the 2020 Denial itself and the appeal that led to the 2024 Denial on remand, and the Court cannot consider those things without the Corps Decisional Documents.

* * *

For the reasons above, the Court should order the Corps to complete the record with the Corps Decisional Documents.  *See Save the Colorado v. U.S. Dep't of the Interior*, 517 F. Supp. 3d 890, 895 (D. Ariz. 2021).  However, PLP recognizes that "courts have used the word 'supplement' in two different ways, which has led to 'some confusion.'"  *Bazzi*, 2020 WL 5653599, at *3 (quotation omitted).  This Court has sometimes regarded completion of the record as an example of the second exception set forth by *Lands Council v. Powell*, "if the agency has relied on documents not in the record."  395 F.3d at 1030 (quotation omitted).  *Compare*

---

[32] *See, e.g.*, EPA Final Determination, USACE0000389 (noting the Corps had found "significant degradation"); USACE0000490 (describing the Corps's conclusions about harm to streams); USACE0000517 (noting that the Corps concluded that the Pebble Project would cause "permanent loss" of wetlands).

*Kloosterboer Int'l Forwarding LLC v. United States*, No. 3:21-cv-00198-SLG, 2021 WL 5984989, at *1 (D. Alaska Dec. 16, 2021) (completing) *with Sovereign Iñupiat for a Living Arctic v. Bureau of Land Mgmt.*, 701 F. Supp. 3d 862, 898-899 (D. Alaska, 2023) (supplementing). If the Court determines that the second *Lands Council* exception provides the applicable framework, the aforementioned analysis applies equally to whether the records should be supplemented with the Corps Decisional Documents because the Corps relied on documents not in the record.

## B. Alternatively, the Corps record should be supplemented with the Corps Decisional Documents.

Even if the Corps somehow excluded the Corps Decisional Documents from consideration, that fact would itself make many of them appropriate for supplementation. A party may supplement the record if: (1) admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith." *Alaska,* 2023 WL 2424270, at *3 (quoting *Lands Council v*, 395 F.3d at 1030). In particular, material should be supplemented if it is "adverse" to the agency's decision and was "deliberately or negligently excluded." *Am. Wildlands*, 530 F.3d at 1002 (citation omitted).

### 1. Supplementing the Record is Necessary to Determine Whether the Corps Considered all Relevant Factors and Explained the 2024 Denial.

The Court should supplement the record with the Corps Decisional Documents because they are necessary to determine whether the Corps considered all the "relevant

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

15

Case 3:24-cv-00059-SLG     Document 128     Filed 12/13/24     Page 18 of 27

factors" and properly explained its decision. *See Lands Council*, 395 F.3d at 1030. This relevant-factors exception allows a court "to consider extra-record evidence to develop a background against which it can evaluate the integrity of the agency's analysis." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014). It applies here because the Corps Decisional Documents provide critical context to the 2024 Denial.

First, the Corps Decisional Documents must supplement the record because, without them, the Court cannot fully understand the 2024 Denial's context. The administrative appellate decision found errors with the 2020 Denial.[33] However, the 2024 Denial did not correct any of those errors, purportedly because the EPA veto eliminated the need to do so.[34] But recall that the veto was itself based on the erroneous 2020 Denial.[35] The 2024 Denial, however, offers no discussion of whether the 2020 Denial's errors undermine the EPA veto, or whether such an undermining meant that both the Corps and the EPA needed to go back to the drawing board. In short, the 2024 Denial failed to consider the relevant factors or, if it did consider those factors, failed to explain how it considered and rejected them. The Corps Decisional Documents are highly pertinent to show why the 2020 Denial, and thus the EPA veto and 2024 Denial, was flawed.

Second, the Corps failed to meaningfully explain why it denied PLP's application to build a port. Again, in addition to the permit to build Pebble Mine, PLP applied for a permit

---

[33] Ex. 18 at ECF No. 127-21.
[34] USACE0000781-0000796, ECF No. 114-20.
[35] *See, e.g.*, EPA final Determination, USACE0000389 (noting the Corps had found "significant degradation"); USACE0000490 (describing the Corps's conclusions about harm to streams); USACE0000517 (noting that the Corps concluded that the Pebble Project would cause "permanent loss" of wetlands).

MOTION TO COMPLETE THE CORPS'S RECORD
*Northern Dynasty Minerals Ltd v. EPA*
CASE NO.: 3:24-00059-SLG (Lead Case) (Consolidated)

to build a port.  And again, the EPA veto did not bar a permit at the port.  However, in the 2024 Denial, the Corps denied the port application because the port did "not have a separate utility" from the mine.  The Corps cited to no support for that conclusory reasoning.  The Corps failed to properly explain the 2024 Denial, and the Corps Decisional Documents help demonstrate that failure because they show the full breadth of PLP's plans.  Accordingly, the Court should order supplementation of the record.

