Keith Bradley, *pro hac vice*
ScheLeese Goudy, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
(303) 894-9239 (facsimile)
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

Thomas P. Amodio
Kevin M. Boots
REEVES AMODIO, LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
tom@reevesamodio.com
kevin@reevesamodio.com

Jeffrey M. Walker, *pro hac vice*
Katherine E. Wenner, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
(614) 365-2700
(614) 365-2499 (facsimile)
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN DYNASTY MINERALS LTD., *et al*, | |
| Plaintiffs, | |
| v. | Case No. 3:24-cv-00059 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.* , | CONSOLIDATED LEAD CASE |
| Defendants, | |
| And | |
| BRISTOL BAY NATIVE ASSOCIATION, INC., *et al.,* | |
| Intervenor-Defendants. | |

STATE OF ALASKA,

        Plaintiff,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,

        Defendant,

    and

TROUT UNLIMITED, *et al.,*

        Intervenor-Defendants.

Case No. 3:24-cv-00084-SLG

CONSOLIDATED

---

ILIAMNA NATIVES, LTD., *et al.,*

        Plaintiffs,

v.

ENVIRONMENTAL PROTECTION
AGENCY, *et al.,*

        Defendants,

    and

BRISTOL BAY ECONOMIC
DEVELOPMENT CORPORATION, *et al.,*

        Intervenor-Defendants.

Case No. 3:21-cv-00132-SLG

CONSOLIDATED

## AMENDED NOTICE OF SUBPOENAS TO JAMES NICHOLAS AYERS

Pursuant to Federal Rules of Civil Procedure 30(b)(1) and 45(a)(4), Plaintiffs Northern Dynasty Minerals Limited and the Pebble Limited Partnership, hereby give notice of the attached *Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action* and *Subpoena to Testify at a Deposition in a Civil Action* upon JAMES NICHOLAS AYERS.

JAMES NICHOLAS AYERS is to produce documents on or before February 3, 2025 at Squire Patton Boggs (US) LLP, 1230 Peachtree Street NE, Suite 2200, Atlanta, GA 30309.

Counsel for Plaintiffs Northern Dynasty Minerals Limited and the Pebble Limited Partnership will take the deposition upon oral examination of JAMES NICHOLAS AYERS, commencing on February 17, 2025 at 9:00 a.m. and will continue from day to day until completed. The deposition will be conducted in person at Squire Patton Boggs (US) LLP, 1230 Peachtree Street NE, Suite 2200, Atlanta, GA 30309, in accordance with Rule 30(b)(1) of the Federal Rules of Civil Procedure. The deposition will be recorded by stenographic means, may be videotaped, and will be taken before a Notary Public or other officer authorized by law to administer oaths.

Plaintiffs' subpoenas exclude documents and information from the time period when Mr. Ayers was in federal service, including his employment in the Office of the Vice President, and excludes testimony related to the same.

Dated: December 27, 2024

/s/ *Keith Bradley*

Keith Bradley, *pro hac vice*
ScheLeese Goudy, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
(303) 894-9239 (facsimile)
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

Jeffrey M. Walker, *pro hac vice*
Katherine E. Wenner, *pro hac vice*
SQUIRE PATTON BOGGS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, OH 43215
(614) 365-2700
(614) 365-2499 (facsimile)
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

Thomas P. Amodio
Kevin M. Boots
REEVES AMODIO, LLC
500 L Street, Suite 300
Anchorage, AK 99501
(907) 222-7100
(907) 222-7199 (facsimile)
tom@reevesamodio.com
kevin@reevesamodio.com

*Counsel for Plaintiffs Northern Dynasty Minerals Ltd*
*and Pebble Limited Partnership*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2024, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court of Alaska by using the CM/ECF system. Participants in this Case No. 3:24-cv-00059-SLG who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Keith Bradley*
Keith Bradley

# UNITED STATES DISTRICT COURT
### for the
### District of Alaska

| | |
|---|---|
| Northern Dynasty Minerals LTD., et al. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   3:24-cv-00059-SLG (lead case) |
| United States Environmental Protection Agency, et al., | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:      Nicholas James Ayers

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:   Squire Patton Boggs US LLP, 1230 Peachtree Street NE, Suite 2200, Atlanta, GA, 30309 | Date and Time:<br>02/17/2025 9:00 am |
|---|---|

