IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN DYNASTY MINERALS LTD. and PEBBLE LIMITED PARTNERSHIP,<br><br>    Plaintiffs,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>    Defendants. | Case No. 3:24-cv-00059-SLG and consolidated cases |

### DECLARATION OF JOHN SHIVELY

I, John Shively, declare the following pursuant to 28 U.S.C. § 1746:

1. I am the chairman and chief executive officer ("CEO") for Pebble Limited Partnership ("PLP")—plaintiff in the above-captioned matter. My current CEO tenure at PLP began in September 2020. I previously held the CEO position between 2008 to 2014. In my capacity, I am involved extensively in the company's finances and operations.

2. I submit this declaration in support of the motion for summary judgment by PLP and its parent company, Northern Dynasty Minerals Ltd. ("Northern Dynasty", and together with PLP and their subsidiaries, "NDM").

3. PLP is an Alaska limited partnership based in Anchorage, Alaska. It has overseen a robust program of activities, towards mining of the Pebble deposit, in the areas of mineral exploration, engineering design and mine planning, environmental/socioeconomic studies, stakeholder relations, and public affairs.

4. Northern Dynasty is a Canadian company that is publicly traded on the Toronto Stock Exchange and the NYSE American exchange and headquartered in Vancouver, British Columbia. Northern Dynasty indirectly owns 100% of PLP and holds through subsidiaries the entire private interest in mineral rights located in the area of the Pebble deposit. .

5. I base this declaration on facts personally known to me in my roles at PLP and NDM, my review of the companies' business records, or my opinion based upon my knowledge or experience.

6. The State of Alaska has designated the area around the Pebble Deposit for potential mineral development.

7. NDM began investing in the Pebble Deposit in 2001 when it purchased mineral rights from the company that originally discovered the Deposit. NDM then invested in further exploratory work to expand the Deposit. The work revealed a much larger mineral deposit than previously expected—growing from one billion to four billion tons by the end of 2004. PLP filed additional mineral claims with the State of Alaska. Such claims are subject to royalty requirements, to be paid to the State of Alaska when mining operations extract minerals from the Deposit.

1

8. NDM's mineral claims covering the Deposit are listed in Exhibit A attached to this declaration. Each of these claims is currently owned directly by either Pebble West Claims Corp. or Pebble East Claims Corp.; each of those entities is wholly owned, in turn, by the Pebble Limited Partnership. These claims cover the extent of the currently delineated Pebble Deposit.

9. NDM undertook an extensive environmental baseline data collection program and a geotechnical investigation and preliminary engineering studies. In 2004, NDM commissioned multiple third-party studies of environmental conditions at and near the Pebble Deposit. This work came to involve over a hundred independent scientists, investigating topics such as the hydrology of the area, the vegetation, the aquatic life in streams running down from the area of the Deposit, the economies and cultures of the closest communities, and more. The environmental studies themselves cost almost $200 million. NDM/PLP provided the EPA the resulting reports in 2011 as a compilation it called the Environmental Baseline Document; and in early 2012 it publicly released a complete copy of the collection.

10. Meanwhile, NDM/PLP met repeatedly with federal and state agencies, including EPA, the U.S. Fish and Wildlife Service, the United States Army Corps of Engineers ("USACE"), the Alaska Department of Fish and Game, and the Alaska Department of Natural Resources, among others, in a set of working groups to assess what information would be useful for evaluating potential mining plans and making regulatory decisions about them. The working groups held multiple-day in-person meetings on a periodic basis from 2004 through 2008, and occasionally thereafter.

11.     In December 2017, PLP submitted to the "USACE" an application for the Clean Water Act permits needed for the mine that PLP planned to build and operate to extract minerals from the Pebble Deposit. Through the course of USACE's review of the application, PLP revised its mining plans, resulting in a 2020 version on the basis of which USACE denied the application.

12.     PLP still intends and plans to build and operate a mine at the Pebble Deposit in accordance with the 2020 Mine Plan or a variation thereof. PLP has pursued the various permits needed, from federal and state agencies, in the process and sequence that is regular and prudent for such permitting efforts. If PLP were able to obtain a Clean Water Act permit from USACE, PLP would continue its work towards building under the 2020 Mine Plan. The denial of PLP's permit application is blocking PLP from building or operating a mine, and thus from extracting minerals under its mineral rights at the Pebble Deposit.

13.     USACE denied PLP's application because USACE said it is unable to issue a permit due to the Veto issued by EPA, the Veto that NDM and PLP challenge in this lawsuit.

14.     PLP cannot provide a different plan for mining the Pebble Deposit that would fall outside the limitations in the Veto. The Veto prevents *any* mining of the Pebble Deposit. The proposed mine is already modest in comparison to the Deposit: it will recover only about 10% of the available minerals. (NDM and PLP have acknowledged that they may eventually attempt to expand operations to access more of the Deposit, with such an expansion requiring additional permitting and contingent on various events including

investor interest; the possibility of such an expansion is uncertain at present.)  In addition, the design of the 2020 Plan includes multiple features to minimize environmental impact, in particular by maximizing the reuse of overburden rock and soil so that such materials are, to the maximum extent feasible, not deposited as waste.

15. Any mining of the Deposit would result in tailings.  NDM and PLP examined over 30 potential storage alternatives for tailings.  The approach in the 2020 Mine Plan was chosen because it provides an environmentally sound choice for both operations and mine closure.  The tailings storage approach is integrated with a comprehensive water-management plan.  USACE's environmental analysis concluded that the tailings storage proposed in the 2020 Plan is the least environmentally damaging practicable alternative.

16. NDM and PLP have invested over one billion dollars in its efforts to develop and use the Pebble Deposit, and it holds all the mineral rights to the Deposit.  Because of the costs of not only constructing and operating a mine but also the costs of construction and operation of infrastructure including transportation and energy systems, the Proposed Mine was the smallest version of the mine that is economically feasible.

4

I declare under penalty of perjury that the foregoing Declaration of John Shively is true and correct.

Executed on October _2_, 2025

_____
John Shively