KEITH BRADLEY, *pro hac vice*
SCHELEESE GOUDY, *pro hac vice*
717 17th Street, Suite 1825
Denver, CO 80202
T: (303) 830-1776
F: (303) 894-9239
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

JEFFREY M. WALKER, *pro hac vice*
KATHERINE E. WENNER, *pro hac vice*
2000 Huntington Center
41 South High Street
Columbus, OH 43215
T: (614) 365-2700
F: (614) 365-2499
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

SQUIRE PATTON BOGGS (US) LLP

THOMAS P. AMODIO
KEVIN M. BOOTS
500 L Street, Suite 300
Anchorage, AK 99501
T: (907) 222-7100
F: (907) 222-7199
tom@reevesamodio.com
kevin@reevesamodio.com

REEVES AMODIO, LLC

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN DYNASTY MINERALS LTD. and PEBBLE LIMITED PARTNERSHIP,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants. | Case No. 3:24-cv-00059-SLG<br>and consolidated cases |

### PLP'S OPPOSITION TO DEFENDANTS' MOTION FOR A STAY

Plaintiffs Northern Dynasty Minerals Ltd. and Pebble Limited Partnership (collectively "PLP") ask the Court to deny the government's request to stay this case. ECF 166 ("Stay Motion"). Denying the request will, in itself, authorize attorneys at the Department of Justice ("DOJ") to continue working on the case; and that denial will similarly authorize personnel at defendant Environmental Protection Agency ("EPA") to continue work supporting EPA's litigation counsel. (The other governmental defendant, the U.S. Army Corps of Engineers ("USACE"), is not implicated because PLP's claims against it already stood in abeyance at the parties' request. ECF 165.) DOJ is continuing its work in cases around the country despite the lapse of appropriations at the end of September. Thus, the Antideficiency Act is not, itself, a reason to stay the case. The Court has its ordinary discretion whether to stay the litigation. The government's Stay Motion offers no justification for a stay other than the asserted lack of appropriations. And a stay would directly injure PLP, which is suffering serious, ongoing harm from the Veto it is challenging. The Court should allow this litigation to continue its normal course. In more detail:

1. As the Court likely recalls, this case involves the largest known undeveloped copper deposit in the United States, and one of the largest in the world.[1] EPA blocked the mining of the deposit by issuing a Veto under Clean Water Act section 404(c). EPA_AR_0082924. PLP, holder of the mining claims to the Pebble Deposit, challenges the Veto under the Administrative Procedure Act ("APA"). ECF 91.

---

[1] *See Pebble Project: NI 43-101 Technical Report Update and Preliminary Economic Assessment, Ausenco* (Aug. 21, 2023), https://northerndynastyminerals.com/site/assets/files/4984/pebble_project_ni_43-101_technical_report_update_on_pea.pdf.

2. PLP submitted its application for a Clean Water Act discharge permit in 2017, after more than a decade of intensive environmental study, conversation with federal and state agencies, and development of mining plans. ECF 172-2, ¶ 9. USACE reviewed the application for three years, including a 5,300-plus-page environmental analysis under the National Environmental Policy Act, an analysis that EPA was involved in preparing. EPA_AR_0091272-EPA_AR_0096546. In July 2020, USACE announced it was on the verge of granting PLP's application.[2]

3. At the last minute, in November 2020, USACE denied the application. EPA_AR_0129273. Since that time, the government has led PLP on an extended odyssey. PLP appealed the USACE denial in January 2021. EPA_AR_0129359-019450. USACE held a hearing on the appeal six months later and then did not decide the appeal for *over two years*. ECF 171-8. In mid-2022, EPA proposed to issue a Veto that would block the permit, EPA_AR_0000041-0000044; EPA then finally published that Veto in February 2023, EPA_AR_0082927. Three months after the Veto, USACE finally decided the appeal, recognizing multiple serious errors in its initial denial. ECF 171-8. Then, USACE sat on the resulting remand for another year, before finally deciding in April 2024 that those errors no longer need to be corrected because of the Veto. ECF 171-8.

