Travis Annatoyn (DC Bar No. 1616605, *Pro Hac Vice Pending*)
Allison Rumsey (DC Bar No. 450475, *Pro Hac Vice Pending*)
Emily B. Orler (DC Bar No. 1025791, *Pro Hac Vice Pending*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001
(202) 942-6536 Travis.Annatoyn@arnoldporter.com
(202) 942-5095 Allison.Rumsey@arnoldporter.com
(202) 942-6020 Emily.Orler@arnoldporter.com

*Attorneys for the Chamber of Commerce of the United States of America*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN DYNASTY MINERALS LTD., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.,*<br><br>Defendants,<br><br>and<br><br>BRISTOL BAY NATIVE ASSOCIATION, INC., *et al.,*<br><br>Intervenor-Defendants. | Case No. 3:24-cv-00059-SLG and consolidated cases |

### *AMICUS CURIAE* BRIEF OF THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA IN SUPPORT OF PLAINTIFFS

# TABLE OF CONTENTS

INTEREST OF AMICI CURIAE ................................................................. 1

INTRODUCTION ....................................................................................... 2

ARGUMENT ............................................................................................... 5

    I.   **The Primary Basis for EPA's Decision Impermissibly Excludes Consideration of A Wide Range of Costs** .......................................... 5

    II.  **The "Alternative Basis" for EPA's Decision Does Not Contain A Legally Adequate Consideration of Costs** ..................................... 11

CONCLUSION ......................................................................................... 15

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG    Document 184-1    Filed 11/24/25    Page 2 of 21

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*A Cmty. Voice v. EPA*,
    997 F.3d 983 (9th Cir. 2021) ...................................................................... 10

*Brown v. Gardner*,
    513 U.S. 115 (1994) ................................................................................... 9

*Catawba Cnty., N.C. v. EPA*,
    571 F.3d 20 (D.C. Cir. 2009) ................................................................... 12

*Consol. Edison Co. of New York v. FERC*,
    823 F.2d 630 (D.C. Cir. 1987) ................................................................. 15

*James City Cnty., Va. v. EPA*,
    12 F.3d 1330 (4th Cir. 1993) ..................................................................... 8

*LeMoyne-Owen Coll. v. NLRB*,
    357 F.3d 55 (D.C. Cir. 2004) ................................................................... 13

*Loper Bright Enters. v. Raimondo*,
    603 U.S. 369 (2024) ........................................................................ 3, 9, 11

*Michigan v. EPA*,
    576 U.S. 743 (2015) ....................................................................... *passim*

*Mingo Logan Coal Co. v. EPA*,
    829 F.3d 710 (D.C. Cir. 2016) ............................................................. 4, 8

*Nat'l Parks Conservation Ass'n v. EPA*,
    788 F.3d 1134 (9th Cir. 2015) ........................................................... 12, 15

*Nat'l Urb. League v. Ross*,
    977 F.3d 770 (9th Cir. 2020) ..................................................................... 6

*PDK Lab'ys Inc. v. U.S. Drug Enf't Admin.*,
    438 F.3d 1184 (D.C. Cir. 2006) ............................................................. 12

*Point Park Univ. v. NLRB*,
    457 F.3d 42 (D.C. Cir. 2006) ................................................................... 14

*Stanley v. City of Sanford, Fla.*,
    606 U.S. 46 (2025) ................................................................................... 10

*State of Cal. v. Block*,
    690 F.2d 753 (9th Cir. 1982) ................................................................... 14

*Turner v. Murray*,
    476 U.S. 28 (1986) ..................................................................................... 8

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG    Document 184-1    Filed 11/24/25    Page 3 of 21

*Util. Solid Waste Activities Grp. v. EPA*,
901 F.3d 414 (D.C. Cir. 2018) ..................................................................... 10

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001) ............................................................................... 8, 10

