KEITH BRADLEY, *pro hac vice*
SCHELEESE GOUDY, *pro hac vice*
717 17th Street, Suite 1825
Denver, CO 80202
T: (303) 830-1776
F: (303) 894-9239
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

JEFFREY M. WALKER, *pro hac vice*
KATHERINE E. WENNER, *pro hac vice*
2000 Huntington Center
41 South High Street
Columbus, OH 43215
T: (614) 365-2700
F: (614) 365-2499
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

SQUIRE PATTON BOGGS (US) LLP

THOMAS P. AMODIO
KEVIN M. BOOTS
500 L Street, Suite 300
Anchorage, AK 99501
T: (907) 222-7100
F: (907) 222-7199
tom@reevesamodio.com
kevin@reevesamodio.com

REEVES AMODIO, LLC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NORTHERN DYNASTY MINERALS LTD. and PEBBLE LIMITED PARTNERSHIP,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>　　　　Defendants. | Case No. 3:24-cv-00059-SLG<br>and consolidated cases |

**PLP'S REPLY IN SUPPORT OF MOTION FOR JUDICIAL NOTICE**

PLP filed its motion requesting judicial notice of certain facts for the sake of clarity, so that if the government considers any of those facts disputable it could say so. ECF 171 ("JN Mot."). With one minor exception (discussed below), the government does not deny PLP's assertion that these facts are beyond reasonable dispute. Instead the government raises a host of metaphysical objections, chief among them a worry that PLP's request will somehow "invite[] confusion about the standard for and the effects of judicial notice." ECF 196, ¶6 ("JN Opp."). This concern is reminiscent of the government's fear that allowing PLP to litigate two administrative actions in one case would create confusion, ECF 66, p. 16—to which the Court rightly responded that the handling of two administrative records would not cause confusion, ECF 90, p. 11. *See also Dep't of Fish & Game v. Fed. Subsistence Bd.*, No. 3:20-CV-00195-SLG, 2021 WL 6926426, at *1 (D. Alaska Aug. 24, 2021) (court "expects to be able to discern if any participant presents misleading arguments"). PLP was explicit about what facts it presents for judicial notice.[1] Speculation that PLP or the Court (the government does not say whose confusion it fears) might extrapolate some other facts beyond PLP's motion (and the Court's order should it grant the motion) is not a sound reason for ignoring the uncontestable facts that PLP put forward.

---

[1] Properly speaking, a court takes judicial notice of a fact, not a document. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("A court must also consider—and identify—which fact or facts it is noticing from [a document].") For each exhibit, PLP's motion identified the facts for which it seeks judicial notice. *E.g.*, JN Mot. ¶11 (seeking "judicial notice of the fact and terms of conveyance reflected in" Exhibit D). The government's opposition discusses judicial notice of a given exhibit *in toto*, without addressing what fact or facts PLP identified for judicial notice. For convenience and readability, this reply sometimes refers to judicial notice of exhibits. But PLP asks the Court to recall that what PLP actually requests, for any given exhibit, is judicial notice of certain facts documented by that exhibit, as set forth in the motion.

The government objects that judicial notice of legislative facts is "unnecessary." JN Opp. ¶6. PLP agrees that formal judicial notice of legislative facts is not necessary, as PLP's motion already informed the Court. JN Mot. ¶3. PLP filed its motion for judicial notice to provide clarity to all parties about what facts outside the administrative record PLP would invoke, and why those uses are appropriate. The government does not deny those facts are of the sort that can qualify for judicial notice.

The confusion that the government hypothesizes seems to arise from a metaphysical debate about what is a fact. Regarding USACE's administrative appeal decision, PLP stated what facts it asked the Court to notice: "that this document exists and reflects a final decision on PLP's appeal." JN Mot. ¶13 (discussing Exhibit F). The government theorizes that "legislative facts are not the rulings or the decisions themselves." JN Opp. ¶6. But the authorities that the government cites for this proposition do not actually support it; they are just general characterizations of what is a legislative fact. The Ninth Circuit, by contrast, says the fact of a judicial decision—i.e., the decision itself—is "appropriate for judicial notice." *Headwaters Inc. v. USFS*, 399 F.3d 1047, 1051 n.3 (9th Cir. 2005) (citation omitted). This is a familiar exercise. Courts routinely distinguish what facts can permissibly be gleaned from out-of-court statements, which, as hearsay, might be "admissible not for the truth of the matter asserted, but for," say, "what [a hearer] might have been told." *E.g.*, *Taualo-Tasi v. Anchorage*, No. 3:13-CV-00234-SLG, 2016 WL 10648444, at *1 (D. Alaska Sept. 22, 2016). That the government finds this sort of distinction confusing does not suggest that anyone else would.