        **2.**      **The Record should be Supplemented because the Corps Acted in Bad Faith.**

The record should be supplemented with the Corps Decisional Documents because the Corps acted in bad faith.  Under the fourth *Lands Council* exception, the Court may supplement the record if the plaintiff makes a "strong showing of bad faith or improper behavior." *Moralez v. Perdue*, No. 116CV00282AWIBAM, 2017 WL 2264855, at *2 (E.D. Cal. May 24, 2017) (citation omitted).  The Supreme Court has also endorsed expanding the record upon a "strong showing of bad faith or improper behavior" at the agency.  *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019) (hereinafter, "*Census*").  Among other things, an agency acts in bad faith when it intentionally obscures the decision-making process.  *Hunters v. Marten*, 470 F. Supp. 3d 1151, 1169 (D. Mont. 2020) (ordering supplementing the record).

The Corps has done just that.  The Corps ultimately relied on EPA's veto in the 2024 Denial.  The government has suggested that this final denial was not a final agency action because it was obligatory.[36]  And the Corps's record does not contain major docket items such as PLP's administrative appeal brief—much less the materials sought by this motion.  As

---

[36] ECF No. 66 at 13-15.

discussed above, that meager submission is different from how the Corps compiles the record for essentially every other denial dispute. *See supra* Part A.ii.

Before the Corps issued its initial decision rejecting its own conclusions about the Pebble project, there was no apparent risk of an EPA veto. EPA had participated in the preparation of the Final Environmental Impact Statement ("FEIS") finding no material impacts; and EPA had declined to initiate the veto procedures with the Corps per the agencies' shared-responsibilities agreement. In light of the positive FEIS findings, the Corps could not have anticipated, in the fall of 2020, that a veto might develop. But the Corps's initial denial in November 2020, which directly contradicted the FEIS and prior submission to the Corps, was a key driver of EPA's veto.

PLP has observed the back-and-forth decisions between the agencies are a bit of a shell game. The Corps issued its November 2020 denial, EPA relied on that denial to justify a veto, meanwhile the Corps repudiated much of its own reasoning from the November 2020 denial, but the Corps then relied on the EPA's veto (which was largely based on the Corps's repudiated 2020 Denial) in its 2024 Denial. The Corps's abrupt reversal in fall 2020 was the first move of the shell, a maneuver that helped lead to the EPA veto. With the host of evidence indicating the Permit Application would be granted, these unusual processes leads to the conviction that these processes were pretext setting up the Corps's about-face in the permitting decision, making expanding the record appropriate. *Census*, 588 U.S. at 783 ("Altogether, the evidence [told] a story that [did] not match the explanation the Secretary

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

18

Case 3:24-cv-00059-SLG    Document 128    Filed 12/13/24    Page 21 of 27

gave for his decision" and the only stated reason 'seem[ed] to have been contrived.'" (citation omitted)).

An agency can also act in bad faith if it "deliberately omitted any information that might cast doubt" on its position, whether that omission happens during the decision-making process or in putting together the administrative record. *Hunters*, 470 F. Supp. 3d, at 1169. A plaintiff makes "a prima facie showing that an agency excluded adverse information from the record by proving that the documents at issue (1) were known to the agency at the time it made its decision, (2) 'are directly related to the decision,' and (3) 'are adverse to the agency's decision.'" *Fund for Animals*, 391 F. Supp. 2d at 198 (citations omitted). Many Corps Decisional Documents are adverse to the Corps's 2024 Denial.

For example, the Corps unquestionably possessed its own internal administrative appellate decision, which identified flaws with 2020 Denial and remanded the matter back to the District to correct those flaws. The Corps also possessed the FEIS, which the Corps itself drafted; it possessed PLP's appeal brief, given that the Corps's appeal decision was a response to that very brief; the Corps's comments implying that the Pebble project was "permittable"; favorable economic analyses; environmental studies showing that the Mine's environmental impacts would be "minimal;" and public comments in support of the Mine. The Corps certainly knew about these documents because it *had* these documents, in the very office that issued the Corps's decision. *Cnty. of San Miguel v. Kempthorne*, 587 F. Supp. 2d 64, 76 (D.D.C. 2008) ("[I]t is axiomatic that documents created by an agency itself or otherwise located in its

MOTION TO COMPLETE THE CORPS'S RECORD
*Northern Dynasty Minerals Ltd v. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

19

files were before it."). And these materials are all specifically and directly about the Pebble project and the reasons to grant or deny a permit for it.