The deposition will be recorded by this method:    Video & stenographic means

❐ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    12/13/2024

| CLERK OF COURT | OR | |
|---|---|---|
| | | /s/ Keith Bradley |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Northern Dynasty Minerals Ltd. & Pebble Limited Partnership              , who issues or requests this subpoena, are:

Keith Bradley, 717 17th Street, Suite 1825, Denver, CO 80202, keith.bradley@squirepb.com, (303) 830-1776

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.    3:24-cv-00059-SLG (lead case)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows:
_____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# UNITED STATES DISTRICT COURT

for the

District of Alaska

| | |
|---|---|
| Northern Dynasty Minerals LTD., et al., | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   3:24-cv-00059-SLG (lead case) |
| United States Environmental Protection Agency, et al., | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

James Nicholas Ayers

To: _____

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A, attached.

| Place: Squire Patton Boggs US LLP, 1230 Peachtree Street NE, Suite 2200, Atlanta, GA, 30309 | Date and Time: 02/03/2025 5:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   12/13/2024

*CLERK OF COURT*

OR

_____          /s/ Keith Bradley
*Signature of Clerk or Deputy Clerk*          _____
                                                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Northern Dynasty Minerals Ltd. & Pebble Limited Partnership _____ , who issues or requests this subpoena, are:

Keith Bradley, 717 17th Street, Suite 1825, Denver, CO 80202, keith.bradley@squirepb.com, (303) 830-1776

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.  3:24-cv-00059-SLG (lead case)

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT A

## Definitions

1.      "Plaintiffs" refers to Plaintiffs Northern Dynasty Minerals Ltd. and Pebble Limited Partnership, and shall include their predecessors and successors in interest, and any and all of their past or present parents, subsidiaries, affiliates, affiliated entities, attorneys, partners, employees, agents, officers, directors, and representatives.

2.      "Defendants" refers to Defendants United States Environmental Protection Agency ("EPA") and United States Army Corps of Engineers, and shall include any branches, agencies, departments, offices, divisions, districts, subdivisions, units, officers, directors, managers, employees, agents, and representatives. For the EPA, this includes, but is not limited to, the Office of the Administrator, Headquarters Offices, and Regional Offices.

3.      "Pebble Mine" refers to the proposed mining operations of what is known as the Pebble Deposit in southwestern Alaska, which Pebble Limited Partnership holds mineral rights to, and that is the subject of Plaintiffs' Section 404 CWA Permit Application, as defined below.

4.      "Section 404 CWA Permit Application" refers to the permit application that Pebble Limited Partnership submitted to the United States Army Corps of Engineers pursuant to Section 404(c) of the Clean Water Act, 33 U.S.C. § 1344, addressing the proposed mining operations of Pebble Deposit.

5.      "You" and "your" refers to James Nicholas Ayers, and shall include your predecessors and successors in interest, and any and all of your past or present affiliates, affiliated entities, attorneys, partners, employees, agents, officers, directors, and representatives.

6.      "Communication(s)" means any transfer or receipt of information, whether orally or in writing and any evidence of such, including, without limitation, any conversation, discussion, or other exchange of information, whether in person or by means of letter, e-mail, text message,

telephone, notes or logs of telephone conversations, daily calendars, diaries, memorandum, telegraph, telex, telecopy, cable, or any other medium, including electronic audio and/or video device or service.

7.     The term "document" or "document(s)" is to be given its broadest interpretation and includes (but is not limited to) everything which in the ordinary usage of litigation is a document and includes any medium on which information can be recorded or form which information can be obtained (including electronically stored information). It includes all materials encompassed by the broadest possible interpretation of Rule 34(A) of the Federal Rules of Civil Procedure and those defined in Rule 1001 of the Federal Rules of Evidence. It includes (by way of illustration and not limitation): drafts and copies bearing notations or marks not found on the original, computer files or data or any kind, audio, video, texts, emails, voicemails, any electronic or any tangible material, whether written, recorded, microfilmed, microfiched, photographed, computerized, reduced to an electronic or magnetic impulse, or otherwise preserved or rendered, papers, agreements, contracts, notes, memoranda, calendars, correspondence, letters, telegrams, telexes, facsimiles, statements, invoices, record books, reports, studies, analyses, minutes, notices, summaries, records, financial statements and records, transcriptions, negotiable instruments, worksheets, ledgers, vouchers, deeds, deeds of trust, photographs, tape recordings, books, pamphlets, catalogues, brochures, extracts, working papers, charts, drawings, graphs, tables, diaries, indices, tapes, wires, films, electronic data processing cards and tapes, recordings, and any and all written, printed, recorded, transcribed, punched, taped, typed, filmed, duplicated, reproduced, or other item or information in your possession, custody, and/or control, including but not limited to originals, file copies, or other copies (no matter how or by whom prepared) that differ in any respect from an original, and all drafts prepared in connection with such materials. For purposes of the foregoing, "draft" refers to any earlier, preliminary, preparatory, or tentative version of all or part of a document, whether or not such draft was superseded by a later draft and whether or not the terms of the draft are the same as or