4. In this Court, PLP filed its action in March 2024. ECF 1. EPA delivered the administrative record in late summer 2024, but the record was incomplete. ECF 87. For example, EPA omitted myriad documents exchanged between USACE and PLP during the

---

[2] Yereth Rosen, *U.S. Army Corps poised to recommend approval of Alaska's Pebble Mine* (July 20, 2020), https://www.reuters.com/article/business/environment/us-army-corps-poised-to-recommend-approval-of-alaskas-pebble-mine-idUSKCN24L2UB/.

application review process, such as requests for information and PLP's responses—even though EPA's regulations state that the EPA record for a veto includes the USACE record for a site, 40 C.F.R. § 231.5(e). *See* ECF 127-128. EPA then negotiated with PLP for five months about including the missing materials. Then, a month after that process finished, EPA asked for an abeyance so that new EPA leadership could review the case. ECF 146. EPA asked for repeated abeyances, taking the case to July 2025. ECF 151, 153, 155.

5.  In July 2025, PLP asked the Court to order a schedule for summary judgment briefing, with that briefing given reasonable speed. ECF 156. EPA responded to ask for four months to respond to PLP's opening brief, and additional time after EPA's brief for intervenors to file their briefs. ECF 161. On EPA's proposed schedule, briefing would not have concluded until mid-April 2026. *Id.*

6.  Now, EPA asks the Court to stay the case indefinitely, pending the resumption of appropriations across the government—an event whose time nobody can forecast. Stay Motion, ¶ 3. Beyond that delay, EPA asks that when the stay ends, EPA's deadline for responding to PLP's summary-judgment brief should be extended day-for-day to match the length of the lapse in appropriations. *Id.* ¶ 4.

7.  "In deciding whether to grant a stay," the Ninth Circuit has instructed courts to consider "the competing interests which will be affected, which include (1) 'the possible damage which may result from the granting of a stay'; (2) 'the hardship or inequity which a party may suffer in being required to go forward'; and (3) 'the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.'" *Alaska Wildlife All. v. Haaland*, No. 20-209,

2022 WL 787989, *2 (D. Alaska Mar. 15, 2022) (quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005)). "'The proponent of the stay bears the burden of establishing its need' and 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay ... will work damage to some one else.'" *Id.* (quoting *Clinton v. Jones*, 520 U.S. 681 (1997), and *Landis v. N. Am. Co.*, 299 U.S. 248 (1936)). These principles apply to the government, just as to other parties. For example, *Alaska Wildlife Alliance* denied a stay, in an APA matter, that the Department of the Interior had requested for the agency to reevaluate the rule at issue. 2022 WL 787989, at *2, *5. The Court applied the ordinary *Lockyer* analysis. *Id.* at *2-5. In *Klamath-Siskiyou Wildlands Ctr. v. Grantham*, also an APA matter, the Eastern District of California applied the ordinary *Lockyer* analysis to a stay request based on the last lapse in appropriations, in 2019. No. 18-2785, 2019 WL 7374626, *1-2 (E.D. Cal. Jan. 4, 2019) (denying stay motion).

8. The only reason EPA offers for a stay is that the appropriation for DOJ has lapsed. Stay Motion, ¶ 1. The consequence, EPA says, is that DOJ attorneys are "prohibited from working … except in very limited circumstances[.]" *Id.* ¶ 2.

9. The circumstances in which DOJ attorneys can continue working are not in fact so limited. DOJ, like other agencies, had a plan in place for a potential lapse in appropriations. Under that plan, of the 115,131 employees at DOJ, 102,291 of them—89%—are already excluded from the general restriction. U.S. Dep't of Justice, *FY 2026 Contingency Plan* at 13, table 3 (Sep. 29, 2025), at https://perma.cc/UNK2-F7SE ("DOJ Contingency Plan"). Within the Environment and Natural Resources Division ("ENRD"), the office handling this case

(per the signatures on the Stay Motion), 220 out of 506 attorneys are already excluded. *Id.* at 12 table 2. Within the Civil Division, 677 out of 1,439 attorneys are already excluded. *Id.*

10. More broadly, the Antideficiency Act allows an agency to undertake an obligation—such as by having attorneys work for it—if "authorized by law." 31 U.S.C. § 1341(a)(1)(B). The government has long interpreted that provision to allow continued participation in litigation. According to DOJ's contingency plan, "[l]itigators will approach the courts and request that active cases … be postponed until funding is available"; then, "[i]f a court denies such a request and orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue." DOJ Contingency Plan at 3. Specifically with respect to ENRD, the contingency plan says attorneys will "proceed with civil and appellate litigation should attempts to secure continuances fail[.]" *Id.* at 7. And, again, "[i]f a court denies a litigator's request to postpone a case and orders it to continue, the litigation will become an excepted activity that can continue during the lapse." *Id.*

11. EPA's contingency plan similarly states that "[l]egal counseling, litigation and law enforcement activities as required" will continue during a lapse of appropriations. EPA, *Contingency Plan for Shutdown* 1 (Sep. 29, 2025), at https://www.epa.gov/lapse/agency-contingency-plans-event-lapse-appropriations ("EPA Contingency Plan"). EPA typically "continue[s] to provide the legal or technical support necessary to meet any court deadlines[.]" *Id.* at 13.