**Statutes**

15 U.S.C. § 2681(10) ..................................................................................... 10

15 U.S.C. § 2683 ............................................................................................ 10

33 U.S.C. § 1251(a) ....................................................................................... 10

33 U.S.C. § 1301(c)(2) ................................................................................... 10

33 U.S.C. § 1321b(b) ..................................................................................... 10

33 U.S.C. § 1329(a)(1)(b) .............................................................................. 10

33 U.S.C. § 1330(g)(4)(C)(i) .......................................................................... 10

33 U.S.C. § 1343 .............................................................................................. 9

33 U.S.C. § 1344(a) .......................................................................................... 3

33 U.S.C. § 1344(b)(1) ...................................................................................... 9

33 U.S.C. § 1344(b)(2) ...................................................................................... 9

33 U.S.C. § 1344(c) ................................................................................. *passim*

42 U.S.C. § 6944(a) ........................................................................................ 10

42 U.S.C. § 7412(n)(1)(A) .............................................................................. 10

**Other Authorities**

40 C.F.R. § 230.10(a) ...................................................................................... 9

44 Fed. Reg. 57076 (Oct. 9, 1979) ................................................................. 6

87 Fed. Reg. 32021 (May 26, 2022) ................................................................ 1

Abe Eichner, *Agency Use of Indirect Benefits to Justify Regul.*,
122 Mich. L. Rev. 1687, 1691 (2024) ............................................................ 7

Exec. Order No. 12,866, § 1(a),
58 FR 51735 (Sept. 30, 1993) ........................................................................ 7

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*
No. 3:24-cv-00059-SLG and consolidated cases

## INTEREST OF AMICI CURIAE[1]

The Chamber of Commerce of the United States of America ("Chamber") is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the Nation's business community.

The legal issues at stake in this litigation are important to *amicus* and its members, including those who operate subject to the potential threat of the Environmental Protection Agency exercising its Section 404(c) authority to stop their projects. More generally, the Chamber's members have a strong interest in fair, consistent, and predictable permitting processes, and in ensuring that agencies properly consider economic impacts when making decisions that affect businesses. To that end, *amicus* filed a comment on the Proposed Determination in September 2022, opposing the application of Section 404(c) authority to block the Pebble Mine project and raising concerns about the harmful precedential impact such a step would have on the U.S. economy. *See* 87 Fed. Reg. 32021 (May 26, 2022). *Amicus* also sent a letter to the EPA in June 2025 asking

---

[1] No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*   1
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG    Document 184-1    Filed 11/24/25    Page 5 of 21

that EPA withdraw the Section 404(c) decision that is at issue in this litigation. If upheld, EPA's Section 404 veto of the Pebble Mine would invert ordinary principles of reasoned decision-making, encourage the unpredictable and overbroad application of the Section 404 process, and disrupt important industries in which many of the Chamber's members participate.

## <u>INTRODUCTION</u>

"Agencies have long treated cost as a centrally relevant factor when deciding whether to regulate." *Michigan v. EPA*, 576 U.S. 743, 752–53 (2015). *See also id.* at 769 ("Cost is almost always a relevant—and usually, a highly important—factor in regulation.") (Kagan, J., dissenting). When an agency considers the costs of its actions, it confronts and weighs the real-world trade-offs that almost inevitably accompany its decisions, including public and private costs and benefits, as well as opportunity costs to the agency itself. *Id.* The result of this weighing is better, more efficient regulation for all concerned, which is why Congress only rarely directs agencies *not* to consider costs.

In this case, the Environmental Protection Agency ("EPA") vetoed a permit that is a crucial prerequisite for construction of the Pebble Mine—a copper, gold, and molybdenum project in Alaska with deposits worth hundreds of billions of dollars— without considering the significant financial consequences of that veto for the project proponents, the State, and the national economy. The ostensible authority for this veto was Section 404 of the Clean Water Act ("CWA"). Section 404(a) allows the United States Army Corps of Engineers ("Corps") to issue permits for discharges, into navigable

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*     2
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG     Document 184-1     Filed 11/24/25     Page 6 of 21

waters, of the dredge or fill material that frequently accompanies construction and infrastructure projects (including mines like Pebble). 33 U.S.C. § 1344(a). Section 404(c) also provides EPA with a "backstop" authority, allowing it to nullify a Corps permit if EPA determines that the permit would "have an *unacceptable* adverse effect" on certain natural resources, like municipal water supplies or recreational areas. *Id.* at 1344(c) (emphasis added).