From this misconception, the government concludes that PLP must be asking the Court to "treat[] prior factual findings or narratives as indisputable truths." JN Opp. ¶6. PLP's

2

motion did not request that (partly because many factual assertions in Exhibit F, as elsewhere, are in fact vigorously disputed), and the government does not contend that PLP's Opening Brief surreptitiously seeks such import for Exhibit F.  Granting the limited judicial notice that PLP expressly requested would not invite any confusion about the scope of notice any more than recognizing the existence of a court order would mean accepting as true the facts it recited.  The government's insistence that the existence of a decision is not a "fact" is no basis for inferring that PLP secretly seeks something that it clearly did not ask for.

In detail regarding the specific exhibits:

**Exhibits A, H, and I**.  The government does not deny the facts that PLP invoked—the data in Exhibits A and H, and the fact that Exhibit I exists (i.e. that the Geological Survey included copper on its draft list of critical minerals)—are undisputably true.  But the government opposes noticing facts from Exhibits A and H (U.S. Geological Survey reports on copper reserves and price) and Exhibit I (noting that the Geological Survey's draft list of critical minerals includes copper) because these documents postdate the Final Determination.  JN Opp. ¶¶8, 10.

It is clear from the cases that PLP cited in its motion that a court can, in an APA case, take judicial notice of appropriate facts outside the administrative record.  Indeed, the government insists that two of the cases PLP cited, *Cook Inletkeeper v. Raimondo*, 533 F. Supp. 3d 739 (D. Alaska 2019), and *City of Las Vegas v. FAA*, 570 F.3d 1109 (9th Cir. 2009), did just that, with genuine judicial notice of adjudicative facts.  JN Opp. ¶5.  Both *Cook Inletkeeper* and *Las Vegas* were APA cases, and both took judicial notice of certain extra-record documents.  Also illustrative is *Usery v. Lacy*, 628 F.2d 1226 (9th Cir. 1980).  A potential issue in review of

3

an OSHA enforcement order was whether the employer was sufficiently engaged in interstate commerce. The Ninth Circuit found it "appropriate to take judicial notice"—over the protest of a dissenting judge—of the fact that the construction materials involved came from vendors that sell in interstate commerce. *Id.* at 1229; *id.* at 1235-36 (Kelleher, J., dissenting that the facts were not undisputable). That usage, under the government's own rubric, was adjudicative. In short, the government's objection to judicial notice based on this being an APA case is plainly insufficient.

That a document postdates the decision under review simply means it cannot have been part of the administrative record. The government offers no authority to justify an additional barrier that facts which are otherwise judicially noticeable must be ignored because of the timing. To the contrary, the Ninth Circuit has, in APA cases, judicially noticed facts postdating the agency decisions. *Las Vegas* is a clear example. "We grant Petitioners' Request for Judicial Notice," the Ninth Circuit held, of "Exhibit A, which establishes the undisputed fact that the waiver was approved on January 19, 2007, after the close of the administrative proceedings." 570 F.3d at 1111 n.1. Thus, the Ninth Circuit took judicial notice of an administrative agency decision postdating the decision under review—exactly the thing the government maintains would be improper. The circuit cited a previous case specifically to support the practice of taking judicial notice of events postdating the decision under review. *Lotus Vaping Technologies, LLC v. FDA* also took judicial notice—as an adjudicative matter, apparently—of two FDA documents (a press release and an internal memorandum) that postdated the action under review. 73 F.4th 657, 677 (9th Cir. 2023). In *Ecology Center, Inc. v. Austin*, the government itself asked the Ninth Circuit (and the court agreed) to take judicial