Additionally, these materials are adverse to that Corps's decision. For adversity in this sense, "the question is whether the information is adverse to the ultimate decision." *Id.* That the documents "potentially disprove" a conclusion is sufficient, *id.*; and a document is also "adverse," warranting supplementation, if it is "indicative of a lack of rationality ... in the decisionmaking process." *Pub. Citizen v. Heckler*, 653 F. Supp. 1229, 1237 (D.D.C. 1986). In *Kent County, Delaware Levy Court v. EPA*, the D.C. Circuit ordered supplementation with an internal agency document showing that some experts within the agency had different views on the substance from what the agency decided. 963 F.2d 391, 396 (D.C. Cir. 1992). Documents like the FEIS are adverse in that sense. *Bazzi* deemed a submitter's letter, "refut[ing] point by point" the agency's initial conclusions, to be adverse. 2020 WL 5653599, at *5.[37] PLP's appeal brief to the Corps is just as adverse.

These elements suffice to justify supplementation on grounds of negligent exclusion. Furthermore, the exclusion was plainly deliberate, not just negligent. The Corps cannot deny it was fully aware of all these materials, and indeed EPA has included many of them in its own record. Exclusion of the Corps Decisional Documents from the Corps's record can only have been a choice, not an accidental (non-negligent) oversight.

---

[37] *Bazzi* did not include the letter in the record because during the administrative process, the plaintiff had expressly asked the agency *not* to consider it. 2020 WL 563599, at *5.

MOTION TO COMPLETE THE CORPS'S RECORD
*Northern Dynasty Minerals Ltd v. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

As in *Hunters*, the Corps has repeatedly attempted to hide the full truth of its decision-making process, including with its omission of the Corps Decisional Documents. Accordingly, the Corps has acted in bad faith and, therefore, the Court should supplement the record with the Corps Decisional Documents under the fourth *Lands Council* exception.

\* \* \*

Whether the Court examines PLP's request to add the Corps Decisional Documents to the record under the "completion" or "supplementation" rubric, and whether the Court considers the first, second or fourth *Lands Council* exception(s), the result is the same: the Court should grant PLP's Motion.

## IV.  CONCLUSION

PLP respectfully requests that the Court grant PLP's Motion to Complete the U.S. Army Corps of Engineers' Administrative Record. Specifically, PLP asks the Court to order the Corps to complete the record with the Corps Decisional Documents, and to order the parties to meet-and-confer about which documents must be added to the record. In the alternative, PLP asks that the Court supplement the record with the Corps Decisional Documents and order the parties to confer to develop a list of documents to add to the record.

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

21

Case 3:24-cv-00059-SLG    Document 128    Filed 12/13/24    Page 24 of 27

Dated: December 13, 2024                              */s/ Keith Bradley*

Keith Bradley, *pro hac vice*
ScheLeese Goudy, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
717 17th Street, Suite 1825
Denver, Colorado 80202
(303) 830-1776
(303) 894-9239 (facsimile)
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

Jeffrey M. Walker, *pro hac vice*
Katherine E. Wenner, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
(614) 365-2700
(614) 365-2499 (facsimile)
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

Thomas P. Amodio
Kevin M. Boots
REEVES AMODIO, LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
tom@reevesamodio.com
kevin@reevesamodio.com

*Attorneys for Plaintiffs Northern Dynasty Minerals Ltd
and Pebble Limited Partnership*

MOTION TO COMPLETE THE CORPS'S RECORD
NORTHERN DYNASTY MINERALS LTD V. EPA
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

22

Case 3:24-cv-00059-SLG    Document 128    Filed 12/13/24    Page 25 of 27

## CERTIFICATE OF WORD COUNT

This document follows the type-volume limit of Local Civil Rule 7.4 and contains 5,699 words, as found by the word-count function of Microsoft 365.

/s/ *Keith Bradley*
Keith Bradley

MOTION TO COMPLETE THE CORPS'S RECORD
*NORTHERN DYNASTY MINERALS LTD V. EPA*
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)
23

Case 3:24-cv-00059-SLG     Document 128     Filed 12/13/24     Page 26 of 27

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2024, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court of Alaska by using the CM/ECF system. Participants in this Case No. 3:24-cv-00059-SLG who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Keith Bradley*
Keith Bradley, *pro hac vice*

MOTION TO COMPLETE THE CORPS'S RECORD
NORTHERN DYNASTY MINERALS LTD V. EPA
CASE NO.: 3:24-00059-SLG (LEAD CASE) (CONSOLIDATED)

24

Case 3:24-cv-00059-SLG    Document 128    Filed 12/13/24    Page 27 of 27