different from the terms of the final documents. The term "copies" means all copies of any documents which are not identical in every respect with the documents being produced.

8. "Including" shall be construed to mean "including but not limited to" as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

9. "Regarding," "relate to," "relates to," "relating to," and "related to" shall mean referring to, summarizing, reflecting, constituting, containing, concerning, embodying, mentioning, discussing, describing, consisting of, comprising, showing, commenting on, tending to support or tending to refute, or in any way logically or factually connected with the matter that is the subject of the Request.

10. Unless stated otherwise, all Requests are limited to the time period of January 1, 2020 to January 30, 2023.

11. All Requests exclude documents and information from the time period of Your federal service, including Your employment in the Office of the Vice President.

## Document Requests

**Request for Production No. 1**: All Documents and Communications with any employee or official of the U.S. government related to the Pebble Mine, Plaintiffs' Section 404 CWA Permit Application, or either Defendants' review of or actions taken regarding Plaintiffs' Section 404 CWA Permit Application.

**Request for Production No. 2**: All Documents and Communications related to any efforts by You to influence a decision by any official or agency of the U.S. government regarding the Plaintiffs' Section 404 CWA Permit Application.

3

**Request for Production No. 3**:     Documents sufficient to show any employee or official of the United States government with whom You communicated about the Pebble Mine or Plaintiffs' Section 404 CWA Permit Application.

**Request for Production No. 4**:     All Documents and Communications related to the events, activities, Documents, and Communications described in the articles attached as Exhibits 1 and 2, and the book excerpt attached as Exhibit 3[1].

**Request for Production No. 5**:     Documents sufficient to show any direct or indirect financial or business interests that You have held related to the mining, refining, recovery, recycling, and sale of copper, molybdenum, or rhenium, or of gold, silver, or other precious metals, including any ancillary services or industries, from 2015 to the present.

**Request for Production No. 6**:     Documents sufficient to show any direct or indirect financial or business interests that You have held relating the farming, fishing, recreation or preservation of salmon, including any ancillary services or industries, from 2015 to the present.

---

[1] ERNEST SCHEYDER, THE WAR BELOW 167 (2024).

# Exhibit 1

**NewsRoom**

8/21/20 Wash. Post (Wash., D.C.) A03
2020 WLNR 23512181

Washington Post, The (Washington, D.C.)
Copyright (c) 2020 The Washington Post

August 21, 2020

Issue DAILY
Section: Main (A Section)

Influential Republicans lead push against Alaska mine

Juliet Eilperin;Ashley Parker;Steven Mufson

Federal approval of a controversial gold and copper mine in Alaska that would be the largest in North America may be put on hold after a small group of influential Republicans - including the president's son, Fox News host Tucker Carlson, a wealthy Trump donor and one of the vice president's former top aides - launched a full-court press to block the project.

The proposed Pebble Mine was on the verge of winning a key permit from the Trump administration despite concerns from environmentalists that it could significantly damage Alaska's world-renowned sockeye salmon fishery in nearby Bristol Bay.

That also happens to be a fishing spot of Donald Trump Jr., who made an impassioned case against the mine to his father during an early August fundraiser he hosted at his Bridgehampton, N.Y., home. Andrew Sabin, a Trump donor who was at the seaside gathering, also told the president that the mine was a bad idea. And last week, Carlson argued against the proposed mine on his television show.

This last-minute campaign by a handful of high-profile Republicans - including Vice President Pence's former chief of staff Nick Ayers - has prompted the White House to reassess the mine, according to two individuals familiar with the matter. Both people, who spoke on the condition of anonymity in order to discuss internal deliberations, said administration officials are now weighing whether to delay granting a key permit to the mine's sponsor, Pebble Limited Partnership.