12. Accordingly, courts have repeatedly denied stay requests from DOJ based on a lapse of appropriations. In 2019, during the last shutdown, the D.C. Circuit denied a

government request to stay a scheduled oral argument. *Kornitzky Grp., LLC v. Elwell*, 912 F.3d 637, 638 (D.C. Cir. 2019). Notably, the D.C. Circuit chose to publish that decision, making it precedential for that circuit. Judge Srinivasan, concurring, explained on the basis of the same interpretation (as set forth in DOJ's 2019 contingency plan) as quoted above. In light of that interpretation, he observed, "[t]here is thus no dispute that conducting argument as scheduled is consistent with § 1342" *id.* (Srinivasan, J., concurring)—the same statute that EPA invokes in its Stay Motion here. He observed that denying the stay request was "consistent with this court's application of § 1342 in prior cases[,]" of which he cited myriad examples. *Id.* And he noted that "[i]n every one of th[o]se motions, Government counsel specifically cited the statute at issue here, 31 U.S.C. § 1342[,]" *id.* at 639 —just as EPA's Stay Motion did here. Yet "not a single motion seeking a stay was granted during the 2013 shutdown," and "every time, the Government then participated in oral argument." *Id.* at 638-39.[3]

13. Judge Srinivasan's factual observation in *Kornitzky* disposes of EPA's central contention here, that the Antideficiency Act prevents DOJ attorneys from working on this case. The D.C. Circuit has repeatedly denied requests for stays based on lapse of appropriations, and government attorneys have then continued to participate, including by showing to present oral argument. Therefore, the interpretation of the Antideficiency Act set forth in DOJ's contingency plan, and quoted above, is how DOJ conducts itself in practice. If the Court denies the Stay Motion, government attorneys will indeed be able to continue working on this case, and they will in fact do so.

---

[3] A week after *Kornitzky*, the D.C. Circuit similarly denied a government request to stay briefing in a different case. *Air Transp. Ass'n of Am., Inc. v. FAA*, 912 F.3d 642 (D.C. Cir. 2019) (mem. order).

14. Courts around the country have denied stay motions based simply on appropriations lapses. For example, *United States v. US Airways Grp., Inc.* denied such a stay request in a case where the government sought to block a merger. 979 F. Supp. 2d 33 (D.D.C. 2013). The court noted that the government's "affirmative actions" had already delayed the private parties' plans; and given "the amount of money at stake[,] … this case is clearly significant for both sides." *Id.* at 34-35. The stakes in this case dwarf those, and EPA's actions have delayed PLP's mining plans by years already. The Eastern District of California denied a shutdown-based stay because "[t]he Court cannot predict when appropriations will be restored" and meanwhile the harm was continuing. *Klamath-Siskiyou Wildlands*, 2019 WL 7374626, at *1-2.

15. As just one recent example, in *American Federation of Government Employees v. Trump*, the Northern District of California denied a shutdown-based stay request just two days after it was filed. Order, No. 25-03698, ECF 276 (N.D. Cal. Oct. 3, 2025); *see* Admin. Mot., No. 25-03698, ECF 273 (N.D. Cal. Oct. 1, 2025). Other examples include *In re Camp Lejeune Water Litig.*, No. 23-897, 2025 WL 2827029, *2 (E.D.N.C. Oct. 6, 2025) ("To the extent the government contends it is prohibited from working on these cases due to the current lapse in appropriations, other courts have not been so persuaded and have instead found that such work is in fact authorized."); *United States v. Polselli*, No. 14-11385, 2025 WL 2822463, *2 (E.D. Mich. Oct. 3, 2025) (noting that the DOJ Contingency Plan, as quoted above, "represent[s] publicly that [DOJ] will make staff available to continue the litigation in the event the Court denies the requested stay"; therefore finding that "the government has not established good

PLP'S OPPOSITION TO DEFENDANT'S MOTION FOR A STAY
NORTHERN DYNASTY MINERALS LTD. V. EPA
CASE NO. 3:24-CV-00059-SLG
Case 3:24-cv-00059-SLG    Document 174    Filed 10/07/25    Page 8 of 16

grounds for a stay");[4] *Lehman v. U.S. Dep't of Labor*, No. 25-11846, 2025 WL 2808472 (E.D. Mich. Oct. 2, 2025) (similar).