Congress' instruction to EPA in Section 404(c)—that the agency evaluate whether effects are "unacceptable" before exercising backstop authority—is a paradigmatic demand that regulation proceed only after a reasoned consideration of costs. The statutory term "unacceptable" rivals those adjectives that the Supreme Court has already determined to "naturally" embrace a consideration of costs before an agency chooses to regulate. *See Michigan*, 576 U.S. at 752 (considering congressional direction to regulate where "appropriate and necessary"). By the same token, the statute contains no language prohibiting EPA from evaluating costs, as would be expected if Congress had intended EPA to depart from that ordinary practice. It was thus unlawful for EPA to reach a decision on Pebble without a reasoned consideration of costs.

EPA ignored these principles by straining to read the word "unacceptable" out of Section 404(c). But the sheer ingenuity of the agency's reading underscores that it cannot be the "best" interpretation of Section 404(c), and therefore cannot justify EPA's decision. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). Nor is EPA's veto saved by the agency's preparation of what it labeled an "alternative basis" for its decision: a

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.* 3
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG     Document 184-1     Filed 11/24/25     Page 7 of 21

scattered collection of documents and record excerpts that EPA collectively deemed to constitute a consideration of costs. Purporting to consider costs is not the same thing as adequately considering them. And, as it happens, the "analysis" scraped together by EPA merely *describes* certain costs without ever explaining why they were or were not important to the agency's decision. In short, both bases for the Final Determination are arbitrary and capricious and contrary to law under the Administrative Procedure Act ("APA").

EPA's approach would turn the principles of reasoned decision-making inside out. It would encourage agencies not only to view the consequences of their actions through a keyhole—ignoring even sizeable costs of those actions—but also to shield that evaluation behind the Potemkin rationale of an "alternative basis." The upshot would be bad regulation badly explained. Nobody is well served when EPA erases a project of Pebble's magnitude and importance after (at most) feigning to check the price tag, and project developers, in particular, are likely to confront a chilled investment climate and other injuries to their reliance interests if the agency's approach is upheld. *Accord Mingo Logan Coal Co. v. EPA*, 829 F.3d 710, 736–37 (D.C. Cir. 2016) (Kavanaugh, J., dissenting) (describing reliance interests attendant to the Section 404 process). The Court should set aside EPA's veto and emphasize the importance of considering costs to determinations made under Section 404(c).

//

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.* 4
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG    Document 184-1    Filed 11/24/25    Page 8 of 21

## ARGUMENT

### I.    The Primary Basis for EPA's Decision Impermissibly Excludes Consideration of A Wide Range of Costs

Section 404(c) allows EPA to restrict the discharge of dredged and fill material into specific, identified navigable waters, so long as the agency first determines that the discharge would "have an *unacceptable* adverse effect" on certain natural resources. 33 U.S.C. § 1344(c) (emphasis added). This case implicates the second of two EPA efforts to exercise this authority against the Pebble Mine. EPA's proposal for the first of these efforts—prepared in 2014, before Pebble had even submitted its application for a permit under Section 404—addressed only the effect of the proposal on "specific aquatic resources," and did not consider costs at all. EPA_AR_0139473. EPA later withdrew that proposal, but restarted the 404(c) process in 2022. *See* EPA_AR_0138406–07. In its second proposal, EPA explicitly disclaimed any obligation to consider costs, *see* EPA_AR_0141164, though it nonetheless prepared an accounting of those costs, *see* EPA_AR_0141160–215; EPA_AR_0082397. Several commentors objected to the proposal on the grounds that Section 404(c) necessitates a consideration of the full range of costs of an EPA veto, pointing to the hundreds of billions of dollars at stake in Pebble's development. *See* EPA_AR_0084177–268.