4

notice of events in a parallel case that postdated both the agency decision under review *and* the district court decision being appealed. 430 F.3d 1057, 1061 n.1 (9th Cir. 2005). As just one final example, in *In re Big Thorne Project*, the government opposed an appellant's motion for judicial notice, because the proposed documents "post-date[d] the action under review" and the government thought the appellant was improperly using them to attack the agency's action. No. 15-35244, Doc. 19 (9th Cir. July 13, 2015). That is the same sort of objection that the government raises here (although PLP does not actually seek to use judicial notice in the way the *Big Thorne* petitioners did). In *Big Thorne*, the Ninth Circuit granted the motion for judicial notice over that objection. 691 F. App'x 417, 420 (9th Cir. 2017) (unpublished).

The government also suggests Exhibits A, H, and I will cease to be relevant if the Court strikes PLP's statement of undisputed material facts. JN Opp. ¶8. In truth, PLP inadvertently omitted citations to them in its opening brief. They are pertinent for the statements on the first page about the significance of the Pebble deposit and its total value. ECF 172-1, p. 1.[2]

The government contends that judicial notice constitutes unwarranted supplementation of the record. JN Opp. ¶12. None of the cases discussed above approached the issue in that way, and none required the movant to satisfy the standards for supplementation. PLP's motion explained how the Ninth Circuit's decision in *Lotus Vaping* assessed one set of documents as potential supplementation, which it denied; and another set, whose accuracy could not "reasonably be questioned," were assessed for judicial notice, which the Ninth Circuit granted. 73 F.4th at 676-77; JN Mot. ¶4. The government has no response.

---

[2] The citations would have added 6 words to the brief, and would not matter to PLP's request for permission to file a 20,000-word brief as the brief was only 19,908 words.

5

Case 3:24-cv-00059-SLG    Document 199    Filed 12/08/25    Page 6 of 12

*Las Vegas*, too, denied a request to supplement the record with certain materials, while taking judicial notice of a different undisputable fact. 570 F.3d at 1113 n.1, 1116; *see also W. Watersheds Project v. Abbey*, 719 F.3d 1035, 1042 n.2 (9th Cir. 2013) (first holding supplementation inappropriate, then separately assessing whether judicial notice was warranted).

**Exhibit B**. Certain documents in the administrative record delineate wetlands near the Pebble deposit using shorthand codes. Exhibit B is the governmental document presenting the definitions for those codes. The government agrees PLP can cite this document, and agrees it is correct and indisputable that it does present the definitions for the wetland-type codes. JN Opp. ¶9. The government's only opposition seems to be that judicial notice "risks suggesting that the Code Definitions carry broader factual or legal significance that they do not." *Id.*[3] PLP asked the Court simply to notice that the wetland codes are defined to have the meanings set forth in Exhibit B. So long as the Court is able to recognize those meanings, formal judicial notice will not be important. *See* JN Mot. ¶3.

**Exhibits C, D, and E.** The government raises no objection to the Court's taking judicial notice, in an adjudicative manner, of the facts that PLP invoked from these documents. JN Mot. ¶¶ 10-12 (describing the facts to be noticed); JN Opp. ¶7 (listing the exhibits that the government opposes). Accordingly, for these exhibits the Court should grant the motion as unopposed.

**Exhibits F and G.** These are the USACE decision documents subsequent to the Veto. The government does not, of course, dispute these documents are what they purport

---

[3] The government cites *Khoja* at this point, JN Opp. ¶9, but it is not clear why. That case does not suggest a district court should avoid taking judicial notice of a fact to avoid hypothetical risks of "suggesting" additional significance for the fact.

6

to be and say what they purport to say, on behalf of USACE, JN Opp. ¶10—which is what PLP asked the Court to notice about them.[4] Yet again, the government spins out fears that PLP might "blur the distinction" and "muddy the issues." *Id.* This response is either baseless speculation or simple misunderstanding. PLP has not attempted any such blurring. It has not suggested that facts recited in Exhibit F or G were or should have been before EPA simply by virtue of being mentioned in Exhibit F or G; nor that the Court should take judicial notice of the truth of any particular fact recounted in Exhibit F or G; nor that EPA's decision should have taken account of Exhibit F or G. The use that PLP makes of these exhibits is straightforward: How one decisionmaker decided a certain type of issue can be persuasive authority for how the Court should address the issue. *See* ECF 177, pp. 30, 57. Courts routinely consider judicial decisions postdating agency decisions, and courts also routinely take notice of the existence of agency decisions postdating the decisions under review, as in *Lotus*, *Las Vegas*, *Ecology Center*, and *Big Thorne* discussed above. The government offers no argument against this use of Exhibit F or G.