This marks an abrupt turn of fortunes for the project and underscores the freewheeling nature of decision-making in Trump's White House, as well as the persuasive power of the unofficial lobbying campaign, both public and private, to block the mine.

"For the three minutes, the president listened attentively to what Don Jr. was saying," Sabin, a precious metals magnate, recalled in a phone interview. "He said he was going to look into it. . . . I've got the feeling you're going to see something big happen in the next 30 days on Pebble."

The U.S. Army Corps of Engineers spent two years analyzing the operation's potential environmental impact and concluded late last month that it would have "no measurable effect" on the area's fish populations. That conclusion cleared the way for issuing a "record of decision" the mine needs from the federal government. That move could come as early as next week, although the Corps is still negotiating how the company will make up for the 2,200 acres of wetlands and 105 miles of streams the operation would permanently destroy.

Trout Unlimited President Chris Wood, who has worked to marshal Republican opposition to the mine, said the flurry of appeals from members of Trump's inner circle could prove decisive. Both Trump Jr. and Carlson are members of Trout Unlimited, a nonprofit dedicated to the conservation of fish habitats, and Trump Jr. has fished in Bristol Bay several times; his brother Eric celebrated his bachelor's party there.

"Those of who have been working on this for a long time realize this central fact, that Republicans fish, too," Wood said in a phone interview. "I think there's been a lot of people for years who have been quietly against the mine. We're now in a point in the process that time is short. Either people speak up now, or we hold our tongues and there's a massive mine in the world's biggest salmon fishery."

A White House spokesman declined to comment, noting that the public comment period on the permit decision was still ongoing, and deferred questions to the Army Corps of Engineers.

John P. Budnik, a public affairs specialist at the Army Corps' Alaska district, said that while preparing the record of decision, "it is inappropriate for us to comment on opinions, to speculate on potential outcomes of our deliberations in response to media inquiries, or to answer technical questions."

Pebble Limited Partnership CEO Tom Collier, however, said he remained optimistic the project would move forward. The firm was continuing to negotiate with the Corps over its plan to offset its environmental footprint, which he said would "far more than adequately compensate for our impact on wetlands in the region."

"I don't see that this issue requires presidential involvement, and I don't see any indication that the president is getting involved," said Collier, who served as then-Interior Secretary Bruce Babbitt's chief of staff during the Clinton administration. "The mainstream of the Republican Party continues to support no political influence in permitting. . . . I don't see the president returning to Obama-like political influence in the permitting process."

But the unlikely coalition fighting the mine has unleashed a fusillade to try to do just that. This summer, Ayers and Carlson found themselves cabin neighbors at a resort outside Jackson Hole, Wyo., and bonded over their shared love of the American West. When Carlson said he would be eager to help in the effort to halt the mine, Ayers suggested using his hour-long show on Fox News to make the pitch.

On Aug. 14, Carlson aired a segment called "The Case Against Alaska's Pebble Mine," in which he interviewed Bass Pro Shops founder and CEO Johnny Morris. Carlson, who has voiced concern about the mine in the past, suggested that "a number of Republicans" oppose the plan and that they think: "Maybe you should do whatever you can not to despoil nature. Maybe not all environmentalism is about climate."

Both Ayers and Trump Jr. have urged the president on Twitter to halt the project. After Jane Fonda shared a Washington Post article describing their efforts, tweeting, "I never thought I'd be in agreement with VP Pence's former chief of staff, but I stand with @nick_ayers on this. And @DonaldJTrumpJr does too," the president's son responded with a joke about her activism against the Vietnam War.

"You think you're shocked? I never thought I'd be in agreement with Hanoi Jane!" he tweeted, including a winking emoji.

Asked Wednesday about Pebble Mine, Trump Jr.'s spokesman declined to comment. Ayers also declined to comment.

The Theodore Roosevelt Conservation Partnership, a bipartisan hunting and fishing group whose CEO used to work for then-Sen. Thomas A. Daschle (D-S.D.), is running ads on Fox News and Twitter this week decrying the mine.

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    2

Sabin and Ayers, meanwhile, have made personal appeals to some of the highest-ranking members of the administration, including Trump himself, said people familiar with the discussions. Ayers has also spoken with Pence and Pence's current chief of staff, Marc Short, among others.

Sabin, who gave $100,000 to Trump's joint fundraising vehicle with the Republican Party in 2016, said he enlisted the help of Trump's former top domestic policy adviser Joe Grogan, "who's been out hunting for rattlesnakes with me." The longtime Republican and environmental philanthropist spent 16 hours tuna fishing with Trump Jr. off Long Island earlier this month, and has met with Grogan's successor, Brooke Rollins, as well as the president's top domestic energy adviser, Francis Brooke.