16. In short, the lapse in appropriations, by itself, cannot justify EPA's Stay Motion. The Court has simply to deny the Motion, and EPA will then be able to continue the litigation. And EPA provides no other reason, and no argument beyond the bare citation to the Antideficiency Act. *Cf. People for the Ethical Treatment of Animals v. USDA*, 912 F.3d 641, 642 (D.C. Cir. 2019) (mem. order) (Katsas, J., concurring) (noting that denial of shutdown-based stay motion was particularly warranted because "the stay motion presented no significant argument regarding the 'authorized by law' issue" and "we need not consider arguments not fairly raised by the parties").

17. Meanwhile, as noted above a stay should not be entered if there is even a "fair possibility" of harm to PLP. There is much more than a fair possibility. PLP has invested over $1 billion, over decades, to develop the Pebble Deposit into a productive resource. ECF 172-2, ¶¶ 9, 14. EPA's actions have halted progress towards mining the Deposit.

18. In January 2022, EPA notified USACE that EPA planned to veto the mine. EPA_AR_0000041-0000044, Ex. A (attached to this opposition). The USACE appeal that

---

[4] *Polselli* also observed that government attorneys have a responsibility to a court where they appear, to "'continue representation notwithstanding good cause for terminating the representation,'" even if they do not get paid for the work. 2025 WL 2822463, at *2 (quoting Mich. R. Prof. Conduct § 1.16(c)). The Court need to address that notion, because under the Government Employee Fair Treatment Act (enacted after the last shutdown), "each excepted employee who is required to perform work during a covered lapse in appropriations shall be paid for such work ... at the earliest date possible after the lapse in appropriations ends[.]" 31 U.S.C. § 1341(2). As noted above, the Court's denying the Stay Motion will make DOJ's continued work on this case "an excepted activity," DOJ Contingency Plan at 7; the DOJ attorneys will therefore be entitled to compensation.

was in process ground to a halt, with no decision for another 16 months. ECF 171-8. EPA then deliberated on its Veto for a year before publishing it in February 2023. EPA_AR_0082927. USACE eventually admitted its initial denial was deeply flawed and needed rethinking, but refused to do anything further because EPA's Veto blocked the path. ECF 171-8. State agencies have also paused their permit reviews because of the Veto. *See* ECF 167, p. 19 & nn. 111, 113.

19. PLP brought this case to vindicate its right to rational government decisionmaking and lawful regulatory action. As the Court is aware, PLP contends the Veto is unlawful and also arbitrary and capricious in many ways. ECF 91. While PLP waits for the Court to determine its rights in the matter, PLP suffers ongoing injury. Significant amounts of capital already deployed—in obtaining the mining rights, and in developing responsible mining plans—are sitting idle. PLP is continuing to spend money to maintain its operations and protect the property while it waits. And while the government delays the case, PLP misses opportunities for contracts, with vendors and suppliers and with customers. Exhibit B, attached, substantiates these harms. And, as the Court is surely aware, certain activities in Alaska can only be done during the summer months; each *summer* of delay is an additional cost.

20. Furthermore, the government's indefinite stay is contrary to the public interest. It bears mention that the government has selectively chosen various components to remain operational during the shutdown. Those include, for example, the immigration court system,

DOJ Contingency Plan at 6; and agencies responsible for assisting the executive with matters involving trade and tariffs.[5]

21. As the D.C. district court observed in denying a stay in the 2019 shutdown, "the public interest would seem to require more than the indefinite stay of the proceedings the Government is effectively seeking." *United States v. CVS Health Corp.*, No. 18-cv-2340, 2019 WL 1064308, *1 (D.D.C. Jan. 11, 2019). The minerals contained in the Pebble Deposit—valued at nearly $800 billion—are not just vital to the modern economy; their extraction would afford an extraordinary benefit to Alaskans. PLP's proposed mining operations would create 5,000 to 10,000 Alaskan jobs, generate between $37 and $170 million in annual royalties for the State of Alaska, and yield approximately $25 to $150 million in annual state corporate income tax revenue. EPA_AR_0486749. PLP had additionally agreed to share an estimated $2,100 to $7,700 in profits per year directly with each resident of the local communities through its "Pebble Performance Dividend." EPA_AR_0486762-0486763.