In 2023, EPA issued a Final Determination exercising its backstop authority. *See* EPA_AR_0082927. The stated basis for the Final Determination reiterates and relies on EPA's position that its inquiry into "unacceptable" effects need not consider "non-environmental costs[,] such as the benefit[s] of . . . forgone project[s]."

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*    5
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG    Document 184-1    Filed 11/24/25    Page 9 of 21

EPA_AR_0083164–65 (citing 44 Fed. Reg. 57076, at 58078 (Oct. 9, 1979)). On this basis, the Final Determination precluded discharge of dredged and fill material across roughly 309 square miles in the Bristol Bay watershed, effectively vetoing the Pebble project without even *considering* the associated economic consequences for Pebble, for the State of Alaska, and for the United States' capacity to meet its demand for copper. *See* EPA_AR_0083166–78. EPA also tacked on what it described as an "alternative basis" for its decision. *See* EPA_AR_0083164–65. This "alternative basis" purported to weigh costs, but was firmly relegated by EPA to second-tier status: the agency concluded throughout the Final Determination that an application of Section 404(c) excluding costs was the "best" reading of the statute. *See, e.g.*, EPA_AR_0083165.

As common sense suggests and precedent confirms, the blinkered application of Section 404(c) in EPA's primary basis does not satisfy the agency's obligation to determine whether adverse effects to resources are "unacceptable": EPA instead *must* account for all relevant costs and benefits when exercising authority under the Section. The proper reading of Section 404(c) flows from agencies' bedrock obligation to engage in reasoned decision-making, including a consideration of all "relevant factors." *Michigan*, 576 U.S. at 750 (quotation omitted). The "relevan[ce]" or "import[ance]" of a given factor turns on an agency's authorizing statute, *Nat'l Urb. League v. Ross*, 977 F.3d 770, 777 (9th Cir. 2020), and when that statute includes an open-ended instruction to regulate on the basis of sound judgment—a mandate to regulate as "appropriate," for

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*  6
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG    Document 184-1    Filed 11/24/25    Page 10 of 21

instance—the agency's decision-making "naturally . . . requires at least some attention to cost." *Michigan*, 576 U.S. at 752.

The importance of considering costs is particularly obvious in cases with large cost-benefit asymmetries, where "[o]ne would not say that it is even rational, never mind 'appropriate,' to impose billions of dollars in economic costs in return for a few dollars in health or environmental benefits." *Id.* But consideration of costs is "centrally relevant" to reasoned decision-making even in more mundane cases, reflecting the truism that basically all regulation implicates important trade-offs worthy of careful thought. *Id.* at 752-53. That is why, for example, Presidents from both parties have long demanded that agencies "assess costs and benefits to justify their major rules." Abe Eichner, *Agency Use of Indirect Benefits to Justify Regul.*, 122 Mich. L. Rev. 1687, 1691 (2024); *see, e.g.*, 58 Fed. Reg. 51735, Executive Order 12,866, § 1(a), *Regul. Planning & Rev.* (Sept. 30, 1993) ("In deciding whether and how to regulate, agencies should assess all costs and benefits of available regulatory alternatives, including the alternative of not regulating."). And it is why the Supreme Court in *Michigan* unanimously agreed that certain EPA regulation under the Clean Air Act would be unlawful if "the Agency gave cost no thought at all." *Michigan*, 576 U.S at 765 (Kagan, J., dissenting) (cleaned up). *See also id.* at 751 (opinion of the Court).