**Exhibits J, K, and L**. These documents are previous 404(c) decisions by EPA. The government agrees the existence of these documents is undisputable, and it has no objection to PLP's citing these documents. JN Opp. ¶11. The government's opposition to judicial notice seems to be only that legislative facts should not be judicially noticed as a formal matter.

---

[4] The government denies Exhibit F is the "final" decision by USACE on PLP's administrative appeal. JN Opp. ¶10. USACE regulations make that decision the "conclu[sion] of the administrative appeal process," 33 C.F.R. §331.9(c), so the government's dispute is perplexing. But the status of Exhibit F as "final" is not important for the purposes PLP proposed for the exhibit, and PLP withdraws its request that the Court notice Exhibit F is the "final" decision on the administrative appeal, JN Mot. ¶13. Noticing it is *a* decision by USACE will suffice.

7

So long as the Court can review these documents and take account of what EPA decided in those previous cases, PLP agrees that formal judicial notice would not be necessary. JN Mot. ¶3.

**Conclusion**

The government's opposition to PLP's motion is based primarily on accusations that the motion risks confusion or is somehow misleading. But PLP did not ask for freewheeling notice of everything contained in its various exhibits. PLP's motion stated, properly, exactly what facts it asked the Court to notice. For certain exhibits the pertinent fact is the existence of the document itself, memorializing that a person took a given action or made a particular statement. For other exhibits the pertinent facts are facts about the world (such as the price of copper) presented in the documents. All of these things are undisputable, and (except for whether Exhibit F was the "final" appeal decision) the government does not suggest otherwise. The precedents of the Ninth Circuit and of this Court show that a court can take appropriate judicial notice of a fact that is not in the administrative record and postdates the agency decision under review; and that such notice is distinct from supplementation of the record and is not contrary to the APA limitations on judicial review. Against all of that, the government offers only speculation and supposition that PLP *might* use the exhibits differently from what it proposed, and objections that legislative facts need no judicial notice at all. PLP respectfully submits that the Court can and should consider, in its deliberations, the facts set forth in PLP's motion—whether through judicial notice or otherwise.

December 8, 2025                                      Respectfully submitted,

                                                            */s/ Keith Bradley*
KEITH BRADLEY, *pro hac vice*
SCHELEESE GOUDY, *pro hac vice*
717 17th Street, Suite 1825
Denver, CO 80202
T: (303) 830-1776
F: (303) 894-9239
keith.bradley@squirepb.com
scheleese.goudy@squirepb.com

JEFFREY M. WALKER, *pro hac vice*
KATHERINE E. WENNER, *pro hac vice*
2000 Huntington Center
41 South High Street
Columbus, OH 43215
T: (614) 365-2700
F: (614) 365-2499
jeffrey.walker@squirepb.com
katherine.wenner@squirepb.com

SQUIRE PATTON BOGGS (US) LLP

THOMAS P. AMODIO
KEVIN M. BOOTS
500 L Street, Suite 300
Anchorage, AK 99501
T: (907) 222-7100
F: (907) 222-7199
tom@reevesamodio.com
kevin@reevesamodio.com

REEVES AMODIO, LLC

*Counsel for Northern Dynasty Minerals Ltd. and Pebble Limited Partnership*

## CERTIFICATE OF COMPLIANCE

This document follows the type-volume limit of Local Civil Rule 7.4 and contains 2,570 words, as determined by the word-count function of Microsoft Office 365.

*/s/ Keith Bradley*
KEITH BRADLEY, *pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2025, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court of Alaska by using the CM/ECF system. Participants in this Case No. 3:24-cv-00059-SLG who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Keith Bradley
KEITH BRADLEY, *pro hac vice*