Sabin said he has been making the business case against the project, saying it was equivalent to someone suggesting they wanted to build an 80-story skyscraper in Manhattan, and adding, "I've never built one g-----n brick in my life. But you know, you give me a permit, and I'll go find someone to build it."

"I've produced millions of ounces of gold, silver, platinum. I own a silver mine in Canada. In Cobalt, Ontario, I recycle precious metals. So I know the precious metals business," he said. "How did it ever get this far?"

Earlier investors in the mine, including Anglo American and Rio Tinto, pulled out in 2013 and 2014, respectively.

Collier, whose firm is a subsidiary of the Canadian mining company Northern Dynasty Minerals Ltd., said his firm continues to be in talks with "potential new partners" about the project. "We have always anticipated adding a major mining company as an operating partner," he said.

Once the Corps makes its final decision on the mine's federal permit, Collier said, it "will increase the interest of those potential new partners."

But mine opponents like Wild Salmon Center President Guido Rahr, who made contact with Ayers only recently, said federal approval is not predetermined at this point. "People having a good look before a permit is issued is important. I'm grateful that it's getting some scrutiny," he said.

juliet.eilperin@washpost.com

ashley.parker@washpost.com

steven.mufson@washpost.com

---- Index References ----

Industry: (Agriculture (1AG63); Agriculture, Food & Beverage (1AG53); Fishing (1SE56); Gold (1GO03); Gold & Precious Metals (1GO02); Livestock (1LI33); Metals & Mining (1ME07); Mining (1MI65); Natural Resources (1NA60))

Region: (Alaska (1AL32); Americas (1AM92); Asia (1AS61); Canada (1CA33); Eastern Asia (1EA61); Far East (1FA27); Indo China (1IN61); North America (1NO39); Southeast Asia (1SO64); U.S. West Region (1WE46); USA (1US73); Vietnam (1VI02))

Language: EN

Edition: RE

WESTLAW    © 2024 Thomson Reuters. No claim to original U.S. Government Works.    3

Word Count: 1394

**End of Document**

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

**News**Room

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   4

# Exhibit 2



https://www.politico.com/news/2020/08/22/trump-set-to-block-alaska-pebble-mine-400206

ENERGY & ENVIRONMENT

## Trump set to block controversial Alaska gold mine

The about-face by the administration likely signals more about issues with this specific mine than a sea change in Trump's overall support for big development projects.



Workers with the Pebble Mine project test drill in the Bristol Bay region of Alaska, near the village of Iliamma, in July 2007. | Al Grillo/AP Photo

By **ZACK COLMAN** and **ALEX GUILLÉN**
08/22/2020 01:00 PM EDT
Updated: 08/22/2020 07:04 PM EDT

   

The Trump administration is planning to block the proposed Pebble Mine in Alaska early next week, six people familiar with the plans told POLITICO, marking a surprise reversal that could be the death knell for the massive copper and gold project.

Environmentalists and conservation groups have warned that the project would threaten world's largest sockeye salmon fishery, and the move to block it comes after President Donald Trump faced pressure to nix it from an array of

interests, including GOP mega-donor Andy Sabin, Bass Pro Shops CEO Johnny Morris and the his eldest son, Donald Trump, Jr.

AD

AD

"With any government, whether it be Obama or Trump, nothing is certain until it happens and that's just the nature of this beast," Sabin, who has spoken directly with Trump about the proposed mine, told POLITICO. "But I'm fairly certain that you're going to get good news."

The Army Corps of Engineers office in Alaska is planning to hold a conference call on Monday with groups connected to the proposed mine discuss the decision, three people with knowledge of the call told POLITICO. An administration official confirmed the call with POLITICO.

Corps officials will say outstanding technical issues with a key permit remain, the people said, adding they anticipate Trump will then follow with a public statement opposing the project. The people said they're not entirely sure what form Trump's disavowal will take, although they said it is more likely to come as a rejection of the Army Corps of Pebble's water permits rather than a veto from EPA, which earlier this year indicated it would not exercise that power.

"There are people that have been told there will be a [Corps] press event and that it will be positive," said a Washington-based person who works on efforts opposing the mine and who requested anonymity to discuss sensitive conversations.