22. Although of course the merits of the case remain to be decided, the public needs certainty about whether this extraordinary natural resource can be used, or must be foregone. Congress has mandated that a person aggrieved, as PLP is, "is entitled to judicial review," 5 U.S.C. § 702, and that unlawful agency action "shall ... [be] set aside.," *id.* § 706. "[T]he Government's internal, political squabble over funding is **NO** reason to postpone th[at]

---

[5] *Government Shutdown 2025: A Guide to What's Still Open, What's Closed and What's Fuzzy*, POLITICO (Oct. 1, 2025, 4:45 AM), https://www.politico.com/news/2025/10/01/government-shutdown-2025-whats-still- open-00195598.

congressionally mandated evaluation[.]" *CVS Health Corp.*, 2019 WL 1064308, at *1 (emphasis in original).

23. Considering the certain harm that a stay would cause to PLP and the public interest, the government "'must make out a clear case of hardship or inequity in being required to go forward[.]'" *Alaska v. Express Scripts, Inc.*, 774 F. Supp. 3d 1150, 1159 (D. Alaska 2025) (quoting *Landis*, 299 U.S. at 255). Simply having to defend the case during a lapse of appropriations cannot be sufficient. "[B]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'" justifying a stay. *Lockyer*, 398 F.3d at 1112.

24. Finally, the "orderly course of justice", *i.e.*, judicial efficiency, *Lockyer*, 398 F.3d at 1110, weighs in favor of denying the Stay Motion. The Court recently set a comprehensive briefing schedule for summary judgment motions, ECF 165; and all plaintiffs filed their opening briefs on October 3, 2025, in accordance with the Court's order. EPA's response is not due for three months thereafter. That is a shorter period than EPA asked for, ECF 161, but is unusually long even for responding to three weighty briefs. Given the strong public and private interests in resolving this matter expeditiously, the Court should adhere to that more-than-reasonable deadline.

25. Finally, PLP notes that the government's request for a stay does not justify an extension of EPA's response deadline. It has been just four days since the opening briefs were filed, and that period includes two weekend days when DOJ attorneys would not have been engaged on briefing tasks anyway. If the Court acts reasonably quickly to deny the Stay Motion, any period that DOJ was not working on the response brief due to a mistaken belief

that it cannot do so will be brief—and well within the ordinary vicissitudes of litigation. EPA has not attempted any showing that these few days were necessary time for its briefing work.

For these reasons, PLP respectfully submits the Court should deny the government's Stay Motion.

October 7, 2025                                    Respectfully submitted,

                                                   /s/ Keith Bradley
                                                   KEITH BRADLEY, *pro hac vice*
                                                   SCHELEESE GOUDY, *pro hac vice*
                                                   717 17th Street, Suite 1825
                                                   Denver, CO 80202
                                                   T: (303) 830-1776
                                                   F: (303) 894-9239
                                                   keith.bradley@squirepb.com
                                                   scheleese.goudy@squirepb.com

                                                   JEFFREY M. WALKER, *pro hac vice*
                                                   KATHERINE E. WENNER, *pro hac vice*
                                                   2000 Huntington Center
                                                   41 South High Street
                                                   Columbus, OH 43215
                                                   T: (614) 365-2700
                                                   F: (614) 365-2499
                                                   jeffrey.walker@squirepb.com
                                                   katherine.wenner@squirepb.com

                                                   SQUIRE PATTON BOGGS (US) LLP

                                                   THOMAS P. AMODIO
                                                   KEVIN M. BOOTS
                                                   500 L Street, Suite 300
                                                   Anchorage, AK 99501
                                                   T: (907) 222-7100
                                                   F: (907) 222-7199
                                                   tom@reevesamodio.com
                                                   kevin@reevesamodio.com

                                                   REEVES AMODIO, LLC

                                                   *Counsel for Northern Dynasty Minerals Ltd.
                                                   and Pebble Limited Partnership*

## CERTIFICATE OF COMPLIANCE

This document follows the type-volume limit of Local Civil Rule 7.4 and contains 3,272 words, as determined by the word-count function of Microsoft Office 365.

*/s/ Keith Bradley*
KEITH BRADLEY, *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2025, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court of Alaska by using the CM/ECF system. Participants in this Case No. 3:24-cv-00059-SLG who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Keith Bradley
KEITH BRADLEY, *pro hac vice*