As then-Judge Kavanaugh has explained, Section 404(c) is of a piece with the statute in *Michigan* and therefore embraces the ordinary presumption that agency action

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*     7
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG     Document 184-1     Filed 11/24/25     Page 11 of 21

should consider costs. *See Mingo Logan*, 829 F.3d at 730 (Kavanaugh, J., dissenting).[2]

"Like the word 'appropriate' at issue in *Michigan* . . . , the words 'acceptable' and 'unacceptable' are commonly understood to necessitate a balancing of costs and benefits." *Id.* at 734 (citing *Turner v. Murray*, 476 U.S. 28, 36 (1986)).[3] In other words, Section 404(c) is not among those statutes that clearly remove costs from the ambit of agency decision-making. *See Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 464-71 (2001). In *Whitman*, the Supreme Court held that a statute requiring EPA to set "air pollution standards . . . 'requisite to protect the public health' with 'an adequate margin of safety,'" was "absolute," bereft of any additional language that might enable EPA to set those standards with an eye towards compliance costs. 531 U.S. at 465 (citing 42 U.S.C. § 7409(b)(1). By contrast, Section 404(c) directs EPA to regulate only where certain impacts are "unacceptable"—a far broader adjective. *See Mingo Logan Coal*, 829 F.3d at

---

[2] *Mingo Logan* considered EPA's invocation of Section 404(c) to veto a permit for a West Virginia coal mine four years after issuance. 829 F.3d at 715-17, 721. The majority did not decide whether "EPA is generally exempt from considering costs . . . under section 404(c)," declining to reach the issue because, in its view, "costs [were] never presented" to EPA during the relevant decision-making. *Id.* at 730; *see also id.* at 719, 722–23 (concluding that argument based on reliance costs was forfeited by permittee). EPA can avail itself of no such argument here. *See, e.g.,* EPA_AR_0084179–81, 244–54.

[3] Thus, the Fourth Circuit was mistaken in *James City Cnty., Va. v. EPA* when it concluded that, because the authority in Section 404(c) is essentially "unadorned," EPA may permissibly "consider whether adverse environmental effects alone justi[fy] a veto." 12 F.3d 1330, 1336 (4th Cir. 1993) (cleaned up). Section 404(c) *is* sparsely and capaciously drafted, as the Fourth Circuit noted. But as the Supreme Court subsequently clarified in *Michigan*—and contra the holding of *James City County*—this type of language requires agencies to consider costs. *Michigan*, 576 U.S. at 752.

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*     8
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG    Document 184-1    Filed 11/24/25    Page 12 of 21

735 (Kavanaugh, J., dissenting). The statute thus incorporates the ordinary presumption that reasoned decision-making should include an analysis of costs.

The design of Section 404(c) makes good sense in view of the overall structure and purpose of Section 404, which is studded with congressional attention to costs of various kinds. Permits under Section 404(a) are issued consistent with regulations modeled on CWA Section 403, governing ocean discharge. 33 U.S.C. §§ 1343(a), (b). That Section, in turn, requires consideration of both environmental impacts and—by its explicit reference to an alternatives analysis—costs. 33 U.S.C. §§ 1343(c)(1)(F), 1344(b)(1). *See also, e.g.*, 40 C.F.R. § 230.10(a) (implementing regulations for Section 404(b), providing that "no discharge of dredged or fill material shall be permitted if there is a *practicable* alternative to the proposed discharge") (emphasis added). Section 404(b) also requires consideration of economic impacts "on navigation and anchorage" where the Corps would otherwise deny a permit. 33 U.S.C. § 1344(b)(2). Having established the importance of costs for both the Corps and EPA in Section 404(a) and (b), it would be exceedingly odd if Congress suddenly allowed for a cost-free application of Section 404(c). Of course, it did no such thing.