White House spokesman Judd Deere directed POLITICO to the Army Corps.

"The White House is not in a position to comment at this time," he said in an email. Neither the Army Corps nor EPA immediately responded to requests for comment.

But Pebble Partnership CEO Tom Collier, who worked as chief of staff for Clinton-era Interior Secretary Bruce Babbitt, denied that the project was about to be blocked.

"We've worked with the Trump administration and the message that we have received from the Trump administration has been that this is a president who believes that there's no place in the permitting process for political influence," Collier said.

"I do not believe he will be returning to Obama-like interference in the permitting process. We have those assurances that he will not do so," he added.

AD

In a statement issued Saturday evening, Collier again disputed this story and said Pebble was told earlier in the week to expect a letter on Monday calling for "a significant amount" of compensatory mitigation, in which Pebble promises to restore or preserve other nearby wetlands to make up for those affected by the mine, a standard step in the Army Corps' permitting process.

"This has been our working premise for quite some time and has been the focus of our recent efforts near the site to complete additional wetlands survey work to better inform our plan," Collier said in the statement. He added that the time needed to develop a plan might delay a decision beyond what was previously expected, but that the company will provide the Corps with any needed information "as soon as possible" with the goal of remaining on track.

The Pebble Mine has been planned to be built in the headwaters for Bristol Bay, home of the world's biggest sockeye fishery which provides up to 11 percent of all wild salmon harvests.

"I have been there more than 10 times. It is like no place on Earth," Trout Unlimited CEO Chris Wood told POLITICO.

The about-face by the administration likely signals more about issues with this specific mine than a sea change in Trump's overall support for big development projects. But with Trump expected to let it die and his White House challenger Democrat Joe Biden opposed to the project, Pebble Mine appears to have few options to advance it despite more than a decade of planning, ownership changes and political fights.

At the end of July, Trump's administration appeared to be on track to approve the project as early as this month over the protests of environmentalists and Alaskan Native groups opposed to the 8,400-acre open pit mine.

Then in early August, Trump signed the Great American Outdoors Act, which secured almost $1 billion a year for conservation work. "There hasn't been anything like this since Teddy Roosevelt, I suspect," Trump said. Later that day, Trump's son Donald Jr. publicly raised the issue of the controversial mine project, tweeting along with Nick Ayers, former chief of staff to Vice President Mike Pence, to urge Trump to reject Pebble.

The duo cited outdoors recreation groups' concerns that it threatens the Bristol Bay salmon fishery, which is commercially important and an increasingly popular destination for adventurous anglers.

Joining the hook-and-bullet crowd's influence campaign was Fox News host Tucker Carlson, one of the president's favorite TV personalities who elevated the matter in an Aug. 14 segment called " The Case Against Alaska's Pebble Mine." Carlson and his guest, Bass Pro Shops founder Morris, invoked Theodore Roosevelt, who Trump had just called "truly the great conservation President" — and who he's suggested he should join on Mount Rushmore.

Trump has been unabashedly pro-mining, though that has been largely focused on coal mining; Pebble would mine a large deposit of copper, gold, molybdenum and silver ore, so it has no direct connection to the issue of climate change.

AD

"Maybe not all environmentalism is about climate," Carlson said on his show.

Long-held skepticism about the mine from many Alaskans should also provide Trump some political cover. The late Republican Sen. Ted Stevens in 2008 famously called it "the wrong mine for the wrong place." And while she has yet to ultimately take a side, Senate Energy and Natural Resources Chair Lisa Murkowski (R-Alaska) in 2019 questioned Pebble's environmental impacts.

Shortly after the Trump administration took office, it settled a lawsuit with the mine's developer that included withdrawing the Obama-era proposal to preemptively veto the mine. Instead, the mine would be allowed to continue through the permitting process at the Army Corps of Engineers.

As a consulting agency, EPA last year was critical of the Corps' environmental study, warning of "substantial and unacceptable adverse impacts" on the fisheries. But EPA in May indicated it was backing off those criticisms and would not use its Clean Water Act power to veto the project's permits.

EPA's criticisms were based on unique characteristics that ultimately managed to bring environmentalists and Trump to the same side.

The mine, being developed by a U.S. subsidiary of the Canadian company Northern Dynasty Minerals, was proposed to tap a huge reserve on state land a few miles north of Iliamna Lake. The mine plan calls for producing an average of 70 million tons of copper, gold and molybdenum ore annually over 20 years, amounts worth potentially hundreds of billions of dollars. The mine's opponents argue the company would eventually push to expand the mine to extract even more of the deposit.