The necessity of costs to the Section 404(c) inquiry is confirmed by EPA's arguments to the contrary. The Final Determination asserts that it need not consider costs because EPA has long said as much in its implementing regulations, *see, e.g.*, EPA_AR_0083164, but "[a] regulation's age is no antidote to clear inconsistency with a statute." *Brown v. Gardner*, 513 U.S. 115, 122 (1994). *See also Loper Bright*, 603 U.S. at

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*     9
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG     Document 184-1     Filed 11/24/25     Page 13 of 21

400 ("In the business of statutory interpretation, if it is not the best, it is not permissible."). EPA also claims that Section 404(c) differs from the statute in *Michigan* because Section 404(c) references specific "adverse effect[s]" outside of costs (to shellfish or wildlife, for example). But the provision of the Clean Air Act in *Michigan* likewise referenced adverse effects: "hazards to public health." 42 U.S.C. § 7412(n)(1)(A).[4] And EPA dismisses Congress' use of "unacceptable" in Section 404(c) as tantamount to the adjective "significant," a modifier that, in EPA's view, would not require a consideration of costs. EPA_AR_0084199–201. But this reading runs smack into Congress' intentional use of "significant" throughout the Clean Water Act, and the equally intentional omission of that word from Section 404(c). *See, e.g.*, 33 U.S.C. §§ 1301(c)(2), 1321b(b), 1329(a)(1)(B), 1330(g)(4)(C)(i).[5]

---

[4] Just as EPA argues that Section 404(c) is not like the statute in *Michigan*, so it also contends that Section 404(c) *is* like the type of statute analyzed in *Whitman* and certain follow-on cases. EPA_AR_0084198–99. But as in *Whitman*, the statutes underlying each of these cases do not use capacious adjectives—such as "acceptable" and "appropriate"—in connection with an authorization to regulate. *See A Cmty. Voice v. EPA*, 997 F.3d 983, 996 (9th Cir. 2021) (considering 15 U.S.C. §§ 2681(10), 2683); *Util. Solid Waste Activities Grp. v. EPA*, 901 F.3d 414, 449 (D.C. Cir. 2018) (considering 42 U.S.C. § 6944(a)). *Michigan*, not *Whitman*, decides this case.

[5] EPA has also appealed to the Clean Water Act's declaration of purpose, 33 U.S.C. § 1251(a), and the legislative history attending Section 404. EPA_AR_0084202–03. "But it is quite mistaken to assume . . . that any interpretation of a law that does more to advance a statute's putative goal must be the law. Legislation is, after all, the art of compromise . . . and no statute yet known pursues its stated purpose at all costs." *Stanley v. City of Sanford, Fla.*, 606 U.S. 46, 58 (2025) (cleaned up). Case in point: Even if it is accurate, as EPA contends, that Congress crafted Section 404(c) to give the agency the final word on one of many considerations at play in Section 404 (*i.e.*, environmental effects), it does not follow that the agency would be excused from considering the remainder of those considerations (such as costs) when exercising backstop authority.

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*    10
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG    Document 184-1    Filed 11/24/25    Page 14 of 21

These and other arguments asserted by EPA are destined to come up short because the best reading of Section 404(c) requires EPA, when exercising its backstop authority, to consider costs, and not simply a narrow range of environmental considerations. *Loper Bright*, 603 U.S. at 400. The statutory scheme—and especially Congress' use of the qualifier "unacceptable"—does not make sense otherwise. To the contrary, EPA's interpretation defies the intuitive "understanding that reasonable regulation ordinarily requires paying attention to the advantages and the disadvantages of agency decisions." *Michigan*, 576 U.S. at 753. EPA's basis for its Final Determination must be rejected as unreasonable and inconsistent with congressional design.

## II. The "Alternative Basis" for EPA's Decision Does Not Contain A Legally Adequate Consideration of Costs

EPA is candid that "*the* basis for [its] final determination" is an evaluation of "unacceptable" effects to natural resources absent any consideration of costs. EPA_AR_0082968 (emphasis added). *See also* EPA _AR_0083179, 195. But as a throwaway, EPA also prepared a loose accounting of costs as "part of an alternative basis" for its decision. EPA_AR_0083164–65. After spending over one hundred pages in the Final Determination describing the primary basis for its decision, EPA devoted roughly a single page in the Determination to a finding that a "consideration of the totality of the circumstances," including certain costs, also justified restrictions on discharge across the whole of the Pebble Mine plan of operations. *Id.*