The Corps determined in July that Pebble Mine "would not be expected to have a measurable effect on fish numbers and result in long-term changes to the health of the commercial fisheries in Bristol Bay."

But the commercial fishing industry, recreation groups, environmentalists and local Native Alaskan groups have all long complained about the destruction of streams critical to salmon's procreation and the danger of mining waste contaminating the bay.

**FILED UNDER:** ENVIRONMENT, ALASKA, DONALD TRUMP, PRESIDENT DONALD TRUMP

Loading

SPONSORED CONTENT

Recommended by Outbrain

**Fidelity vs. Vanguard vs. Schwab**

SmartAsset

**Urologist: Losing Weight After 50 Com…**

AHF

**Virginia Gov Now Covers Your Cost To…**

EnergyBillCruncher

**Heart Surgeon Begs Americans: "Stop…**

thehealthyfat.com

**Cardiologist: How To Quickly Lose A…**

Try It Tonight!

Green Discoveries

About Us

Advertising

Breaking News Alerts

Careers

Credit Card Payments

Digital Edition

Feedback

Headlines

Photos

POWERJobs

Press

Print Subscriptions

Request A Correction

Write For Us

RSS

Site Map

Terms of Service

Privacy Policy

Do Not Sell or Share My Personal Information and Opt Out of Targeted Advertising

---

© 2024 POLITICO LLC

# Exhibit 3

# THE WAR BELOW

## LITHIUM, COPPER, AND THE GLOBAL BATTLE TO POWER OUR LIVES

ERNEST SCHEYDER

e project, which aimed
ınd 1,700 feet deep. A
d to be built to operate
or at the time, quietly
ıal for a Republican to
to be the exception, no
, the developers sought
unched a PR campaign
clared: COEXISTENCE.

Agency found in 2012
east 55 miles of streams
dditionally, the agency
ngs dams in a state that
rthquakes damaged the
leach into Bristol Bay?
Indigenous and fishing
e EPA about the project

project and the equally
*hic* declared the Pebble
licts in Alaska."[52] Anglo
13 despite having spent
e its time and money to
," a stinging rebuke.[53]
ie entire project in 2014
s from issuing wetlands
g industry and ecology.
ay from the project and
charities. That is to say,
stment and did not think
ut the project's viability.
Minnesota's Twin Met-
ma in 2017. They settled
t the mine and promised

that the project would receive a fair hearing.[54] In 2019, Trump officials said they would restart the regulatory review process for the project.[55] By July 2020, as the coronavirus pandemic raged and the U.S. presidential election season was in full swing, Trump officials said they were on the verge of approving the project, calling it vital for the nation's production of copper. The mine would certainly harm part of the state's ecology, officials noted, but the company had tried to find the least damaging option.[56] Trump also began looking for more minerals the United States could get its hands on, at one point proposing to buy the island of Greenland from Denmark.[57]

Then things went sideways.

On August 4, 2020, Nick Ayers tweeted that he hoped President Trump would order the EPA to block the Pebble project. Ayers, who had served as Vice President Mike Pence's chief of staff before resigning in 2018, worried that "a Canadian company will unnecessarily mine the USA's greatest fishery at a severe cost." A few hours later, Donald Trump Jr.—the president's son—retweeted Ayers, saying that "the headwaters of Bristol Bay and the surrounding fishery are too unique and fragile to take any chances with."[58]

A few days later, at a fundraiser in New York's tony Bridgehampton enclave, Trump Jr. approached his father to make a direct plea to kill Pebble. Joined by Andrew Sabin, who had grown enormously wealthy in the metals refining business, the pair made the case that the mine project should be stopped dead in its tracks and that Alaska was not the place to dig up billions of tonnes of dirt. The president nodded but made no promises. "This mine makes no sense," Sabin told Trump. "With the Pebble mine, there's no way you could clean up the damage. The fish would be gone forever."[59]

Sabin and Trump Jr. reminded the president that he had just signed the Great American Outdoors Act, which funded conservation efforts on public lands. "At some point, they'll have to start thinking about the Republican Party and all of the incredible things we've done on conservation and many other fronts," Trump said when signing the bill.[60] If Trump really believed in the letter and spirit of the legislation he'd just signed, his son and Sabin stressed, he would stop Pebble.