Pebble Limited Partnership provides numerous reasons why the description of costs and benefits described in EPA's "alternative basis" is technically and legally

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*  11
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG    Document 184-1    Filed 11/24/25    Page 15 of 21

flawed.[6] *See* ECF No. 172-1 at 25-56. But EPA's "alternative basis" cannot salvage the Final Determination for an additional reason: it is a makeweight. Although EPA itemized certain advantages and disadvantages of its decision, it never actually weighed those factors against each other. Whatever that tactic might accomplish, it does not "cogently explain why [EPA] has exercised its discretion in a given manner" and is therefore arbitrary and capricious. *Nat'l Parks Conservation Ass'n v. EPA*, 788 F.3d 1134, 1142 (9th Cir. 2015).

EPA purported to consider the costs and benefits of its Final Determination by employing a "totality of the circumstances" approach, attempting to weigh the project's "advantages" against its "disadvantages." EPA_AR_0083165. An agency may adopt this type of "all-things-considered" test "to implement a statute that confers broad discretionary authority, even if that test lacks a definite 'threshold' or 'clear line of demarcation to define an open-ended term.'" *Catawba Cnty., N.C. v. EPA*, 571 F.3d 20, 39 (D.C. Cir. 2009). But the agency must nonetheless "explain the basis for its decision [and] *the relative significance* of the evidence before it." *PDK Lab'ys Inc. v. U.S. Drug Enf't Admin.*, 438 F.3d 1184, 1194 (D.C. Cir. 2006) (emphasis added). "In the absence of [that] explanation, the 'totality of the circumstances' can become simply a cloak for

---

[6] And there are still more. For example, EPA was presented with information, including from the Corps' Section 404(b) record, demonstrating that development of Pebble could provide a net benefit to subsistence practices, since increased income could support the sustainability of these practices. *See* EPA_AR_0084151–53, 248–49. But EPA barely mentioned this potential benefit, burying it in a table without any further elaboration. *See* EPA_AR_0141330-33.

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*     12
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG     Document 184-1     Filed 11/24/25     Page 16 of 21

agency whim — or worse." *LeMoyne-Owen Coll. v. NLRB*, 357 F.3d 55, 61 (D.C. Cir. 2004).

EPA drew on three different record documents, or portions thereof, to support its "alternative basis." The first is a lengthy report that itemizes certain advantages and disadvantages of the Final Determination but that does not actually purport to weigh those factors. *See* EPA_AR_0141296. The second is the Final Determination itself, which likewise does not explain how EPA weighed the relevant factors, and instead notes that EPA "has further described its weighing of these considerations in response to public comments." EPA_AR_0083165. The Response to Comments, in turn, contains 15 pages on the methodology of EPA's "alternative basis," EPA_AR_0084182–96, roughly the last two of which ostensibly contain the necessary explanation of EPA's balancing, *see* EPA_AR_0084194–96. And there, on the last page of EPA's response, is a single sentence describing how EPA actually measured the relative value of "advantages" and "disadvantages," some of which run into the billions of dollars. That sentence reads, in, full:

> Ultimately, the advantages associated with taking EPA's action were enormously diverse, numerous, unique, valuable, long-lasting, and aligned with the purposes of Section 404(c) even when weighed against the substantial economic disadvantages of EPA's action.

EPA_AR_0084196.

This lone sentence contains nothing like an explanation of the relative importance of costs. It merely makes a "passing observation, stated in the form of a conclusion,"

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*     13
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG     Document 184-1     Filed 11/24/25     Page 17 of 21

*Point Park Univ. v. NLRB.*, 457 F.3d 42, 51 (D.C. Cir. 2006), that supposed and myriad benefits persist "even when weighed against the substantial economic disadvantages of EPA's action." EPA_AR_0084196. But this "does not substitute for the fact-specific analysis called for" by a multi-factor inquiry. *Point Park Univ.*, 457 F.3d at 50–51 (remanding decision that itemized "open-ended rough-and-tumble of factors" but neglected to "explain which factors [the agency] primarily relied upon and [its] reasoning for doing so") (internal quotations omitted). And while EPA may have devoted over a hundred pages to explaining *other* components of its "alternative basis," EPA_AR_0083063–164, "[v]olume alone is insufficient" for a proper application of the "totality-of-the-circumstances" test. *Point Park Univ.*, 457 F.3d at 50 (remanding a "108–page decision with . . . 16 pages of legal analysis").

To reiterate: what is essential for the Final Determination is that EPA was required to explain how it measured costs against benefits in the "alternative basis," not that it elected any particular methodology for that measurement. It may be that certain costs and benefits are not readily quantifiable or commensurable, and, in at least some circumstances, consideration of costs does not require "a formal cost benefit analysis." *State of Cal. v. Block*, 690 F.2d 753, 764 (9th Cir. 1982). *See also Michigan*, 576 U.S. at 759. But consideration of costs under statutes like Section 404(c) must nonetheless "reflect that the [agency] has *compared* for each area the potential benefits" of proposed development "against the potential adverse environmental consequences." *Block*, 690 F.2d at 764 (emphasis added). That comparison is conspicuously absent here.

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*     14
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG     Document 184-1     Filed 11/24/25     Page 18 of 21

In any event, EPA's analysis would have been unreasonable even had it weighed costs and benefits. That is because its "totality-of-the-circumstance" standard, applied to the alternative basis analysis, repeatedly invokes the "purpose of Section 404(c)," which EPA defines as exclusively "environmental"—*i.e.*, excluding costs. EPA_AR_0084190; *see also, e.g.,* EPA_AR_0084195–96, 204–05. Put differently, the agency's "alternative basis" (which ostensibly considers costs) necessarily relies on the premise of its primary basis (that costs are unimportant or irrelevant). Of course, it is not reasonable to say in the same breath, as EPA does in its "alternative basis," that costs are both essential to and incompatible with its analysis. The agency's "primary" position on costs thus reveals itself to be a "fundamental and pervasive flaw that infects the major part" of its "alternative basis," tipping the scales in a manner that would make compliance with Section 404(c) impossible, even had EPA chosen to actually *compare* costs and benefits. *Consol. Edison Co. of New York v. FERC*, 823 F.2d 630, 638 (D.C. Cir. 1987) (remanding where one of agency's stated bases was so "highly problematic" that it contradicted and "confused" other bases). *See also Nat'l Parks Conservation Ass'n*, 788 F.3d at 1143, 1145 (vacating EPA standards relying on "unexplained" and "inconsistent" evaluations of cost). In other words, EPA's "alternative basis" is neither an "alternative" nor a valid "basis" for the Final Determination.

## CONCLUSION

The Court should vacate EPA's Final Determination.

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.* 15
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG    Document 184-1    Filed 11/24/25    Page 19 of 21

Dated November 24, 2025.

/s/ *Travis Annatoyn*

Travis Annatoyn (Pro Hac Vice Pending)
Allison Rumsey (Pro Hac Vice Pending)
Emily B. Orler (Pro Hac Vice Pending)
(202) 942-6536 (Annatoyn)
(202) 942-5095 (Rumsey)
(202) 942-6020 (Orler)
Travis.Annatoyn@arnoldporter.com
Allison.Rumsey@arnoldporter.com
Emily.Orler@arnoldporter.com

***Attorneys for the Chamber of Commerce of the United States of America***

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*     16
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG     Document 184-1     Filed 11/24/25     Page 20 of 21

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2025, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system, thereby serving counsel of record who are registered CM/ECF users via the CM/ECF system.

/s/ *Travis Annatoyn*
Travis Annatoyn

*Northern Dynasty Minerals Ltd., et al. v. U.S. Environmental Protection Agency, et al.*
No. 3:24-cv-00059-SLG and consolidated cases

Case 3:24-cv-00059-SLG    Document 184-1    Filed 11/24/25    Page 21 of 21